STATE OF NEW YORK:  SUPREME COURT
COUNTY OF NEW YORK

----------------------------------------------------------x

ALEXANDER DUNLOP,

                              Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief andCommanding Officer,
Pier 57, New York City Police Department,
THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ, shield number 27230,
POLICE OFFICER JOHN DOE's 1-3, and the
HUDSON RIVER PARK TRUST, in their individual
and official capacities, jointly and severally,

                              Defendants.

----------------------------------------------------------x

**AMENDED SUMMONS**

**Index No. 05/112008**

NEW YORK
COUNTY CLERK'S OFFICE

DEC 1 6 2005

NOT COMPARED
WITH COPY FILED

TO THE ABOVE NAMED DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the complaint in the above
action and to serve a copy of your answer on the plaintiffs attorney within twenty (20)
days after the service of this summons, exclusive of the day of service, or within thirty
(30) days after completion of service is made in any other manner than by personal
delivery within the State.  The United States of America, if designated as a defendant in
this action, may answer or appear within sixty (60) days of service hereof. In case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint.

     **NEW YORK COUNTY** is designated as the place of trial.  The basis of venue is
where the cause of action arose.

Dated: November 18, 2005

Gina M. Bonica, Esq.
KURLAND & ASSOCIATES P.C.
Attorneys for Plaintiff
304 Park Avenue South, Suite 207
New York, New York 10010
(212) 253.6911

STATE OF NEW YORK:  SUPREME COURT
COUNTY OF NEW YORK

-----------------------------------------------------------x

ALEXANDER DUNLOP,

                        Plaintiff,

          -against-

**THE CITY OF NEW YORK**, a municipal entity
**MICHAEL BLOOMBERG**, Mayor of the City of
New York, **RAYMOND KELLY**, Police
Commissioner of the City of New York, **JOSEPH
ESPOSITO**, Chief of the Department, New York
City Police Department, **THOMAS GRAHAM** ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, **JOHN J.
COLGAN**, Deputy Chief andCommanding Officer,
Pier 57, New York City Police Department,
**THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ,** shield number 27230,
**POLICE OFFICER JOHN DOE's 1-3**, and the
**HUDSON RIVER PARK TRUST**, in their individual
and official capacities, jointly and severally,

                    **Defendants.**

              **AMENDED
VERIFIED  COMPLAINT**

              **JURY DEMANDS AS TO
ALL COUNTS**

              **Index No. 05/112008**

-----------------------------------------------------------x

**STATE OF NEW YORK**   )

                   ) ss:

**COUNTY OF NEW YORK** )

          Plaintiff, **ALEXANDER DUNLOP**, by his attorney, **GINA M.
BONICA**, an associate of  Kurland & Associates, P.C., having offices at 304 Park
Avenue South, Suite 206, New York, New York, 10010, complaining of Defendants,
alleges as follows:

1

## NATURE OF ACTION

Plaintiff brings this action against Defendants, **THE CITY OF NEW YORK**, a municipal entity **MICHAEL BLOOMBERG**, Mayor of the **CITY OF NEW YORK**, **RAYMOND KELLY**, Police Commissioner of the **CITY OF NEW YORK**, **JOSEPH ESPOSITO**, Chief of the Department, New York City Police Department, **THOMAS GRAHAM** , Commanding Officer of the Disorder Control Unit of the New York City Police Department, **JOHN J. COLGAN**, Deputy Chief and Commanding Officer, Pier 57, New York City Police Department, **NEW YORK CITY DEPARTMENT OF CORRECTION, THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, NEW YORK DISTRICT ATTORNEY ROBERT MORGENTHAU, POLICE OFFICER MAYA GOMEZ**, shield number 27230, **POLICE OFFICER JOHN DOE's 1-3**, and the **HUDSON RIVER PARK TRUST**, (hereinafter, "Defendants") for malicious prosecution, assault and battery, false arrest, false imprisonment,  negligent infliction of emotional distress, intentional infliction of emotional distress, cruel and unusual conditions of confinement, conspiracy, and violations of civil rights under 42 USC § 1983.

