UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ALEXANDER DUNLOP,                                                    x

                    Plaintiff,

            vs.                                          06-CV-433 (KMK) (JCF)
                                                         ECF

THE CITY OF NEW YORK a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department,
THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ, shield number 27230,
POLICE OFFICER JOHN DOE's 1-3, and the
HUDSON RIVER PARK TRUST, in their individual
and official capacities, jointly and severally,

                    Defendant(s).
_____x


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REMAND OF IMPROPERLY REMOVED CASE AND FOR JUST COSTS AND EXPENSES, INCLUDING ATTORNEY'S FEES,INCURRED DUE TO THE IMPROPER REMOVAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

ALEXANDER DUNLOP,                              .        x

                    Plaintiff,

                                                       06-CV-433 (KMK) (JCF)
        vs.                                            ECF

THE CITY OF NEW YORK a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department,
THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ, shield number 27230,
POLICE OFFICER JOHN DOE's 1-3, and the
HUDSON RIVER PARK TRUST, in their individual
and official capacities, jointly and severally,

                    Defendant(s).
_____x

## I.    PRELIMINARY STATEMENT

        Plaintiff, Alexander Dunlop (hereinafter, "DUNLOP") by his attorneys, Kurland &

Associates, P.C., hereby moves pursuant to §§ 1441(c) and 1447(c) of Title 28 of the United

States Code, for an order of this Court directing:

        (1) that this case be remanded in full to that New York County Supreme Court, pursuant

to 28 U.S.C. § 1441(c), as the removal action was improperly brought under 28 U.S.C. §

1446 due to the fact that written consent was not submitted to the Court by all Defendants within 30 days of the service of the Plaintiff's Summons and Complaint; and

(2)     that this case be remanded in full to New York County Supreme Court, pursuant to 28 U.S.C. § 1441(c) as the entire matter is predominated by state law and this Court has the discretion to remand "all matters in which State law predominates" which, in the instant case, relates and refers to not only to the state law claims, but the *entire* case; or in the alternative, should this Court decline to remand the entire case to State court, that it remand each and every State law claim to the New York County Supreme Court, pursuant to 28 U.S.C. § 1441(c).

(3)     that the DEFENDANTS pay to DUNLOP his just costs, and expenses, including attorney's fees, incurred as a result of the improper removal of this case, and

(4) that this Court grant such other and further relief as may be just and proper.

## II.     ARGUMENT

### A.     REMOVAL WAS IMPROPER AS ALL DEFENDANTS DID NOT SUBMIT WRITTEN CONSENT TO REMOVAL

The removal action was improperly brought under 28 U.S.C. §§ 1441 and 1446 and should be remanded pursuant to 28 U.S.C. § 1447(c).  The removal statute has consistently been interpreted to require that all defendants consent to removal within the thirty day period. *See* Bradford v. Harding, 284 F.2d 307, 309 (2d Cir.1960) (*dicta* ); Schepis v. Local Union No. 17, 989 F.Supp. 511, 513 n. 1 (S.D.N.Y.1998); Still v. Debuono, 927 F.Supp. 125, 129 (S.D.N.Y.1996); Givens v. City of New York, 96 Civ. 3500, 1996 WL 596517 at *1 (S.D.N.Y.

Oct. 17, 1996) (§ 1446(a)); Forum Ins. Co. v. Texaroma Crude and Gas Co., 92 Civ. 8602, 1993 WL 228023, at *2 (S.D.N.Y. June 22, 1993). See also Chicago, Rock Island & Pacific Ry. Co. v. Martin, 178 U.S. 245, 248 (1900), Berrios v. Our Lady of Mercy Medical Center, 20 A.D. 2d 361, 799 N.Y.S. 2d 452 (S.D.N.Y. Feb. 19, 1999)). This requirement is known as the "rule of unanimity." Id,; see also Allstate Ins. Co. v. Zhigun, 03 Civ. 10302, 2004 WL 187147, at *2 (Jan. 30, 2004); Ell v. S.E.T. Landscape Design, Inc., 34 F.Supp.2d 188, 193 (S.D.N.Y.1999) (noting "widespread agreement" to the rule of unanimity "among the district courts, including those in the Second Circuit"). The "rule of unanimity 'advances the congressional purpose of giving deference to a plaintiff's choice of a state forum and resolving doubts against removal in favor of remand." ' Miller v. First Security Investments, 30 F.Supp.2d 347, 350 (E.D.N.Y.1998).

This requirement, known as the "rule of unanimity," mandates that all defendants in a given action consent to removal within 30 days of the service of the plaintiff's summons or complaint. See Smith v. Kinkead, 2004 WL 728542 at * 2 (S.D.N.Y. Apr.5, 2004); "Consent has been interpreted by a 'majority of courts ... to mean that each defendant must submit *written consent* unambiguously agreeing to removal." Payne v. Overhead Door Corp., 172 F.Supp.2d 475, 477 (S.D.N.Y.2001) (emphasis added) (internal citation omitted). See Codapro Corp. v. Wilson, 997 F.Supp. 322, 325 (E.D.N.Y.1998) ("Specifically, [e]ach [defendant] must independently and unambiguously file notice of [ ] consent and [ ] intent to join in the removal.") (internal citation omitted).

In the case at bar, the Notice of Removal states ". . . defendant The City of New York hereby removes this civil action. . . " and gives no proof that any other Defendant gave written consent to the removal. (See Notice of Removal p. 1, para. 1, annexed hereto as Exhibit A.) Defendant City of New York will likely argue that they have the consent of all the defendants, as

3

stated in the City of New York's Notice of Removal (Notice of Removal, p. 2, para. 4). But that hardly constitutes unambiguous evidence, much less written consent, of all of the Defendants' consent to the removal.

Moreover, consent communicated among the defendants is insufficient as each defendant must notify the Court of its consent prior to the expiration of the thirty-day period for the removal petition to be timely. *See, e.g.,* Miller v. First Sec. Investments, Inc., 30 F.Supp.2d 347 at 351 (E.D.N.Y., 1998); Town of Moreau v. New York State Dep't of Envtl. Conservation, 96-CV-983, 1997 WL 243258 at *4-5 (N.D.N.Y. May 5, 1997); *See* Codapro Corp. v. Wilson, 997 F.Supp. 324-26, 32 (E.D.N.Y.1998). As the Second Circuit has held, requiring written consent "serves the policy of insuring the unanimity necessary for removal ... [and] is consistent with the notion that filing requirements are strictly construed and enforced in favor of remand." Miller v. First Sec. Investments, Inc., 30 F.Supp.2d 347 at 351 (E.D.N.Y., 1998). Consequently, Defendant's removal action would appear to lack the required unanimity of consent by all Defendants necessary to bring this action in federal court.

