EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ALEXANDER DUNLOP,

                              Plaintiff,

                                                              06-CV-433 (KMK) (JCF)

                                                              THIRD[1] AMENDED
                              -against-                        COMPLAINT

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department,
NEW YORK COUNTY DISTRICT ATTORNEY
ROBERT MORGENTHAU, ASSISTANT
DISTRICT ATTORNEY WILLA CONCANNON,
POLICE OFFICER MAYA GOMEZ, shield number
27230, POLICE OFFICER JOHN DOE's 1-3,
ILISE WILLIAMS, and the HUDSON RIVER
PARK TRUST, in their individual and official
capacities, jointly and severally,

                              Defendants

------------------------------------------------------------------X

        Plaintiff, ALEXANDER DUNLOP, by his attorney, Gina M. Bonica, of Kurland

Associates, P.C., having offices at 304 Park Avenue South, Suite 206, New York, New York,

        complaining of Defendants, alleges as follows:

---

        [1] PROPOSED Third Amended Complaint pursuant to the So Ordered Stipulation of Honorable
        August 21, 2007.

## NATURE OF ACTION

Plaintiff brings this action against Defendants, THE CITY OF NEW YORK, a municipal entity MICHAEL BLOOMBERG, Mayor of the City of New York, RAYMOND KELLY, Police Commissioner of the City of New York, JOSEPH ESPOSITO, Chief of the Department, New York City Police Department, THOMAS GRAHAM , Commanding Officer of the Disorder Control Unit of the New York City Police Department, JOHN J. COLGAN, Deputy Chief and Commanding Officer, Pier 57, New York City Police Department, NEW YORK DISTRICT ATTORNEY ROBERT MORGENTHAU, ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON, POLICE OFFICER MAYA GOMEZ, shield number 27230,  POLICE OFFICER JOHN DOE's 1-3, ILISE WILLIAMS,  and the HUDSON RIVER PARK TRUST, (hereinafter, "Defendants") for malicious prosecution, assault and battery, false arrest, false imprisonment,  negligent infliction of emotional distress, intentional infliction of emotional distress, conspiracy, and violations of civil rights under 42 USC § 1983.

## PRELIMINARY STATEMENT

1.  This is a civil rights action in which the Plaintiff, ALEXANDER DUNLOP, (hereinafter "Mr. Dunlop") seeks relief for various violations, including, negligence, false arrest and excessive force, malicious prosecution, and, as to claims for (1) excessively and unreasonably prolonged, unnecessary and punitive detention, (2) excessive, unnecessary and punitive conditions of confinement that were shocking to the conscience and inflicted on Mr. Dunlop  (3) subjection to an unlawful arrest without probable so as to arrest Mr.

Dunlop at or in the vicinity of demonstrations before and during the Republican National Convention ("the RNC" or "the relevant period"), on Defendants' violation, under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2.  Defendants in this action, THE CITY OF NEW YORK, a municipal entity; MICHAEL BLOOMBERG, Mayor of the City of New York; RAYMOND KELLY, New York City Police Commissioner; JOSEPH ESPOSITO, Chief of the New York Police Department; THOMAS GRAHAM , Commanding Officer of the Disorder Control Unit of the New York City Police Department, JOHN J. COLGAN, Deputy Chief, New York City Police Department; GOMEZ, Shield number 27230, New York City Police Officers JOHN DOES, MORGANTHAU, ADA CONCANNON, and ILISE WILLIAMS acting individually and in their official capacities, jointly and severally, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs that caused Mr. Dunlop to be arbitrarily arrested for being in the vicinity of a protest during the RNC by arresting Mr. Dunlop without probable cause, for instituting a system of preventive detention to punish Mr. Dunlop, a lawful peaceful citizen for being on the street with a bicycle in or around the RNC, and subjecting Mr. Dunlop to intolerable and cruel and inhumane conditions, including denying him access to legal counsel for an inordinate and unreasonable amount of time, conspiring against him to manufacture and create false evidence to be used against him and others.

3.  Defendants CITY OF NEW YORK, OFFICER GOMEZ, OFFICER JOHN DOE's 1-3, and ILISE WILLIAMS, along with DISTRICT ATTORNEY ROBERT

3

MORGAN PEAL and ASSISTANT DISTRICT ATTORNEY WILLA CONSTANTINE

conspired to manufacture and fabricate false evidence that was to be submitted against

Mr. Dunlop so as to deprive Mr. Dunlop of his constitutional rights and to falsely arrest

and maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed.

## JURISDICTION AND CONDITIONS PRECEDENT

4. Pursuant to an Order by the Honorable Judge Kenneth M. Karas, dated October 3, 2006
jurisdiction is proper under 28 U.S.C. § 1367.

5. The Plaintiff, Mr. Dunlop has satisfied the jurisdictional requirement of timely filing and
serving a Notice of Claim to all necessary DEFENDANTS pursuant to New York Gen.
Mun. Law § 50. At least thirty days has elapsed since the service of such Notice of
Claim and that the Defendants have failed, neglected, or refused to settle these claims.

6. Mr. Dunlop gave testimony at a 50(h) hearing at the request of the CITY OF NEW
YORK on or about April 5, 2005.

7. This action has been commenced within one year and 90 days after the cause of action
arose.

## JURY DEMAND

8. Mr. Dunlop demands a trial by jury in this action on each and every one of his damage
claims.

## PARTIES

9. At all times relevant herein, Mr. Dunlop is and was a New York County resident.

10. Defendant CITY OF NEW YORK is a municipal entity created and authorized under the

laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force, a corrections department and the employment of police officers and corrections officers.

11. Defendant MICHAEL B. BLOOMBERG ("BLOOMBERG") is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and the Department of Corrections ("Corrections") and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

12. Defendant RAYMOND KELLY ("KELLY")is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

13. Defendant JOSEPH ESPOSITO ("ESPOSITO") is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

14. Defendant THOMAS GRAHAM ("GRAHAM") was at all times relevant herein, the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of

the policies, practices and or customs complained of herein. He is sued individually and in his official capacity.

