# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

―――――――――――

N⁰ 06 Civ. 0433 (RJS)

―――――――――――

ALEXANDER DUNLOP,

Plaintiff,

VERSUS

THE CITY OF NEW YORK, *ET AL.*,

Defendants.

―――――――――――

MEMORANDUM AND ORDER
May ___, 2008

―――――――――――

RICHARD J. SULLIVAN, District Judge:

Plaintiff Alexander Dunlop brings this action against defendants the City of New York ("the City"), Mayor Michael Bloomberg, Commissioner of the New York City Police Department ("NYPD") Raymond Kelly, Chief Joseph Esposito, Deputy Chief Thomas Graham, Deputy Chief John Colgan, Officer Maya Gomez, several unnamed police officers, New York County District Attorney Robert Morgenthau, Assistant District Attorney Willa Concannon, Ilise Williams, an employee of the New York County District Attorney's Office ("NYCDA"), and the Hudson River Park Trust. Plaintiff alleges violations of his civil rights pursuant to 42 U.S.C. § 1983 and state common law claims.

Specifically, plaintiff asserts, *inter alia*, claims for malicious prosecution, assault and battery, false arrest, false imprisonment, and conspiracy to violate his civil rights arising from his arrest and detention during the Republican National Convention (the "Convention"), which was held in New York City in the summer of 2004.

Defendants now move to dismiss plaintiff's conspiracy claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motion is granted in part and denied in part.

I. BACKGROUND

A. The Facts

The following facts are taken from the Third Amended Complaint ("SAC") and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding defendants' motion and construes them in the light most favorable to plaintiff, the non-moving party. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The Court recites only those facts necessary to resolve the instant motion directed at plaintiff's conspiracy claims.

1. Plaintiff's Arrest and Detention

On August 27, 2004, plaintiff was arrested by officers of the New York City Police Department ("NYPD") while he was observing — but not participating in — a protest during the Convention, which was being held at that time in New York City. (TAC ¶¶ 27-34.) Plaintiff alleges that the police lacked probable cause for his arrest. (*Id.* ¶ 26.) Moreover, plaintiff asserts that, during the course of his arrest, he was assaulted by "several officers in riot gear" who "grabbed him by the neck," "twisted" his arm, and pushed him to the ground.[1] (*Id.* ¶ 39.)

Thereafter, according to plaintiff, he was wrongfully detained by police in a "police vehicle" for over "one and a half hours" (*id.* ¶ 47), held overnight in a holding facility located at Pier 57 on the west side of Manhattan — where "a chemical-like smell . . . caused [plaintiff] to feel ill" (*id.* ¶¶ 52, 54) — and then detained, until 6:30 p.m. the following day, in a holding cell located at 100 Centre Street in lower Manhattan. (*Id.* ¶¶ 61, 63). Following his release, plaintiff alleges that he was unlawfully charged in New York State criminal court with "Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit, and Resisting Arrest." (*Id.* ¶ 64.)

2. The Conspiracy Allegations

Plaintiff asserts that defendants engaged in two separate conspiracies, which the Court shall hereinafter refer to, respectively, as the "arrest conspiracy" and the "video conspiracy."

a. The Arrest Conspiracy

Plaintiff alleges that the arrest conspiracy consisted of a conspiracy among the City, and the defendant police officials — namely, Commissioner Kelly, Chief Esposito, Deputy Chief Colgan, and Deputy Chief Graham (hereinafter, the "Police defendants") — "to violate the constitutional rights of those in or around the RNC protests by designing and implementing a plan to arrest those in the vicinity of the RNC protest[s] . . . in violation of their constitutional rights." (*Id.* ¶ 66.) Moreover, in several instances in the TAC, plaintiff conclusorily asserts that the Republican National Party (the "Party") — which is not a defendant in this action — also joined in the arrest conspiracy. (*See id.* ¶¶ 66, 88, 90.)[2] The only detailed factual allegations

---

[1] It is not clear whether plaintiff asserts that Officer Gomez was one of the arresting officers. Plaintiff does assert, however, that Officer Gomez was told by another NYPD officer that plaintiff was her "arrest," and that Gomez is "listed as the arresting officer on all applicable paperwork . . . . (*See* TAC ¶¶ 16, 44-45.)

[2] The Court notes that, in ¶ 66 of the TAC, plaintiff asserts that the "RNC" conspired with the City and the Police defendants. While the TAC defines the "RNC" as shorthand for the "Republican National Convention"

regarding the Party's alleged participation in the conspiracy are presented in three paragraphs concerning the conduct of a Party official, David Norcross, prior to the Convention (hereinafter, the "Norcross allegations").[3]   (*See id.* ¶¶ 165-67.)

Specifically, plaintiff alleges, "upon information and belief," that, prior to the Convention, Norcross (1) had "met" with "the City of New York" and "discussed security for [the Convention]" for "at leas[t] a year" (*id.* ¶ 165); and (2) "had conversations" with Mayor Bloomberg and "other City of New York officials regarding controlling the visibly negative publicity surrounding the [Convention]" (*id.* ¶ 166). Plaintiff asserts that these "conversations included but were not limited to the promulgation and implementation of a practice, tactic or strategy to keep visible signs of dissent . . .out of the public eye . . . , and off the streets of New York City[;] . . . [to make] mass arrests of those in the vicinity of the protest . . . ; the intimidation factor of police officers in full riot gear, the use of horses to disperse bystanders, the arrest and confinement of those charged with minor offenses instead of issuing desk appearance tickets . . . , confiscation of bicycles and other personal property as 'evidence', routing bystanders and observers to areas where they would be arrested unlawfully, and falsely arresting large groups of people without probable cause and then falsely prosecute [sic] these individuals with altered evidence." (*Id.* ¶ 167.) However, other than the above-cited allegations

regarding plaintiff's arrest and detention, the TAC fails to offer any additional details regarding these topics of conversation, or to describe if, when, or how the policies at issue were actually used by the City during the Convention.

