chemicals and dirt, among other things, the deliberately indifferent refusal to provide adequate sanitation; 8) the deliberately indifferent denial, in many instances of adequate food, often due to the incredibly unsanitary conditions, and of water; and 9) refusal of access to counsel for many hours.

71. Defendants conspired to create a policy of arresting without probable cause, individuals who were in the vicinity of those engaging in lawful and peaceful expressions of their First Amendment rights in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York.

## AS FOR THE FIRST CAUSE OF ACTION
## FALSE ARREST AND IMPRISONMENT

72. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "71" above with the same force and effect as if herein set forth.

73. Defendants implemented policies and procedures permitting the unlawful arrest of peaceful individuals, including Mr. Dunlop because they were in the vicinity of the RNC.

74. Dunlop was peacefully and lawfully in the area of the RNC at the time of his arrest and was not in violation of any applicable local, state or federal law.

75. That at no time did Dunlop intentionally obstruct, impair or pervert the administration of law or pervert a public servant from performing an official function, by interference, or by means of any independent unlawful act.

76. Defendant Officer John Doe 1 arrested and confined Dunlop without probable cause to believe a crime was committed or without a warrant to do so.

77. At all times relevant herein, Defendants acted with the intention of confining Dunlop

within fixed boundaries, the acts directly or indirectly resulted in confinement, and Dunlop was conscious of the confinement.

78. Defendants imposed by force or threats unlawful restraint upon his freedom of movement, to wit by arresting him, twisting his arms, handcuffing and tightening said cuffs in a manner intended to cause Dunlop pain.

79. Dunlop was confined by the Defendants for almost twenty-four hours for an offense for which no probable cause existed.

80. All charges against Dunlop were dismissed as it was revealed that the Defendants had no probable cause to effectuate the arrest.

81. As a direct and proximate result of the conduct of Defendants, Dunlop suffered harm and damages including but not limited to the aforesaid damages.

82. The conduct occurred while Defendant police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ and JOHN DOE'S, were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT. Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SECOND CAUSE OF ACTION
## ASSAULT

83. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "82" above with the same force and effect as if herein set forth.

84. Defendants intentionally created and caused Dunlop to be in fear of physical harm, by

restricting his freedom of movement by arresting him unlawfully, placing handcuffs on him against his will, confining him unlawfully for no known or lawful purpose other than to create in Dunlop an apprehension of immediate physical harm.

85. Upon information and belief that the NYPD and the Department of Corrections made physical contact with Mr. Dunlop, which included seizing him, handcuffing him which was not privileged, was nonconsensual and offensive and which constituted battery .

86. Defendants confined Dunlop in such a manner that caused him to become ill by placing him in a closed city vehicle for hours without water or ventilation,  and further confining him.

87. Any reasonable person would also become apprehensive in the face of Defendants' threatening conduct.

88. The conduct of Defendant police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT.  Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE THIRD CAUSE OF ACTION
## BATTERY

89. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "88" above with the same force and effect as if herein set forth.



90. Without the consent of Mr. Dunlop, Defendants intentionally, harmfully, and offensively touched Mr. Dunlop by handcuffing him, grabbed him by the neck and pushed in a downward direction as his arms were grabbed and twisted behind him in a manner exercising excessive force causing Mr. Dunlop substantial pain.

91. The conduct of Defendant DEPARTMENT OF CORRECTIONS, police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FOURTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

92. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "91" above with the same force and effect as if herein set forth.

93. That upon information and belief, Defendants improperly and/or knowingly commenced a criminal process against Mr. Dunlop without probable cause which terminated when Defendant dismissed the charges. Defendants had actual malice in prosecuting Mr. Dunlop and as a result, Mr. Dunlop sustained injury.

94. Mr. Dunlop was lawfully walking when he was arrested and later charged with several criminal offenses.

95. Officer Gomez swore in the criminal complaint stating that she personally observed Mr.

Dunlop committing the offenses charged.

96. Defendants Gomez, City of New York, The New York County District Attorney's Office submitted evidence, namely the corroborating affidavit and Video Tape 1 that they knew or should have known was false in order to secure an arrest and prosecution of Mr. Dunlop.

97. Upon reviewing Video Tape 2, Defendants were forced to drop all charges against Mr. Dunlop.

98. As a result of Defendant's conduct, Mr. Dunlop was unlawfully confined and prosecuted. Mr. Dunlop sustained physical and emotional damages, to which the full extent is not known.

99. The conduct of Defendant police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT. The conduct of technician JOHN DOE occurred during the course and scope his duty and employment with the NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

100. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "99" above with the same force and effect as if herein set forth.

101. Defendants continually negligently inflicted emotional distress on Mr. Dunlop.

102. Defendants CITY OF NEW YORK, KELLY, ESPOSITO, implemented policies, practices or customs of detaining individuals arrested at or in the vicinity of the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and dangerous. Mr. Dunlop was subjected to these policies and practices for being in the vicinity of the RNC.

103. Defendants confined Mr. Dunlop for many hours in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, under conditions which were cold, loud and uncomfortable, due to the continuous use of large fans which ran at top speeds, which, given the presence of numerous toxic chemicals present at Pier 57, was particularly inappropriate.

104. On information and belief, the floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances. The floors of the cages in Pier 57 were also covered in other dirt and grime.

105. Mr. Dunlop was humiliated and embarrassed by NYPD personnel when he attempted to find out what was happening with his case and when he complained of the deplorable conditions.

106. Mr. Dunlop was taunted and verbally abused by NYPD personnel who cursed and otherwise mistreated Mr. Dunlop without justification.

107. On information and belief, at no time did Defendants ever obtain a Certificate of Occupancy for Pier 57 which would have permitted the holding of human beings therein.

108. In addition, Mr. Dunlop was subjected to excessive and unnecessary handcuffing, including the continued handcuffing and tightening of handcuffs to the point of breaking

21



the skin and even after he was lodged in the detention facility at Pier 57.

109. Defendants have a duty to perform their professional services in such manner as not to inflict emotional distress on Mr. Dunlop.

110. Defendants by the above reference acts, violated that duty.

111. Mr. Dunlop never interfered with Defendants' obligations under the above described duties.

112. As a result of Defendants' negligent conduct, Mr. Dunlop has suffered and will continue to suffer physical pain, anguish, severe emotional trauma, embarrassment and humiliation.

113. The conduct of Defendant police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT.  Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SIXTH CAUSE OF ACTION
### NEGLIGENCE

114. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "113" above with the same force and effect as if herein set forth.

115. Defendants owed a duty to supervise or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing of the charges without probable cause.



116. Defendants owed a duty to act according to the ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of Mr. Dunlop's injury.

117. Defendants breached that duty by failing to act as an ordinary Police Officer, Police Commissioner, and supervisor would act, to wit by failing to perform his duties and by failing adequately to control and to supervise his officers.

118. Defendant DISTRICT ATTORNEY MORGENTHAU owed a duty to act according to the ordinary care of a District Attorney, the failure of which was the proximate cause of Mr. Dunlop's injuries.