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the Plaintiff, **ALEXANDER DUNLOP**, (hereinafter "**MR. DUNLOP**") seeks relief for various violations including but not limited to negligence, false arrest, excessive force, and malicious prosecution.  In addition, Plaintiff alleges that he was subjected to (1) excessively and unreasonably

prolonged, unnecessary and punitive detention, (2) excessive, unnecessary, malicious and punitive conditions of confinement that were cruel and unusual and shocking to the conscience and, (3) unlawful arrest without probable cause. Defendants' violations, were committed under color of state law, and deprived the Plaintiff of the rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2.     Defendants in this action, **THE CITY OF NEW YORK**, a municipal entity, **MICHAEL BLOOMBERG**, Mayor of the **CITY OF NEW YORK, RAYMOND KELLY**, New York City Police Commissioner; **JOSEPH  ESPOSITO**, Chief of the New York Police Department; **JOHN J. COLGAN**, Deputy Chief, New York City Police Department; **GOMEZ**, Shield number 27230, New York City Police Officers **JOHN AND JANE DOE** acting individually and in their official capacities, jointly and severally, maliciously and intentionally implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs that caused the **MR. DUNLOP** to be arbitrarily arrested without probable cause in the vicinity of a protest around the time of the Republican National Convention (RNC), that instituted a system of preventive detention to punish **MR. DUNLOP**, a lawful peaceful citizen and other peaceful and lawful citizens for being on the street with a bicycle during that protest, and subjected **MR. DUNLOP** to intolerable, cruel and inhumane conditions, including but not limited to denying him access to legal counsel for an inordinate and unreasonable amount of time.

3.     Defendants **CITY OF NEW YORK, OFFICER GOMEZ, OFFICER JOHN**

3

DOE's 1-3, the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE**, and **DISTRICT ATTORNEY MORGANTHAU** conspired to maliciously and intentionally prosecute **MR. DUNLOP** for offenses for which no probable cause existed and maliciously and intentionally altered evidence so as to hide the truth of **MR. DUNLOP**'s innocence from the Court.

## VENUE

4.    Venue is proper in the State Supreme Court, County of New York pursuant to CPLR § 504(3).

## JURY DEMAND

5.    **MR. DUNLOP** demands a trial by jury in this action on each and every one of his damage claims.

## PARTIES

6.    **MR. DUNLOP** is a New York County resident residing at 394 East 8th Street, Apartment 2B, New York, NY 10009.

7.    Defendant **CITY OF NEW YORK** is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and corrections department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. **CITY OF NEW YORK** assumes the risks incidental to the maintenance of a police and corrections force and the employment of police officers and corrections officers.

8.    Defendant **MICHAEL BLOOMBERG** is and was, at all times relevant herein, the Mayor of **THE CITY OF NEW YORK** and the chief policy making official for the City and its departments, including the New York City Police Department (hereinafter,

4

the "NYPD") and is responsible, in whole and/or in part, for the creation, implementation. promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

9.    Defendant **RAYMOND KELLY** is and was at all times relevant herein, the Police Commissioner for the **CITY OF NEW YORK**, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

10.    Defendant **JOSEPH ESPOSITO** is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

11.    Defendant **THOMAS GRAHAM** was the Commanding Officer of the Disorder Control Unit of the NYPD at the time of the offences complained herein and he is responsible, in whole and/or in part, for the creation, implementation, promulgation, and enforcement of the policies, practices, and/or customs complained of herein. He is sued individually and in his official capacity.

12.    Defendant **JOHN J. COLGAN**, is a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and as such was responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

13.    Defendants, **POLICE OFFICER MAYA GOMEZ**, shield number 27230

(hereinafter, "GOMEZ"). JOHN DOE's 1-3 (hereinafter, "Does") are NYPD Command and Police Officers involved in the arrest of MR. DUNLOP and all of the actions and conduct associated therewith, including, but not limited to the use of force, the institution and approval of criminal charges, the malicious and intentional prosecution of MR. DUNLOP, the abuse of criminal process, the cruel and inhumane conditions to which MR. DUNLOP was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

14.    Defendants BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN, GRAHAM, GOMEZ, and DOE's are employees and/or agents of the CITY OF NEW YORK. They include the individuals who directed and/or authorized the use of unreasonable and excessive force, unreasonable arrests and detentions and/or who actually arrested MR. DUNLOP, without probable cause, and who maliciously and intentionally implemented the policies, practices and procedures to unreasonably detain MR. DUNLOP.