Therefore, this Court should remand the matter in its entirety as all Defendants did not submit written and unambiguous proof of consented to this removal.

### B.    28 U.S.C. § 1441 (C) ALLOWS FOR REMAND OF THE ENTIRE CASE WHEN STATE CLAIMS PREDOMINATE

Although section 1441(c) relates to the procedure for removal of a case, it simultaneously provides for the remand of not only claims and causes of action, but an entire case. As amended in 1990, Title 28, United States Code, Section 1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more

4

> otherwise nonremovable claims or causes of action, the entire case may be
> removed and the district court may determine all issues therein, *or, in its*
> *discretion, may remand all matters in which State law predominates.*

28 U.S.C. 1441(c) (emphasis added).

In his dissent from the opinion and order in <u>In re City of Mobile</u>, 75 F 3d 603 (1996),

Circuit Judge Birch examines the legislative history and statutory interpretation and application

of the 1990 amendment to 28 U.S.C. § 1441(c).  Judge Birch illuminates that it is fully within

the Court's discretion to remand the entire case and discusses the controversy and confusion

surrounding section 1441(c), including the Federal Courts Study Committee's recommendation

to Congress to repeal section 1441(c), and Congress' intent and attempt, through the 1990

amendment, to restrict the removal jurisdiction of the federal courts. See also <u>Battle v. Park</u>

<u>Geriatric Village Nursing Facility</u>, 948 F. Supp. 33, 35 (E.D. Mich. 1996) (Gadola, J.),

<u>McKinney v. City of Grosse Pointe Park</u>, 72 F. Supp. 2d 788, 790 (E.D. Mich. 1999) (Gadola,

J.), <u>Miller v. John Sexton Sand & Gravel Corporation</u>, 1996 W.L. 909594 citing <u>Alexander v.</u>

<u>Goldome Credit Corp.</u>, 772 F. Supp. 1217, 1223-25 (M.D. Ala. 1991) (construing § 1441(c) as

authority for remand of an entire action is "consistent with Congress' intent to restrict removal

jurisdiction").

"The 1990 amendment substituted the words 'may remand all matters in which State law

predominates' for the former words 'may remand all matters not otherwise within its original

jurisdiction,'" thus implying that the district court has broader discretion and authority to remand

an entire case. <u>Miller v. John Sexton Sand & Gravel Corporation</u>, 1996 W.L. 909594. The

commentary on the 1990 revision of section 1441 (c) states:

> Note that the word used by the statute is still "matters".  The federal court can
> remand all "matters" in which state law predominates.  If matters is construed to
> include all "claims", then a combination of claims in which a federal claim is one

5

but in which state law is found to "predominate" may justify a remand of the whole case, with the federal claim included.

28 U.S.C.A. § 1441 Commentary (West 1994) as cited by <u>Miller v. John Sexton Sand & Gravel Corporation</u>, 1996 W.L. 909594.

It is recognized that the amended statute changed the provision for remand since it authorizes the court to "remand *all matters* in which State law predominates" (emphasis added), which has been interpreted by numerous courts to mean that the *entire* case, including federal claims, can be remanded to state court when state law predominates . See <u>In re Mobile</u>, 75 F 3d 605 (1996) (Birch, Circuit Judge, dissenting), and cases there cited, <u>McKinney v. City of Grosse Pointe Park</u>, 72 F. Supp. 2d 788, 790 (E.D. Mich. 1999) (Gadola, J.), <u>Moralez v. Meat Cutters Local 539</u>, 788 F. Supp. 368, 370, and cases there cited.

The 1990 amendment to 28 U.S.C. 1441(c) now authorized the District Court to remand all matters in which the state law dominates and is not *required* "to retain the federal claim as it was in the previous version of the statute. See <u>Johnson v. US</u>, 225 U.S. 405, 415 (1912) (determining that a legislative change in statutory language constitutes evidence of a change in the statutory purpose)." <u>In re Mobile</u>, 75 F 3d 605 (1996) (Birch, Circuit Judge, dissenting). There is little to gain in the way of convenience or judicial economy in having a federal court hear a case consisting of State law claims.

In the case at bar, State law predominates the entire case for several reasons including but limited to sheer number of State claims, the fact that all but one State claim have no parallel Federal claim plead in the Amended Complaint, and the main crux of this matter is a claim for malicious prosecution.

The majority of claims for relief in this care are based on non-removable state law. Six of the ten causes of action are based exclusively in state law and five of the six causes of action

have no parallel federal cause of action.[1] The state law claims in this action in fact form the crux of the matter, in particular the claim for malicious prosecution in that certain Defendants have tampered with and falsified evidence for the specific purpose of unlawfully and maliciously prosecuting the Plaintiff. Plaintiff suffered numerous wrongs and deprivation of rights as a result of the various illegal acts performed by a combination of different Defendants. In examining the nature of the claims as set forth in Plaintiff's Amended Complaint, particularly that of malicious prosecution – a distinctly separate claim from the Federal claims.

The Defendant the City of New York will likely argue that these claims all arise from related events, and therefore the matters in which state law predominates cannot be remanded to State court. However, this argument fails to appreciate the importance of a separate event, namely the malicious prosecution claim involves an individual or individuals who on a separate day, at a separate time, being different actors are alleged to have falsified evidence- namely altering a videotape which was part of the prosecutions "evidence" of the Plaintiff's illegal conduct which was later revealed to be an erroneous record of the events that transpired when a second tape showing the Plaintiff acting in a peaceful and law abiding manner when arrested surfaced. This is clearly a separate an independent event from the false arrests and imprisonments that occurred on August 27, 2004.[2]

It Plaintiff's belief that the New York State Court is a more appropriate venue for bringing a malicious prosecution and falsification of evidence action against a District Attorney and the City of New York. Clearly, this Court does not have the same jurisdiction, as the State court does on an individual's claim of misconduct against state and city officials. *See* Imbler v. Pachtman 424 U.S. 409 (1976). To force the Plaintiff to litigate his claim in federal court would

---

[1] The State claims consist of false arrest and imprisonment, assault, battery, malicious prosecution, negligent infliction of emotional distress and negligence and only false arrest and imprisonment have a parallel Federal claim.
[2] Plaintiffs Amended Complaint annexed hereto as Exhibit B.

substantially prejudice his right to access to the courts to redress individual grievances. There can be no denial that the State court can determine, without any constitutional impediment, the extent that the State and City are liable for what happened to the Plaintiff.