15. Defendant JOHN J. COLGAN, ("COLGAN") at all times relevant herein, a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and or customs complained of herein. He is sued individually and in his official capacity.

16. Defendant, POLICE OFFICER MAYA GOMEZ, Shield number 27230 ("OFFICER GOMEZ" or "GOMEZ") and POLICE OFFICERS JOHN DOES ("OFFICER DOES" or "DOES") are NYPD Police Officers involved in the arrest of Mr. Dunlop and all of the actions and conduct associated therewith, including, inter alia, the use of force, the preferring of charges, the approval of charges, the prosecution of Mr. Dunlop, the abuse of criminal process, the falsification of evidence, conspiracy, the cruel and inhumane conditions to which Mr. Dunlop was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

17. Defendants BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN, OFFICER GOMEZ, and DOE's are employees and/or agents of the CITY OF NEW YORK. They include the individuals who directed and/or authorized the use of unreasonable and excessive force, unreasonable arrests, and detentions and/or who actually arrested Mr. Dunlop, without probable cause, and who implemented the policies, practices, and procedures and who conspired to unreasonably detain Mr. Dunlop and others who were in the vicinity of the protests of the RNC.

8. Defendant, DISTRICT ATTORNEY ROBERT MORGANTHAU ("MORGANTHAU"), at all times relevant herein, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and or customs related to the investigation and prosecution and conspiracy complained of herein. He and his office have the responsibility and authority to investigate and prosecute crimes in New York County. He is sued in both his individual and official capacities.

19. ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON ("ADA CONCANNON") was at all times relevant herein, an employee of the City of New York charged with the duty of prosecuting cases on behalf of MORGANTHAU and the New York County District Attorney's Office ("DA's Office") in compliance with the laws of the State of New York and City of New York, and is responsible, in whole and/or in part for the creation, implementation, and promulgation of knowingly false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights and to maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed.

20. Defendant, ILISE WILLIAMS (WILLIAMS) was at all times relevant herein an employee of the City of New York and the New York County District Attorney's Office ("DA's Office"), and is responsible, in whole and/or in part for the creation of false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights and maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed.

21. Defendant, HUDSON RIVER PARK TRUST, is a joint New York State and New York City organization whose mission is to design, build, and operate a five-mile park from Battery Park to 59th Street and is and at all times herein the owner of Chelsea Piers.

22. That upon information and belief, at all times herein, Defendants caused Mr. Dunlop damages in New York County, New York State.

23. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO, COLGAN, GRAHAM, GOMEZ, and DOE's, have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

24. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO, COLGAN, GOMEZ, and DOE's have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, and the Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

25. The cause of action and injuries claimed herein arises out of Defendants' actions in this state.

26. That upon information and belief, on or about the August 27, 2004, Mr. Dunlop was unlawfully arrested and falsely imprisoned by an intentional and nonconsensual confinement, not otherwise privileged, of which Mr. Dunlop was aware and was maliciously prosecuted by the Defendants, thereby causing Mr. Dunlop's damages.

Case 1:06-cv-00433-KMK-JCF    Document 49    Filed 08/27/2007    Page 9 of 39

### FACTUAL BACKGROUND

27. On or about August 31, 2004, around 8:30 P.M., Mr. Dunlop left his home on Eighth Street, New York, NY to go to a nearby restaurant to pick up food for dinner.

28. Upon information and belief Mr. Dunlop took his bicycle.

29. Upon information and belief, around 8:45 pm, Mr. Dunlop arrived at Second Avenue and observed people milling about and numerous members of the New York City Police Department (hereinafter, "NYPD"), some who were wearing helmets and/or holding their batons in their hands extended out or in front of them.

30. Mr. Dunlop also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

31. Mr. Dunlop, unsure why the police were arresting, and having no involvement whatsoever with any protest or demonstration began to grow concerned and attempted to leave the area and find an alternative route to the restaurant.

32. Mr. Dunlop observed a police barricade that had formed on Ninth Street.  He therefore, got off his bike and walked it across the street heading toward the intersection of Tenth Street on Second Avenue and approached a line of police officers to ask them what was happening and how he might leave the scene.

33. Upon information and belief, the officers responded that they were unsure of what was transpiring, as they had just arrived on the scene.  Mr. Dunlop turned to ask another officer whose name and shield he did not obtain, ("Officer John Doe 1"), for instructions on exiting the area.  OFFICER JOHN DOE 1 instructed Mr. Dunlop to head in a southerly direction along Second Avenue toward the blockade he had already observed.

34. Mr. Dunlop walked his bicycle in that direction toward the blockade.  When he arrived

here OFFICER JOHN DOE 1 approached Mr. Dunlap. Upon information and belief, Mr. Dunlop again asked OFFICER JOHN DOE 1 how to leave. OFFICER JOHN DOE 1 gripped Mr. Dunlop by the arm and told Mr. Dunlop that he was under arrest. Upon information and belief, OFFICER JOHN DOE 1 stated, "I just told you to go in this direction so I could arrest you."

35. Mr. Dunlop observed another person being violently thrown to the ground by multiple police officers.

36. Upon information and belief, at no time did Mr. Dunlop prevent any cars from traveling on the street or prevent pedestrians from passing by on the sidewalk or on the street.

37. Upon information and belief, at no time did Mr. Dunlop chant, march, yell, or otherwise fail to obey a lawful order or direction given to him by the NYPD.

38. Upon information and belief, Mr. Dunlop is not a member of "CRITICAL MASS" or any other group of protest, nor did he wear or display any paraphernalia of "CRITICAL MASS" or any protest group, nor was Mr. Dunlop a part of the protest on August 27, 2004.

39. After being told that he was under arrest, several officers in riot gear rushed at Mr. Dunlop and grabbed him by the neck and pushed in downward direction as his arms were grabbed and twisted behind him in a manner exercising excessive force causing Mr. Dunlop substantial pain.