Plaintiff also offers two conclusory assertions that, during meetings that occurred, respectively, in January 2004 and on July 21, 2004, "the United States Secret Service" also joined in the arrest conspiracy with certain defendants (hereinafter, the "Secret Service allegations"). (*See id.* ¶¶ 175, 179.) Specifically, plaintiff asserts that the Police defendants, and "other members of the NYPD," "collaborated and conspired with the United States Secret Service and [] planned and agreed upon how to arrest, detain and confine individuals . . . without probable cause and [] to maliciously charge and prosecute individuals without lawful justification." (*Id.* ¶ 175; *see id.* ¶ 179.)

### b. The Video Conspiracy

Plaintiff alleges that the video conspiracy consisted of "a plan and conspiracy" by the NYCDA, the NYPD, the NYPD's "Technical Assistance and Response Unit" ("TARU") and Williams to "alter, fabricate, and manufacture" false evidence to be used against plaintiff. (*Id.* ¶¶ 69-70.) Specifically, plaintiff asserts that an unnamed police officer, Williams, Morgenthau, and Concannon — "acting at the behest and in concert with [] each other" — allegedly "removed" from a videotape several "images" that showed plaintiff "behaving peacefully" at or around the time of his arrest. (TAC ¶ 69; *see id.* ¶114.) In regard to Williams, plaintiff identifies her as "an employee of the City of New York and the [NYCDA], [who] is responsible, in whole and/or in part for the creation of false evidence which was used

---

(TAC ¶ 1), the Court construes the allegations in ¶ 66 as relating to a conspiracy among the named defendants and the Party.

[3] Specifically, plaintiff identifies Norcross as the "Chairman of the Committee on Arrangements for the 2004 Republican National Convention." (TAC ¶ 165.)

against [plaintiff]" (*id.* ¶ 20), and "has been identified by Morgenthau as an individual involved in the handling and editing" of the allegedly altered videotape (*id.* ¶ 74). Plaintiff asserts that "the removal of these images" was done in furtherance of a conspiracy to "maliciously prosecute" plaintiff and to "deprive him of his constitutional rights." (*Id.* ¶ 75.) Plaintiff also asserts that, in furtherance of the conspiracy, Concannon presented the altered videotape to the state court as "a complete and unedited version" of the events preceding and including plaintiff's arrest.[4] (*Id.* ¶ 76.) According to plaintiff, "[a]s a result" of the video conspiracy, he "was unlawfully arrested and held against his will and sustained bodily and emotional injury . . . ." (*Id.* ¶ 85.)

While the caption of the TAC lists Morgenthau and Concannon as defendants, and asserts that both defendants participated in the alleged video conspiracy. (*see, e.g., id.* ¶¶ 69-74, 83-84, 114-19, 182-83), plaintiff has, in fact, dismissed all claims against those defendants. Prior to the filing of the TAC on August 27, 2007, plaintiff executed a stipulation of dismissal on June 5, 2007, wherein plaintiff withdrew "all claims against defendants Morgenthau and Concannon" and dismissed such claims "with prejudice" pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. (June 5, 2007 Stipulation, at 1.) At oral argument regarding the instant motion, plaintiff's counsel reaffirmed that any and all claims against Morgenthau and Concannon had been withdrawn by plaintiff:

"I certainly would say on the record that the District Attorney's office has been substituted out and Ilise Williams has been substituted in. . . . [W]e've entered into a separate agreement with the District Attorney's office to do so."[5] (*Id.*) Accordingly, on the basis of the June 5 stipulation and plaintiff's representations to this Court, the conspiracy claims against Morgenthau and Concannon are hereby dismissed.[6]

### B. Procedural History

On December 16, 2005, plaintiff filed an amended complaint in this action in the Supreme Court of the State of New York, New York County.[7] On January 19, 2006, the

---

[4] Plaintiff asserts that the video conspiracy was revealed when, several "[m]onths into the case," he obtained a second version of the videotape that demonstrated that the first videotape "had been edited in two places, . . . removing images showing [plaintiff] behaving peacefully, not obstructing traffic, not parading nor attempting to avoid arrest." (*Id.* ¶ 80.)

[5] At oral argument, plaintiff's counsel failed to offer a satisfactory explanation for the inclusion of Morgenthau and Concannon in the caption notwithstanding the execution of a stipulation dismissing those defendants from the action. Plaintiff's counsel merely stated that "when we made the amendments [to the Second Amended Complaint], for sake of keeping it as simple as possible, we simply changed the additions that we were given leave to do . . . . We did nothing else to the complaint." (Feb. 6, 2008 Tr. at 56.)

[6] Plaintiff also names the Hudson River Park Trust (the "Trust") as a defendant in the caption of the TAC. The sole allegation relating to the trust is that it is a "joint New York State and New York City organization whose mission is to design, build, and operate a five-mile park from Battery Park to 59th Street and is and at all times herein the owner of Chelsea Piers." (TAC ¶ 21.) Plaintiff has failed to assert any additional allegations regarding the Trust in the body of the TAC. Therefore, to the extent that plaintiff seeks to assert a conspiracy claim against the Trust, that claim is dismissed on the ground that plaintiff has failed to offer *any* allegations regarding the Trust's participation in the alleged conspiracies.

[7] It is not clear whether the "Amended Complaint" filed in New York State court was preceded by an initial complaint, or whether it simply bears an inaccurate title. Neither party has clarified this issue in their

City removed the action to this Court. Defendants filed an answer to the amended complaint on April 11, 2006. By Opinion and Order dated October 4, 2006, the Honorable Kenneth M. Karas, District Judge, denied plaintiff's motion to remand this action to state court.[8] On January 16, 2007, plaintiff filed the Second Amended Complaint. Defendants did not file an answer to the Second Amended Complaint and, instead, on June 5, 2007, submitted the instant motion to dismiss plaintiff's conspiracy claims. Plaintiff filed the TAC on August 27, 2007. On February 6, 2008, the Court heard oral argument regarding defendants' motion. At oral argument, defendants indicated that their arguments directed against plaintiff's conspiracy claims as pled in the Second Amended Complaint also required dismissal of those pled in the TAC. Nevertheless, following oral argument, the parties submitted supplemental briefing regarding the viability of plaintiff's conspiracy claims in the TAC.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

In *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1965 (2007), the Supreme Court addressed the standard for review of a Rule 12(b)(6) motion to dismiss. The Court held that, in order to withstand such a motion, the "[f]actual allegations" contained in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (internal citation omitted). The Court also observed that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations

papers.