119. Defendant breached that duty by failing to act as an ordinary District Attorney by failing to adequately control and supervise technicians and employees, including but not limited to JOHN ROE, who "accidentally" deleted exculpatory evidence from the First Video Tape.

120. On information and belief, at no time did Defendants ever obtain a Certificate of Occupancy for Pier 57 which would have permitted the holding of human beings therein.

121. As a result of those breaches, which were the proximate cause of Mr. Dunlop's injury, Mr. Dunlop suffered harm and damages.

122. The conduct of Defendant police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT. Thus Defendant CITY OF NEW YORK is liable to Mr.

Dunlop pursuant to the state common law doctrine of respondeat superior.

123. The conduct of Defendants MORGENTHAU, and JOHN ROE occurred during the course and scope of their duties and functions as New York City agents and employees of Defendants CITY OF NEW YORK and NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SEVENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C § 1983 ARREST

124. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "123" above with the same force and effect as if herein set forth.

125. At all times relevant herein, the conducts of all Defendants were subject to 42 U.S.C. § 1983.

126. Acting under the color of law, Defendants worked a denial of Mr. Dunlop's rights, privileges or immunities secured by the United States Constitution or by Federal law to wit,

   (a) by depriving Mr. Dunlop of his liberty without due process of law, by taking him into custody and holding him there against his will,

   (b) by making an unreasonable search and seizure of his property without due process of law,

   (c) by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Mr. Dunlop equal protection of law,

   (d) by refusing or neglecting to prevent such deprivations and denials to Mr. Dunlop, thereby depriving Mr. Dunlop of his rights, privileges and immunities as guaranteed



by the Fourth Fifth and Fourteenth Amendments to the Constitution of the United States.

127. Defendants GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN, MORENTHAU are liable under the doctrine of *respondeat superior*

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 DETENTION AND CONFINEMENT

128. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "127" above with the same force and effect as if herein set forth.

129. As a result of their concerted unlawful and malicious detention and confinement of Mr. Dunlop, Defendants deprived Mr. Dunlop of both his right to his liberty without due process of law and his right to equal protection of the laws, and due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the Unite States and 42 U.S.C. § 1983.

130. Defendants GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN, are liable under the doctrine of *respondeat superior*.

## AS FOR THE NINTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 REFUSING OR NEGLECTING TO PREVENT

131. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1"to "130" above with the same force and effect as if herein set forth.

132. At all times relevant to this Complaint, Defendants Gomez and John Does 1-3 were acting under the direction and control of Defendant BLOOMBERG, KELLY, GRASSO,

GRAHAM, COLGAN and New York City Police Department.

133. Acting under color of law and pursuant to official policy or custom Officer Gomez, and John Doe's 1-3 and NYPD knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants Police Officers in their duties to refrain from:

(a) unlawfully and maliciously harassing Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

(b) unlawfully and maliciously arresting, imprisoning and prosecuting Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

(c) conspiring to violate the rights, privileges and immunities guaranteed to Mr. Dunlop by the Constitution and laws of the United States and the laws of the State of New York,

(d) otherwise depriving Mr. Dunlop of his constitutional and statutory rights, privileges and immunities.

134. Defendants GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN, MORENTHAU had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants GOMEZ and JOHN DOE'S had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

135. Defendants GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN, MORENTHAU



are liable under the doctrine of *respondeat superior*.

136. As a direct and proximate cause of the negligent and intentional acts of Defendants set forth in paragraphs above, Mr. Dunlop suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## AS FOR THE TENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C. § 1983 FOR CONSPIRACY

137. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "136" above with the same force and effect as if herein set forth.

138. All Defendants (a) had an objective to be accomplished; (b) had an agreement on the object or course of action; (c) preformed one or more unlawful overt acts; and (d) caused Mr. Dunlop damages that were a direct result of those acts.

139. In furtherance of their object, Defendants did two or more overt acts against Mr. Dunlop.

140. Those unlawful overt acts include, but are not limited to the following: Defendants BLOOMBERG, CITY OF NEW YORK, KELLY, ESPOSITO, NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE advised and strategized, practices or customs of detaining the individuals arrested at the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and dangerous.

141. Just before and during the RNC, Defendants implemented this policy, practice or custom, in an arbitrary and capricious manner, and in the absence of the existence of probable cause, to arrest entire groups of people who were lawfully engaged in protected

First Amendment activity or were observing such activity, or were simply passing by at the time arrests were being made.

142. Defendants BLOOMBERG, CITY OF NEW YORK, KELLY, ESPOSITO, knew or should have known that Mr. Dunlop was held for many hours in a holding cell that lacked adequate means whereby to adequately sit, rest and/or sleep, under inhumane conditions.

143. Defendants knew that their arrest policy surrounding the RNC was a refinement of the tactic employed recently by Defendants at other demonstrations which had recently taken place in the City, including, *inter alia*, the February 15, 2003 anti-war march, *see Haus, et al., v. City of New York, et al.,* 03 Civ. 4915 (RWS), and the April 7, 2003 Carlyle Group protest, *see Larsen, et al., v. City of New York, et al.* 04 Civ. 665 (RWS), of using mass arrests to unlawfully suppress protected First Amendment conduct.

144. Defendants KELLY, ESPOSITO, GRAHAM, COLGAN, had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

145. Upon information and belief, Defendants agreed that the object or course of action was to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause, and maliciously charge and prosecute him with crimes.

146. Defendants are liable under the doctrine of *respondeat superior.*

147. As a direct result of Defendants' acts, Dunlop suffered harm and damages that are a direct result of those acts.



## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Dunlop requests relief as follows:

(a)     That this court assume jurisdiction for this matter;

(b)     Compensatory damages against Defendants jointly and severally for all causes of action; past and future, including, but not limited to pain and suffering, emotional distress, economic losses including lost wages and medical expenses, violation of rights and other losses and injuries, the full extent is still undetermined in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(c)     Punitive damages against the Defendants, jointly and severally for all causes of action in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(d)     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and the Court's inherent power;

(e)     Prejudgment interest as allowed by law;

(d)     Such other relief, as is just and proper under the circumstances.



## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

Dated:  August 25, 2005

Respectfully Submitted,

Gina M. Bonica, Esq.
KURLAND & ASSOCIATES, P.C.
Attorneys for Plaintiff
304 Park Avenue South, Suite 206
New York, NY 10010
212.253.6911

## VERIFICATION

STATE OF NEW YORK    )
                             ) ss:
COUNTY OF NEW YORK  )

ALEXANDER DUNLOP, being duly sworn says: I am the plaintiff in this matter.  I have read the foregoing verified Complaint, and know the contents thereof, the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and so to those matters I believe it to be true.

ALEXANDER DUNLOP

Sworn to before me on the
25TH day of August, 2005.