15.    Defendant, NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE is a municipal entity created and authorized under the laws of the State of New York and has the responsibility and authority to investigate and prosecute crimes in New York County.

16.    Defendant, District Attorney ROBERT MORGANTHAU at all times relevant herein, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs related to the investigation and prosecution complained of herein. He is sued in both his individual and official capacities.

17.    Defendant, HUDSON RIVER PARK TRUST, a joint New York State and New

6

York City organization whose mission is to design, build and operate a five-mile park from Battery Park to 59th Street is and at all times herein was the owner of Chelsea Piers and consequently Pier 57. the place of **MR. DUNLOP**'s confinement.

18.     . That at all times herein. Defendants caused **MR. DUNLOP** damages within New York County, New York State.

19.     At all times relevant herein, Defendants **BLOOMBERG, KELLY, ESPOSITO, COLGAN, GRAHAM, GOMEZ,** and **DOE**'s, have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the **CITY OF NEW YORK** and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the **CITY OF NEW YORK** and/or the NYPD with the power and authority vested in them as officers, agents and employees of the **CITY OF NEW YORK** and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the **CITY OF NEW YORK** and/or the NYPD.

20.     At all times relevant herein, Defendants **BLOOMBERG, KELLY, ESPOSITO, COLGAN, GOMEZ,** and **DOE**'s have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

21.     The cause of action and injuries claimed herein arises out of Defendants' actions in this state.

### STATEMENT OF FACTS

22.     On or about August 27, 2004, around 8:30 P.M., **MR. DUNLOP** left his home on

Eighth Street, New York, NY, took his bicycle and headed toward a restaurant located on Second Avenue where he was meeting friends for dinner.

23.    At or around 8:45 pm, **MR. DUNLOP** arrived at Second Avenue and observed people milling about and numerous members of the NYPD (hereinafter, "NYPD"), some who were wearing helmets and/or holding their batons in their hands extended out or in front of them.

24.    **MR. DUNLOP** also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

25.    **MR. DUNLOP**, unsure why the police were arresting these people, became concerned. He decided to find an alternative route to the restaurant. Looking to leave the area, **MR. DUNLOP** observed a police barricade that had formed on Ninth Street. He got off his bike and walked across the street heading toward the intersection of Tenth Street on Second Avenue. At this point he approached a line of police officers to ask them what was happening and how he might leave the scene.

26.    The officers responded that they were unsure of what was transpiring, as they had just arrived on the scene. **MR. DUNLOP** turned to ask another officer whose name and shield he did not obtain, (hereinafter, "**OFFICER JOHN DOE 1**"), for instructions on exiting the area. **OFFICER JOHN DOE 1** instructed **MR. DUNLOP** to head south along Second Avenue toward the blockade he had already observed.

27.    **MR. DUNLOP** complied with the instruction and walked toward the blockade. When he arrived there **OFFICER JOHN DOE 1** approached **MR. DUNLOP**. **MR. DUNLOP** again asked **OFFICER JOHN DOE 1** how to leave. **OFFICER JOHN DOE 1** gripped **MR. DUNLOP** by the arm and told **MR. DUNLOP** that he was under

8

arrest.

28.    Immediately, several officers in riot gear rushed at **MR. DUNLOP**, grabbed him by the neck and pushed him down while twisting his arms behind him, causing substantial pain.

29.    All attempts by **MR. DUNLOP** to ascertain the reason for arrest were ignored by members of the NYPD.    At various times, the NYPD officers subjected **MR. DUNLOP** to snide, inappropriate, malicious and crude remarks.

30.    **MR. DUNLOP**'s bicycle was forcefully taken from him and thrown in a pile of bicycles that was in the center of Second Avenue and Tenth Street.

31.    **MR. DUNLOP** then observed another member of the NYPD, (hereinafter, "**OFFICER JOHN DOE 2**"), state to a female officer whose name, shield and command he later learned to be **POLICE OFFICER MAYA GOMEZ**, Shield number 27230, of the Patrol Borough of Manhattan North Task Force, say, "This is your arrest."