The federal law claims are tied to only one state law claim and thus, a Federal court should find substantial predominance when it appears that ". . . a state claim constitutes the real body of a case, to which the federal claim is only an appendage." United Mine Workers v. Gibbs, 383 U.S. 715, 727 (1966).

The core of the instant matter is state claims and state defendants. To deny the Plaintiff his State court remedy would substantially prejudice his case and his rights. We ask that the entire case be remanded to state court, or in the alternative, that the State causes of action be remanded to State Court.

## CONCLUSION

For above stated procedural and substantive reasons, this Court should grant Plaintiff's Motion to Remand and return the case to state court, grant the Plaintiff his costs, and expenses, including attorney's fees, incurred as a result of the improper removal of this case and order such other and further relief as may be just and proper.

Dated:     March 31, 2006
           New York, New York

8

Respectfully Submitted,

KURLAND & ASSOCIATES, P.C.

Gina M. Bonica, Esq. (GB-6615)
304 Park Avenue South, Suite 206
New York, NY 10010
212.253.6911(P)
212.614.2532 (F)
*Attorneys for Plaintiff*

TO:    James Mirro, Esq.
       Special Assistant Corporation Counsel

9

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

ALEXANDER DUNLOP, et al.
                    Plaintiff,

            -versus-                                          *CIVIL ACTION*
                                                             *NO.*_____

THE CITY OF NEW YORK, a municipal entity,
MICHAEL BLOOMBERG, Mayor of the City
of New York, RAYMOND KELLY, Police Commissioner
of the City of New York, JOSEPH ESPOSITO, Chief
of the Department, New York City Police Department,
THOMAS GRAHAM, Commanding Officer of the Disorder
Control Unit of the New York City Police Department,
JOHN J. COLGAN, Deputy Chief and Commanding
Officer, Pier 57, New York City Police Department,
THE NEW YORK COUNTY DISTRICT ATTORNEY'S
OFFICE, NEW YORK DISTRICT ATTORNEY ROBERT
MORGENTHAU, POLICE OFFICER MAYA GOMEZ,
shield number 27230, POLICE OFFICER JOHN DOES 1-3,
and the HUDSON RIVER PARK TRUST, in their individual
and official capacities, jointly and severally,

                    Defendants.

-------------------------------------------------------------------------- x

## NOTICE OF REMOVAL

            PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446,

defendant The City of New York ("Defendant") hereby removes this civil action from the

Supreme Court of the State of New York, County of New York, to the United States District

Court for the Southern District of New York. In support, Defendant would show as follows:

            1.      On December 16, 2005, plaintiff Alexander Dunlop filed an "Amended

Summons" and "Amended Verified Complaint" in the Supreme Court of the State of New York,

County of New York, with Index No. 05/112008. A copy of those papers is attached hereto as

Exhibit "A."

2.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiff alleges a variety of claims arising under the Constitution of the United States and under 42 U.S.C. § 1983 (including Counts numbered 7 through 10). Defendant hereby removes this action pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446.

3.    Defendant first received notice of this action by receipt of service of process on December 22, 2005 and was the first defendant of those named in this action to have received notice. Accordingly, this action is timely removed pursuant to Section 1446. Defendant has not yet answered and there have been no proceedings in the state court.

4.    All defendants have consented to the removal of this action and undersigned counsel have caused copies of this Notice of Removal and other papers attached hereto to be filed with the clerk of court in the Supreme Court, County of New York, and have served the same on counsel for all parties.

5.    This action is related to the action captioned <u>MacNamara, et al. v. The City of New York, et al.</u>, 04 CV 9216 (KMK)(JCF), and to the series of related actions arising out of arrests and detentions around the time of the Republican National Convention, which have been consolidated by Judge Kenneth M. Karas under the caption <u>Schiller, et al. v. The City of New York, et al.</u>, 04 CV 7922 (KMK)(JCF). A copy of Judge Karas' orders consolidating these cases is attached hereto as Exhibit "B." Undersigned counsel requests that this action be referred to Judge Karas as a related action and attaches hereto as Exhibit "C" a separate statement of case relatedness.

6.    The filing fee of $250 is attached hereto by check.

WHEREFORE, Defendant The City of New York requests that this Notice of Removal be filed, that this action be removed and proceed in this Court as an action related to

the MacNamara and Schiller actions, and that no further proceedings be conducted in this action in the Supreme Court of the County of New York.

DATED:     New York, New York
           January 19, 2006

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the City of New York
                              *For Defendant The City of New York*

                       By:  _____
                              James Mirro (JM 2265)
                              Special Assistant Corporation Counsel
                              Special Federal Litigation
                              100 Church Street, Room 3-137
                              New York, New York 10007
                              212.788.8026 (ph)
                              212.788.9776 (fax)

TO:    Gina M. Bonica, Esq.
       KURLAND & ASSOCIATES, P.C.
       304 Park Avenue South, Suite 206
       New York, New York 10010
       212.253.6911 (ph)
       Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that, on today's date, a true and correct copy

of the foregoing *NOTICE OF REMOVAL* was sent via first class mail, postage prepaid, to

counsel of record at the address listed below.