40. Upon information and belief, at no time did Mr. Dunlop resist arrest despite the fact that he had not committed any unlawful acts.

41. As he was placed in white plastic handcuffs, (hereinafter, "flexi cuffs"), one member of the NYPD stated, "I bet you have never worn these before." Upon information and belief,

his officer appeared to be clearly pleased to be putting Mr. Dunlop in pain and distress.

42. All attempts to talk to members of the NYPD to ascertain the reason for arrest was ignored. At various times, Mr. Dunlop was subjected to snide, inappropriate and crude remarks by the NYPD.

43. Mr. Dunlop's bicycle was taken from him and thrown in a pile of bicycles that was in the center of Second Avenue and Tenth Street.

44. Upon information and belief, Mr. Dunlop then observed another member of the NYPD, ("OFFICER JOHN DOE 2"), state to a female officer whose name, shield and command he later learned to be OFFICER GOMEZ, who at that time was assigned to the Patrol Borough of Manhattan North Task Force, say, "This is your arrest."

45. OFFICER GOMEZ is listed as the arresting officer on all applicable paperwork in this matter.

46. When OFFICER GOMEZ was pointed out to Mr. Dunlop, he observed OFFICER GOMEZ watching a group of individuals already under arrest, nowhere in the vicinity of the place Mr. Dunlop was actually placed under arrest.

47. Mr. Dunlop was then taken in flexi cuffs to a police vehicle and placed inside in excess of one and a half hours in the heat without water. The entire time the windows and doors remained closed and there was no air flow inside. Mr. Dunlop began to sweat profusely and he began to feel feverish and clammy.

48. While waiting for other arrestees to be placed in the police vehicle, the flexi cuffs began to cut into his skin. Mr. Dunlop then asked the NYPD driver, ("OFFICER JOHN DOE 3") to loosen his flexi cuffs. Upon information and belief, OFFICER JOHN DOE 3 instead tightened the cuffs even more, causing more pain, discomfort, and visible

lacerations to both wrists.

49. Upon information and belief, OFFICER JOHN DOE 3 stated that he had tightened the cuffs "Because you might try to attack me." As a result of the actions of OFFICER JOHN DOE 3, Mr. Dunlop's wrists began to bleed and swell.

50. Upon information and belief, during the RNC, Defendants including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM and COLGAN, implemented a policy, practice or custom of detaining those arrested on August 27, 2004 in the vicinity of the RNC protest, without justification, for an unnecessary and prolonged period of time in unhealthy and dangerous conditions. In particular, Defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that Mr. Dunlop was held in custody following his unlawful arrest. These included, *inter alia*, the use of Pier 57 as an intermediate holding facility fingerprinting of all those arrested, including Mr. Dunlop who was charged with minor offenses for which fingerprinting is unnecessary, and was implemented so as to unnecessarily and unreasonably extend and prolong the period of time that Mr. Dunlop was held in custody.

51. Upon information and belief, instead of using existing resources, such as Old Central Booking, Central Booking or the numerous precincts throughout the City as the reception point for Mr. Dunlop and others arrested during the relevant period – including the at least twenty (20) precincts in Manhattan, all of which were capable of adequately processing arrestees – Defendants deliberately devised a plan that was intended to unreasonably lengthen the stay in custody of anyone arrested during the RNC, including Mr. Dunlop, and to make the terms of confinement as difficult, intimidating and unsafe as

hey thought possible.

52. Mr. Dunlop was then taken to the police vehicle to a holding facility at the Chelsea Piers and placed in a makeshift cell with approximately one hundred other individuals. Once inside, Mr. Dunlop observed multiple holding cells inside Pier 57 constructed with chain link fence topped with razor wire. The cell that Mr. Dunlop was placed in had two sections, one in which he was kept, and another buffer zone, which contained a portable toilet. Upon arrival at Pier 57, Mr. Dunlop was searched, had his property confiscated, and was placed in one of the holding cells.

53. Upon information and belief, according to published reports, of which Defendants knew or should have known, numerous environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot.

54. Upon information and belief, there was a chemical-like smell that emanated throughout the facility that caused Mr. Dunlop to feel ill during his detention.

55. Upon information and belief, there was inadequate seating to accommodate all the people in the cell and therefore, Mr. Dunlop stood for hours through the night to avoid sitting on the dirty and grease covered floor. There were no beds or cots, no blankets and no pillows in the cell, making it impossible for Mr. Dunlop to sleep or even lie down.

56. Upon information and belief, Mr. Dunlop observed individuals in pain who were not given medical attention.

57. Mr. Dunlop began to feel ill as his clothes had been drenched in sweat while in the police vehicle. This was compounded as Chelsea Piers was damp and cold causing Mr. Dunlop to develop a cough and fever like conditions.

58. During his entire stay at Pier 57, Mr. Dunlop was only given one box of cereal to eat with his hands which had become soiled from the grease and dirt at Chelsea Piers.

59. Upon information and belief, Mr. Dunlop was unable to ascertain from the NYPD or Corrections what was happening or why he had been arrested. Mr. Dunlop asked a member of the NYPD, at Chelsea Piers "What is happening?" to which the Officer responded, "You have the right to shut the fuck up. I suggest you exercise that right."

60. Mr. Dunlop remained at Chelsea Piers until the next morning when he was transferred to 100 Centre Street, New York, NY in a New York City Department of Corrections Bus.

61. Upon arriving at 100 Centre Street, Mr. Dunlop was again searched, fingerprinted, and placed in another cell at 100 Centre Street. Mr. Dunlop attempted to talk to various members of the NYPD and Corrections to ascertain his status and when he would be able to see a lawyer to which he was told that he was a "whiney kid."

62. At all times Mr. Dunlop was aware of his confinement and did not consent to being arrested or confined.

63. On August 28, 2004, Mr. Dunlop was not brought to arraignment part until after 6:30 in the evening, where he was finally permitted to meet with a lawyer.