[8] This case was reassigned to the undersigned on October 2, 2007.

in the complaint." *Id.* at 1969. Ultimately, the Court observed, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Therefore, in order to withstand a Rule 12(b)(6) motion to dismiss a complaint alleging violations of the plaintiff's civil rights under § 1983, the complaint must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (assessing the viability of the plaintiff's civil rights claims under *Bivens* and concluding, *inter alia*, that "all of the Plaintiff's allegations respecting the personal involvement of these Defendants are entirely plausible, without allegations of additional subsidiary facts) (internal citation omitted); *accord Benzman v. Whitman*, — F.3d — , 2008 WL 1788401, at *6 (2d Cir. April 22, 2008) (considering the plaintiffs' *Bivens* claims for alleged violations of their civil rights, and observing that, in *Twombly*, the Supreme Court "somewhat modified the previously applicable standard for assessing the sufficiency of complaints in civil cases and ruled that if a claim was not plausible, it would have to be supported by an allegation of some subsidiary facts to survive a motion to dismiss") (citing *Twombly*, 127 S.Ct. at 1965 and *Iqbal*, 490 F.3d at 157-58); *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (applying the *Twombly* plausibility standard to the plaintiff's § 1983 claims against the City). Therefore, plaintiff's conspiracy claims must be dismissed pursuant to Rule 12(b)(6) if he "ha[s] not nudged [his] claims across the line from conceivable to plausible," *Twombly*, 127 S.Ct. at 1974, by pleading sufficient "subsidiary facts" in

support thereof, *Benzman*, — F.3d — , 2008 WL 1788401, at *6.

### B. Civil Rights Conspiracy

In order to survive a motion to dismiss on his § 1983 conspiracy claim, plaintiff must allege (1) an agreement between two or more state actors, or "a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. " *Ciambrello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Id.* at 325 (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)); *Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983 . . . ."). Moreover, it is well-settled that, although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, [] the pleadings must present facts tending to show agreement and concerted action." *McIntyre v. Longwood Central School Dist.*, No. 07 Civ. 1337 (JFB), 2008 WL 850263, at *11 (E.D.N.Y. Mar. 27, 2008) (internal quotation marks and citations omitted).

The Court briefly addresses the continued viability of the *Ciambrello* standard in this Circuit. In *Toussie v. Powell*, the Second Circuit declined to "consider whether [its] previous statements on the pleading requirements for [civil rights] conspiracy allegations remain valid in light of two subsequent Supreme Court decisions, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)." 323 F.3d 178, 185 n.3 (2d Cir. 2003) (citing, *inter alia*, *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990) ("It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.")). In the two Supreme Court decisions referenced in *Toussie*, the Court "rejected judicially established pleading requirements on the principle that where the Federal Rules of Civil Procedure do not specify heightened pleading requirements, Rule 8(a)(2)'s liberal system of 'notice pleading' governs." *Id.* (internal citation omitted); *see also Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 513 n.18 (S.D.N.Y. 2003) (declining to "resolve the apparent tension between the pleading standards set forth in *Ciambriello/Pangburn* and *Swierkiewicz*").

Nevertheless, following *Toussie* and the two Supreme Court opinions cited therein, courts in this Circuit have continued to evaluate the viability of conspiracy claims pursuant to the standard enunciated in *Ciambrello* — namely, that "complaints containing only conclusory, vague, or general allegations . . . are properly dismissed." 292 F.3d at 325; *see, e.g.*, *Walker*, 430 F.3d at 564 n.5 ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983 . . . .") (citing *Ciambrello*); *Farbstein v. Hicksville Public Library*, 254 Fed. Appx. 50, 51, 2007 WL 3407434, at *1 (2d Cir. Nov. 15, 2007) (internal citation

omitted)[9]; *Burke v. APT Found.*, 509 F. Supp. 2d 169, 173-74 (D. Conn. 2007) (dismissing a civil rights conspiracy claims pursuant to the *Ciambrello* standard); *Williams v. New York City Hous. Auth.*, No. 05 Civ. 2750 (DC), 2007 WL 4215876, at *5 (S.D.N.Y. Nov. 30, 2007) (same); *see also Olmeda v. Babbits*, No. 07 Civ. 2140 (NRB), 2008 WL 282122, at *6 (S.D.N.Y. Jan. 25, 2008) ("Given [his] conclusory and unsupported allegations, [the plaintiff] has not met his burden of pleading a conspiracy."). Moreover, in 2007, the Supreme Court held in *Bell Atlantic v. Twombly* that a plaintiff must go beyond mere "labels and conclusions" in stating the grounds on which he is entitled to relief, and emphasized that "a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1973-74. The Court specifically noted that "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized . . . that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements." *Id.* at 1973; *see In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 564 (S.D.N.Y. 2005) ("While *Swierkiewicz* made clear that pleading a *McDonnell Douglas prima facie* case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it contained only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based.")

---

[9] The Court notes that the decision in *Farbstein* is an unpublished summary order and, therefore, "do[es] not have precedential effect." Local Rules of the Second Circuit, Rule 0.23. Nevertheless, the decision is instructive as to the continued viability of the rule, set forth in *Ciambrello* and *Walker*, that vague or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss.

(quoting *Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1270-71 (11th Cir. 2004)).