Notary Public

GINA M. BONICA
Notary Public, State of New York
No. 02BO6120286
Qualified in Suffolk County
Commission Expires On December 20, 20____ 08

1



STATE OF NEW YORK: SUPREME COURT
COUNTY OF NEW YORK
---------------------------------------------------------x
ALEXANDER DUNLOP,

                    Plaintiff,            **AFFIDAVIT**

                                        Index No.

      -against-

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department; THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department, NEW
YORK CITY DEPARTMENT OF CORRECTIONS
THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ, shield number 27230,
POLICE OFFICER JOHN DOE's 1-3, JOHN ROE,
technician, New York County District Attorney's
Office, and the HUDSON RIVER PARK TRUST,
in their individual and official capacities, jointly
and severally,

                    Defendants.
---------------------------------------------------------x
STATE OF NEW YORK   )
                      ) ss
COUNTY OF NEW YORK  )


    l, Alexander Dunlop, being duly sworn depose and say:


1. I am the Plaintiff in this matter, and I am fully familiar with the facts set forth herein. I

   submit this affidavit in support of my Summons and Verified Complaint.

2. On or about August 27, 2004, I left my home at have dinner at a restaurant located on Second



Avenue.

3. Upon leaving my home, I took my bicycle and around 8:45 pm, I arrived at Second Avenue. The street was full of people milling about casually. I observed numerous members of the New York City Police Department (hereinafter, "NYPD") in uniform and other NYPD members in plain clothes with their shields displayed and white plastic cuffs in their hands.

4. I also observed members of the NYPD wearing helmets and/or holding their batons in their hands extended out or in front of them.

5. I also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

6. I decided to find an alternative route to the restaurant but observed a police barricade that had been formed on Ninth Street.

7. I turned to a member of the NYPD whose name and shield I never obtained, (hereinafter, "Office John Doe 1"), for instructions on exiting the area.

8. Officer John Doe 1 instructed me to head in a southerly direction along Second Avenue toward the blockade I had already observed.

9. Based upon this instruction, I walked my bicycle in that direction toward the blockade for which I could not see a visible exit. When I arrived there, I turned to find the same officer John Doe.

10. He walked toward me and I asked him how I should leave. He gripped me by the arm and told me I was under arrest. Officer John Doe stated, "I just told you to go is this direction so I could arrest you."

11. I also observed another person being violently thrown to the ground by multiple police officers.



12. At no time did I prevent any cars from traveling on the street. At no time did I prevent pedestrians from passing by on the sidewalk or on the street.

13. At no time did I chant, march yell or otherwise fail to obey a lawful order or direction given to me by the NYPD.

14. I am not, nor was I ever a member of "CRITICAL MASS" or any other group of   protest, nor did I wear or display any paraphernalia of "CRITICAL MASS" or any protest group on August 27, 2004, and was in no way involved in any protest.

15. On or about August 27, 2004, after being told that I was under arrest, several officers in riot gear rushed at me.   I was grabbed by the neck and pushed in a downward direction as my arms were grabbed and twisted behind me in a manner exercising excessive force causing me substantial pain.

16. At no time did I attempt to avoid being placed under arrest nor did I ever resist arrest.

17. As I was pushed by members of the NYPD, and my hands were placed in flexi cuffs, one member of the NYPD stated, "I bet you have never worn these before." This officer appeared to be clearly pleased to be putting me in pain and distress.

18. I attempted to ask members of the NYPD what I was being arrested for and I was ignored.

19. My bicycle was taken from me and thrown in a pile of bicycles that was in the center of Second Avenue and East Tenth Street.

20. Although I had already been placed under arrest by Officer John Doe, my arrest was assigned to Police Officer Maya Gomez, Shield number 27230, of the Patrol Borough of Manhattan North Task Force, (hereinafter, "Officer Gomez").

21. Prior to this point I had never seen or observed Officer Gomez as she appeared to have been watching a group of individuals already under arrest.



22. I was then taken in flexi cuffs to a police vehicle and placed inside in excess of one and half hours in the heat without water. The entire time the windows and doors remained closed and there was no air flow inside.

23. As I sat in the police vehicle, I began to sweat profusely and began to feel feverish and clammy.

24. The flexi cuffs began to cut into my skin, causing my wrists to bleed.

25. I asked the driver of the bus, a member of the NYPD, (Hereinafter, "Officer John Doe 3") to loosen my flexi cuffs. Officer John Doe 3 instead tightened the cuffs even more causing more pain and discomfort stating "You might try to attack me."

26. I was then taken in the police van to a holding facility at the Chelsea Piers and placed in a makeshift cell with approximately one hundred other individuals.

27. The conditions at Chelsea Piers were deplorable as the entire floor was covered in oil and grease. In addition, there was a chemical-like smell that emanated throughout the facility that caused me to feel uncomfortable.

28. There were not enough seats to accommodate all the people in the cell and therefore, I could not sit down and rest. There were no beds or cots, no blankets and no pillows in the cell and I was therefore, unable to sleep or even lie down.

29. I observed individuals in a great deal of pain, one who advised me that his shoulder was dislocated. At no time was he given medical attention.

30. I began to feel ill after my clothes became drenched in sweat while in the bus and then sitting in these clothes at Chelsea Piers, which was damp and cold. I later developed a cough and fever like conditions.

31. I was incredibly hungry and I was given one box of cereal to eat with my hands which had

become soiled from the grease and dirt at Chelsea Piers.

32. At Chelsea Piers, I asked a member of the NYPD, "What is happening?" I was told by this Officer, "You have the right to shut the fuck up, I suggest you exercise that right."

33. The next morning, I transferred to 100 Centre Street, New York, NY in a New York City Department of Correction Bus.

34. I was then searched and fingerprinted for these misdemeanor offenses and placed in another cell at 100 Centre Street where I asked various members of the NYPD and Department of Correction when I would be able to see a lawyer. I was told that I was a "whiney kid."

35. At all times I was aware of my confinement and I did not consent to being arrested or confined. At no time did anyone show me a warrant for my arrest.

36. To the best of my knowledge, a warrant was never obtained for my arrest. I was not brought to arraignment part until after 6:30 in the evening on August 28, 2004 where I was finally permitted to meet with a lawyer.

37. I was charged and prosecuted under New York City docket 2004NY063485 by the New York County District Attorney's Office for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct and Parading Without a Permit and Resisting Arrest.

38. While in the course of the criminal matter, the Assistant District Attorney assigned to prosecute my case, Willa Concannon (hereinafter, "ADA Concannon") produced a VHS video tape that was taped by the NYPD and was to be submitted by the People as evidence of my unlawful conduct, (hereinafter, "First Video Tape").

39. ADA Concannon made representations in court that the First Video Tape was a complete and unedited version of the events that transpired immediately preceding and including my arrest.

5

40. In addition, Officer Gomez in her corroborating affidavit submitted in connection with this prosecution stated that she had personally observed me committing the above offenses and that I had "flailed" my arms to resist being arrested.