32.    When **OFFICER GOMEZ** was pointed out to **MR. DUNLOP**, he observed **OFFICER GOMEZ** watching a group of individuals already under arrest; nowhere near the vicinity of the place **MR. DUNLOP** was actually placed under arrest.

33.    **MR. DUNLOP** was then taken in flexi cuffs to a police vehicle and placed inside. He was confined in the car, with the windows closed for more than one and a half hours in the heat without water. **MR. DUNLOP** began to sweat profusely and he began to feel feverish and clammy.

34.    While waiting in the police car, the flexi cuffs began to cut into his skin. **MR. DUNLOP** then asked the NYPD driver, (hereinafter, "**OFFICER JOHN DOE 3**") to loosen his flexi cuffs. **OFFICER JOHN DOE 3** instead maliciously and intentionally

tightened the cuffs even more. causing more pain, discomfort, swelling, bleeding, and visible lacerations to both wrists.

35.    During the RNC. Defendants **CITY OF NEW YORK, BLOOMBERG, KELLY. ESPOSITO. GRAHAM** and **COLGAN** implemented a policy, practice or custom of detaining those arrested on August 27, 2004 in the vicinity of the RNC protest, without justification, for an unnecessary and prolonged period of time in unhealthy and dangerous conditions.  In particular, Defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that **MR. DUNLOP** was held in custody following his unlawful arrest.  These acts included, but are not limited to, using Pier 57 as an intermediate holding facility where no finger-printing equipment was placed, and requiring all arrestees, including the Plaintiff, to be finger-printed even though they were charged with minor offenses for which fingerprinting is unnecessary.

36.    Instead of using existing resources, such as the Brooklyn Hose of Detention, Central Booking or the numerous precincts throughout the City as the reception point for **MR. DUNLOP** and others arrested during the relevant period – including the at least twenty (20) precincts in Manhattan, all equipped with arrest processing equipment, Defendants deliberately devised a plan that was intended to unreasonably lengthen the stay in custody of anyone arrested during the RNC, including **MR. DUNLOP**, and to intentionally make the terms of confinement as difficult, intimidating and unsafe as they thought possible.  Pier 57 lacked the proper equipment necessary to process the arrestees, resulting in hours of "dead time," thereby further intentionally and maliciously delaying the processing of the arrestees.

37.    MR. DUNLOP was taken in the police vehicle to a holding facility at Pier 57 and placed in a makeshift cell with approximately one hundred other individuals. Once inside, MR. DUNLOP observed multiple holding cells inside Pier 57 constructed with chain-link fence topped with razor wire. Upon arrival at Pier 57, MR. DUNLOP was searched, had his property confiscated, and was placed in one of the holding cells.

38.    Upon information and belief, numerous environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot and chemicals. These conditions still existed on August 27, 2004.

39.    In addition, there was a chemical-like smell that emanated throughout the facility that caused MR. DUNLOP to feel ill during his detention.

40.    There was inadequate seating to accommodate all the people in the cell and therefore, MR. DUNLOP stood for hours through the night to avoid sitting on the dirty and grease covered floor. There were no beds or cots, no blankets and no pillows in the cell, making it impossible for MR. DUNLOP to sleep or even lie down.

41.    MR. DUNLOP began to feel ill. His clothes were drenched with sweat from being confined in the police vehicle.

42.    During his entire stay at Pier 57, MR. DUNLOP was only given one box of cereal to eat with his hands that were soiled from the grease, chemicals and dirt.

43.    MR. DUNLOP was unable to ascertain what was happening or why he had been arrested. MR. DUNLOP asked a member of the NYPD: "What is happening?" to which the Officer responded, "You have the right to shut the fuck up. I suggest you exercise that right."

11

44.    MR. DUNLOP remained at Pier 57 until the next morning when he was transferred to 100 Centre Street, New York, NY in a New York City Department of Corrections Bus.

.45.    Upon arriving at 100 Centre Street, **MR. DUNLOP** was searched, fingerprinted and placed in another cell at 100 Centre Street. When **MR. DUNLOP** attempted to talk to various members of the NYPD and the Department of Corrections to ascertain his status and when he would be able to see a lawyer, he was told that he was a "whiney kid."