JAMES MIRRO

Dated:      January 19, 2006

TO:     Gina M. Bonica, Esq.
        KURLAND & ASSOCIATES, P.C.
        304 Park Avenue South, Suite 206
        New York, New York 10010
        212.253.6911 (ph)
        Attorneys for Plaintiff

Exhibit B

STATE OF NEW YORK: SUPREME COURT
COUNTY OF NEW YORK
---------------------------------------------------------------x
ALEXANDER DUNLOP,

                Plaintiff,               **AMENDED SUMMONS**

                                  **Index No. 05/112008**

     -against-

**THE CITY OF NEW YORK**, a municipal entity
**MICHAEL BLOOMBERG**, Mayor of the City of
New York, **RAYMOND KELLY**, Police
Commissioner of the City of New York, **JOSEPH
ESPOSITO**, Chief of the Department, New York
City Police Department, **THOMAS GRAHAM**,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, **JOHN J.
COLGAN**, Deputy Chief andCommanding Officer,
Pier 57, New York City Police Department,
**THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ,** shield number 27230,
**POLICE OFFICER JOHN DOE's 1-3**, and the
**HUDSON RIVER PARK TRUST**, in their individual
and official capacities, jointly and severally,

NEW YORK
COUNTY CLERK'S OFFICE

DEC 1 6 2005

NOT COMPARED
WITH COPY FILED

                         **Defendants.**
---------------------------------------------------------------x

TO THE ABOVE NAMED DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the complaint in the above
action and to serve a copy of your answer on the plaintiffs attorney within twenty (20)
days after the service of this summons, exclusive of the day of service, or within thirty
(30) days after completion of service is made in any other manner than by personal
delivery within the State. The United States of America, if designated as a defendant in
this action, may answer or appear within sixty (60) days of service hereof. In case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint.

     **NEW YORK COUNTY** is designated as the place of trial. The basis of venue is
where the cause of action arose.

Dated:  November 18, 2005

Gina M. Bonica, Esq.
KURLAND & ASSOCIATES P.C.
Attorneys for Plaintiff
304 Park Avenue South, Suite 207
New York, New York 10010
(212) 253.6911

STATE OF NEW YORK: SUPREME COURT
COUNTY OF NEW YORK
---------------------------------------------------------------x
**ALEXANDER DUNLOP**,

                              Plaintiff,                    **AMENDED**
                                                           **VERIFIED  COMPLAINT**

           -against-                                       **JURY DEMANDS AS TO**
                                                           **ALL COUNTS**

                                                           **Index No. 05/112008**

**THE CITY OF NEW YORK**, a municipal entity
**MICHAEL BLOOMBERG**, Mayor of the City of
New York, **RAYMOND KELLY**, Police
Commissioner of the City of New York, **JOSEPH
ESPOSITO**, Chief of the Department, New York
City Police Department, **THOMAS GRAHAM** ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, **JOHN J.
COLGAN**, Deputy Chief andCommanding Officer,
Pier 57, New York City Police Department,
**THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ**, shield number 27230,
**POLICE OFFICER JOHN DOE's 1-3**, and the
**HUDSON RIVER PARK TRUST**, in their individual
and official capacities, jointly and severally,

                              **Defendants.**

---------------------------------------------------------------x
**STATE OF NEW YORK    )**
                                      ) ss:
**COUNTY OF NEW YORK )**


            Plaintiff, **ALEXANDER  DUNLOP**, by  his  attorney, **GINA  M.**

**BONICA**, an associate of   Kurland & Associates, P.C., having offices at 304 Park

Avenue South, Suite 206, New York, New York, 10010, complaining of Defendants,

alleges as follows:

                                      1

## NATURE OF ACTION

Plaintiff brings this action against Defendants, **THE CITY OF NEW YORK**, a municipal entity **MICHAEL BLOOMBERG**, Mayor of the **CITY OF NEW YORK**, **RAYMOND KELLY**, Police Commissioner of the **CITY OF NEW YORK**, **JOSEPH ESPOSITO**, Chief of the Department, New York City Police Department, **THOMAS GRAHAM** , Commanding Officer of the Disorder Control Unit of the New York City Police Department, **JOHN J. COLGAN**, Deputy Chief and Commanding Officer, Pier 57, New York City Police Department, **NEW YORK CITY DEPARTMENT OF CORRECTION, THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, NEW YORK DISTRICT ATTORNEY ROBERT MORGENTHAU, POLICE OFFICER MAYA GOMEZ**, shield number 27230, **POLICE OFFICER JOHN DOE's 1-3**, and the **HUDSON RIVER PARK TRUST**, (hereinafter, "Defendants") for malicious prosecution, assault and battery, false arrest, false imprisonment,  negligent infliction of emotional distress, intentional infliction of emotional distress, cruel and unusual conditions of confinement, conspiracy, and violations of civil rights under 42 USC § 1983.

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the Plaintiff, **ALEXANDER DUNLOP**, (hereinafter "**MR. DUNLOP**") seeks relief for various violations including but not limited to negligence, false arrest, excessive force, and malicious prosecution. . In addition, Plaintiff alleges that he was subjected to (1) excessively and unreasonably

prolonged, unnecessary and punitive detention, (2) excessive, unnecessary, malicious and punitive conditions of confinement that were cruel and unusual and shocking to the conscience and, (3) unlawful arrest without probable cause. Defendants' violations, were committed under color of state law, and deprived the Plaintiff of the rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2.     Defendants in this action, **THE CITY OF NEW YORK**, a municipal entity, **MICHAEL BLOOMBERG**, Mayor of the **CITY OF NEW YORK, RAYMOND KELLY**, New York City Police Commissioner; **JOSEPH ESPOSITO**, Chief of the New York Police Department; **JOHN J. COLGAN**, Deputy Chief, New York City Police Department; GOMEZ, Shield number 27230, New York City Police Officers **JOHN AND JANE DOE** acting individually and in their official capacities, jointly and severally, maliciously and intentionally implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs that caused the **MR. DUNLOP** to be arbitrarily arrested without probable cause in the vicinity of a protest around the time of the Republican National Convention (RNC), that instituted a system of preventive detention to punish **MR. DUNLOP**, a lawful peaceful citizen and other peaceful and lawful citizens for being on the street with a bicycle during that protest, and subjected **MR. DUNLOP** to intolerable, cruel and inhumane conditions, including but not limited to denying him access to legal counsel for an inordinate and unreasonable amount of time.

3.     Defendants **CITY OF NEW YORK, OFFICER GOMEZ, OFFICER JOHN**

DOE's 1-3, the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE**, and **DISTRICT ATTORNEY MORGANTHAU** conspired to maliciously and intentionally prosecute **MR. DUNLOP** for offenses for which no probable cause existed and maliciously and intentionally altered evidence so as to hide the truth of **MR. DUNLOP**'s innocence from the Court.

**VENUE**

4.    Venue is proper in the State Supreme Court, County of New York pursuant to CPLR § 504(3).

**JURY DEMAND**

5.    **MR. DUNLOP** demands a trial by jury in this action on each and every one of his damage claims.

**PARTIES**

6.    **MR. DUNLOP** is a New York County resident residing at 394 East 8th Street, Apartment 2B, New York, NY 10009.