64. Despite the fact that there was no probable cause to arrest Mr. Dunlop, he was charged and prosecuted under New York City docket 2004NY063485 by the DA's Office for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit, and Resisting Arrest.

65. The supporting deposition of the arresting officer, OFFICER GOMEZ charges in sum and substance that Mr. Dunlop obstructed traffic by riding his bicycle across all lanes of traffic and refused a lawful order and struggled with her when Mr. Dunlop resisted arrest.

66. The Defendants including but limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, COLGAN and GRAHAM acting at the behest and in concert with the RNC conspired with the RNC to violate the constitutional rights of those in or around the RNC protests by designing and implementing a plan to arrest those in the vicinity of the RNC protest, those who were peacefully protesting or those who appeared to protest the policies of the Republican National Party, in violation of their constitutional rights.

67. Upon information and belief, this plan included but was not limited to removing individuals from the street who were lawfully participating in, observing or in the area of the RNC protest in violation of their constitutional rights and upon such information and belief the plan was to take the protest and negative publicity surrounding the protest and the Republican National Party out of the public eye.

68. The Defendants, including but limited to the CITY OF NEW YORK videotaped the activities in or around the RNC protests.

69. Upon information and belief in or around the fall of 2004, the Defendants including but not limited to WILLIAMS and OFFICER DOE, along with MORGANTHAU and CONCANNON, acting at the behest and in concert with the each other intentionally removed evidentiary images of Mr. Dunlop behaving peacefully, not blocking traffic, not resisting arrest, not parading without a permit and not in violation of any law. The removal of these images was part of a plan and conspiracy by DA's Office, the NYPD, the Defendants including but not limited to WILLIAMS, along with MORGANTHAU and CONCANNON, to alter, fabricate, and manufacture knowingly false evidence to be used against Mr. Dunlop in violation of Mr. Dunlop's constitutional rights.

70. Upon information and belief, this plan was orchestrated, and carried out by Defendants

Case 1:06-cv-00433-KMK-JCF    Document 49    Filed 08/27/2007    Page 16 of 39

including but not limited to WILLIAMS, the CITY OF NEW YORK, and or the NYPD Technical Assistance and Response Unit (TARO), the DA's Office, MORGANTHAU, CONCANNON, willfully altered and tampered with evidence, and conspired to alter and/or tamper with evidence.

71. The actions of the Defendants, including but not limited to WILLIAMS and the CITY OF NEW YORK, as well as the NYPD Technical Assistance and Response Unit (TARO),the DA's Office, MORGANTHAU, and CONCANNON, are at best, relating to the organization, evaluation, and marshalling of evidence, which is an activity of police nature, and is therefore not entitled to absolute protection.

72. WILLIAMS, as CITY OF NEW YORK employee, knowingly manufactured evidence for use in the criminal trial against Mr. Dunlop in an effort to deprive him of his liberty.

73. At the time that WILLIAMS manufactured this evidence, she knew or should have known that her acts were unconstitutional.

74. Pursuant to a Stipulation of Discontinuance, So Ordered by Honorable Judge Karas on June 5, 2007, WILLIAMS has been identified by MORGANTHAU as an individual involved in the handling and editing of Video Tape 1.

75. CONCANNON, assigned to prosecute Mr. Dunlop's case under the supervision of MORGENTHAU, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of Mr. Dunlop's alleged unlawful conduct, (hereinafter, "First Video Tape"), knowing that it was an altered and manufactured piece of evidence used to maliciously prosecute Mr. Dunlop, and deprive him of his constitutional rights.

76. CONCANNON in her capacity as an Assistant District Attorney for New York County, in furtherance of the conspiracy, with an intent to maliciously prosecute and deprive Mr.

Dunlop of his constitutional rights, knowingly made false representations in court that the First Video Tape was a complete and unedited version of the events that transpired immediately preceding and including Mr. Dunlop's arrest.

77. Upon information and belief, although OFFICER GOMEZ never observed Mr. Dunlop until after being apprehended and cuffed by OFFICER JOHN DOE, OFFICER GOMEZ in her corroborating affidavit submitted in connection with this prosecution stated that she had personally observed Mr. Dunlop committing the above offenses and that he had "flailed" his arms to resist being arrested.

78. The actions of NYPD Technical Assistance and Response Unit (TARO), and/or the CITY OF NEW YORK, MORGANTHAU, his employees including but not limited to CONCANNON, and WILLIAMS are a misuse of investigative techniques and privileges.

79. The actions of NYPD Technical Assistance and Response Unit (TARU), and/or the CITY OF NEW YORK, MORGANTHAU, his employees including but not limited to CONCANNON, and WILLIAMS are in bad faith.

80. Months into the case, a second videotape, (hereinafter, "Second Video Tape") also recorded by the NYPD and submitted by MORGANTHAU as evidence in a different criminal case, when compared with the First Video Tape to be submitted as evidence in Mr. Dunlop's case, upon information and belief, revealed that they were shot from the identical NYPD video camera. When run simultaneously side-by-side it is revealed that the First Video Tape had been edited in two places, in both cases removing images showing Mr. Dunlop behaving peacefully, not obstructing traffic, not parading nor attempting to avoid arrest.

81. Also cut from the First Video Tape was footage of Officer John Doe, the actual officer

who placed Mr. Dunlop under arrest. In the Second Video Tape, Officer Gomez is nowhere to be seen

32. Upon revelation in court of the Second Video Tape, MORGANTHAU was forced to drop all criminal charges against Mr. Dunlop and upon information and belief, later admitted that a technician in the DA's Office whose name and identity was not provided to Mr. Dunlop, had cut the material.

33. Upon information and belief, Barbara Thompson, a spokeswoman for the DA's Office stated on at least on occasion in or around April of 2005 that the tape had been cut by the DA's office

34. The Defendants, including but not limited to the CITY OF NEW YORK and WILLIAMS, along with MORGANTHAU and CONCANNON acted in concert with the NYPD to cut the tapes and conspire against Mr. Dunlop to fabricate false evidence against Mr. Dunlop.