Therefore, pursuant to *Twombly* and the overwhelming weight of authority in this Circuit, this Court applies the *Ciambrello* standard in evaluating the sufficiency of the conspiracy claims in the TAC under the Rule 12(b)(6) standard. Indeed, courts' continued application of the *Ciambrello* standard notwithstanding Rule 8(a)'s "notice pleading requirement," *see Toussie*, 292 F.3d at 325, is in accord with the "critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (vacating the district court's dismissal of a complaint pursuant to Rule 8(a), but noting that "a series of 12(b)(6) motions to dismiss would lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against him"). In this regard, and in light of the Supreme Court decisions referenced in *Toussie* as well as more recent Supreme Court and Second Circuit authority, the Court notes that it does not construe the decision in *Ciambrello* as imposing a "heightened pleading requirement[]" for civil rights conspiracy claims, *Toussie*, 323 F.3d at 185, nor a requirement that plaintiff must plead "specific facts" to support his claim, *see Boykin v. KeyCorp*, — F.3d — , 2008 WL 817111, at *22 (2d Cir. Mar. 27, 2008) ("[B]oth *Twombly* and [*Erickson v. Pardus*, 127 S.Ct. 2197 (2007)] explicitly disavow that Rule 8(a) requires any plaintiff . . . to plead 'specific facts.'"). Rather, it reads *Ciambrello* as informing this Court's understanding of the type of factual allegations that are minimally sufficient to state a "plausible" conspiracy claim under § 1983.

With these principles in mind, the Court turns to defendants' motion.

## III. DISCUSSION

In regard to both the arrest conspiracy and the video conspiracy claims, plaintiff offers several conclusory allegations that defendants conspired to violate plaintiff's rights. (*See* TAC ¶¶ 2, 3, 51, 152, 161, 163, 164.) These allegations, by themselves, fail to state a conspiracy claim that is plausible on its face. They do not offer sufficient factual details regarding an agreement among defendants to violate the civil rights of plaintiff, or anyone else. Rather, they constitute the type of "vague, conclusory, and general" allegations that, standing alone, are routinely found lacking under the Rule 12(b)(6) standard. *See Ciambrello*, 292 F.3d at 325; *Olmeda*, 2008 WL 282122, at *6.

However, apart from these conclusory assertions, the TAC includes several additional factual allegations that, according to plaintiff, support plausible conspiracy claims. For the following reasons, the Court finds that (1) plaintiff has failed to amplify his conclusory allegations regarding the arrest conspiracy in order to state a conspiracy claim that is plausible on its face, but (2) plaintiff has sufficiently alleged the existence of the video conspiracy in order to withstand defendants' motion to dismiss.

### 1. Collective Allegations of Conspiracy

As an initial matter, the Court notes that, at several points throughout the TAC, plaintiff alleges conduct by "Defendants, including but not limited to," and then proceeds to detail conduct by specific defendants named in this action.[10] (*See, e.g.*, TAC ¶¶ 110-11, 119.) "While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be 'sufficient to put each [d]efendant on notice of what they allegedly did or did not do.'" *Howard v. Mun. Credit Union*, No. 05 Civ. 7488 (LAK), 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008) (quoting *Clayton v. City of Middletown*, 237 F.R.D. 538, 540 (D. Conn. 2006) (denying motion to dismiss conspiracy claims where the complaint asserted allegations against defendants collectively but also presented allegations that "speak directly and in detail to the actions" of the moving defendant individually) and *McCray v. City of New York*, No. 03 Civ. 9685 (DAB), 2007 WL 4352748, at *22 (S.D.N.Y. Dec. 11, 2007)). Therefore, the Court finds that, absent sufficient factual allegations elsewhere in the TAC, paragraphs in the TAC containing collective allegations do nothing, by themselves, to enhance the plausibility of plaintiffs' conspiracy claims as to any defendants other than those identified in the paragraph at issue.

### 2. The Arrest Conspiracy

The Court finds that the above-cited allegations regarding the arrest conspiracy fail to support a conspiracy claim that is plausible on its face. In so ruling, the Court recognizes that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct,

---

[10] In several paragraphs in the TAC, plaintiff also alleges conduct by "Defendants, including but limited to," thus omitting the "not" found in this phrase elsewhere in the complaint. (*See, e.g.*, TAC ¶¶ 108, 175.) Drawing all reasonable inferences in plaintiff's favor, the Court construes these allegations as including the "but *not* limited to" language more commonly found in the TAC.

evidence." *Pangburn*, 200 F.3d at 72 (internal citation omitted). Nevertheless, at this stage of the case, plaintiff is not relieved of his obligation to allege facts — beyond mere "conclusory, vague, or general allegations" — sufficient to plausibly assert the existence of an agreement between a state actor and a private party, or among several state actors to inflict an unconstitutional injury. *Ciambrello*, 292 F.3d at 324-25. Plaintiff's allegations in the TAC regarding the arrest conspiracy fail to satisfy this standard. Specifically, the TAC fails to allege a plausible conspiracy claim arising from (1) Norcross' or other Party officials' interactions with City officials prior to the Convention; (2) conclusory, general, and vague allegations regarding the Secret Service's participation in a conspiracy with the NYPD; or (3) an allegedly unlawful agreement among employees of a single municipal entity.

### a. The Norcross Allegations

The Norcross allegations fail to sufficiently allege an illegal agreement between Norcross or the Party with a state actor to falsely arrest or to maliciously prosecute plaintiff. Indeed, even assuming *arguendo* that Norcross is an agent of the Party — a fact not alleged in the TAC, but reasonably inferred therefrom — the fact that Norcross "met" with "the City of New York" (*id.* ¶ 165), "discussed security" for the Convention (*id.*), and "had conversations" with Mayor Bloomberg and other unnamed officials regarding security issues and/or tactics (*id.* ¶ 166), does not support a plausible claim that Norcross or the Party reached an *agreement* with any other individual or state entity, let alone an agreement to violate plaintiff's civil rights. Rather, these allegations merely indicate that Norcross interacted, in some manner, with Mayor Bloomberg and other City officials. However,

"[a]lleging merely that a private party regularly interacts with a state actor," as plaintiff did in this case, "does not create an inference of agreement to violate a plaintiff's rights." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (internal citations omitted); *see Williams*, 2007 WL 4215876, at *6 (finding that, where the plaintiff alleged merely that a private party "witnessed" an allegedly unconstitutional act by a state actor, the complaint failed to "allege facts to support the existence of an agreement" between the private party and the state); *see also Rzayeva v. United States*, 492 F. Supp. 2d 60, 82 (D. Conn. 2007) ("Although Plaintiffs generally assert that a network of conspirators exists among [the named defendants] and others to deprive Plaintiffs of their civil rights . . . , they allege no facts to establish that the private defendants entered an agreement with the state actors to inflict a particular unconstitutional injury upon them.").