41. A second videotape, (hereinafter, "Second Video Tape") also recorded by the NYPD and submitted by the People as evidence in a different criminal case when compared with the First Video Tape to be submitted as evidence in my case, revealed that they were shot from the identical NYPD video camera. When run simultaneously side-by-side it is revealed that the First Video Tape had been edited in two places, in both cases removing images showing me behaving peacefully, not obstructing traffic, not parading and not attempting to avoid arrest.

42. Also cut from the First Video Tape was footage of my actual arresting officer, John Doe 1 showing that the actual officer who placed me under arrest

43. In the Second Video Tape, Officer Gomez is nowhere to be seen.

44. Upon revelation in court of The Second Video Tape, the New York County District Attorney's Office dropped all criminal charges against me and later admitted that a "technician" in the District Attorney's Office had (hereinafter, "John Roe"), "accidentally" cut the material.

45. I sustained bodily and emotional injury as a result of the actions of the Defendants.

46. I am now afraid to approach the NYPD or other official officers due to what occurred and suffered and continue to suffer other emotional and psychological distress.

47. I was deprived of my freedom intentionally and I was arrested simply because I obeyed the direction of a member of the NYPD.

Affirmed: August 25 2005
New York, New York

Alexander Dunlop

Sworn to before me this 25th
day of August 2005

Notary Public

GINA M. BONICA
Notary Public, State of New York
No. 02BO6120288
Qualified in Suffolk County
Commission Expires On December 20, 20 08

Exhibit G

12/16/2005 10:57 FAX 2126142532          THE LAW OFFICE OF YGK                    ☒003

STATE OF NEW YORK:  SUPREME COURT
COUNTY OF NEW YORK
------------------------------------------------------------x

ALEXANDER DUNLOP,

                             Plaintiff,            **AMENDED SUMMONS**

                                              **Index No. 05/112008**

          -against-

**THE CITY OF NEW YORK**, a municipal entity
**MICHAEL BLOOMBERG**, Mayor of the City of
New York, **RAYMOND KELLY**, Police
Commissioner of the City of New York, **JOSEPH
ESPOSITO**, Chief of the Department, New York
City Police Department, **THOMAS GRAHAM** ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, **JOHN J.
COLGAN**, Deputy Chief andCommanding Officer,
Pier 57, New York City Police Department,
**THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ**, shield number 27230,
**POLICE OFFICER JOHN DOE'S 1-3**, and the
**HUDSON RIVER PARK TRUST**, in their individual
and official capacities, jointly and severally,

                             **Defendants.**

------------------------------------------------------------x

TO THE ABOVE NAMED DEFENDANTS:

        **YOU ARE HEREBY SUMMONED** to answer the complaint in the above
action and to serve a copy of your answer on the plaintiffs attorney within twenty (20)
days after the service of this summons, exclusive of the day of service, or within thirty
(30) days after completion of service is made in any other manner than by personal
delivery within the State. The United States of America, if designated as a defendant in
this action, may answer or appear within sixty (60) days of service hereof. In case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint.

        NEW YORK COUNTY is designated as the place of trial. The basis of venue is
where the cause of action arose.

NEW YORK
COUNTY CLERK'S OFFICE

DEC 16 2005

NOT COMPARED
WITH COPY FILED



12/16/2005 10:57 FAX 2126142532          THE LAW OFFICE OF YGK                    ☒004

Dated: November 18, 2005

Gina M. Bonica, Esq.
KURLAND & ASSOCIATES P.C.
Attorneys for Plaintiff
304 Park Avenue South, Suite 207
New York, New York 10010
(212) 253.6911

12/16/2005 10:57 FAX 2126142532          THE LAW OFFICE OF YGK                    005

STATE OF NEW YORK: SUPREME COURT
COUNTY OF NEW YORK
------------------------------------------------------------x

ALEXANDER DUNLOP,

                              Plaintiff,          **AMENDED
                                                  VERIFIED COMPLAINT**

          -against-                               **JURY DEMANDS AS TO
                                                  ALL COUNTS**

                                                  **Index No. 05/112008**

**THE CITY OF NEW YORK**, a municipal entity
**MICHAEL BLOOMBERG**, Mayor of the City of
New York, **RAYMOND KELLY**, Police
Commissioner of the City of New York, **JOSEPH
ESPOSITO**, Chief of the Department, New York
City Police Department, **THOMAS GRAHAM**,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, **JOHN J.
COLGAN**, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department,
**THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ**, shield number 27230,
**POLICE OFFICER JOHN DOE's 1-3**, and the
**HUDSON RIVER PARK TRUST**, in their individual
and official capacities, jointly and severally,

                    **Defendants.**

------------------------------------------------------------x

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK)

          Plaintiff, **ALEXANDER DUNLOP**, by his attorney, **GINA M.
BONICA**, an associate of  Kurland & Associates, P.C., having offices at 304 Park
Avenue South, Suite 206, New York, New York, 10010, complaining of Defendants,
alleges as follows:

                                    1

12/16/2005 10:57 FAX 2126142532          THE LAW OFFICE OF YCK                    ☑006

## NATURE OF ACTION

Plaintiff brings this action against Defendants, **THE CITY OF NEW YORK**, a municipal entity **MICHAEL BLOOMBERG**, Mayor of the **CITY OF NEW YORK**, **RAYMOND KELLY**, Police Commissioner of the **CITY OF NEW YORK**, **JOSEPH ESPOSITO**, Chief of the Department, New York City Police Department, **THOMAS GRAHAM** , Commanding Officer of the Disorder Control Unit of the New York City Police Department, **JOHN J. COLGAN**, Deputy Chief and Commanding Officer, Pier 57, New York City Police Department, **NEW YORK CITY DEPARTMENT OF CORRECTION, THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, NEW YORK DISTRICT ATTORNEY ROBERT MORGENTHAU, POLICE OFFICER MAYA GOMEZ**, shield number 27230, **POLICE OFFICER JOHN DOE's 1-3**, and the **HUDSON RIVER PARK TRUST**, (hereinafter, "Defendants") for malicious prosecution, assault and battery, false arrest, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, cruel and unusual conditions of confinement, conspiracy, and violations of civil rights under 42 USC § 1983.

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the Plaintiff, **ALEXANDER DUNLOP**, (hereinafter "MR. DUNLOP") seeks relief for various violations including but not limited to negligence, false arrest, excessive force, and malicious prosecution. In addition, Plaintiff alleges that he was subjected to (1) excessively and unreasonably

2

prolonged, unnecessary and punitive detention, (2) excessive, unnecessary, malicious and punitive conditions of confinement that were cruel and unusual and shocking to the conscience and, (3) unlawful arrest without probable cause. Defendants' violations, were committed under color of state law, and deprived the Plaintiff of the rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2.      Defendants in this action, **THE CITY OF NEW YORK**, a municipal entity, **MICHAEL BLOOMBERG**, Mayor of the **CITY OF NEW YORK**, **RAYMOND KELLY**, New York City Police Commissioner; **JOSEPH ESPOSITO**, Chief of the New York Police Department; **JOHN J. COLGAN**, Deputy Chief, New York City Police Department; **GOMEZ**, Shield number 27230, New York City Police Officers **JOHN AND JANE DOE** acting individually and in their official capacities, jointly and severally, maliciously and intentionally implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs that caused the **MR. DUNLOP** to be arbitrarily arrested without probable cause in the vicinity of a protest around the time of the Republican National Convention (RNC), that instituted a system of preventive detention to punish **MR. DUNLOP**, a lawful peaceful citizen and other peaceful and lawful citizens for being on the street with a bicycle during that protest, and subjected **MR. DUNLOP** to intolerable, cruel and inhumane conditions, including but not limited to denying him access to legal counsel for an inordinate and unreasonable amount of time.