46.    On August 28, 2004, **MR. DUNLOP** was not brought to arraignment part until after 6:30 in the evening, where he was finally permitted to meet with a lawyer.

47.    Despite the fact that there was no probable cause to arrest **MR. DUNLOP**, he was maliciously and intentionally charged and prosecuted under New York City docket 2004NY063485 by Defendant, the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit and Resisting Arrest.

48.    Assistant District Attorney Willa Concannon (hereinafter, "ADA Concannon"), assigned to prosecute **MR. DUNLOP**'s case under the supervision of Defendant, **DISTRICT ATTORNEY ROBERT MORGENTHAU**, pursuant to discovery requirements, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of **MR. DUNLOP**'s alleged unlawful conduct, (hereinafter, "First Video Tape").

49.    ADA Concannon in her capacity as an Assistant District Attorney for **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE**, represented that the First

Video Tape was a complete and unedited version of the events that transpired immediately preceding and including **MR. DUNLOP**'s arrest.

50.    Months into the case, a second videotape, (hereinafter, "Second Video Tape"), also recorded by the NYPD, was produced by the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** as evidence in a different criminal case.  Given access to the second videotape, **MR. DUNLOP**'s attorney examined the first videotape, compared both videotapes, and found that they were filmed by the same video camera.  When run simultaneously side-by-side it was obvious that the First Video Tape had been edited in two places---in both cases removing images showing **MR. DUNLOP** behaving peacefully, not obstructing traffic, parading or attempting to avoid arrest.

51.    Also cut from the First Video Tape was footage of **OFFICER JOHN DOE**, the actual officer who placed **MR. DUNLOP** under arrest.  In the Second Video Tape, **OFFICER GOMEZ** is nowhere to be seen.

## AS FOR THE FIRST CAUSE OF ACTION
## FALSE ARREST AND IMPRISONMENT

52.    **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to 51" above with the same force and effect as if herein set forth.

53.    Defendants implemented policies and procedures permitting the unlawful arrest of peaceful individuals, including **MR. DUNLOP**, because they were on the streets in Manhattan around the time of the RNC.

54.    Dunlop was peacefully and lawfully in the area at the time of his arrest and was not in violation of any applicable local, state or federal law.

55.    Defendant **OFFICER JOHN DOE 1** maliciously and intentionally arrested and confined Dunlop without probable cause to believe a crime was committed or without a warrant to do so.

56.    At all times relevant herein, Defendants acted with the intention of confining **MR. DUNLOP** within fixed boundaries, the acts directly or indirectly resulted in confinement, and Dunlop was conscious of the confinement.

57.    Defendants imposed by force or threats unlawful restraint upon his freedom of movement, including but not limited to arresting him, twisting his arms, handcuffing and tightening said cuffs in a manner intended to cause **MR. DUNLOP** pain.

58.    The Defendants maliciously and intentionally confined Dunlop for almost twenty-four hours for an offense for which no probable cause existed.

59.    All charges against **MR. DUNLOP** were dismissed as it was revealed that the Defendants had no probable cause to effectuate the arrest.

60.    As a direct and proximate result of the malicious conduct of Defendants, **MR. DUNLOP** suffered harm and damages including but not limited to the aforesaid damages.

61.    The conduct occurred while Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **JOHN DOE'S**, were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD.    Thus Defendant **CITY OF NEW YORK** is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

14

## AS FOR THE SECOND CAUSE OF ACTION
### ASSAULT

62.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "61" above with the same force and effect as if herein set forth.

63.    Defendants intentionally created and caused Dunlop to be in fear of physical harm, by restricting his freedom of movement by arresting him unlawfully, placing handcuffs on him against his will, for no known or lawful purpose other than to create in Dunlop an apprehension of immediate physical harm.

64.    The NYPD and the Department of Corrections made physical contact with **MR. DUNLOP**, including but not limited to seizing him and handcuffing him without legal justification.

65.    Defendants intentionally confined **MR. DUNLOP** in such a manner that caused him to become ill by placing him in a closed city vehicle without water or ventilation, and further confining him causing him to be in fear. .