7.    Defendant **CITY OF NEW YORK** is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and corrections department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. **CITY OF NEW YORK** assumes the risks incidental to the maintenance of a police and corrections force and the employment of police officers and corrections officers.

8.    Defendant **MICHAEL BLOOMBERG** is and was, at all times relevant herein, the Mayor of **THE CITY OF NEW YORK** and the chief policy making official for the City and its departments, including the New York City Police Department (hereinafter,

4

the "NYPD") and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

9.    Defendant **RAYMOND KELLY** is and was at all times relevant herein, the Police Commissioner for the **CITY OF NEW YORK**, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

10.    Defendant **JOSEPH ESPOSITO** is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

11.    Defendant **THOMAS GRAHAM** was the Commanding Officer of the Disorder Control Unit of the NYPD at the time of the offences complained herein and he is responsible, in whole and/or in part, for the creation, implementation, promulgation, and enforcement of the policies, practices, and/or customs complained of herein. He is sued individually and in his official capacity.

12.    Defendant **JOHN J. COLGAN**, is a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and as such was responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

13.    Defendants, **POLICE OFFICER MAYA GOMEZ**, shield number 27230

5

(hereinafter, "**GOMEZ**"), **JOHN DOE's 1-3** (hereinafter, "Does") are NYPD Command and Police Officers involved in the arrest of **MR. DUNLOP** and all of the actions and conduct associated therewith, including, but not limited to the use of force, the institution and approval of criminal charges, the malicious and intentional prosecution of **MR. DUNLOP**, the abuse of criminal process, the cruel and inhumane conditions to which **MR. DUNLOP** was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

14.    Defendants **BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN, GRAHAM, GOMEZ,** and **DOE's** are employees and/or agents of the **CITY OF NEW YORK.** They include the individuals who directed and/or authorized the use of unreasonable and excessive force, unreasonable arrests and detentions and/or who actually arrested **MR. DUNLOP**, without probable cause, and who maliciously and intentionally implemented the policies, practices and procedures to unreasonably detain **MR. DUNLOP**.

15.    Defendant, **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** is a municipal entity created and authorized under the laws of the State of New York and has the responsibility and authority to investigate and prosecute crimes in New York County.

16.    Defendant, District Attorney **ROBERT MORGANTHAU** at all times relevant herein, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs related to the investigation and prosecution complained of herein. He is sued in both his individual and official capacities.

17.    Defendant, **HUDSON RIVER PARK TRUST,** a joint New York State and New

6

York City organization whose mission is to design, build and operate a five-mile park from Battery Park to 59th Street is and at all times herein was the owner of Chelsea Piers and consequently Pier 57, the place of **MR. DUNLOP**'s confinement.

18.    That at all times herein, Defendants caused **MR. DUNLOP** damages within New York County, New York State.

19.    At all times relevant herein, Defendants **BLOOMBERG, KELLY, ESPOSITO, COLGAN, GRAHAM, GOMEZ**, and **DOE**'s, have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the **CITY OF NEW YORK** and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the **CITY OF NEW YORK** and/or the NYPD with the power and authority vested in them as officers, agents and employees of the **CITY OF NEW YORK** and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the **CITY OF NEW YORK** and/or the NYPD.

20.    At all times relevant herein, Defendants **BLOOMBERG, KELLY, ESPOSITO, COLGAN, GOMEZ**, and **DOE**'s have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

21.    The cause of action and injuries claimed herein arises out of Defendants' actions in this state.

### STATEMENT OF FACTS

22.    On or about August 27, 2004, around 8:30 P.M., **MR. DUNLOP** left his home on

Eighth Street. New York, NY, took his bicycle and headed toward a restaurant located on Second Avenue where he was meeting friends for dinner.

23.    At or around 8:45 pm, **MR. DUNLOP** arrived at Second Avenue and observed people milling about and numerous members of the NYPD (hereinafter, "NYPD"), some who were wearing helmets and/or holding their batons in their hands extended out or in front of them.

24.    **MR. DUNLOP** also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

25.    **MR. DUNLOP**, unsure why the police were arresting these people, became concerned. He decided to find an alternative route to the restaurant. Looking to leave the area, **MR. DUNLOP** observed a police barricade that had formed on Ninth Street. He got off his bike and walked across the street heading toward the intersection of Tenth Street on Second Avenue. At this point he approached a line of police officers to ask them what was happening and how he might leave the scene.

26.    The officers responded that they were unsure of what was transpiring, as they had just arrived on the scene. **MR. DUNLOP** turned to ask another officer whose name and shield he did not obtain, (hereinafter, **"OFFICER JOHN DOE 1"**), for instructions on exiting the area. **OFFICER JOHN DOE 1** instructed **MR. DUNLOP** to head south along Second Avenue toward the blockade he had already observed.

27.    **MR. DUNLOP** complied with the instruction and walked toward the blockade. When he arrived there **OFFICER JOHN DOE 1** approached **MR. DUNLOP**. **MR. DUNLOP** again asked **OFFICER JOHN DOE 1** how to leave. **OFFICER JOHN DOE 1** gripped **MR. DUNLOP** by the arm and told **MR. DUNLOP** that he was under

arest.

28.    Immediately, several officers in riot gear rushed at **MR. DUNLOP**, grabbed him by the neck and pushed him down while twisting his arms behind him, causing substantial pain.

29.    All attempts by **MR. DUNLOP** to ascertain the reason for arrest were ignored by members of the NYPD.   At various times, the NYPD officers subjected **MR. DUNLOP** to snide, inappropriate, malicious and crude remarks.

30.    **MR. DUNLOP**'s bicycle was forcefully taken from him and thrown in a pile of bicycles that was in the center of Second Avenue and Tenth Street.

31.    **MR. DUNLOP** then observed another member of the NYPD, (hereinafter, "**OFFICER JOHN DOE 2**"), state to a female officer whose name, shield and command he later learned to be **POLICE OFFICER MAYA GOMEZ**, Shield number 27230, of the Patrol Borough of Manhattan North Task Force, say, "This is your arrest."

32.    When **OFFICER GOMEZ** was pointed out to **MR. DUNLOP**, he observed **OFFICER GOMEZ** watching a group of individuals already under arrest; nowhere near the vicinity of the place **MR. DUNLOP** was actually placed under arrest.