35. As a result of the Defendant's CITY OF NEW YORK, and WILLIAMS, along with MORGANTHAU and CONCANNON, illegal acts, Mr. Dunlop was unlawfully arrested and held against his will and sustained bodily and emotional injury as a result. Mr. Dunlop is now afraid to approach the NYPD or other official officers if he were to be in need of assistance.

36. Defendants, including but not limited to the CITY OF NEW YORK and WILLIAMS, along with MORGANTHAU and CONCANNON, deprived Mr. Dunlop of his freedom intentionally, subjected him to deplorable conditions, maliciously prosecuted and otherwise injured Mr. Dunlop.

37. Mr. Dunlop was subjected to unreasonable, unnecessary and punitive conditions of

confinement in violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York. These conditions included, but were not limited to, the following: 1) false arrest and imprisonment; 2) excessively tight handcuffs applied for excessive periods of time without cause; 3) unreasonable overcrowding; 4) inadequate facilities for sleeping and sitting, causing Mr. Dunlop to come into intimate contact with toxic chemicals and other noxious substances; 5) deliberately indifferent denial of access to necessary medication and medical attention when suffering from medical conditions and illness; 6) deliberately indifferent exposure to dangerous chemicals in the air and on the walls and floor of "Pier 57," including asbestos, chlorinated hydrocarbons, benzene and others, some of which are carcinogenic, mutagenic, teratogenic, and hepatogenic and which cause many other diseases and conditions and have caused fear of contracting cancer and other unknown diseases at some time in the future; 7) notwithstanding the extensive levels of toxic chemicals and dirt, among other things, the deliberately indifferent refusal to provide adequate sanitation; 8) the deliberately indifferent denial, in many instances of adequate food, often due to the incredibly unsanitary conditions, and of water; and 9) refusal of access to counsel for many hours.

88. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO GRAHAM , conspired with the Republican National Party to create a policy of arresting without probable cause, individuals who were in the vicinity of those engaging in lawful and peaceful expressions of their First Amendment rights in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York.

Case 1:06-cv-00433-RMK-JCF    Document 49    Filed 08/27/2007    Page 20 of 39

## AS FOR THE FIRST CAUSE OF ACTION
### FALSE ARREST AND IMPRISONMENT

89. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "85" above with the same force and effect as if herein set forth.

90. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM, conspired with the Republican National Party implemented policies and procedures permitting the unlawful arrest of peaceful individuals, including Mr. Dunlop because they were in the vicinity of the RNC.

91. Dunlop was peacefully and lawfully in the area of the RNC at the time of his arrest and was not in violation of any applicable local, state or federal law.

92. That at no time did Dunlop intentionally obstruct, impair or pervert the administration of law or pervert a public servant from performing an official function, by interference, or by means of any independent unlawful act.

93. Defendants arrested and confined Mr. Dunlop without probable cause to believe a crime was committed or without a warrant to do so.

94. At all times relevant herein, Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM acted with the intention of confining Dunlop within fixed boundaries, the acts directly or indirectly resulted in confinement, and Dunlop was conscious of the confinement.

95. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM, imposed by force or threats unlawful restraint upon his freedom of movement, to wit by arresting him, twisting his arms, handcuffing and tightening said cuffs in a manner intended to cause Dunlop pain.

Case 1:06-cv-00433-KMK-JCF     Document 46     Filed 08/17/2007     Page 21 of 39

96. Dunlop was confined by the Defendants for almost twenty-four hours for an offense for which no probable cause existed.

97. All charges against Dunlop were dismissed as it was revealed that the Defendants had no probable cause to effectuate the arrest.

98. As a direct and proximate result of the conduct of Defendants, Dunlop suffered harm and damages including but not limited to the aforesaid damages.

99. The conduct occurred while the NYPD and Corrections OFFICER GOMEZ, JOHN DOEs, and others were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and the NYPD. Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SECOND CAUSE OF ACTION
### ASSAULT

100.     Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "96" above with the same force and effect as if herein set forth.

101.     Defendants, including but limited to the CITY OF NEW YORK, OFFICER GOMEZ and JOHN DOES intentionally created and caused Mr. Dunlop to be in fear of physical harm, by restricting his freedom of movement by arresting him unlawfully, placing handcuffs on him against his will, confining him unlawfully for no known or lawful purpose other than to create in Dunlop an apprehension of immediate physical harm.

102.     Upon information and belief that the defendants, including but not limited to OFFICER GOMEZ, and JOHN DOES made physical contact with Mr. Dunlop, which

Case 1:06-cv-00433-KMK-JCF     Document 49     Filed 08/27/2007     Page 23 of 39

wounded seizing him, handcuffing him which was not privileged, was nonconsensual and offensive and which constituted battery.

63.     Defendants confined Mr. Dunlop in such a manner that caused him to become ill by placing him in a closed city vehicle for hours without water or ventilation, and further confining him.

104.     Any reasonable person would also become apprehensive in the face of Defendants' threatening conduct.

105.     The conduct of Defendants occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK.  Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior.*

## AS FOR THE THIRD CAUSE OF ACTION
## BATTERY

106.     Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "102" above with the same force and effect as if herein set forth.

107.     Without the consent of Mr. Dunlop, the Defendants intentionally, harmfully, and offensively touched Mr. Dunlop by handcuffing him, grabbed him by the neck and pushed in a downward direction as his arms were grabbed and twisted behind him in a manner exercising excessive force causing Mr. Dunlop substantial pain.

108.     The conduct of Defendants, including but limited to OFFICER GOMEZ, and JOHN DOES, occurred while they were on duty and in uniform, in and during the course

and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FOURTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

109.    Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "105" above with the same force and effect as if herein set forth.

110.    That upon information and belief, Defendant, including but not limited to the CITY OF NEW YORK, along with MORGANTAHU and CONCANNON, improperly and knowingly commenced a criminal process against Mr. Dunlop without probable cause.