Moreover, the conclusory allegations in ¶¶ 88 and 90 of the TAC — wherein plaintiff baldly asserts that defendants "conspired with the Republican National Party" to falsely arrest individuals "in the vicinity" of protests during the Convention (*id.* ¶ 88), and to "implement policies and procedures permitting the unlawful arrest of peaceful individuals, including [plaintiff]" (*id.* ¶ 90) — fail to support a plausible claim that the Party joined in the arrest conspiracy. Indeed, other than the Norcross allegations, plaintiff fails to offer *any* additional details regarding the Party's involvement in the alleged conspiracies identified in the TAC.

Therefore, the TAC fails to provide a sufficient basis to infer that Norcross, or any other Party official, reached an agreement with the City prior to the Convention to violate the civil rights of plaintiff or anyone else. Thus, although plaintiff alleges "*upon*

*information and belief*" that defendants "agreed . . . to arrest, detain and confine [plaintiff] and others in the vicinity of the RNC without probable cause" (TAC ¶ 171 (emphasis added)), the TAC fails to offer a sufficient factual basis for this assertion in order to state a plausible claim for relief. *See Miller v. City of New York*, No. 05 Civ. 6024 (SJ), 2007 WL 1062505, at *4 (E.D.N.Y. Mar. 30, 2007) ("[W]hile facts and evidence solely within a defendant's possession and knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all.") (citing, *inter alia*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004)); *see DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based.").

Accordingly, because the Norcross allegations do not plausibly support the existence of an illegal agreement and/or a meeting of the minds among the Party and a state actor arising from Norcross' alleged meetings, discussions and "conversations" (TAC ¶¶ 165-66), there remains an absence of any "facts consistent with" the conclusory assertions in the TAC regarding an agreement to violate plaintiff's civil rights. *Twombly*, 127 S.Ct. at 1969. As set forth below, the remaining portions of the TAC do nothing to cure this defect in the pleading.

### b. The Secret Service Allegations

The Court finds that the Secret Service allegations also fail to state a conspiracy claim that is plausible on its face. The allegations at issue merely assert that, on two separate occasions, the Secret Service, the Police defendants, and "other members of the NYPD," "all planned and agreed" to falsely arrest, and maliciously prosecute "individuals . . . within the vicinity of the [Convention] protests . . . ." (TAC ¶¶ 175, 179.) However, plaintiff fails to offer any additional details regarding these meetings or the parties' alleged agreement, such as the representatives of the Secret Service in attendance at such meetings, or the role played by the Secret Service in the alleged conspiracy. Therefore, the Court finds that these allegations fail to support a plausible claim that the Secret Service and the NYPD reached an agreement to violate the civil rights of plaintiff, or anyone else. Rather, they constitute the type of "vague, conclusory, and general" allegations that are insufficient to satisfy the Rule 12(b)(6) standard in this context. *See Ciambrello*, 292 F.3d at 325; *Olmeda*, 2008 WL 282122, at *6.

### c. The Alleged Conspiracy Among the Police Defendants, the City, and Mayor Bloomberg

The remainder of plaintiff's allegations regarding the arrest conspiracy consist solely of assertions regarding conspiratorial conduct by "Defendants, including but not limited to" the Police defendants, the City, and/or Mayor Bloomberg. However, such allegations cannot, as a matter of law, state a conspiracy claim due to the intracorporate conspiracy doctrine.

"The intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Rodriguez v. City of New York*, No. 05 Civ. 5117 (JFB), 2008 WL 420015, at *25 (E.D.N.Y. Feb. 11, 2005) (citing *Farbstein*, 2007 WL 3407434, at *1 (affirming dismissal of a conspiracy claim "at the first step of analysis" because the

complaint made reference only to employees of same corporation)); *accord Herrman v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under § 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[ ] and employees, each acting within the scope of his employment."); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); *see also Albiero v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir. 1997) ("A municipality acts only through agents, and that these agents have agreed (= 'conspired') on a course of action does not present a constitutional problem.").

Here, other than the allegations discussed *supra*, the entirety of plaintiff's allegations regarding the arrest conspiracy refer to an illegal agreement solely among some and/or all of the Police defendants — namely, Commissioner Kelly, Chief Esposito, Deputy Chief Colgan, and Deputy Chief Graham (*see* TAC §§ 171-81) — as well as the City and/or Mayor Bloomberg (*see id.* ¶¶ 50, 66, 88, 90, 94, 95). It is beyond doubt that the Police defendants are all employees of a single municipal entity — the City, and, more narrowly, the NYPD — and, therefore, are legally incapable of conspiring with each other. *See Herrman*, 576 F.2d at 459.

Similarly, plaintiff's allegations regarding the participation of the "City of New York" and/or Mayor Bloomberg in the arrest conspiracy cannot, as a matter of law, support a conspiracy claim due to the intracorporate conspiracy doctrine. Indeed, it is well-settled that the doctrine bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity, at least where the complaint fails to allege that the various entities were effectively acting as separate

entities in carrying out the alleged conspiracy. *See, e.g.*, *Jessamy*, 292 F. Supp. 2d 498, 514 (dismissing the plaintiffs' conspiracy claims against, *inter alia*, the Commissioner of Development and the Mayor of the City of New Rochelle); *McEvoy v. Spencer*, 49 F. Supp. 2d 224, 226 (S.D.N.Y. 1999) (finding that the plaintiff's conspiracy claim against, *inter alia*, the Police Commissioner and an assistant Corporation Counsel for the City of Yonkers was barred by the doctrine, and noting that, although the defendants "work[ed] in different departments of the City," that fact was "of no more moment in the municipal context than it would be if the individual defendants worked for the Mainframe and Personnel Divisions of IBM and were accused of conspiring with their employer corporation to discriminate against another employee"); *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y. 1995) (dismissing civil rights conspiracy claim against, *inter alia*, the Town Supervisor as well as several members of the Town Council where "their acts in furtherance of the conspiracy were solely within the scope of their duties as officials or employees of the Town"). Here, plaintiff has failed to present any allegations that would support a plausible inference that the NYPD and the Mayor, or any other City entity, were effectively acting as separate entities in carrying out the alleged video conspiracy.[11] Rather, the allegations in the