3.      Defendants CITY OF NEW YORK, **OFFICER GOMEZ, OFFICER JOHN**

DOE's 1-3, the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE**, and **DISTRICT ATTORNEY MORGANTHAU** conspired to maliciously and intentionally prosecute **MR. DUNLOP** for offenses for which no probable cause existed and maliciously and intentionally altered evidence so as to hide the truth of **MR. DUNLOP**'s innocence from the Court.

## VENUE

4.      Venue is proper in the State Supreme Court, County of New York pursuant to CPLR § 504(3).

## JURY DEMAND

5.      **MR. DUNLOP** demands a trial by jury in this action on each and every one of his damage claims.

## PARTIES

6.      **MR. DUNLOP** is a New York County resident residing at 394 East 8th Street, Apartment 2B, New York, NY 10009.

7.      Defendant **CITY OF NEW YORK** is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and corrections department that acts as its agent in the area of law enforcement and for which it is ultimately responsible. **CITY OF NEW YORK** assumes the risks incidental to the maintenance of a police and corrections force and the employment of police officers and corrections officers.

8.      Defendant **MICHAEL BLOOMBERG** is and was, at all times relevant herein, the Mayor of **THE CITY OF NEW YORK** and the chief policy making official for the City and its departments, including the New York City Police Department (hereinafter,

the "NYPD") and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

9.    Defendant **RAYMOND KELLY** is and was at all times relevant herein, the Police Commissioner for the **CITY OF NEW YORK**, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

10.   Defendant **JOSEPH ESPOSITO** is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

11.   Defendant **THOMAS GRAHAM** was the Commanding Officer of the Disorder Control Unit of the NYPD at the time of the offences complained herein and he is responsible, in whole and/or in part, for the creation, implementation, promulgation, and enforcement of the policies, practices, and/or customs complained of herein. He is sued individually and in his official capacity.

12.   Defendant **JOHN J. COLGAN**, is a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and as such was responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

13.   Defendants, **POLICE OFFICER MAYA GOMEZ**, shield number 27230

(hereinafter, "**GOMEZ**"), **JOHN DOE's 1-3** (hereinafter, "Does") are NYPD Command and Police Officers involved in the arrest of **MR. DUNLOP** and all of the actions and conduct associated therewith, including, but not limited to the use of force, the institution and approval of criminal charges, the malicious and intentional prosecution of **MR. DUNLOP**, the abuse of criminal process, the cruel and inhumane conditions to which **MR. DUNLOP** was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

14.    Defendants **BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN, GRAHAM, GOMEZ**, and **DOE's** are employees and/or agents of the **CITY OF NEW YORK**. They include the individuals who directed and/or authorized the use of unreasonable and excessive force, unreasonable arrests and detentions and/or who actually arrested **MR. DUNLOP**, without probable cause, and who maliciously and intentionally implemented the policies, practices and procedures to unreasonably detain **MR. DUNLOP**.

15.    Defendant, **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** is a municipal entity created and authorized under the laws of the State of New York and has the responsibility and authority to investigate and prosecute crimes in New York County.

16.    Defendant, District Attorney **ROBERT MORGANTHAU** at all times relevant herein, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs related to the investigation and prosecution complained of herein. He is sued in both his individual and official capacities.

17.    Defendant, **HUDSON RIVER PARK TRUST**, a joint New York State and New

York City organization whose mission is to design, build and operate a five-mile park from Battery Park to 59th Street is and at all times herein was the owner of Chelsea Piers and consequently Pier 57, the place of **MR. DUNLOP**'s confinement.

18.    That at all times herein, Defendants caused **MR. DUNLOP** damages within New York County, New York State.

19.    At all times relevant herein, Defendants **BLOOMBERG, KELLY, ESPOSITO, COLGAN, GRAHAM, GOMEZ,** and **DOE**'s, have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the **CITY OF NEW YORK** and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the **CITY OF NEW YORK** and/or the NYPD with the power and authority vested in them as officers, agents and employees of the **CITY OF NEW YORK** and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the **CITY OF NEW YORK** and/or the NYPD.

20.    At all times relevant herein, Defendants **BLOOMBERG, KELLY, ESPOSITO, COLGAN, GOMEZ,** and **DOE**'s have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

21.    The cause of action and injuries claimed herein arises out of Defendants' actions in this state.

## STATEMENT OF FACTS

22.    On or about August 27, 2004, around 8:30 P.M., **MR. DUNLOP** left his home on

Eighth Street, New York, NY, took his bicycle and headed toward a restaurant located on Second Avenue where he was meeting friends for dinner.

23.    At or around 8:45 pm, **MR. DUNLOP** arrived at Second Avenue and observed people milling about and numerous members of the NYPD (hereinafter, "NYPD"), some who were wearing helmets and/or holding their batons in their hands extended out or in front of them.

24.    **MR. DUNLOP** also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

25.    **MR. DUNLOP**, unsure why the police were arresting these people, became concerned. He decided to find an alternative route to the restaurant. Looking to leave the area, **MR. DUNLOP** observed a police barricade that had formed on Ninth Street. He got off his bike and walked across the street heading toward the intersection of Tenth Street on Second Avenue. At this point he approached a line of police officers to ask them what was happening and how he might leave the scene.

26.    The officers responded that they were unsure of what was transpiring, as they had just arrived on the scene. **MR. DUNLOP** turned to ask another officer whose name and shield he did not obtain, (hereinafter, "**OFFICER JOHN DOE 1**"), for instructions on exiting the area. **OFFICER JOHN DOE 1** instructed **MR. DUNLOP** to head south along Second Avenue toward the blockade he had already observed.

27.    **MR. DUNLOP** complied with the instruction and walked toward the blockade. When he arrived there **OFFICER JOHN DOE 1** approached **MR. DUNLOP**. **MR. DUNLOP** again asked **OFFICER JOHN DOE 1** how to leave. **OFFICER JOHN DOE 1** gripped **MR. DUNLOP** by the arm and told **MR. DUNLOP** that he was under

arrest.

28.     Immediately, several officers in riot gear rushed at **MR. DUNLOP**, grabbed him by the neck and pushed him down while twisting his arms behind him, causing substantial pain.