66.    The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant **CITY OF NEW YORK** is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

15

## AS FOR THE THIRD CAUSE OF ACTION
## BATTERY

67.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "66" above with the same force and effect as if herein set forth.

68.    Without the consent of **MR. DUNLOP**, employees of the **CITY OF NEW YORK** intentionally, harmfully, and offensively touched **MR. DUNLOP** including but not limited to handcuffing him, grabbing him by the neck and arms, pushing him, and twisting **MR. DUNLOP**'s arms in a manner causing **MR. DUNLOP** substantial pain.

69.    The conduct of Defendants, police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FOURTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

70.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "69" above with the same force and effect as if herein set forth.

71.    Defendants improperly and/or knowingly commenced a criminal process against **MR. DUNLOP** without probable cause that terminated when Defendant dismissed the

charges. Defendants had actual malice in prosecuting **MR. DUNLOP** and as a result, **MR. DUNLOP** sustained injury.

72.    **MR. DUNLOP** was lawfully walking when he was arrested and later charged with several criminal offenses.

73.    **OFFICER GOMEZ** swore in the criminal complaint stating that she personally observed **MR. DUNLOP** committing the offenses charged.

74.    Defendants **GOMEZ, CITY OF NEW YORK, THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** submitted evidence, namely the corroborating affidavit and Video Tape 1 that they knew or should have known was false in an attempt to frame **MR. DUNLOP**.

75.    As a result of Defendant's conduct, **MR. DUNLOP** was unlawfully confined and prosecuted. **MR. DUNLOP** sustained physical and emotional damages, to which the full extent is not known.

76.    The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **DOE'S,** occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD.   Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.


## AS FOR THE FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

77.    MR. DUNLOP repeats and realleges and incorporates by reference the

allegations in paragraphs "1" to "76" above with the same force and effect as if herein set forth.

78.    Defendants continually negligently inflicted emotional distress on **MR. DUNLOP**.

79.    Defendants **CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO,** implemented policies, practices or customs of detaining individuals arrested at or in the vicinity of the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and dangerous. **MR. DUNLOP** was subjected to these policies and practices for being in the vicinity of the RNC.

80.    Defendants intentionally confined **MR. DUNLOP** for many hours in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, under conditions, which were cold, loud and uncomfortable.

81.    The floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances. The floors of the cages in Pier 57 were also covered in other dirt and grime.

82.    **MR. DUNLOP** was humiliated and embarrassed by NYPD and New York Department of Corrections personnel when he attempted to find out what was happening with his case and when he complained of the deplorable conditions.

83.    **MR. DUNLOP** was taunted and verbally abused by NYPD and New York Department of Corrections personnel who cursed and otherwise mistreated **MR. DUNLOP** without justification.

84.    In addition, **MR. DUNLOP** was subjected to excessive and unnecessary handcuffing, including the continued handcuffing and tightening of handcuffs to the point

18

of breaking the skin and even after he was lodged in the detention facility at Pier 57.

85.    Defendants have a duty to perform their professional services in such manner as not to inflict emotional distress on **MR. DUNLOP**.

86.    As a result of Defendants' negligent conduct, **MR. DUNLOP** has suffered and will continue to suffer physical pain, anguish, severe emotional trauma, embarrassment and humiliation, and to fear for his safety and life.

87.    The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD.   Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SIXTH CAUSE OF ACTION
## NEGLIGENCE

88.    **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in Paragraphs "1" to "87" above with the same force and effect as if herein set forth.

89.    Defendants owed a duty to supervise or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing of the charges without probable cause.

90.    Defendants owed a duty to act according to the ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of

MR. DUNLOP's injury.

91.    Defendants breached that duty by failing to act as an ordinary Police Officer, Police Commissioner, and supervisor would act, to wit by failing to perform his duties and by failing adequately to control and to supervise his officers.

92.    Defendant **DISTRICT ATTORNEY MORGENTHAU** owed a duty to act according to the ordinary care of a District Attorney, the intentional failure of which was the proximate cause of **MR. DUNLOP**'s injuries.