33.    **MR. DUNLOP** was then taken in flexi cuffs to a police vehicle and placed inside. He was confined in the car, with the windows closed for more than one and a half hours in the heat without water. **MR. DUNLOP** began to sweat profusely and he began to feel feverish and clammy.

34.    While waiting in the police car, the flexi cuffs began to cut into his skin. **MR. DUNLOP** then asked the NYPD driver, (hereinafter, "**OFFICER JOHN DOE 3**") to loosen his flexi cuffs. **OFFICER JOHN DOE 3** instead maliciously and intentionally

tightened the cuffs even more, causing more pain, discomfort, swelling, bleeding, and visible lacerations to both wrists.

35. During the RNC, Defendants **CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM** and **COLGAN** implemented a policy, practice or custom of detaining those arrested on August 27, 2004 in the vicinity of the RNC protest, without justification, for an unnecessary and prolonged period of time in unhealthy and dangerous conditions. In particular, Defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that **MR. DUNLOP** was held in custody following his unlawful arrest. These acts included, but are not limited to, using Pier 57 as an intermediate holding facility where no finger-printing equipment was placed, and requiring all arrestees, including the Plaintiff, to be finger-printed even though they were charged with minor offenses for which fingerprinting is unnecessary.

36. Instead of using existing resources, such as the Brooklyn Hose of Detention, Central Booking or the numerous precincts throughout the City as the reception point for **MR. DUNLOP** and others arrested during the relevant period – including the at least twenty (20) precincts in Manhattan, all equipped with arrest processing equipment, Defendants deliberately devised a plan that was intended to unreasonably lengthen the stay in custody of anyone arrested during the RNC, including **MR. DUNLOP**, and to intentionally make the terms of confinement as difficult, intimidating and unsafe as they thought possible. Pier 57 lacked the proper equipment necessary to process the arrestees, resulting in hours of "dead time," thereby further intentionally and maliciously delaying the processing of the arrestees.

37.    MR. DUNLOP was taken in the police vehicle to a holding facility at Pier 57 and placed in a makeshift cell with approximately one hundred other individuals. Once inside, MR. DUNLOP observed multiple holding cells inside Pier 57 constructed with chain-link fence topped with razor wire. Upon arrival at Pier 57, MR. DUNLOP was searched, had his property confiscated, and was placed in one of the holding cells.

38.    Upon information and belief, numerous environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot and chemicals. These conditions still existed on August 27, 2004.

39.    In addition, there was a chemical-like smell that emanated throughout the facility that caused MR. DUNLOP to feel ill during his detention.

40.    There was inadequate seating to accommodate all the people in the cell and therefore, MR. DUNLOP stood for hours through the night to avoid sitting on the dirty and grease covered floor. There were no beds or cots, no blankets and no pillows in the cell, making it impossible for MR. DUNLOP to sleep or even lie down.

41.    MR. DUNLOP began to feel ill. His clothes were drenched with sweat from being confined in the police vehicle.

42.    During his entire stay at Pier 57, MR. DUNLOP was only given one box of cereal to eat with his hands that were soiled from the grease, chemicals and dirt.

43.    MR. DUNLOP was unable to ascertain what was happening or why he had been arrested. MR. DUNLOP asked a member of the NYPD: "What is happening?" to which the Officer responded, "You have the right to shut the fuck up. I suggest you exercise that right."

11

44.    MR. DUNLOP remained at Pier 57 until the next morning when he was transferred to 100 Centre Street, New York, NY in a New York City Department of Corrections Bus.

45.    Upon arriving at 100 Centre Street, MR. DUNLOP was searched, fingerprinted and placed in another cell at 100 Centre Street. When MR. DUNLOP attempted to talk to various members of the NYPD and the Department of Corrections to ascertain his status and when he would be able to see a lawyer, he was told that he was a "whiney kid."

46.    On August 28, 2004, MR. DUNLOP was not brought to arraignment part until after 6:30 in the evening, where he was finally permitted to meet with a lawyer.

47.    Despite the fact that there was no probable cause to arrest MR. DUNLOP, he was maliciously and intentionally charged and prosecuted under New York City docket 2004NY063485 by Defendant, the NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit and Resisting Arrest.

48.    Assistant District Attorney Willa Concannon (hereinafter, "ADA Concannon"), assigned to prosecute MR. DUNLOP's case under the supervision of Defendant, DISTRICT ATTORNEY ROBERT MORGENTHAU, pursuant to discovery requirements, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of MR. DUNLOP's alleged unlawful conduct, (hereinafter, "First Video Tape").

49.    ADA Concannon in her capacity as an Assistant District Attorney for NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, represented that the First

Video Tape was a complete and unedited version of the events that transpired immediately preceding and including **MR. DUNLOP**'s arrest.

50.    Months into the case, a second videotape, (hereinafter, "Second Video Tape"), also recorded by the NYPD, was produced by the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** as evidence in a different criminal case. Given access to the second videotape, **MR. DUNLOP**'s attorney examined the first videotape, compared both videotapes, and found that they were filmed by the same video camera. When run simultaneously side-by-side it was obvious that the First Video Tape had been edited in two places---in both cases removing images showing **MR. DUNLOP** behaving peacefully, not obstructing traffic, parading or attempting to avoid arrest.

51.    Also cut from the First Video Tape was footage of **OFFICER JOHN DOE**, the actual officer who placed **MR. DUNLOP** under arrest. In the Second Video Tape, **OFFICER GOMEZ** is nowhere to be seen.

## AS FOR THE FIRST CAUSE OF ACTION
## FALSE ARREST AND IMPRISONMENT

52.    **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to 51" above with the same force and effect as if herein set forth.

53.    Defendants implemented policies and procedures permitting the unlawful arrest of peaceful individuals, including **MR. DUNLOP**, because they were on the streets in Manhattan around the time of the RNC.

54.    Dunlop was peacefully and lawfully in the area at the time of his arrest and was not in violation of any applicable local, state or federal law.

55.    Defendant **OFFICER JOHN DOE 1** maliciously and intentionally arrested and confined Dunlop without probable cause to believe a crime was committed or without a warrant to do so.

56.    At all times relevant herein, Defendants acted with the intention of confining **MR. DUNLOP** within fixed boundaries, the acts directly or indirectly resulted in confinement, and Dunlop was conscious of the confinement.