111.    The prosecution, criminal charges, and hearings were instituted and procured by the Defendants, including but not limited to the CITY OF NEW YORK, KELLY, ESPOSITO, GRAHAM, COLGAN, OFFICER GOMEZ, JOHN DOES, and along with MORGANTHAU and CONCANNON, which terminated when Defendant dismissed the charges. MORGANTHAU, CONCANNON and other servants and employees of MORGANTHAU had actual malice in prosecuting Mr. Dunlop and as a result, Mr. Dunlop sustained injury.

112.    Mr. Dunlop was lawfully walking when he was arrested and later charged with several criminal offenses.

113.    OFFICER GOMEZ swore in the criminal complaint stating that she personally observed Mr. Dunlop committing the offense charged.

114.    WILLIAMS and OFFICER DOE, acting at the behest and in concert with the
each other and MORGANTHAU and CONCANNON intentionally removed evidentiary
images of Mr. Dunlop behaving peacefully, not blocking traffic, not resisting arrest, not
parading without a permit and not in violation of any law.

115.    MORGANTHAU and CONCANNON submitted evidence, namely the
corroborating affidavit and Video Tape 1 that they knew or should have known was false
in order to uphold the arrest and secure the prosecution of Mr. Dunlop.

116.    Upon information and belief, after the complete depiction of the events surfaced,
as evidenced in the Second Tape, OFFICER GOMEZ was unable to recall or state with
certainty any of the specifics of the complaint which were based on her supporting
deposition, filed in connection with the arrest and proffering of charges against Mr.
Dunlop.

117.    Upon reviewing Video Tape 2, Defendants the CITY OF NEW YORK, along
with MORGANTHAU and CONCANNON, were forced to drop all charges against Mr.
Dunlop.

118.    As a result of Defendant's conduct, Mr. Dunlop was unlawfully confined and
prosecuted. Mr. Dunlop sustained physical and emotional damages, to which the full
extent is not known.

119.    The conduct of Defendants occurred while they were on duty and in uniform, in and
during the course and scope of their duties and functions as New York City officers, and
while they were acting as agents and employees of Defendants CITY OF NEW YORK.
The conduct of Defendants, including but not limited to WILLIAMS occurred during the
course and scope his or her duty and employment with the CITY OF NEW YORK and

MORGANTHAU. The conduct of CONCANNON occurred during the course of her employment with the CITY OF NEW YORK and MORGANTHAU. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

120. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "116" above with the same force and effect as if herein set forth.

121. Defendants continually negligently inflicted emotional distress on Mr. Dunlop.

122. Defendants, including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, implemented policies, practices, or customs of detaining individuals arrested at or in the vicinity of the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy, and dangerous. Mr. Dunlop was subjected to these policies and practices for being in the vicinity of the RNC.

123. Defendant confined Mr. Dunlop for many hours in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, under conditions which were cold, loud and uncomfortable, due to the continuous use of large fans which ran at top speeds, which, given the presence of numerous toxic chemicals present at Pier 57, was particularly inappropriate.

124. On information and belief, the floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances. The floors of the cages in Pier 57 were also covered in other dirt and grime.

125. Mr. Dunlop was humiliated and embarrassed by NYPD personnel when he attempted to

and out what was happening with his case and when he complained of the deplorable conditions.

126. Mr. Dunlop was taunted and verbally abused by NYPD personnel and Corrections personnel who cursed and otherwise mistreated Mr. Dunlop without justification.

127. On information and belief, at no time did the Defendants ever obtain a Certificate of Occupancy for Pier 57 which would have permitted the holding of human beings therein.

128. In addition, Mr. Dunlop was subjected to excessive and unnecessary handcuffing, including the continued handcuffing and tightening of handcuffs to the point of breaking the skin and even after he was lodged in the detention facility at Pier 57.

129. Defendants have a duty to perform their professional services in such manner as not to inflict emotional distress on Mr. Dunlop.

130. Defendants by the above reference acts violated that duty.

131. Mr. Dunlop never interfered with Defendants' obligations under the above described duties.

132. As a result of Defendant negligent conduct, Mr. Dunlop has suffered and will continue to suffer physical pain, anguish, severe emotional trauma, embarrassment and humiliation.

133. The conduct of Defendant police officers, GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SIXTH CAUSE OF ACTION
### NEGLIGENCE

134. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "130" above with the same force and effect as if herein set forth.

135. Defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, COLGAN and GRAHAM's owed a duty to supervise and/or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing of the charges without probable cause.

136. Defendants, including but not limited to the CITY OF NEW YORK, OFFICER GOMEZ, JOHN DOES owed a duty to act according to the ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of Mr. Dunlop's injury.

137. Defendants, including but not limited to the CITY OF NEW YORK, KELLY, ESPOSITO, COLGAN and GRAHAM OFFICER GOMEZ, JOHN DOES breached that duty by failing to act as an ordinary Police Officer, Police Commissioner, and supervisor would act, to wit, by failing to perform his duties and by failing adequately to control and to supervise his officers.

138. WILLIAMS owed a duty to act in the ordinary care of a technician handling evidence and to not unconstitutionally deprive Mr. Dunlop of his rights, the failure of which was the proximate cause of Mr. Dunlop's injuries.

139. Defendants, including but not limited to the CITY OF NEW YORK, WILLIAMS, along with CONCANNON and MORGANTHAU, failed to intercede when the Video Tape 1 was altered and removed exculpatory evidence of Mr. Dunlop.

27

Case 1:06-cv-00433-KMK-JCF    Document 49    Filed 08/27/2007    Page 29 of 39

to the state common law doctrine of *respondeat superior*.

## AS FOR THE SEVENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C § 1983 ARREST

147.  Mr. Dunlop repeats and realleges and incorporates by reference the allegations in
paragraphs "1" to "143" above with the same force and effect as if herein set forth.