---

[11] Moreover, even assuming *arguendo* that the intracorporate conspiracy doctrine did not bar plaintiff's conspiracy claims against the City and/or Mayor Bloomberg, the Court finds that these allegations do not support a plausible conspiracy claim because they are wholly conclusory and vague. The allegations set forth in ¶¶ 50, 66, 88, 90, 94, and 95 of the TAC fail to offer any details from which this Court could plausibly infer that the City, as an entity, and/or Mayor Bloomberg reached an agreement with another state actor or a private party to violate the civil rights of plaintiff or anyone else.

TAC clearly depict the arrest conspiracy as the product of "a single corporation acting exclusively through its own directors, officers, and employees . . . ." *Herrman*, 576 F.2d at 459 (affirming the dismissal of a conspiracy claim under § 1985(3)); *see also Girard*, 530 F.2d at 71 (applying the doctrine to bar a conspiracy claim concerning "one single business entity with a managerial policy implemented by the one governing board" of the defendant corporation). Thus, the intracorporate conspiracy doctrine applies to plaintiff's arrest conspiracy claim.

Yet, "[a]n exception to the intracorporate conspiracy doctrine exists where the individuals are motivated by an independent personal stake in achieving the corporation's objective." *Little v. City of New York*, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (internal quotation marks and citations omitted). In other words, plaintiff can avoid the application of the intracorporate conspiracy doctrine by alleging that "the individual defendants were motivated by an[] independent personal stake in achieving the corporation's objective" rather than "merely carrying out the corporation's managerial policy." *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 71 (2d Cir. 1976) (internal quotation marks and citations omitted); *see, e.g.*, *Bhatia v. Yale Univ.*, No. 06 Civ. 1769 (SRU), 2007 WL 2904205, at *2 (D. Conn. Sept. 30, 2007) ("An exception applies where the plaintiff can demonstrate the employees were acting in their personal interests, wholly and separately from the corporation.") (internal citations omitted).

Having carefully reviewed the relevant allegations in the TAC, the Court finds that plaintiff has failed to allege any facts from which it could be reasonably inferred that, in conducting the alleged arrest conspiracy, the Police defendants, the City, or Mayor

Bloomberg were motivated by some "personal stake" rather than carrying out the City's purportedly unlawful policies. *Girard*, 530 F.2d at 71; *cf. Roniger v. McCall*, 22 F. Supp. 2d 156, 168 (S.D.N.Y. 1998) (applying the "personal interest" exception where the plaintiff specifically alleged that the defendant official was motivated by his "personal stake" in gaining re-election to public office). Indeed, plaintiff fails to offer any allegations as to the *individual* motivations of the defendants purportedly engaged in the arrest conspiracy. Rather, throughout the TAC, plaintiff specifically characterizes the violation of his civil rights as an organizational objective held by the various City entities allegedly acting in concert, which was carried out by the individual defendants in the course of their official duties as police officers or City officials. (*See, e.g.*, TAC ¶¶ 23 ("[A]t all time relevant herein, Defendants Bloomberg, Kelly, Esposito, Colgan, Graham, Gomez, and Doe[], have acted . . . in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD . . . ."), 94-95, 99 ("The conduct occurred while the NYPD and Corrections [officers] . . . were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and the NYPD.").)

Accordingly, the Court finds that the remaining allegations regarding a conspiracy among the Police defendants, the City and/or Mayor Bloomberg to falsely arrest and to

maliciously prosecute plaintiff, or others, fails to state a claim for conspiracy under § 1983.

\*\*\*

Therefore, because the entirety of plaintiff's allegations regarding the arrest conspiracy fail to sufficiently allege facts that state a plausible conspiracy claim or avoid the bar of the intracorporate conspiracy doctrine, the Court dismisses the arrest conspiracy claim. Furthermore, the Court declines to grant plaintiff leave to replead the arrest conspiracy claim. It does not appear that plaintiff will be able to replead this claim in a manner sufficient to withstand a motion to dismiss. Moreover, plaintiff has had three prior opportunities to amend the complaint in this action, and has failed to indicate, in the event that defendants' motion was granted, that he wishes to file a fourth amended complaint. As the Second Circuit has observed, a district court is "not obliged" to *sua sponte* grant plaintiff leave to amend his complaint. *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) ("While we recognize that leave to amend should be freely granted . . . we will not 'deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought.'") (internal citation omitted). Thus, the Court finds that it would be inappropriate, under the circumstances of this case, to grant plaintiff leave to replead the arrest conspiracy claim. *In re Amer. Express Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (affirming the district court's dismissal without leave to replead where the plaintiffs had "amended their complaint twice before it was dismissed" and "they did not seek leave to replead in the district court in their opposition papers to defendants' motion to dismiss [or] by way of a formal motion").

### 3. The Video Conspiracy

#### a. Rule 12(b)(6)

The Court finds that plaintiff's allegations regarding the video conspiracy sufficiently state a conspiracy claim that, at this stage of the case, is plausible on its face.

As noted *supra*, in order to withstand defendants' motion, plaintiff must sufficiently allege (1) an agreement between two or more state actors, or "a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambrello*, 292 F.3d at 324-25 (internal citation omitted). In the TAC, plaintiff alleges that Williams and an unnamed police officer, among others, acted "in concert with [] each other" to "remov[e] evidentiary images" from a videotape that allegedly depicted plaintiff "behaving peacefully" during the Convention. (TAC ¶¶ 114; *see id.* ¶ 72.) Moreover, plaintiff alleges that this action was taken in furtherance of a "plan and conspiracy . . . to alter, fabricate, and manufacture knowingly false evidence to be used against [plaintiff] in violation of [his] constitutional rights" (*id.* ¶ 69), and that state prosecutors represented in court that the allegedly altered videotape was, in fact, "a complete and unedited version of the events" surrounding plaintiff's arrest (*id.* ¶ 76.) Finally, plaintiff asserts that "[a]s a result" of Williams' and others "illegal acts, [plaintiff] was unlawfully arrested and held against his will and sustained bodily and emotional injury as a result." (*Id.* ¶ 85.)