29.     All attempts by **MR. DUNLOP** to ascertain the reason for arrest were ignored by members of the NYPD.   At various times, the NYPD officers subjected **MR. DUNLOP** to snide, inappropriate, malicious and crude remarks.

30.     **MR. DUNLOP**'s bicycle was forcefully taken from him and thrown in a pile of bicycles that was in the center of Second Avenue and Tenth Street.

31.     **MR. DUNLOP** then observed another member of the NYPD, (hereinafter, "**OFFICER JOHN DOE 2**"), state to a female officer whose name, shield and command he later learned to be **POLICE OFFICER MAYA GOMEZ**, Shield number 27230, of the Patrol Borough of Manhattan North Task Force, say, "This is your arrest."

32.     When **OFFICER GOMEZ** was pointed out to **MR. DUNLOP**, he observed **OFFICER GOMEZ** watching a group of individuals already under arrest; nowhere near the vicinity of the place **MR. DUNLOP** was actually placed under arrest.

33.     **MR. DUNLOP** was then taken in flexi cuffs to a police vehicle and placed inside. He was confined in the car, with the windows closed for more than one and a half hours in the heat without water.  **MR. DUNLOP** began to sweat profusely and he began to feel feverish and clammy.

34.     While waiting in the police car, the flexi cuffs began to cut into his skin.  **MR. DUNLOP** then asked the NYPD driver, (hereinafter, "**OFFICER JOHN DOE 3**") to loosen his flexi cuffs.  OFFICER JOHN DOE 3 instead maliciously and intentionally

tightened the cuffs even more, causing more pain, discomfort, swelling, bleeding, and visible lacerations to both wrists.

35.     During the RNC, Defendants **CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM** and **COLGAN** implemented a policy, practice or custom of detaining those arrested on August 27, 2004 in the vicinity of the RNC protest, without justification, for an unnecessary and prolonged period of time in unhealthy and dangerous conditions. In particular, Defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that **MR. DUNLOP** was held in custody following his unlawful arrest. These acts included, but are not limited to, using Pier 57 as an intermediate holding facility where no finger-printing equipment was placed, and requiring all arrestees, including the Plaintiff, to be finger-printed even though they were charged with minor offenses for which fingerprinting is unnecessary.

36.     Instead of using existing resources, such as the Brooklyn Hose of Detention, Central Booking or the numerous precincts throughout the City as the reception point for **MR. DUNLOP** and others arrested during the relevant period – including the at least twenty (20) precincts in Manhattan, all equipped with arrest processing equipment, Defendants deliberately devised a plan that was intended to unreasonably lengthen the stay in custody of anyone arrested during the RNC, including **MR. DUNLOP**, and to intentionally make the terms of confinement as difficult, intimidating and unsafe as they thought possible. Pier 57 lacked the proper equipment necessary to process the arrestees, resulting in hours of "dead time," thereby further intentionally and maliciously delaying the processing of the arrestees.

37.    MR. DUNLOP was taken in the police vehicle to a holding facility at Pier 57 and placed in a makeshift cell with approximately one hundred other individuals.  Once inside, MR. DUNLOP observed multiple holding cells inside Pier 57 constructed with chain-link fence topped with razor wire.  Upon arrival at Pier 57, MR. DUNLOP was searched, had his property confiscated, and was placed in one of the holding cells.

38.    Upon information and belief, numerous environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot and chemicals.  These conditions still existed on August 27, 2004.

39.    In addition, there was a chemical-like smell that emanated throughout the facility that caused MR. DUNLOP to feel ill during his detention.

40.    There was inadequate seating to accommodate all the people in the cell and therefore, MR. DUNLOP stood for hours through the night to avoid sitting on the dirty and grease covered floor.  There were no beds or cots, no blankets and no pillows in the cell, making it impossible for MR. DUNLOP to sleep or even lie down.

41.    MR. DUNLOP began to feel ill.  His clothes were drenched with sweat from being confined in the police vehicle.

42.    During his entire stay at Pier 57, MR. DUNLOP was only given one box of cereal to eat with his hands that were soiled from the grease, chemicals and dirt.

43.    MR. DUNLOP was unable to ascertain what was happening or why he had been arrested.  MR. DUNLOP asked a member of the NYPD: "What is happening?" to which the Officer responded, "You have the right to shut the fuck up.  I suggest you exercise that right."

44.    MR. DUNLOP remained at Pier 57 until the next morning when he was transferred to 100 Centre Street, New York, NY in a New York City Department of Corrections Bus.

45.    Upon arriving at 100 Centre Street, MR. DUNLOP was searched, fingerprinted and placed in another cell at 100 Centre Street. When MR. DUNLOP attempted to talk to various members of the NYPD and the Department of Corrections to ascertain his status and when he would be able to see a lawyer, he was told that he was a "whiney kid."

46.    On August 28, 2004, MR. DUNLOP was not brought to arraignment part until after 6:30 in the evening, where he was finally permitted to meet with a lawyer.

47.    Despite the fact that there was no probable cause to arrest MR. DUNLOP, he was maliciously and intentionally charged and prosecuted under New York City docket 2004NY063485 by Defendant, the NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit and Resisting Arrest.

48.    Assistant District Attorney Willa Concannon (hereinafter, "ADA Concannon"), assigned to prosecute MR. DUNLOP's case under the supervision of Defendant, DISTRICT ATTORNEY ROBERT MORGENTHAU, pursuant to discovery requirements, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of MR. DUNLOP's alleged unlawful conduct, (hereinafter, "First Video Tape").

49.    ADA Concannon in her capacity as an Assistant District Attorney for NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, represented that the First

Video Tape was a complete and unedited version of the events that transpired immediately preceding and including MR. DUNLOP's arrest.

50.    Months into the case, a second videotape, (hereinafter, "Second Video Tape"), also recorded by the NYPD, was produced by the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** as evidence in a different criminal case.  Given access to the second videotape, **MR. DUNLOP**'s attorney examined the first videotape, compared both videotapes, and found that they were filmed by the same video camera.  When run simultaneously side-by-side it was obvious that the First Video Tape had been edited in two places—in both cases removing images showing **MR. DUNLOP** behaving peacefully, not obstructing traffic, parading or attempting to avoid arrest.

51.    Also cut from the First Video Tape was footage of **OFFICER JOHN DOE**, the actual officer who placed **MR. DUNLOP** under arrest.  In the Second Video Tape, **OFFICER GOMEZ** is nowhere to be seen.

## AS FOR THE FIRST CAUSE OF ACTION
## FALSE ARREST AND IMPRISONMENT

52.    **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to 51" above with the same force and effect as if herein set forth.

53.    Defendants implemented policies and procedures permitting the unlawful arrest of peaceful individuals, including **MR. DUNLOP**, because they were on the streets in Manhattan around the time of the RNC.

54.    Dunlop was peacefully and lawfully in the area at the time of his arrest and was not in violation of any applicable local, state or federal law.

55.    Defendant **OFFICER JOHN DOE 1** maliciously and intentionally arrested and confined Dunlop without probable cause to believe a crime was committed or without a warrant to do so.