93.    Defendant breached that duty by failing to act as an ordinary District Attorney by intentionally failing to have adequate control and supervision over its employees who assisted in the wrongful and malicious prosecution of **MR. DUNLOP.**

94.    On information and belief, Defendants never obtained a Certificate of Occupancy for Pier 57 that would have permitted the holding of human beings therein.

95.    As a result of those breaches, which were the proximate cause of **MR. DUNLOP**'s injury, **MR. DUNLOP** suffered harm and damages.

96.    The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.

97.    The conduct of Defendants **MORGENTHAU**, and **JOHN ROE** occurred during the course and scope of their duties and functions as New York City agents and

employees of Defendants **CITY OF NEW YORK** and **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE**. Thus Defendant **CITY OF NEW YORK** is liable to MR. DUNLOP pursuant to the state common law doctrine of *respondeat superior*.

**AS FOR THE SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF 42 U.S.C § 1983 ARREST**

98.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in Paragraphs "1" to "97" above with the same force and effect as if herein set forth.

99.    At all times relevant herein, the conducts of all Defendants were subject to 42 U.S.C. § 1983.

100.    Acting under the color of law, Defendants worked a denial of **MR. DUNLOP**'s rights, privileges or immunities secured by the United States Constitution or by Federal law to wit.

> (a) by depriving **MR. DUNLOP** of his liberty without due process of law, by taking him into custody and holding him there against his will,

> (b) by making an unreasonable search and seizure of his property without due process of law,

> (c) by conspiring for the purpose of impeding and hindering the due course of justice, with the intent to deny **MR. DUNLOP** equal protection of law,

> (d) by refusing or neglecting to prevent such deprivations and denials to **MR. DUNLOP**, thereby depriving **MR. DUNLOP** of his rights, privileges and immunities as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

101.  Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** are liable under the doctrine of *respondeat superior.*

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 DETENTION AND CONFINEMENT

102.  MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "101" above with the same force and effect as if herein set forth.

103.  As a result of their concerted unlawful and malicious detention and confinement of **MR. DUNLOP,** Defendants deprived **MR. DUNLOP** of both his right to his liberty without due process of law and his right to equal protection of the laws, and due course of justice was impeded, in violation of the Fifth, Eighth and Fourteenth Amendments of the Constitution of the Unite States and 42 U.S.C. § 1983.

104.  Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** are liable under the doctrine of *respondeat superior.*

## AS FOR THE NINTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 REFUSING OR NEGLECTING TO PREVENT

105.  MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1"to "104" above with the same force and effect as if herein set forth.

106.  At all times relevant to this Complaint, Defendants **GOMEZ** and **DOES** were

acting under the direction and control of Defendants **BLOOMBERG, KELLY, GRASSO, GRAHAM, COLGAN** and NYPD.

107.  Acting under color of law and pursuant to official policy or custom **OFFICER GOMEZ**. and **JOHN DOE'S 1-3** and the NYPD knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants Police Officers in their duties to refrain from:

  (a) unlawfully and maliciously harassing **MR. DUNLOP** who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

  (b) unlawfully and maliciously arresting, imprisoning and prosecuting **MR. DUNLOP** who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

  (c) conspiring to violate the rights, privileges and immunities guaranteed to **MR. DUNLOP** by the Constitution and laws of the United States and the laws of the State of New York,

  (d) otherwise depriving **MR. DUNLOP** of his constitutional and statutory rights, privileges and immunities.

108.  Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** had knowledge or, had they diligently exercised their duties to instruct, supervise. control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants **GOMEZ** and **JOHN DOE'S** had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and

23

knowingly, recklessly, or with gross negligence failed or refused to do so.

109.   Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** are liable under the doctrine of *respondeat superior.*

110.   As a direct and proximate cause of the negligent and intentional acts of Defendants set forth in paragraphs above, **MR. DUNLOP** suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## AS FOR THE TENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C. § 1983 FOR CONSPIRACY

111.   **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "110" above with the same force and effect as if herein set forth.

112.   All Defendants (a) had an objective to be accomplished; (b) had an agreement on the object or course of action; (c) preformed one or more unlawful overt acts; and (d) caused **MR. DUNLOP** damages that were a direct result of those acts.