57.    Defendants imposed by force or threats unlawful restraint upon his freedom of movement, including but not limited to arresting him, twisting his arms, handcuffing and tightening said cuffs in a manner intended to cause **MR. DUNLOP** pain.

58.    The Defendants maliciously and intentionally confined Dunlop for almost twenty-four hours for an offense for which no probable cause existed.

59.    All charges against **MR. DUNLOP** were dismissed as it was revealed that the Defendants had no probable cause to effectuate the arrest.

60.    As a direct and proximate result of the malicious conduct of Defendants, **MR. DUNLOP** suffered harm and damages including but not limited to the aforesaid damages.

61.    The conduct occurred while Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **JOHN DOE'S,** were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD.    Thus Defendant **CITY OF NEW YORK** is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

14

## AS FOR THE SECOND CAUSE OF ACTION
### ASSAULT

62.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "61" above with the same force and effect as if herein set forth.

63.    Defendants intentionally created and caused Dunlop to be in fear of physical harm, by restricting his freedom of movement by arresting him unlawfully, placing handcuffs on him against his will, for no known or lawful purpose other than to create in Dunlop an apprehension of immediate physical harm.

64.    The NYPD and the Department of Corrections made physical contact with MR. DUNLOP, including but not limited to seizing him and handcuffing him without legal justification.

65.    Defendants intentionally confined MR. DUNLOP in such a manner that caused him to become ill by placing him in a closed city vehicle without water or ventilation, and further confining him causing him to be in fear. .

66.    The conduct of Defendant police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NYPD. Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE THIRD CAUSE OF ACTION
### BATTERY

67.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "66" above with the same force and effect as if herein set forth.

68.    Without the consent of MR. DUNLOP, employees of the CITY OF NEW YORK intentionally, harmfully, and offensively touched MR. DUNLOP including but not limited to handcuffing him, grabbing him by the neck and arms, pushing him, and twisting MR. DUNLOP's arms in a manner causing MR. DUNLOP substantial pain.

69.    The conduct of Defendants, police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NYPD. Thus Defendant CITY OF NEW YORK is liable to MR. DUNLOP pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FOURTH CAUSE OF ACTION
### MALICIOUS PROSECUTION

70.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "69" above with the same force and effect as if herein set forth.

71.    Defendants improperly and/or knowingly commenced a criminal process against MR. DUNLOP without probable cause that terminated when Defendant dismissed the

charges. Defendants had actual malice in prosecuting **MR. DUNLOP** and as a result, **MR. DUNLOP** sustained injury.

72. **MR. DUNLOP** was lawfully walking when he was arrested and later charged with several criminal offenses.

73. **OFFICER GOMEZ** swore in the criminal complaint stating that she personally observed **MR. DUNLOP** committing the offenses charged.

74. Defendants **GOMEZ, CITY OF NEW YORK, THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** submitted evidence, namely the corroborating affidavit and Video Tape 1 that they knew or should have known was false in an attempt to frame **MR. DUNLOP**.

75. As a result of Defendant's conduct, **MR. DUNLOP** was unlawfully confined and prosecuted. **MR. DUNLOP** sustained physical and emotional damages, to which the full extent is not known.

76. The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **DOE'S,** occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

77. **MR. DUNLOP** repeats and realleges and incorporates by reference the

allegations in paragraphs "1" to "76" above with the same force and effect as if herein set forth.

78. Defendants continually negligently inflicted emotional distress on **MR. DUNLOP**.

79. Defendants **CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO,** implemented policies, practices or customs of detaining individuals arrested at or in the vicinity of the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and dangerous. **MR. DUNLOP** was subjected to these policies and practices for being in the vicinity of the RNC.

80. Defendants intentionally confined **MR. DUNLOP** for many hours in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, under conditions, which were cold, loud and uncomfortable.

81. The floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances. The floors of the cages in Pier 57 were also covered in other dirt and grime.

82. **MR. DUNLOP** was humiliated and embarrassed by NYPD and New York Department of Corrections personnel when he attempted to find out what was happening with his case and when he complained of the deplorable conditions.

83. **MR. DUNLOP** was taunted and verbally abused by NYPD and New York Department of Corrections personnel who cursed and otherwise mistreated **MR. DUNLOP** without justification.

84. In addition, **MR. DUNLOP** was subjected to excessive and unnecessary handcuffing, including the continued handcuffing and tightening of handcuffs to the point

of breaking the skin and even after he was lodged in the detention facility at Pier 57.

85.    Defendants have a duty to perform their professional services in such manner as not to inflict emotional distress on **MR. DUNLOP**.

86.    As a result of Defendants' negligent conduct, **MR. DUNLOP** has suffered and will continue to suffer physical pain, anguish, severe emotional trauma, embarrassment and humiliation, and to fear for his safety and life.

87.    The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SIXTH CAUSE OF ACTION
## NEGLIGENCE

88.    **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in Paragraphs "1" to "87" above with the same force and effect as if herein set forth.

89.    Defendants owed a duty to supervise or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing of the charges without probable cause.

90.    Defendants owed a duty to act according to the ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of

MR. DUNLOP's injury.

91.    Defendants breached that duty by failing to act as an ordinary Police Officer, Police Commissioner, and supervisor would act, to wit by failing to perform his duties and by failing adequately to control and to supervise his officers.

92.    Defendant **DISTRICT ATTORNEY MORGENTHAU** owed a duty to act according to the ordinary care of a District Attorney, the intentional failure of which was the proximate cause of **MR. DUNLOP**'s injuries.

93.    Defendant breached that duty by failing to act as an ordinary District Attorney by intentionally failing to have adequate control and supervision over its employees who assisted in the wrongful and malicious prosecution of **MR. DUNLOP.**

94.    On information and belief, Defendants never obtained a Certificate of Occupancy for Pier 57 that would have permitted the holding of human beings therein.

95.    As a result of those breaches, which were the proximate cause of **MR. DUNLOP**'s injury, **MR. DUNLOP** suffered harm and damages.

96.    The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD.  Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior.*

97.    The conduct of Defendants **MORGENTHAU**, and **JOHN ROE** occurred during the course and scope of their duties and functions as New York City agents and

20

employees of Defendants **CITY OF NEW YORK** and **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE**. Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.

### AS FOR THE SEVENTH CAUSE OF ACTION
### VIOLATIONS OF 42 U.S.C § 1983 ARREST

98.    **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in Paragraphs "1" to "97" above with the same force and effect as if herein set forth.