148.  At all times relevant herein, the conducts of all Defendants were subject to 42 U.S.C §
1983.

149.  Acting under the color of law, Defendants, worked a denial of Mr. Dunlop's rights,
privileges or immunities secured by the United States Constitution or by Federal law to
wit;

  (a) by depriving Mr. Dunlop of his liberty without due process of law, by taking him
  into custody and holding him there against his will,

  (b) by making an unreasonable search and seizure of his property without due
  process of law,

  (c) by conspiring for the purpose of impeding and hindering the due course of
  justice, with intent to deny Mr. Dunlop equal protection of law,

  (d) by refusing or neglecting to prevent such deprivations and denials to Mr. Dunlop,
  thereby depriving Mr. Dunlop of his rights, privileges, and immunities as guaranteed
  by the Fourth Fifth and Fourteenth Amendments to the Constitution of the United
  States

150.  Defendants, including but not limited to BLOOMBERG, KELLY, ESPOSITO,
GRAHAM, and COLGAN, are liable under the doctrine of *respondeat superior*

Case 1:06-cv-00433-KMK-JCF     Document 49     Filed 08/27/2007     Page 30 of 39

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 DETENTION AND CONFINEMENT

151  Mr. Dunlop repeats and realleges and incorporates by reference the allegations in

paragraphs "1" to "147" above with the same force and effect as if herein set forth.

152.  As a result of their concerted unlawful and malicious detention and confinement of Mr.

Dunlop, Defendants deprived Mr. Dunlop of both his right to his liberty without due

process of law and his right to equal protection of the laws, and due course of justice was

impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the

Unite States and 42 U.S.C. § 1983.

153.  Defendants CITY OF NEW YORK, KELLY, ESPOSITO, GRAHAM, and COLGAN,

are liable under the doctrine of *respondeat superior.*

## AS FOR THE NINTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 REFUSING OR NEGLECTING TO PREVENT

154.  Mr. Dunlop repeats and realleges and incorporates by reference the allegations in

paragraphs "1"to "150" above with the same force and effect as if herein set forth.

155.  At all times relevant to this Complaint, Defendants OFFICER GOMEZ and JOHN

DOES 1-3 were acting under the direction and control of Defendants including but not

limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM,

COLGAN.

156.  Acting under color of law and pursuant to official policy or custom defendants,

including but not limited to KELLY, ESPOSITO, GRAHAM, COLGAN, knowingly,

recklessly, or with gross negligence failed to instruct, supervise, control, and discipline

Case 1:06-cv-00433-KMK-JCF     Document 46     Filed 08/27/2007     Page 31 of 39

on a continuing basis Defendants OFFICER GOMEZ, and JOHN DOE'S 1-5 in their duties to refrain from:

    (a) unlawfully and maliciously harassing Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

    (b) unlawfully and maliciously arresting, imprisoning and prosecuting Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

    (c) conspiring to violate the rights, privileges and immunities guaranteed to Mr. Dunlop by the Constitution and laws of the United States and the laws of the State of New York,

    (d) otherwise depriving Mr. Dunlop of his constitutional and statutory rights, privileges, and immunities.

157.  Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, COLGAN, had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants OFFICER GOMEZ and JOHN DOE'S had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

158.  Defendants KELLY, ESPOSITO, GRAHAM, COLGAN, are liable under the doctrine of *respondeat superior.*

159.  As a direct and proximate cause of the negligent and intentional acts of Defendants set forth in paragraphs above, Mr. Dunlop suffered physical injury, loss of income, and

Case 1:06-cv-00433-KMK-JCF   Document 49   Filed 08/27/2007   Page 32 of 39

severe mental anguish in connection with the deprivation of his constitutional and
statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution
of the United States and protected by 42 U.S.C. § 1983.

## AS FOR THE TENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C. § 1983 FOR CONSPIRACY

160. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in
paragraphs "1" to "15" above with the same force and effect as if herein set forth.

161. All Defendants (a) had an objective to be accomplished; (b) had an agreement on the
object or course of action; (c) preformed one or more unlawful overt acts; and (d) caused
Mr. Dunlop damages that were a direct result of those acts.

162. In furtherance of their object, Defendants did two or more overt acts against Mr.
Dunlop.

163. Those unlawful overt acts include, but are not limited to the following:  Defendants
advised and strategize, practices or customs of detaining the individuals arrested at the
RNC, without justification, in conditions that were deliberately cruel, inhumane,
unhealthy, dangerous, illegal and unconstitutional.

164. Just before and during the RNC, Defendants implemented this policy, practice or
custom, in an arbitrary and capricious manner, and in the absence of the existence of
probable cause, to arrest entire groups of people who were lawfully engaged in protected
First Amendment activity or were observing such activity, or were simply passing by at
the time arrests were being made.

165. Upon information and belief, on August 27, 2004, the day that Mr. Dunlop was
arrested, and at various times prior to that date, David Norcross, Chairman of the

Case 1:06-cv-00433-KMK-JCF     Document 49     Filed 08/27/2007     Page 33 of 39

Committee on Arrangements for the 2004 Republican National Convention stated on more than one occasion that the CITY OF NEW YORK and the Republican National Committee had met and discussed security for the RNC for at least a year prior to the convention.

166. Upon information and belief, on or before August 27, 2004, David Norcross had conversations with BLOOMBERG and other CITY OF NEW YORK officials regarding controlling the visibly negative publicity surrounding the RNC.

167. Upon information and belief, these conversations included but were not limited to the promulgation and implementation of a practice, tactic or strategy to keep visible signs of dissent and/or protest out of the public eye, out of the media, and off the streets of New York City. This included but was not limited to mass arrests of those in the vicinity of the protest and those who were peacefully observing the protest, the intimidation factor of police officers in full riot gear, the use of horses to disperse bystanders, the arrest and confinement of those charged with minor offenses instead of issuing desk appearance tickets so as to minimize the visible effect of dissenters, confiscation of bicycles and other personal property as "evidence", routing bystanders and observers to areas where they would be arrested unlawfully, and falsely arresting large groups of people without probable cause and then falsely prosecute these individuals with altered evidence.