The Court finds that these allegations sufficiently allege a conspiracy claim that is plausible on its face. Specifically, plaintiff has alleged facts from which it could reasonably be inferred that (1) Williams

13

reached an agreement with, at a minimum, an unidentified police officer, and (2) that the alleged removal of images from the videotape constituted an "overt act done in furtherance of that goal . . . ." *Ciambrello*, 292 F.3d at 325.

Moreover, although it is a close question, the Court finds that, drawing all reasonable inferences in plaintiff's favor, the TAC also sufficiently alleges that defendants worked in concert to inflict an "unconstitutional injury" that cause damages to plaintiff. *Id.* at 325. Defendants assert that the allegedly altered videotape was not "used as evidence" against plaintiff in a court proceeding, and that "the charges against the plaintiff were dismissed by the [NYCDA] . . . before there could have been any violation of plaintiff's rights, or any damages, resulting from the use of the video as evidence." (Defs.' Reply Mem. at 2.) However, defendants fail to present any documentation in support of these assertions of which the Court would be able to take judicial notice, and there is no support in the TAC for defendants' assertions.

Therefore, in evaluating defendants' argument that the video conspiracy did not cause damages to plaintiff, the Court must take as true plaintiff's allegations in the TAC that the video conspiracy resulted in (1) plaintiff being "held against his will . . ." (TAC ¶ 85), and (2) the state prosecutor falsely representing to the state criminal court that the allegedly altered videotape was "a complete and unedited version of the events" surrounding plaintiff's arrest (*id.* ¶ 76). Accordingly, the Court finds that, although "[t]he manufacture of false evidence, in and of itself, . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right," *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000), the TAC sufficiently alleges that the object of the video

conspiracy was, beyond the mere preparation of fabricated evidence, to inflict an unconstitutional injury on plaintiff — namely, to use the altered videotape in a court proceeding that allegedly resulted in plaintiff being detained "against his will" (TAC ¶¶ 76, 85). *See Richardson v. City of New York*, No. 02 Civ. 3651 (JG), 2006 WL 2792768, at *5 (E.D.N.Y. Sept. 26, 2006) (finding, at the summary judgment stage, that there was an issue of fact as to whether plaintiff suffered a constitutional injury where it was undisputed that police officers fabricated evidence, "passed that evidence along to the Queens County District Attorney's office, and that as a result Richardson was indicted and prosecuted"); *cf. Landrigan v. City of Warwick*, 628 F.2d 736, 744-45 (1st Cir. 1980) ("[W]e do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws. If action is subsequently taken on the basis of that report, or if the report is disseminated in some manner, plaintiff's constitutional rights may well then be violated, and in that event a section 1983 action may lie.") (internal citations omitted).

b. The Intracorporate Conspiracy Doctrine

Defendants also argue that the intracorporate conspiracy doctrine bars plaintiff's video conspiracy claim. However, at this early juncture of the case, the Court cannot conclude, as a matter of law, that the intracorporate conspiracy doctrine bars plaintiff's video conspiracy claim.

Defendants argue that, because the video conspiracy allegedly involved concerted action between Williams and employees of the NYPD, "plaintiff cannot sustain a cause of action predicated upon City employees allegedly conspiring among themselves."

14

(Defs.' Mem. at 10.) However, defendants urge this Court to apply the intracorporate conspiracy doctrine in an overly broad manner that is not supported by any controlling or persuasive authority in this Circuit.

The Second Circuit has held that the intracorporate conspiracy doctrine bars a civil rights conspiracy claim where "the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees . . . ." *Herrman*, 576 F.2d at 459 (affirming the dismissal of a conspiracy claim under § 1985(3)); *see also Girard*, 530 F.2d at 71 (applying the doctrine to bar a conspiracy claim concerning "one single business entity with a managerial policy implemented by the one governing board" of the defendant corporation). Thus, district courts in this Circuit have routinely applied the doctrine to bar claims similar to the one addressed *supra* in regard to the arrest conspiracy — namely, conspiracy claims against two or more employees of a single municipal entity, or two or more municipal agencies within the City of New York. *See, e.g.*, *Rodriguez*, 2008 WL 420015, at *25; *Alfaro v. City of New York*, No. 03 Civ. 8206 (LTS), 2007 WL 258173, at *7 (S.D.N.Y. Jan. 29, 2007) ("Here, all the individual defendants in this matter are employees of the same institutional defendant, namely the City of New York. Thus, Defendants are entitled to judgment in their favor on Plaintiff's section 1985 conspiracy claim."); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 169 (S.D.N.Y. 1999) ("[T]here can be no claim of conspiracy [under § 1983] as [the defendants at issue] are all employees of the New York City Police Department.").

Here, plaintiff alleges that Williams was an "employee of the City of New York and the [NYCDA]" during the period at issue who was "responsible, in whole and/or in part for the creation of false evidence which was used against [plaintiff]." (TAC ¶ 20.) Plaintiff also asserts that Williams was "identified" by her employer, Morgenthau, "as an individual involved in the handling and editing" of the allegedly altered videotape. (*Id.* ¶ 74.) Williams allegedly joined in the video conspiracy with at least one employee of the NYPD. (*See id.* ¶ 69.)