56.    At all times relevant herein, Defendants acted with the intention of confining **MR. DUNLOP** within fixed boundaries, the acts directly or indirectly resulted in confinement, and Dunlop was conscious of the confinement.

57.    Defendants imposed by force or threats unlawful restraint upon his freedom of movement, including but not limited to arresting him, twisting his arms, handcuffing and tightening said cuffs in a manner intended to cause **MR. DUNLOP** pain.

58.    The Defendants maliciously and intentionally confined Dunlop for almost twenty-four hours for an offense for which no probable cause existed.

59.    All charges against **MR. DUNLOP** were dismissed as it was revealed that the Defendants had no probable cause to effectuate the arrest.

60.    As a direct and proximate result of the malicious conduct of Defendants, **MR. DUNLOP** suffered harm and damages including but not limited to the aforesaid damages.

61.    The conduct occurred while Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **JOHN DOE'S**, were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant **CITY OF NEW YORK** is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SECOND CAUSE OF ACTION
### ASSAULT

62.     MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "61" above with the same force and effect as if herein set forth.

63.     Defendants intentionally created and caused Dunlop to be in fear of physical harm, by restricting his freedom of movement by arresting him unlawfully, placing handcuffs on him against his will, for no known or lawful purpose other than to create in Dunlop an apprehension of immediate physical harm.

64.     The NYPD and the Department of Corrections made physical contact with **MR. DUNLOP**, including but not limited to seizing him and handcuffing him without legal justification.

65.     Defendants intentionally confined **MR. DUNLOP** in such a manner that caused him to become ill by placing him in a closed city vehicle without water or ventilation, and further confining him causing him to be in fear. .

66.     The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant **CITY OF NEW YORK** is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

12/16/2005 13:06 FAX 2128142532          THE LAW OFFICE OF YGK                    ☒006

## AS FOR THE THIRD CAUSE OF ACTION
## BATTERY

67.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "66" above with the same force and effect as if herein set forth.

68.    Without the consent of MR. DUNLOP, employees of the CITY OF NEW YORK intentionally, harmfully, and offensively touched MR. DUNLOP including but not limited to handcuffing him, grabbing him by the neck and arms, pushing him, and twisting MR. DUNLOP's arms in a manner causing MR. DUNLOP substantial pain.

69.    The conduct of Defendants, police officers RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NYPD. Thus Defendant CITY OF NEW YORK is liable to MR. DUNLOP pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FOURTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

70.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "69" above with the same force and effect as if herein set forth.

71.    Defendants improperly and/or knowingly commenced a criminal process against MR. DUNLOP without probable cause that terminated when Defendant dismissed the

charges. Defendants had actual malice in prosecuting **MR. DUNLOP** and as a result, **MR. DUNLOP** sustained injury.

72.     **MR. DUNLOP** was lawfully walking when he was arrested and later charged with several criminal offenses.

73.     **OFFICER GOMEZ** swore in the criminal complaint stating that she personally observed **MR. DUNLOP** committing the offenses charged.

74.     Defendants **GOMEZ, CITY OF NEW YORK, THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** submitted evidence, namely the corroborating affidavit and Video Tape 1 that they knew or should have known was false in an attempt to frame **MR. DUNLOP**.

75.     As a result of Defendant's conduct, **MR. DUNLOP** was unlawfully confined and prosecuted. **MR. DUNLOP** sustained physical and emotional damages, to which the full extent is not known.

76.     The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OFFICER GOMEZ** and **DOE'S,** occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD. Thus Defendant CITY OF NEW YORK is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior.*

### AS FOR THE FIFTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

77.     MR. DUNLOP repeats and realleges and incorporates by reference the

17

allegations in paragraphs "1" to "76" above with the same force and effect as if herein set forth.

78.     Defendants continually negligently inflicted emotional distress on **MR. DUNLOP**.

79.     Defendants **CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO,** implemented policies, practices or customs of detaining individuals arrested at or in the vicinity of the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and dangerous. **MR. DUNLOP** was subjected to these policies and practices for being in the vicinity of the RNC.

80.     Defendants intentionally confined **MR. DUNLOP** for many hours in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, under conditions, which were cold, loud and uncomfortable.

81.     The floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances. The floors of the cages in Pier 57 were also covered in other dirt and grime.

82.     MR. DUNLOP was humiliated and embarrassed by NYPD and New York Department of Corrections personnel when he attempted to find out what was happening with his case and when he complained of the deplorable conditions.

83.     MR. DUNLOP was taunted and verbally abused by NYPD and New York Department of Corrections personnel who cursed and otherwise mistreated **MR. DUNLOP** without justification.

84.     In addition, **MR. DUNLOP** was subjected to excessive and unnecessary handcuffing, including the continued handcuffing and tightening of handcuffs to the point

of breaking the skin and even after he was lodged in the detention facility at Pier 57.

85.    Defendants have a duty to perform their professional services in such manner as not to inflict emotional distress on **MR. DUNLOP**.

86.    As a result of Defendants' negligent conduct, **MR. DUNLOP** has suffered and will continue to suffer physical pain, anguish, severe emotional trauma, embarrassment and humiliation, and to fear for his safety and life.

87.    The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD.  Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.


## AS FOR THE SIXTH CAUSE OF ACTION
## NEGLIGENCE

88.    MR. DUNLOP repeats and realleges and incorporates by reference the allegations in Paragraphs "1" to "87" above with the same force and effect as if herein set forth.

89.    Defendants owed a duty to supervise or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing of the charges without probable cause.

90.    Defendants owed a duty to act according to the ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of

MR. DUNLOP's injury.

91.   Defendants breached that duty by failing to act as an ordinary Police Officer, Police Commissioner, and supervisor would act, to wit by failing to perform his duties and by failing adequately to control and to supervise his officers.

92.   Defendant **DISTRICT ATTORNEY MORGENTHAU** owed a duty to act according to the ordinary care of a District Attorney, the intentional failure of which was the proximate cause of **MR. DUNLOP**'s injuries.

93.   Defendant breached that duty by failing to act as an ordinary District Attorney by intentionally failing to have adequate control and supervision over its employees who assisted in the wrongful and malicious prosecution of **MR. DUNLOP.**

94.   On information and belief, Defendants never obtained a Certificate of Occupancy for Pier 57 that would have permitted the holding of human beings therein.

95.   As a result of those breaches, which were the proximate cause of **MR. DUNLOP**'s injury, **MR. DUNLOP** suffered harm and damages.

96.   The conduct of Defendant police officers **RAYMOND KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, POLICE OFFICER GOMEZ** and **JOHN DOE'S**, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City Police Officers, and while they were acting as agents and employees of Defendants **CITY OF NEW YORK** and NYPD.  Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior*.