113.   In furtherance of their object, Defendants did two or more overt acts against **MR. DUNLOP**.

114.   Those unlawful overt acts include, but are not limited to the following: Defendants **BLOOMBERG, CITY OF NEW YORK, KELLY, ESPOSITO,** and the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** advised and strategized, practices or customs of detaining the individuals arrested at the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and

dangerous.

115.    Just before and during the RNC. Defendants implemented this policy, practice or custom, in an arbitrary and capricious manner, and in the absence of the existence of probable cause, to arrest entire groups of people who were lawfully engaged in protected First Amendment activity or were observing such activity, or were simply passing by at the time arrests were being made.

116.    Defendants **BLOOMBERG, CITY OF NEW YORK, KELLY,** and **ESPOSITO**, knew or should have known that **MR. DUNLOP** was held for many hours in a holding cell that lacked adequate means whereby to adequately sit, rest and/or sleep, under inhumane conditions.

117.    Defendants knew that their arrest policy surrounding the RNC was a refinement of the tactic employed recently by Defendants at other demonstrations which had recently taken place in the City, including, but not limited to, the February 15, 2003 anti-war march, *see Haas, et al., v. City of New York, et al.,* 03 Civ. 4915 (RWS), and the April 7, 2003 Carlyle Group protest, see *Larsen, et al., v. City of New York, et al.* 04 Civ. 665 (RWS), of using mass arrests to unlawfully suppress protected First Amendment conduct.

118.    Defendants **KELLY, ESPOSITO, GRAHAM,** and **COLGAN**, had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

119.    Upon information and belief, Defendants agreed that the object or course of

25

action was to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause, and maliciously charge and prosecute him with crimes.

120.    Defendants are liable under the doctrine of *respondeat superior*.

121.    As a direct result of Defendants' acts, Dunlop suffered harm and damages that are a direct result of those acts.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF DUNLOP requests relief as follows:

(a)    That this court assume jurisdiction for this matter;

(b)    Compensatory damages against Defendants jointly and severally for all causes of action; past and future, including, but not limited to pain and suffering, emotional distress, economic losses including lost wages and medical expenses, violation of rights and other losses and injuries, the full extent is still undetermined in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(c)    Punitive damages against the Defendants, jointly and severally for all causes of action in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(d)    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and the Court's inherent power;

(e)    Prejudgment interest as allowed by law;

(d)    Such other relief, as is just and proper under the circumstances.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

Dated:  November 18, 2005

Respectfully Submitted,

Gina M. Bonica, Esq.
KURLAND & ASSOCIATES, P.C.
304 Park Avenue South, Suite 206
New York, NY 10010
212.253.6911
Attorneys for Plaintiff

VERIFICATION

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK   )

ALEXANDER DUNLOP, being duly sworn says: I am the plaintiff in this matter.  I have read the foregoing verified Amended Complaint, and know the contents thereof, the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and so to those matters I believe it to be true.

Dated:  November 18, 2005

_____
ALEXANDER DUNLOP

Sworn to before me on the
18th day of November, 2005.

_____
Notary Public

GINA M. BONICA
Notary Public, State of New York
No. 02BO6120286
Qualified in Suffolk County
Commission Expires On December 20, 20 08

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF NEW YORK

ALEXANDER DUNLOP,

             Plaintiff,

    -against-

THE CITY OF NEW YORK, et al

             Defendants.

---

## AMENDED SUMMONS AND COMPLAINT

## JURY DEMANDS AS TO ALL COUNTS

---

### KURLAND & ASSOCIATES, P.C.

*Attorney for*    Plaintiff

*Office and Post Office Address, Telephone*
304 Park Avenue South, Suite 206
New York, New York 10010
TEL: (212) 253-6911

---

To

Attorney(s) for

Signature (Rule 130-1.1-a)

Print name beneath

---

Service of a copy of the within           is hereby admitted.

Dated,

Attorney(s) for

---

Please take notice

☐ NOTICE OF ENTRY

that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order         of which the within is a true copy will be presented for
settlement to the HON.         one of the judges
of the within named court, at
on         at         M

Dated,

         Yours, etc.

         KURLAND & ASSOCIATES, P.C.
         *Attorney for*

To

         *Office and Post Office Address*
         304 Park Avenue South, Suite 206
Attorney(s) for         New York, New York 10010