99.    At all times relevant herein, the conducts of all Defendants were subject to 42 U.S.C. § 1983.

100.    Acting under the color of law, Defendants worked a denial of **MR. DUNLOP's** rights, privileges or immunities secured by the United States Constitution or by Federal law to wit.

    (a) by depriving **MR. DUNLOP** of his liberty without due process of law, by taking him into custody and holding him there against his will,

    (b) by making an unreasonable search and seizure of his property without due process of law,

    (c) by conspiring for the purpose of impeding and hindering the due course of justice, with the intent to deny **MR. DUNLOP** equal protection of law,

    (d) by refusing or neglecting to prevent such deprivations and denials to **MR. DUNLOP**, thereby depriving **MR. DUNLOP** of his rights, privileges and immunities as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

101.   Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** are liable under the doctrine of *respondeat superior.*

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 DETENTION AND CONFINEMENT

102.   **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "101" above with the same force and effect as if herein set forth.

103.   As a result of their concerted unlawful and malicious detention and confinement of **MR. DUNLOP**, Defendants deprived **MR. DUNLOP** of both his right to his liberty without due process of law and his right to equal protection of the laws, and due course of justice was impeded, in violation of the Fifth, Eighth and Fourteenth Amendments of the Constitution of the Unite States and 42 U.S.C. § 1983.

104.   Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** are liable under the doctrine of *respondeat superior.*

## AS FOR THE NINTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 REFUSING OR NEGLECTING TO PREVENT

105.   **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1"to "104" above with the same force and effect as if herein set forth.

106.   At all times relevant to this Complaint, Defendants **GOMEZ** and **DOES** were

acting under the direction and control of Defendants **BLOOMBERG, KELLY, GRASSO, GRAHAM, COLGAN** and NYPD.

107.    Acting under color of law and pursuant to official policy or custom **OFFICER GOMEZ.** and **JOHN DOE'S** 1-3 and the NYPD knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants Police Officers in their duties to refrain from:

> (a) unlawfully and maliciously harassing **MR. DUNLOP** who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

> (b) unlawfully and maliciously arresting, imprisoning and prosecuting **MR. DUNLOP** who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

> (c) conspiring to violate the rights, privileges and immunities guaranteed to **MR. DUNLOP** by the Constitution and laws of the United States and the laws of the State of New York,

> (d) otherwise depriving **MR. DUNLOP** of his constitutional and statutory rights, privileges and immunities.

108.    Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants **GOMEZ** and **JOHN DOE'S** had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and

knowingly, recklessly, or with gross negligence failed or refused to do so.

109.  Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** are liable under the doctrine of *respondeat superior.*

110.  As a direct and proximate cause of the negligent and intentional acts of Defendants set forth in paragraphs above, **MR. DUNLOP** suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## AS FOR THE TENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C. § 1983 FOR CONSPIRACY

111.  **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "110" above with the same force and effect as if herein set forth.

112.  All Defendants (a) had an objective to be accomplished; (b) had an agreement on the object or course of action; (c) preformed one or more unlawful overt acts; and (d) caused **MR. DUNLOP** damages that were a direct result of those acts.

113.  In furtherance of their object, Defendants did two or more overt acts against **MR. DUNLOP.**

114.  Those unlawful overt acts include, but are not limited to the following: Defendants **BLOOMBERG, CITY OF NEW YORK, KELLY, ESPOSITO,** and the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** advised and strategized, practices or customs of detaining the individuals arrested at the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and

dangerous.

115.    Just before and during the RNC, Defendants implemented this policy, practice or custom, in an arbitrary and capricious manner, and in the absence of the existence of probable cause, to arrest entire groups of people who were lawfully engaged in protected First Amendment activity or were observing such activity, or were simply passing by at the time arrests were being made.

116.    Defendants **BLOOMBERG, CITY OF NEW YORK, KELLY,** and **ESPOSITO**, knew or should have known that **MR. DUNLOP** was held for many hours in a holding cell that lacked adequate means whereby to adequately sit, rest and/or sleep, under inhumane conditions.

117.    Defendants knew that their arrest policy surrounding the RNC was a refinement of the tactic employed recently by Defendants at other demonstrations which had recently taken place in the City, including, but not limited to, the February 15, 2003 anti-war march, *see Haus, et al., v. City of New York, et al.,* 03 Civ. 4915 (RWS), and the April 7, 2003 Carlyle Group protest, see *Larsen, et al., v. City of New York, et al.* 04 Civ. 665 (RWS), of using mass arrests to unlawfully suppress protected First Amendment conduct.

118.    Defendants **KELLY, ESPOSITO, GRAHAM,** and **COLGAN,** had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

119.    Upon information and belief, Defendants agreed that the object or course of

25

action was to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause, and maliciously charge and prosecute him with crimes.

120.    Defendants are liable under the doctrine of *respondeat superior*.

121.    As a direct result of Defendants' acts, Dunlop suffered harm and damages that are a direct result of those acts.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF DUNLOP requests relief as follows:

(a)    That this court assume jurisdiction for this matter;

(b)    Compensatory damages against Defendants jointly and severally for all causes of action; past and future, including, but not limited to pain and suffering, emotional distress, economic losses including lost wages and medical expenses, violation of rights and other losses and injuries, the full extent is still undetermined in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(c)    Punitive damages against the Defendants, jointly and severally for all causes of action in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(d)    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and the Court's inherent power;

(e)    Prejudgment interest as allowed by law;

(d)    Such other relief, as is just and proper under the circumstances.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.


Dated:  November 18, 2005


                                    Respectfully Submitted,

                                    Gina M. Bonica, Esq.
                                    KURLAND & ASSOCIATES, P.C.
                                    304 Park Avenue South, Suite 206
                                    New York, NY 10010
                                    212.253.6911
                                    Attorneys for Plaintiff

VERIFICATION

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK  )

ALEXANDER DUNLOP, being duly sworn says: I am the plaintiff in this matter. I have read the foregoing verified Amended Complaint, and know the contents thereof, the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and so to those matters I believe it to be true.

Dated:  November 18, 2005

_____
ALEXANDER DUNLOP

Sworn to before me on the
18th day of November, 2005.

_____
Notary Public

GINA M. BONICA
Notary Public, State of New York
No. 02BO6120286
Qualified In Suffolk County
Commission Expires On December 20, 20 08

28