168. Defendants knew or should have known that Mr. Dunlop was held for many hours in a holding cell that lacked adequate means whereby to adequately sit, rest and/or sleep, under inhumane conditions.

169. Defendants knew that their arrest policy surrounding the RNC was a refinement of the tactic employed recently by Defendants at other demonstrations which had recently taken

place in the City, including, *inter alia*, the February 15, 2003 anti-war march, *see Haus, et al., v. City of New York, et al.*, 03 Civ. 4915 (RWS), and the April 7, 2003 Carlyle Group protest, *see Larsen, et al., v. City of New York, et al.* 04 Civ. 665 (RWS), of using mass arrests to unlawfully suppress protected First Amendment conduct.

170. Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

171. Upon information and belief, Defendants agreed that the object or course of action was to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause, and maliciously charge and prosecute him with crimes.

172. Upon information and belief, Defendants conspired as herein alleged in or around October of 2003, at which time Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN, planned and agreed upon how to arrest, detain and confine individuals who were participating in, observing or within the vicinity of the RNC protests without probable cause and to knowingly and maliciously charge and prosecute Dunlop and others with crimes that they did not commit.

173. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN, and other members of the NYPD conspired as herein alleged in or around November of 2003, at which time Defendants planned and agreed upon how to mass arrest, detain and confine individuals without individualized

suspicion, who were within the vicinity of the RNC protests without probable cause and maliciously charge and prosecute Dunlop and others with crimes they did not commit.

174. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about November of 2003, at which time Defendants planned and agreed upon how to arrest, detain and confine individuals who were within the vicinity of the RNC protests without probable cause and maliciously charge and prosecute Dunlop and others with crimes they did not commit.

175. Upon information and belief, Defendants including but limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about January of 2004, at which time Defendants collaborated and conspired with the United States Secret Service and all planned and agreed upon how to arrest, detain and confine individuals who were within the vicinity of the RNC protests without probable cause and agree to maliciously charge and prosecute individuals without lawful justification.

176. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting which took place on or about February 19, 2004, at which Defendants (including but not limited to Deputy Inspector Matthew Pontillo) planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

177.  Upon information and belief, Defendants including but not limited to KELLY,
ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as
herein alleged at a meeting which took place on or about May 3, 2004, at which
Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others
in the vicinity of the RNC without probable cause and maliciously charge and prosecute
Dunlop and others with crimes.

178.  Upon information and belief, Defendants including but not limited to KELLY,
ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as
herein alleged at a meeting on or about May 3, 2004, at which Defendants collaborated
and conspired with the United States Secret Service and all planned and agreed upon how
to conduct mass arrests, detain and confine Dunlop and others in the vicinity of the RNC
without probable cause and maliciously charge and prosecute Dunlop and others with
crimes.

179.  Upon information and belief, Defendants, including but not limited to KELLY,
ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as
herein alleged at a meeting on or about July 21, 2004, at which Defendants collaborated
and conspired with the United States Secret Service and all planned and agreed upon how
to conduct mass arrests, detain and confine Dunlop and others in the vicinity of the RNC
without probable cause and maliciously charge and prosecute Dunlop and others with
crimes.

180.  Upon information and belief, Defendants including but not limited to KELLY,
ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as
herein alleged at a meeting which took place on or about August 25, 2004, at which

Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

181. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting or meetings, the dates of which are as yet unknown, at which Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

182. Defendants including but not limited to the CITY OF NEW YORK, OFFICER GOMEZ, DOES and WILLIAMS, along with MORGANTHAU and CONCANNON, conspired in or around September 2004 to create, manufacture and fabricate knowingly false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights and to maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed. This includes but is not limited to a the creation of a plan and decision by including but not limited to the CITY OF NEW YORK, DOES and WILLIAMS, along with MORGANTHAU and CONCANNON, to create a fabricated video tape, claiming to be evidence of Mr. Dunlop's unlawful acts which was used in the criminal case against Mr. Dunlop.

183. In or around September 2004, scenes showing Mr. Dunlop behaving peacefully and lawfully were removed from the videotape by WILLIAMS, CITY OF NEW YORK, and/or the NYPD Technical Assistance and Response Unit (TARU), MORGANTHAU, ADA CONCANNON, in furtherance of their conspiracy, and who then submitted this

fabricated tape as evidence against Mr. Dunlop so as to unlawfully deprive him of his rights.

184. Defendants including but not limited to WILLIAMS, and the CITY OF NEW YORK along with MORGANTHAU and CONCANNON, had a duty not to create and manufacture evidence against Mr. Dunlop so as to deprive him of his constitutional rights.

185. Defendants CITY OF NEW YORK had a duty to ensure that employees, servants, and agents are properly trained and supervised so as to not create false evidence against defendants. to ensure that acts such as manufacturing of false evidence would be interceded and prevented, and to train its employees, servants and agents to turn over *Brady* material.

186. Defendants are liable under the doctrine of *respondeat superior*.

187. As a direct result of Defendants' acts, Dunlop suffered harm and damages that are a direct result of those acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dunlop requests relief as follows:

(a) Compensatory damages against Defendants jointly and severally for all causes of action: past and future, including, but not limited to pain and suffering, emotional distress, economic losses including lost wages and medical expenses, violation of rights and other losses and injuries, the full extent is still undetermined in an

Case 1:06-cv-00433-KMK-JCF    Document 46    Filed 08-27-2007    Page 39 of 39

amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(b)     Punitive damages against the Defendants, jointly and severally for all causes of action in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(c)     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and the Court's inherent power;

(d)     Prejudgment interest as allowed by law;

(d)     Such other relief, as is just and proper under the circumstances.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

Dated:  August 27, 2007

Respectfully Submitted,

KURLAND, BONICA & ASSOCIATES, P.C.
f/k/a/ KURLAND & ASSOCIATES, P.C.

Gina M. Bonica, Esq. (GB-6615)
Attorneys for Plaintiff
304 Park Avenue South, Suite 206
New York, NY 10010
212.253.6911