Yet, defendants have failed to present, and this Court has been unable to find, a case wherein the intracorporate conspiracy doctrine was applied to bar a claim alleging concerted action among the respective employees of the NYPD, or any other City agency, and the NYCDA. To the contrary, the Second Circuit has clearly observed that the intracorporate conspiracy doctrine does *not* bar a conspiracy claim against two entities that bear "disparate responsibilities and functions so that the actions complained of by the plaintiff were clearly not actions of only one policymaking body but of several bodies . . . ." *Girard*, 530 F.2d at 71 (distinguishing the circumstances found in *Rackin v. Univ. of Pennsyl.*, 386 F. Supp. 992 (E.D. Pa. 1974), from those in the case at issue). In this regard, at least one district court considering a similar claim has determined that, where the plaintiff alleged that "New York City police officers conspired with representatives of the District Attorney's Office," the intracorporate conspiracy doctrine did *not* apply. *See Johnson v. Constantellis*, No. 03 Civ. 1267 (SHS) (FM), 2005 WL 2291195, at *14 (S.D.N.Y. Aug. 10, 2005) (noting that the NYCDA "is a creature of state law" and, therefore, "the suggestion that [the plaintiff's conspiracy] claim is precluded by the intra-corporate nature of the conspiracy appears misplaced").

In this case, having reviewed the TAC and relevant statutory and case authority, the Court is unable to conclude, at this juncture, that the NYCDA and the NYPD constitute a "single . . . municipal entity" so that the intracorporate conspiracy doctrine bars a claim against employees of the two entities. *See Rodriguez*, 2008 WL 420015, at \*25. As a threshold matter, the Court notes that the NYCDA is an entity created by *state* law, rather than by the City's Charter. *See* N.Y. County Law § 400 ("There shall be elected a . . . district attorney."). Indeed, the New York City Administrative Code provides that the "term 'municipal agency' shall mean an administration, department, division, bureau, office, board, or commission, or other agency of the city established under the charter or any other law, . . . other than the agencies specified in paragraph two of subdivision g of this section." 12 N.Y.C. Admin. Code § 303(d). Among those entities excluded from being identified as "municipal agenc[ies]" is "the district attorney of any county within the city of New York." *Id.* § 303(g).

Moreover, courts routinely treat district attorney's offices in New York State as possessing policymaking authority separate and apart from the city or county in which they sit. For instance, the Second Circuit has held that, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) (citing, *inter alia*, *McGinley v. Hynes*, 412 N.E.2d 376 (N.Y. 1980)). Similarly, in the context of *Monell* claims asserted in § 1983 actions, the Second Circuit has held that, "[w]here a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker." *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992) (noting that, in that case, it was undisputed that "the county district attorneys within the City have final, discretionary authority to implement training and supervision within their own office")[12]; *see, e.g.*, *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (noting that the District Attorney "may be considered a municipal policymaker for the City of New York")

Therefore, based on relevant case and statutory law, there is an insufficient basis for this Court to conclude that the NYCDA and the City necessarily constitute a single entity for the purposes of the intracorporate conspiracy doctrine. Accordingly, the Court is unable to find, as a matter of law, that the alleged video conspiracy involving employees of the NYCDA (through the alleged involvement of Williams) and the NYPD (through the alleged involvement of the unnamed police officer and others) was "essentially a single act by a single corporation" — namely, the City of New York. *Herman*, 576 F.2d at 459. Rather, based on the allegations in the TAC as well as the possibility that substantial policymaking authority may be vested separately in *both* the NYCDA and the City, the Court declines, at this time, to dismiss plaintiff's video conspiracy claim on the basis of the intracorporate conspiracy doctrine.[13]

---

[12] Similarly, in the TAC, plaintiff alleges that Morgenthau, in his capacity as District Attorney, has "the responsibility and authority to investigate and prosecute crimes in New York County." (TAC ¶ 18.)

[13] The Court notes that nothing in this decision should be construed as preventing defendants from re-asserting the intracorporate conspiracy doctrine as a bar to plaintiff's video conspiracy claim in the event that defendants obtain additional authority and/or evidence in support of the proposition that the video conspiracy constituted "a single act by a single corporation." *See Herman*, 576 F.2d at 459. The Court further notes that defendant Williams has not appeared in this action, and, therefore, has not asserted an immunity defense. However, in this regard, it appears that the question of absolute immunity may pose a substantial obstacle to plaintiff's conspiracy claims against Williams. In *Hill*

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the conspiracy claim is granted in part and denied in part. Defendants' motion to dismiss plaintiff's conspiracy claim relating to his allegedly unlawful arrest and detention is GRANTED, and that claim is dismissed with prejudice. Defendants' motion to dismiss plaintiff's conspiracy claim relating to the alleged alteration of a videotape is DENIED. The parties shall proceed with discovery in accord with the directives of the Honorable James C. Francis, Magistrate Judge, to whom this case has been assigned for general pre-trial purposes.

The Clerk of the Court is respectfully requested to terminate the motion docketed as document number 42.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: May  6 , 2008
      New York, NY

*  *  *

Plaintiff is represented by Gina Maria Bonica, Esq., and Yetta G. Kurland, Esq., Kurland & Associates, PC, 304 Park Avenue South, Suite 206, New York, New York 10010. Defendants are represented by James Mirro, Esq., Assistant Corporation Counsel, and Michael A. Cardozo, Esq., Corporation Counsel of the City of New York, 100 Church Street, New York, New York 10007.

---

*v. City of New York,* the Second Circuit specifically held that "two videotape technicians employed by the New York County District Attorney's office" were "entitled to the same degree of immunity as [the prosecutor] himself for their activities while assisting with the investigation and prosecution of the case against plaintiff." 45 F.3d 653, 660 (2d Cir. 1995) ("[U]nder the 'functional' test for immunity, the district attorney's office employees who assisted [the prosecutor] in the preparation of the videotapes were as associated with the judicial process as was [the prosecutor] himself."). Nevertheless, because Williams has yet to appear in this action and neither party has raised or briefed the issue of her immunity from suit, the Court declines to resolve that issue at this time. Moreover, the Court notes that, in the event that Williams is entitled to absolute immunity from suit, that finding may not necessarily preclude plaintiff from asserting the video conspiracy claim against other, non-immune defendants. *See Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998) ("Even if the state actors are absolutely immune from suit . . . private parties who conspire with them may be held liable for damages [under § 1983]."); *see also Dennis v. Sparks,* 449 U.S. 24, 29 (1980) (finding that, where "the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge . . . . the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability.") (internal quotation marks omitted).

17