97.   The conduct of Defendants **MORGENTHAU**, and **JOHN ROE** occurred during the course and scope of their duties and functions as New York City agents and

employees of Defendants **CITY OF NEW YORK** and **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE.** Thus Defendant **CITY OF NEW YORK** is liable to **MR. DUNLOP** pursuant to the state common law doctrine of *respondeat superior.*

### AS FOR THE SEVENTH CAUSE OF ACTION
### VIOLATIONS OF 42 U.S.C § 1983 ARREST

98.     **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in Paragraphs "1" to "97" above with the same force and effect as if herein set forth.

99.     At all times relevant herein, the conducts of all Defendants were subject to 42 U.S.C. § 1983.

100.    Acting under the color of law, Defendants worked a denial of **MR. DUNLOP**'s rights, privileges or immunities secured by the United States Constitution or by Federal law to wit.

> (a) by depriving **MR. DUNLOP** of his liberty without due process of law, by taking him into custody and holding him there against his will,

> (b) by making an unreasonable search and seizure of his property without due process of law,

> (c) by conspiring for the purpose of impeding and hindering the due course of justice, with the intent to deny **MR. DUNLOP** equal protection of law,

> (d) by refusing or neglecting to prevent such deprivations and denials to **MR. DUNLOP**, thereby depriving **MR. DUNLOP** of his rights, privileges and immunities as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

101.   Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** are liable under the doctrine of *respondeat superior.*

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 DETENTION AND CONFINEMENT

102.   **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "101" above with the same force and effect as if herein set forth.

103.   As a result of their concerted unlawful and malicious detention and confinement of **MR. DUNLOP**, Defendants deprived **MR. DUNLOP** of both his right to his liberty without due process of law and his right to equal protection of the laws, and due course of justice was impeded, in violation of the Fifth, Eighth and Fourteenth Amendments of the Constitution of the Unite States and 42 U.S.C. § 1983.

104.   Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** are liable under the doctrine of *respondeat superior.*

## AS FOR THE NINTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 REFUSING OR NEGLECTING TO PREVENT

105.   **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1"to "104" above with the same force and effect as if herein set forth.

106.   At all times relevant to this Complaint, Defendants **GOMEZ** and **DOES** were

acting under the direction and control of Defendants **BLOOMBERG, KELLY, GRASSO, GRAHAM, COLGAN** and NYPD.

107.    Acting under color of law and pursuant to official policy or custom **OFFICER GOMEZ**, and **JOHN DOE'S 1-3** and the NYPD knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants Police Officers in their duties to refrain from:

    (a) unlawfully and maliciously harassing **MR. DUNLOP** who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

    (b) unlawfully and maliciously arresting, imprisoning and prosecuting **MR. DUNLOP** who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

    (c) conspiring to violate the rights, privileges and immunities guaranteed to **MR. DUNLOP** by the Constitution and laws of the United States and the laws of the State of New York,

    (d) otherwise depriving **MR. DUNLOP** of his constitutional and statutory rights, privileges and immunities.

108.    Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants **GOMEZ** and **JOHN DOE'S** had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and

knowingly, recklessly, or with gross negligence failed or refused to do so.

109.    Defendants **GRASSO, KELLY, ESPOSITO, GRAHAM, COLGAN,** and **MORENTHAU** are liable under the doctrine of *respondeat superior.*

110.    As a direct and proximate cause of the negligent and intentional acts of Defendants set forth in paragraphs above, **MR. DUNLOP** suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## AS FOR THE TENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C. § 1983 FOR CONSPIRACY

111.    **MR. DUNLOP** repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "110" above with the same force and effect as if herein set forth.

112.    All Defendants (a) had an objective to be accomplished; (b) had an agreement on the object or course of action; (c) preformed one or more unlawful overt acts; and (d) caused **MR. DUNLOP** damages that were a direct result of those acts.

113.    In furtherance of their object, Defendants did two or more overt acts against **MR. DUNLOP.**

114.    Those unlawful overt acts include, but are not limited to the following: Defendants **BLOOMBERG, CITY OF NEW YORK, KELLY, ESPOSITO,** and the **NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE** advised and strategized, practices or customs of detaining the individuals arrested at the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy and

dangerous.

115. Just before and during the RNC, Defendants implemented this policy, practice or custom, in an arbitrary and capricious manner, and in the absence of the existence of probable cause, to arrest entire groups of people who were lawfully engaged in protected First Amendment activity or were observing such activity, or were simply passing by at the time arrests were being made.

116. Defendants **BLOOMBERG, CITY OF NEW YORK, KELLY,** and **ESPOSITO,** knew or should have known that **MR. DUNLOP** was held for many hours in a holding cell that lacked adequate means whereby to adequately sit, rest and/or sleep, under inhumane conditions.

117. Defendants knew that their arrest policy surrounding the RNC was a refinement of the tactic employed recently by Defendants at other demonstrations which had recently taken place in the City, including, but not limited to, the February 15, 2003 anti-war march, *see Haus, et al., v. City of New York, et al.,* 03 Civ. 4915 (RWS), and the April 7, 2003 Carlyle Group protest, *see Larsen, et al., v. City of New York, et al.* 04 Civ. 665 (RWS), of using mass arrests to unlawfully suppress protected First Amendment conduct.

118. Defendants **KELLY, ESPOSITO, GRAHAM,** and **COLGAN,** had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

119. Upon information and belief, Defendants agreed that the object or course of

action was to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause, and maliciously charge and prosecute him with crimes.

120.    Defendants are liable under the doctrine of *respondeat superior*.

121.    As a direct result of Defendants' acts, Dunlop suffered harm and damages that are a direct result of those acts.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF DUNLOP requests relief as follows:

(a)    That this court assume jurisdiction for this matter;

(b)    Compensatory damages against Defendants jointly and severally for all causes of action; past and future, including, but not limited to pain and suffering, emotional distress, economic losses including lost wages and medical expenses, violation of rights and other losses and injuries, the full extent is still undetermined in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(c)    Punitive damages against the Defendants, jointly and severally for all causes of action in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(d)    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and the Court's inherent power;

(e)    Prejudgment interest as allowed by law;

(d)    Such other relief, as is just and proper under the circumstances.

12/16/2005 11:08 FAX 2126142532          THE LAW OFFICE OF YGK                    ☑017

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

Dated:  November 18, 2005

Respectfully Submitted,

Gina M. Bohica, Esq.
KURLAND & ASSOCIATES, P.C.
304 Park Avenue South, Suite 206
New York, NY 10010
212.253.6911
Attorneys for Plaintiff

12/16/2005 11:08 FAX 2126142532         THE LAW OFFICE OF YGK                    ☑018

VERIFICATION

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK  )

ALEXANDER DUNLOP, being duly sworn says: I am the plaintiff in this matter. I have read the foregoing verified Amended Complaint, and know the contents thereof, the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and so to those matters I believe it to be true.

Dated: November 18, 2005

_____
ALEXANDER DUNLOP

Sworn to before me on the
18th day of November, 2005.

_____
Notary Public

GINA M. BONICA
Notary Public, State of New York
No. 02BO6120286
Qualified in Suffolk County
Commission Expires On December 20, 20 08