# *EXHIBIT "D"*

*FILED ELECTRONICALLY*

# United States District Court
## Southern District of New York

06 cv 0433 (KMK)(JCF)

ALEXANDER DUNLOP,

*Plaintiff,*

*- against -*

THE CITY OF NEW YORK, a municipal entity; MICHAEL BLOOMBERG, Mayor of the City of New York; RAYMOND KELLY, Police Commissioner of the City of New York; JOSEPH ESPOSITO, Chief of the Department, New York City Police Department; THOMAS GRAHAM, Commanding Officer of the Disorder Control Unit of the New York City Police Department; JOHN J. COLGAN, Deputy Chief and Commanding Officer, Pier 57, New York City Police Department; NEW YORK COUNTY DISTRICT ATTORNEY ROBERT MORGENTHAU; ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON; POLICE OFFICER MAYA GOMEZ, shield number 27230; POLICE OFFICER JOHN DOE's 1-3; JOHN ROE, Technician, New York County District Attorney's Office; and the HUDSON RIVER PARK TRUST, in their individual and official capacities, jointly and severally,

*Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AS TO DEFENDANTS ROBERT M. MORGENTHAU AND WILLA CONCANNON

ROBERT M. MORGENTHAU
District Attorney, New York County
as Special Assistant Corporation Counsel
One Hogan Place
New York, New York 10013
(212) 335-9000

By: Michael S. Morgan (MM-9360)
    Assistant District Attorney
    Of Counsel

**Filed Electronically**

## TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS ................................ 2

ARGUMENT

    PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE
    DISMISSED AS AGAINST THE DA DEFENDANTS FOR FAILURE
    TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. ......................... 10

        A.   PROCEDURAL ISSUES ................................................................ 12

        B.   PLAINTIFF'S FEDERAL CONSPIRACY AND STATE LAW
            MALICIOUS PROSECUTION CLAIMS ........................................... 17

        C.   PLAINTIFF'S STATE LAW NEGLIGENCE CLAIMS ........................... 27

CONCLUSION ............................................................................................... 29

# TABLE OF AUTHORITIES

## FEDERAL CASES

Arizonans for Official English v. Arizona, 520 U.S. 43 (1997)...................................................18

Baez v. Hennessey, 853 F.2d 73 (2d Cir. 1988) ..........................................................................18

Baker v. Dorfman, 239 F.3d 415 (2d Cir. 2000)..........................................................................12

Barbera v. Smith, 836 F.2d 96 (2d Cir. 1987) .............................................................................19

Bernard v. County of Suffolk, 356 F.3d 495 (2d Cir. 2004) ...............................................21, 23

Bernard v. United States, 25 F.3d 98 (2d Cir. 1994) ..................................................................27

Blyden v. Mancusi, 186 F.3d 252 (2d Cir. 1999) ........................................................................18

Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997) .....................................................................24

Britton v. Maloney, 196 F.3d 24 (1st Cir. 1999) .........................................................................27

Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411 (S.D.N.Y. 2002) ...............................15

Buckley v. Fitzsimmons, 509 U.S. 259 (1993) .......................................................................20-21

Butz v. Economou, 438 U.S. 478 (1978).......................................................................................21

Carmody v. City of New York, 2006 U.S. Dist. LEXIS 25308 (S.D.N.Y. May 11, 2006) ...................25

Carrasquillo v. City of New York, 324 F. Supp. 2d 428 (S.D.N.Y. 2004)................................25

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ..................................................10

Christman v. Hanrahan, 500 F.2d 65 (7th Cir. 1974) ................................................................26

Christopher v. Harbury, 536 U.S. 403 (2002) .............................................................................10

Conley v. Gibson, 355 U.S. 41 (1957)...........................................................................................10

Cornwell v. Robinson, 23 F.3d 694 (2d Cir. 1994) .....................................................................14

County of Riverside v. McLaughlin, 500 U.S. 44 (1991)...............................................................5

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001)............................................................24

Day v. Morgenthau, 909 F.2d 75 (2d Cir. 1990)..........................................................................20

Dorman v. Higgins, 821 F.2d 133 (2d Cir. 1987)........................................................................21

Dory v. Ryan, 25 F.3d 81 (2d Cir. 1994) ........................................................................22

Ferrick v. Sudolnik, 816 F. Supp. 879 (S.D.N.Y.),
    aff'd, 2 F.3d 403 (2d Cir. 1993) .............................................................................21

Fincher v. County of Westchester, 979 F. Supp. 989 (S.D.N.Y. 1997) ....................................16

Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362 (2d Cir. 2000) ...............1

Flores v. Satz, 137 F.3d 1275 (11th Cir. 1998) ............................................................26

Gan v. City of New York, 996 F.2d 522 (2d Cir. 1993) ...........................................18, 21

Gregory v. Oliver, 226 F. Supp.2d 943 (N.D. Ill. 2002) ..................................................26

Hardy v. New York City Health & Hosps. Corp., 164 F.3d 789 (2d Cir. 1999) ....................15

Haygood v. City of New York, 64 F. Supp. 2d 275 (S.D.N.Y. 1999) ................................19

Heck v. Humphrey, 512 U.S. 477 (1994) .....................................................................12

Herrmann v. Moore, 576 F.2d 453 (2d Cir. 1978) ........................................................25

Hill v. City of New York, 45 F.3d 653 (2d Cir. 1995) ...............................................22-23

Imbler v. Pachtman, 424 U.S. 409 (1976) ..............................................................20-21, 23

Jastrzebski v. City of New York, 423 F. Supp. 669 (S.D.N.Y. 1976) ...............................15

Jenkins v. City of New York, 1992 U.S. Dist. LEXIS 8279 (S.D.N.Y. June 15, 1992)............28

Kalina v. Fletcher, 522 U.S. 118 (1997) ......................................................................22

Kentucky v. Graham, 473 U.S. 159 (1985) .................................................................18

Lieber v. Village of Spring Valley, 40 F. Supp. 2d 525 (S.D.N.Y. 1999) .........................12

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000) .............................................10

McGinty v. New York, 193 F.3d 64 (2d Cir. 1999) .....................................................10

Merritt v. Shuttle, Inc., 245 F.3d 182 (2d Cir. 2001)...................................................10

Miloslavsky v. AES Engineering Society, 808 F. Supp. 351 (S.D.N.Y. 1992),
    aff'd, 993 F.2d 1534 (2d Cir. 1993) .......................................................................7

Monell v. Department of Social Servs., 436 U.S. 658 (1978) .......................................19

Morgan v. Gertz, 166 F.3d 1307 (10th Cir. 1999).......................................................26

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) ............................................................26

Pangburn v. Culbertson, 200 F.3d 65 (2d Cir. 1999)...............................................24

Patterson v. County of Oneida, 375 F.3d 206 (2d Cir. 2004).................................19

Peay v. Ajello, 470 F.3d 65 (2d Cir. 2006)...............................................................21

Pennhurst State Schools & Hosp. v. Halderman, 465 U.S. 89 (1984) ...............18

Pinaud v. County of Suffolk, 52 F.3d 1139...............................................................21

Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991)............................................................11

Quartararo v. Catterson, 917 F. Supp. 919 (E.D.N.Y. 1996) ...............................20

Rodriguez v. Weprin, 116 F.3d 62 (2d Cir. 1997) ...................................................18

Rohman v. New York City Transit Auth., 215 F.3d 208 (2d Cir. 2000)...............27

Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000) ........................19, 24

Romer v. Morgenthau, 119 F. Supp. 2d 363.............................................................25

Saucier v. Katz, 533 U.S. 194 (2001) ........................................................................23

Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003).........................................27

Shmueli v. City of New York, 424 F.3d 231 (2d Cir. 2005) ...........................2, 20-21

Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995)...........................12, 24

Strickler v. Greene, 527 U.S. 263 (1999) .................................................................26

Sweet v. Sheahan, 235 F.3d 80 (2d Cir. 2000) .........................................................10

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) .................................................10

Tarshis v. Riese Org., 211 F.3d 30 (2d Cir. 2000) .....................................................2

Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999)......................................11

Tyler v. Carter, 151 F.R.D. 537 (S.D.N.Y. 1993),
     aff'd, 41 F.3d 1500 (2d Cir. 1994)....................................................................19

United States v. Agurs, 427 U.S. 97 (1976) .............................................................26

United States v. Esposito, 834 F.2d 272 (2d Cir. 1987) .........................................26

Wallace v. Kato, 549 U.S. __, 166 L. Ed.2d 973 (2007)........................................11

Warner v. Goshen Police Dept., 256 F. Supp. 2d 171 (S.D.N.Y. 2003)..................................16

Webb v. Goord, 340 F.3d 105 (2d Cir. 2003)...................................................................23, 25

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) ........................................................................11

White v. Frank, 855 F.2d 956 (2d Cir. 1988) ...........................................................................7

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) ...................................................18

Young v. County of Fulton, 160 F.3d 899 (2d Cir. 1998).......................................................24

Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000).....................................................................23

## STATE CASES

Akande v. City of New York, 275 A.D.2d 671 (1st Dept. 2000)..............................................20

Arteaga v. State, 72 N.Y.2d 212 (1988) ...........................................................................20, 28

Barr v. County of Albany, 50 N.Y.2d 247 (1980) ..................................................................20

Broughton v. State, 37 N.Y.2d 451 (1975)............................................................................11

Brown v. New York City Transit Auth., 172 A.D.2d 178 (1st Dept. 1991) ...........................16

Buran v. Coupal, 87 N.Y.2d 173 (1995) ...............................................................................14

Clark v. City of Ithaca, 235 A.D.2d 746 (3d Dept. 1997) .....................................................12

Colon v. City of New York, 60 N.Y.2d 78 (1983) ..................................................................27

Contos v. Mahoney, __ A.D.3d __, 2007 N.Y. App. Div. LEXIS 480 (2d Dept. Jan. 16, 2007)........................................................................................................................................14

Coyne v. State, 120 A.D.2d 769 (3d Dept. 1986)..................................................................28

Cunningham v. State, 71 A.D.2d 181 (3d Dept. 1979) .........................................................21

Cunningham v. State, 77 A.D.2d 756 (3d Dept. 1980), modified on other grounds, 53 N.Y.3d 851 (1981)..............................................................22

D'Alessandro v. New York City Transit Auth., 83 N.Y.2d 891 (1994) .................................17

Dabbs v. State, 59 N.Y.2d 213 (1983) ..................................................................................11

Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59 (1984) .........................................................15

Demorcy v. City of New York, 137 A.D.2d 650 (2d Dept. 1988) ..........................................17

Drakeford v. City of New York, 6 A.D.3d 302 (1st Dept. 2004) ........................................21

Garcia v. O'Keefe, 34 A.D.3d 334 (1st Dept. 2006) ......................................................16

Guzman v. City of New York, 236 A.D.2d 444 (2d Dept. 1997) ....................................15

Hallum v. Rothberg, 146 A.D.2d 743 (2d Dept. 1989) ................................................21

Hirschfeld v. City of New York, 253 A.D.2d 53 (1st Dept. 1999) ................................20

Iorio v. City of New York, 19 A.D.3d 452 (2d Dept. 2005) ............................................7

Jackson v. Police Dept. of City of N.Y., 86 A.D.2d 860 (2d Dept. 1982) ......................11

Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466 (1972) ............................................11

Johnson v. Kings County District Attorney's Office, 308 A.D.2d 278 (2d Dept. 2003) ............... 20, 28

Johnson v. Town of Colonie, 102 A.D.2d 925 (3d Dept. 1984) ....................................21

Kenavan v. City of New York, 70 N.Y.2d 558 (1987) ..................................................29

La Mar v. Town of Greece, 97 A.D.2d 955 (4th Dept. 1983) ......................................28

Maloney v. Board of Educ. of Buffalo, 177 A.D.2d 1012 (4th Dept. 1991) ....................29

Mazzilli v. City of New York, 154 A.D.2d 355 (2d Dept. 1989) ....................................17

McCormack v. City of New York, 80 N.Y.2d 808 (1992) ..............................................29

Mills v. County of Monroe, 59 N.Y.2d 307 (1983) ....................................................16

Mon v. City of New York, 78 N.Y.2d 309 (1991) ........................................................29

Moore v. First Federal Savings & Loan Assoc. of Rochester , 237 A.D.2d 956 (4th Dept. 1997) ....................................................................................................................29

Moore v. Melesky, 14 A.D.3d 757 (3d Dept. 2005) ....................................................17

Murray v. City of New York, 283 A.D.2d 560 (2d Dept. 2001) ....................................13

Nunez v. City of New York, 307 A.D.2d 218 (1st Dept. 2003) ....................................12

O'Brien v. City of Syracuse, 54 N.Y.2d 353 (1981) ....................................................15

Pandolfo v. U.A. Cable Sys. of Watertown, 171 A.D.2d 1013 (4th Dept. 1991) ..............28

People ex rel. Maxian v. Brown, 77 N.Y.2d 422 (1991) ................................................5

Pierson v. City of New York, 56 N.Y.2d 950 (1982) ..................................................16

Ramos v. City of New York, 285 A.D.2d 284 (1st Dept. 1996) ........................................... 7

Richardson v. New York Univ., 202 A.D.2d 295 (1st Dept. 1994) ..................................... 29

Roche v. Village of Tarrytown, 309 A.D.2d 842 (2d Dept. 2003) ..................................... 12

Romero v. State, 294 A.D.2d 730 (3d Dept. 2002) ........................................................... 28

Ruggiero v. Suffolk County Police Dept., 7 A.D.3d 605 (2d Dept. 2004) ....................... 17

Schanbarger v. Kellogg, 35 A.D.2d 902 (3d Dept. 1970) ................................................ 21

Shmueli v. New York City Police Dept., 295 A.D.2d 271 (1st Dept. 2001) ................ 17, 20

Spano v. County of Onondaga, 170 A.D.2d 974 (4th Dept. 1991) .................................. 15

St. John v. Marlborough, 163 A.D.2d 761 (3d Dept. 1990) ............................................. 17

Tango v. Tulevech, 61 N.Y.2d 34 (1983) .......................................................................... 28

Tartar v. State, 68 N.Y.2d 511 (1986) .............................................................................. 28

Tucker v. City of New York, 184 Misc.2d 491 (Supreme Ct., N.Y. Co. 2000) ................ 20

Urena v. City of New York, 221 A.D.2d 429 (2d Dept. 1995) ......................................... 17

Vitale v. Hagan, 71 N.Y.2d 955 (1988) ........................................................................... 15

Wanczowski v. City of New York, 186 A.D.2d 397 (1st Dept. 1992) .............................. 17

Whitmore v. City of New York, 80 A.D.2d 638 (2d Dept. 1981) ................................. 21, 23

Wyllie v. District Attorney of County of Kings, 2 A.D.3d 714 (2d Dept. 2003) ............. 18

## FEDERAL: STATUTES AND RULES

42 U.S.C. § 1983 ............................................................... 2, 10-11, 17-18, 23

42 U.S.C. § 1985 .............................................................................................. 24

Fed. R. Civ. P. 11 .......................................................................................... 4, 29

Fed. R. Civ. P. 12(b)(1) ............................................................................ 1, 10, 29

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 10, 19, 29

Fed. R Civ. P. 15(c)(1) ..................................................................................... 13

Fed. R. Civ. P. 15(c)(3) ..................................................................................... 14

Fed. R. Evid. 201 ..................................................................................................................2

### STATE: STATUTES, RULES, AND CODES

N.Y.C. Admin. Code § 7-110..............................................................................................15

N.Y.C. Admin. Code § 10.110 ............................................................................................6

CPLR § 203(c) ...................................................................................................................13

CPLR § 203(f) ...................................................................................................................13

CPLR § 214(5) ...................................................................................................................12

CPLR § 215(3) ...................................................................................................................12

N.Y. County Law § 54....................................................................................................19-20

N.Y. County Law § 941 .....................................................................................................19

N.Y. Crim. Proc. Law § 160.10(b).......................................................................................5

N.Y. Crim. Proc. Law § 240.30(1)(b)...................................................................................7

N.Y. Gen. Mun. Law § 50-e ..............................................................................................14

N.Y. Gen. Mun. Law § 50-e(1)(a)......................................................................................15

N.Y. Gen. Mun. Law § 50-e(1)(b)......................................................................................15

N.Y. Gen. Mun. Law § 50-e(2) ..........................................................................................16

N.Y. Gen. Mun. Law § 50-e(5) ..........................................................................................16

N.Y. Gen. Mun. Law § 50-e(6) ..........................................................................................17

N.Y. Gen. Mun. Law § 50-e(7) ..........................................................................................16

N.Y. Gen. Mun. Law § 50-h ..............................................................................................17

N.Y. Gen. Mun. Law § 50-i ...............................................................................................14

N.Y. Gen. Mun. Law § 50-i(1) ..........................................................................................12

N.Y. Gen. Mun. Law § 50-i(a) ..........................................................................................16

N.Y. Gen. Mun. Law § 50-k ..............................................................................................15

N.Y. Gen. Mun. Law § 50-k(1)(a).......................................................................................12

N.Y. Gen. Mun. Law § 50-k(1)(e) ................................................................................12

N.Y. Gen. Mun. Law § 50-k(6) ...................................................................................12

N.Y. Penal Law § 195.05 ............................................................................................5-6

N.Y. Penal Law § 205.30 ............................................................................................5-6

N.Y. Penal Law § 240.20(5) ..........................................................................................6

N.Y. Penal Law § 240.20(6) ..........................................................................................6

N.Y. Public Officers Law § 2 ........................................................................................20

Filed Electronically

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER DUNLOP,

                                              Plaintiff,

                    - against -                                    06cv0433 (KMK)(JCF)

THE CITY OF NEW YORK, et al.,

                                              Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AS TO DEFENDANTS ROBERT M. MORGENTHAU AND WILLA CONCANNON

Defendants Robert M. Morgenthau, District Attorney of New York County ("DA Morgenthau"), and Willa Concannon, a former Assistant District Attorney for New York County (ADA Concannon), submit this Memorandum of Law in support of their motion for an order pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing the second amended complaint as to them, and for any other relief that may be appropriate.[1]

### INTRODUCTION

In his second amended complaint (Exhibit A), plaintiff seeks money damages in connection with the events surrounding his arrest and prosecution under New York County Criminal Complaint Number 2004NY063485. In particular, plaintiff advances state law claims of malicious prosecution

---

[1] In his complaint, plaintiff also names as a defendant "John Roe," a person alleged to be a technician employed by the New York County District Attorney (2d Am. Compl. ¶ 68). Although certain dispositive arguments raised herein apply with equal force to this defendant, plaintiff has not yet perfected service upon this individual, and thus the undersigned does not purport to be presenting this motion on his behalf. Of course, since the instant memoranda demonstrates the frivolous nature of plaintiff's complaint, the undersigned would have no objection if the Court were to sua sponte dismiss the complaint against this defendant. See generally Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000) ("district courts may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee").

(Count 4) and negligence (Count 6) against DA Morgenthau and ADA Concannon (collectively the "DA Defendants") based on that criminal prosecution, and he also claims that those events support a conspiracy claim under 42 U.S.C. § 1983 (Count 10).[2]   However, even accepting the truth of plaintiff's factual allegations for purposes of this motion, plaintiff's complaint fails to state a viable claim against the DA Defendants.

<u>FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS</u>[*]

According to the Second Amended Complaint, on August 27, 2004, at about 8:30 p.m., plaintiff left his apartment on Eighth Street in Manhattan and began bicycling to a nearby restaurant "to pick up food for dinner" (2d Am. Compl. ¶¶ 26-27).  Plaintiff reached Second Avenue about fifteen minutes later, where he saw "people milling about" and "numerous" officers of the New York City Police Department ("NYPD"), some whom were "wearing helmets and/or holding their batons in their hands extended out or in front of them" (2d Am. Compl. ¶ 28).  Plaintiff also noticed that some NYPD officers were "searching, handcuffing and arresting" people "who appeared to be walking on the street or riding their bikes."  Apparently, those people were engaged in a "protest"

_____

[2] Plaintiff's second amended complaint also advances state law claims of false arrest and imprisonment (Count 1), assault (Count 2), battery (Count 3) and negligent infliction of emotional distress (Count 5) based on the events surrounding his arrest and incarceration prior to arraignment, as well as federal civil rights claims (Counts 7-9) predicated on his arrest and pre-arraignment confinement.  However, since these claims are specifically directed at defendants other than the DA Defendants (2d Am. Compl. ¶¶ 86-95, 97-101, 103-04, 116-28, 142-44, 146-47, 149-52), they will not be addressed at length herein.  Suffice it to say that since plaintiff does not allege -- nor could he in good faith -- that either DA Morgenthau or ADA Concannon played any roll in effecting plaintiff's arrest, or that they had anything to do with the events that transpired while he was in custody awaiting arraignment, plaintiff obviously has no cause of action against the DA Defendants based on those events.

[*] The factual recitation described herein is predicated upon the pertinent allegations of plaintiffs' complaint and matters of which the Court may take judicial notice (<u>e.g.</u>, the state court records of the underlying criminal proceedings), all of which the Court may consider in passing upon the present motion to dismiss.  <u>See Shmueli v. City of New York</u>, 424 F.3d 231, 233 (2d Cir. 2005); <u>Tarshis v. Riese Org.</u>, 211 F.3d 30, 39 (2d Cir. 2000); <u>see also</u> Fed. R. Evid. 201.

"demonstration" in anticipation of the Republican National Convention ("RNC") (2d Am. Compl. ¶¶ 1-22, 29). The "activities in or around" this protest were videotaped by the NYPD's Technical Assistance and Response Unit (2d Am. Compl. ¶¶ 67, 69).

"[U]nsure why the police were arresting" these people, and purportedly not having any involvement in "any protest or demonstration," plaintiff became "concerned" and "attempted to leave the area and find an alternative route to the restaurant" (2d Am. Compl. ¶¶ 30, 37). Noticing a police barricade on Ninth Street, plaintiff dismounted his bicycle and walked toward the intersection of Tenth Street and Second Avenue (2d Am. Compl. ¶ 31). Plaintiff approached a "line of police officers," asked "what was happening," and inquired "how he might leave the scene" (id.). Although the officers were "unsure of what was transpiring, as they had just arrived on the scene," one of them told plaintiff that he could exit the area by heading south on Second Avenue, "toward the blockade he had already observed" (2d Am. Compl. ¶ 32).

Plaintiff complied with those directions, and when he arrived at the blockade he was approached by the same police officer who had directed him there (2d Am. Compl. ¶ 33). Plaintiff again asked that officer "how to leave," whereupon the officer allegedly "gripped" plaintiff's arm, told him that he "was under arrest," and purportedly stated, "I just told you to go in this direction so I could arrest you" (id.). According to plaintiff, at no time did he "prevent any cars from traveling on the street or prevent pedestrians from passing by on the sidewalk or on the street," and he never

"chant[ed], march[ed], yell[ed], or otherwise fail[ed] to obey a lawful order or direction given to him by the NYPD" (2d Am. Compl. ¶¶ 35-36, 83).[3]

After being told that he was under arrest, plaintiff asserts that "several officers in riot gear rushed" at him, "grabbed" his neck, and "pushed him in [a] downward direction as his arms were grabbed and twisted behind him" (2d Am. Compl. ¶ 38). Plaintiff denies having resisted arrest, and states that he witnessed "another person being thrown to the ground by multiple police officers" around that time (2d Am. Compl. ¶¶ 34, 39). Plaintiff's hands were secured with plastic "flexi cuffs," his bicycle was confiscated, and, he claims, the arresting officers "ignored" his inquiries about "the reason for [his] arrest," and also subjected him to "snide, inappropriate, and crude remarks" (2d Am. Compl. ¶¶ 40-42). Plaintiff states that he then overheard an officer tell Police Officer Maya Gomez, "This is your arrest" (2d Am. Compl. ¶¶ 43-44). According to plaintiff, Gomez had been "nowhere in the vicinity of the place" where plaintiff was arrested, and had not witnessed any of plaintiff's activities prior to his arrest (2d Am. Compl. ¶¶ 45, 73).

Following his arrest, plaintiff was placed inside a police vehicle for more than "one and a half hours in the heat"; plaintiff was allegedly not given water and "began to sweat profusely" and started "to feel feverish and clammy" (2d Am. Compl. ¶ 46). Plaintiff asked another police officer to loosen his "flexi cuffs" (which were supposedly "cut[ting] his skin"), but the officer refused and allegedly "tightened the cuffs even more," causing plaintiff's wrists "to bleed and swell" (2d Am.

---

[3] According to plaintiff, he was arrested pursuant to a conspiratorial agreement between the RNC, the United States Secret Service, the mayor, and the police commissioner (among others), the aim of which was to "violate the constitutional rights" of any RNC protestors by unlawfully arresting them, in order to "take the protest and negative publicity surrounding the protest and the Republican National Party out of the public eye" (2d Am. Compl. ¶¶ 65-66, 84, 169). While this allegation is not pertinent to the DA Defendants' motion, it is a prime example of certain allegations in the complaint that, quite frankly, are hard to square with plaintiff's and his counsel's pleading obligations under Rule 11.

Compl. ¶¶ 47-48, 83). Plaintiff was then transported to Pier 57, which the NYPD was using as an "intermediate holding facility" for RNC-related protester arrests; that facility contained "multiple" temporary holding cells that were "constructed with chain link fence topped with razor wire" (2d Am. Compl. ¶¶ 49, 51). Plaintiff asserts that Pier 57 lacked adequate fingerprinting capabilities and other arrest-processing equipment found at other NYPD and correctional facilities in the city (2d Am. Compl. ¶¶ 49-50).[4]

Upon his arrival at Pier 57, plaintiff was searched, his property confiscated, and he was placed "in a makeshift cell with approximately one hundred other individuals" (2d Am. Compl. ¶ 51). Plaintiff's cell was divided into two sections: the area where plaintiff was kept and a separate "buffer zone" that "contained a portable toilet" (id). According to plaintiff, the conditions in Pier 57 were unsafe and unsanitary, and lacked adequate "seating to accommodate all the people in the cell" (2d Am. Compl. ¶¶ 52-54, 83). Plaintiff complains that the holding cell lacked "beds," "cots,"

_____

[4] According to plaintiff, the mayor and various NYPD officials elected to utilize the under-equipped facilities at Pier 57 to "lengthen the stay in custody of anyone arrested during the RNC" (2d Am. Compl. ¶¶ 49-50). Specifically, plaintiff asserts that by requiring all arrestees, including plaintiff, to be fingerprinted even though they were "charged with minor offenses for which fingerprinting is unnecessary," and then not equipping Pier 57 with the equipment needed to "adequately process[] arrestees," those arrested individuals were subjected to "unnecessary and unreasonably extended[ed]" incarceration that delayed their arraignment (id.). Of course, insofar as plaintiff is trying to suggest that his fingerprinting was "unnecessary" (2d Am. Compl. ¶ 49) he is simply incorrect. Since plaintiff was arrested for, inter alia, two class A misdemeanors -- Resisting Arrest (N.Y. Penal Law § 205.30) and Obstructing Governmental Administration in the Second Degree (N.Y. Penal Law § 195.05) (Exhibit B; 2d Am. Compl. ¶ 63) -- he was required by law to be fingerprinted. N.Y. Crim. Proc. Law § 160.10(b). Similarly, since plaintiff admits that he was arraigned within 24 hours of his arrest (2d Am. Compl. ¶ 62), it is hard to see how he can seriously allege that the interval between his arrest and arraignment was "unreasonably extend[ed] and prolong[ed]" (2d Am. Compl. ¶ 49). County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991) (under the federal constitution, arraignment within 48 hours is timely); People ex rel. Maxian v. Brown, 77 N.Y.2d 422, 426-27 (1991) (under New York law, arraignment within 24 hours is timely).

"blankets" or "pillows," which, he asserts, prevented him from sleeping and forced him to stand "for hours through the night to avoid sitting on the dirty and greasy floor" (2d Am. Compl. ¶ 54).

Plaintiff further states that he began to feel ill while incarcerated -- due to a "chemical-like smell" that permeated the "damp and cold" facility, and also because his clothes had been "drenched in sweat"-- and claims that he "develop[ed] a cough and fever like conditions" (2d Am. Compl. ¶¶ 53, 56). Plaintiff does not, however, allege that he ever sought medical assistance, though he does assert that he "observed [other] individuals in pain who were not given medical attention" (2d Am. Compl. ¶ 55). Plaintiff also acknowledges that he was given "one box of cereal to eat" while at Pier 57 (2d Am. Compl. ¶ 57). According to plaintiff, he was "unable to ascertain from the NYPD or Corrections what was happening or why he had been arrested," and he claims that when he broached this subject with an NYPD, he was told, "You have the right to shut the fuck up. I suggest you exercise that right" (2d Am. Compl. ¶ 58).

The next morning, August 28, 2004, plaintiff was transported to 100 Centre Street, where he was searched, fingerprinted, and placed in a holding cell (2d Am. Compl. ¶¶ 59-61). Plaintiff claims he was again insulted by NYPD and correction officers when he asked about "his status and when he would be able to see a lawyer" (2d Am. Compl. ¶ 60). At about 6:30 p.m., plaintiff was arraigned and charged in New York County Criminal Complaint Number 2004NY063485 with one count each of Resisting Arrest (N.Y. Penal Law § 205.30), Obstructing Governmental Administration in the Second Degree (N.Y. Penal Law § 195.05), and Parading without a Permit (N.Y.C. Admin. Code § 10.110), and two counts of Disorderly Conduct (N.Y. Penal Law §§ 240.20[5], [6]) (Exhibit B; 2d Am. Compl. ¶¶ 62-63). While plaintiff alleges that his prosecution lacked probable cause (2d Am. Compl. ¶ 63), the criminal complaint was based upon a sworn statement by Officer Gomez, who stated that she observed plaintiff and others obstruct traffic with their bicycles; that plaintiff refused an order to disburse; that plaintiff and numerous other bicyclists were parading without a permit;

that plaintiff and others rode their bicycles into a line of police officers who were standing in the roadway; and that plaintiff thereafter resisted arrest (Exhibit B, p. 2; 2d Am. Compl. ¶ 64).[5] Plaintiff pleaded not guilty and was released on his own recognizance (Exhibit C, p. 1; Exhibit D, p. 2).

Plaintiff's prosecution was eventually assigned to ADA Concannon, who, plaintiff asserts, was acting "under the supervision" of DA Morgenthau (2d Am. Compl. ¶ 71). During pretrial discovery, ADA Concannon provided plaintiff a videotape "that was taped by the NYPD and was to be submitted as evidence of [plaintiff's] alleged unlawful conduct," which tape ADA Concannon supposedly represented "was a complete and unedited version of the events that transpired immediately preceding and including [plaintiff's] arrest" (2d Am. Compl. ¶¶ 71-72). On January 15, 2005, the prosecution filed its own discovery demand (Exhibit D, p. 7), which required plaintiff's defense counsel to provide the prosecution with, inter alia, any videotapes in his possession that the defense intended to introduce at trial. See N.Y. Crim. Proc. Law § 240.30(1)(b). Despite the

---

[5] Apparently, plaintiff believes that because Officer Gomez supposedly did not personally observe the criminal activity described in the criminal complaint, and as it was Gomez who swore out the complaint, his prosecution necessarily lacked in probable cause (2d Am. Compl. ¶¶ 43-45, 63-64, 73). Insofar as plaintiff is alleging that the prosecutor lacked probable cause to pursue his prosecution, he is incorrect as a matter of law. Because plaintiff does not allege that ADA Concannon (or any other prosecutor) knew or had reason to know that Gomez had not seen the activity described in the complaint, the prosecutor was entitled to rely on the officer's sworn statement, which on its face provided probable cause for every offense charged. Under these circumstances, while plaintiff might have a malicious prosecution claim against the officer who swore out the complaint, he has no such claim against any prosecutor. See Iorio v. City of New York, 19 A.D.3d 452, 453 (2d Dept. 2005) ("information provided by an identified citizen accusing another individual of a specific crime" provides probable cause, which forecloses a malicious prosecution action) (internal quotes and citation omitted); accord Miloslavsky v. AES Engineering Society, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). Compare Ramos v. City of New York, 285 A.D.2d 284, 299-300 (1st Dept. 1996) (malicious prosecution claim may be pressed against a complainant who "fail[s] to make a full and complete statement of the facts to the District Attorney or the court"); accord White v. Frank, 855 F.2d 956, 961 (2d Cir. 1988).

unambiguous duty imposed by New York's Criminal Procedure Law, defense counsel failed to comply with this discovery requirement in a timely manner.

Instead, on April 6, 2005, after again obtaining ADA Concannon's assurance that he had been "given the complete and entire videotape of this incident" involving plaintiff, defense counsel, in open court, announced that he possessed a videotape which showed that the tape previously produced by ADA Concannon had been edited (Exhibit D, pp. 14-16).  Apparently, that tape had been produced by New York County prosecutors in a different RNC-protestor case, and upon plaintiff's counsel's review he noticed that the initial tape "had been edited in two places" (2d Am. Compl. ¶ 72).  According to plaintiff, both edits -- which plaintiff asserts amounted to a "bad faith" "misuse of investigative techniques and privileges" by the prosecution -- "remov[ed] images showing [plaintiff] behaving peacefully, not obstructing traffic, not parading nor attempting to avoid arrest" (2d Am. Compl. ¶¶ 74-76, 78-80).  Critically, though, plaintiff makes no claim that the edited portions of the tape pertained to any of plaintiff's conduct immediately prior to his arrest at approximately 8:45 p.m.  Plaintiff also asserts that footage of "the actual officer who placed [plaintiff] under arrest" was edited from the initial tape, and that Officer Gomez does not appear on the unedited tape (2d Am. Comp. ¶ 77).

Later on April 6, 2004, after ADA Concannon was finally allowed to review the unedited videotape in defense counsel's possession, the People moved to dismiss the charges against plaintiff because, as ADA Concannon explained to the trial court, she did not believe that she could "prove these charges beyond a reasonable doubt"(Exhibit D, p. 18; see also 2d Am. Compl. ¶ 72).  Plaintiff's defense counsel then "thank[ed] the Assistant District Attorney for the work she ha[d] done during her lunch hour," and made a record stating explicitly that "there was nothing done wrong here by the District Attorney's Office" (Exhibit D, p. 18-19).  The court then dismissed the charges against plaintiff (Exhibit D, p. 19).

Prior to the termination of the criminal case against him, on or about November 24, 2004, plaintiff served a notice of claim on the City of New York, the New York City Police Department, and the New York City Department of Corrections (Exhibit E; see also 2d Am. Compl. ¶ 5). In that notice of claim, plaintiff alleged that he was "injured while being falsely and wrongfully arrested and detained by members of the New York City Police Department," and that he was "held in unsanitary and deplorable conditions" by the NYPD and the New York City Department of Corrections (Exhibit E, p. 1). Plaintiff also stated that he "is being maliciously prosecuted," but in outlining the factual basis for this claim, plaintiff made clear that his malicious prosecution claim was directed at members of the NYPD (Exhibit E, pp. 1-2). Indeed, plaintiff's notice of claim does not even mention DA Morgenthau, ADA Concannon, or any other employee of the New York County District Attorney, and it certainly does not allege any malfeasance by those individuals.

On or about April 5, 2005, plaintiff "gave testimony at a 50(h) hearing," and about a month later, on May 12, 2005, his claim was denied by the New York City Comptroller (2d Am. Compl. ¶¶ 5-6; Exhibit E, p. 5). On August 26, 2005, plaintiff commenced the present action by filing a summons and complaint in the Supreme Court of New York, New York County, naming as defendants, inter alia, DA Morgenthau and "John Roe," a video technician allegedly employed by the New York County District Attorney (Exhibit F). That complaint did not name any other "John Roe" defendants allegedly employed by DA Morgenthau, nor did it name ADA Concannon as a defendant. Plaintiff thereafter filed an amended complaint on December 16, 2005; plaintiff removed the "John Roe" technician as a defendant, and though ADA Concannon was mentioned in the body of the pleading, plaintiff did not name ADA Concannon or any other employee of the New York County District Attorney as a defendant in that pleading (Exhibit G). Following the removal of this action to federal court, on January 16, 2007, plaintiff filed his second amended complaint. In his

most recent pleading, plaintiff has reasserted his claim against the "John Roe" technician, and has for the first time named ADA Concannon as a defendant (Exhibit A).

<u>ARGUMENT</u>

PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST THE DA DEFENDANTS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), a complaint must be dismissed when it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Sweet v. Sheahan</u>, 235 F.3d 80, 83 (2d Cir. 2000). The Court's inquiry under Rule 12(b)(6) is generally limited to testing the allegations of the complaint, though the Court should also consider any "matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). Likewise, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)," the Court "may refer to evidence outside the pleadings." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). Here, even assuming the truth of plaintiff's factual allegations, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, n.1 (2002); <u>Merritt v. Shuttle, Inc.</u>, 245 F.3d 182, 186 (2d Cir. 2001), and drawing all reasonable inferences in plaintiff's favor, <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002); <u>McGinty v. New York</u>, 193 F.3d 64, 68 (2d Cir. 1999), plaintiff's complaint should be dismissed as against the DA Defendants.

In his causes of action against the DA Defendants, plaintiff seeks money damages under the federal civil rights statutes, as well as New York state law, based on the events surrounding his arrest and ensuing criminal prosecution under New York County Criminal Complaint Number 2004NY063485. As against the DA defendants, the only federal cause of action is a conspiracy claim under 42 U.S.C. § 1983 (Count 10), in which plaintiff alleges that the DA Defendants

conspired together with members of the NYPD to "maliciously prosecute" plaintiff based on "false," "manufacture[d]," and "fabricate[d]" evidence (Complaint ¶¶ 161, 176-78). Plaintiff also invokes the court's supplemental jurisdiction to advance state law claims of malicious prosecution (Count 4) and negligence (Count 6) against the DA Defendants. Specifically, plaintiff claims that he was prosecuted "without probable cause" based on false testimony and evidence (Complaint ¶¶ 106, 109-112); that ADA Concannon and DA Morgenthau acted negligently during the course of that prosecution (Complaint ¶¶ 133-35, 137); and that DA Morgenthau was negligent in his training and supervision of ADA Concannon and other of his employees (Complaint ¶¶ 135-36).

As a threshold matter, while plaintiff asserts that he "was unlawfully arrested" as a result of the DA Defendants' alleged conduct (2d Am. Compl. ¶¶ 81-82), it is crystal clear that plaintiff has no claim against the DA Defendants sounding in false arrest or imprisonment, under either state or federal law. Where, as here, a plaintiff has been subjected to a purportedly unlawful warrantless arrest, a claim for false arrest will lie against anyone involved in effecting that arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Broughton v. State, 37 N.Y.2d 451, 457 (1975). However, this tort only "allows plaintiffs to seek damages from 'the time of detention up until issuance of process or arraignment, but not more.'" Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) (citation omitted); accord Dabbs v. State, 59 N.Y.2d 213, 218 (1983). Once a plaintiff is arraigned, the tort of false arrest (or false imprisonment)[6] comes to an end, since "after arraignment the accused is no longer held as a result of the arrest but as a result of the intervening act of the arraigning Magistrate." Broughton v. State, 37 N.Y.2d at 459; see also Wallace v. Kato, 549 U.S. __,

---

[6] Under both New York Law and 42 U.S.C. § 1983, "the tort of false arrest is synonymous with that of false imprisonment." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991); accord Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 472-73 (1972); Jackson v. Police Dept. of City of N.Y., 86 A.D.2d 860 (2d Dept. 1982).

___, 166 L. Ed.2d 973, 981-82 (2007). Thereafter, "the tort of malicious prosecution . . . [is] implicate[d] [by any] post-arraignment deprivations of liberty." Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995); accord Heck v. Humphrey, 512 U.S. 477, 484 (1994). Because plaintiff does not allege that either DA Morgenthau or ADA Concannon played any role prior to his arraignment -- plaintiff specifically states that he was arrested by NYPD officers (2d Am. Compl. ¶¶ 31-45), and claims that the NYPD and corrections officials were responsible for his pre-arraignment confinement (2d Am. Compl. ¶¶ 46) -- plaintiff's only claim against the DA Defendants must be rooted in the ensuing criminal proceedings. Plaintiff, however, cannot recover against the DA Defendants based on any such cause of action, nor can he do so by couching his federal claim in terms of a conspiracy.

## A. PROCEDURAL ISSUES

### 1. Statute of Limitation

The statute of limitation applicable to plaintiff's state law claims of malicious prosecution and negligence against the DA Defendants is one year and ninety days. N.Y. Gen. Mun. Law § 50-i(1); Lieber v. Village of Spring Valley, 40 F. Supp. 2d 525, 532-33 (S.D.N.Y. 1999); Clark v. City of Ithaca, 235 A.D.2d 746, 747 (3d Dept. 1997); see also Baker v. Dorfman, 239 F.3d 415, 419 (2d Cir. 2000).[7] Here, plaintiff's claim for malicious prosecution accrued on April 6, 2005, the date the criminal prosecution terminated. Roche v. Village of Tarrytown, 309 A.D.2d 842 , 843 (2d Dept. 2003); Nunez v. City of New York, 307 A.D.2d 218, 219 (1st Dept. 2003). Plaintiff's negligence claims stemming from that prosecution also accrued, at the latest, on that date in April 2005. See

---

[7] While the statute of limitation is ordinarily one year for malicious prosecution, N.Y. CPLR § 215(3), and three years for negligence, N.Y. CPLR § 214(5), because plaintiff has brought this action against the DA Defendants, who for these limited purposes are deemed to be employees of the City of New York, see N.Y. Gen. Mun. Law §§ 50-k(1)(a), (1)(e), the applicable limitation period is one year and ninety days. N.Y. Gen. Mun. Law §§ 50-i(1), 50-k(6).

Murray v. City of New York, 283 A.D.2d 560, 561 (2d Dept. 2001). Thus, plaintiffs had one year and ninety days (455 days) from that date, i.e., until July 5, 2006, to interpose these claims. Since plaintiff filed his initial complaint against DA Morgenthau on August 26, 2005, plaintiff's state law claims against him have been timely filed.

A different conclusion, however, pertains to plaintiff's malicious prosecution and negligence claims against ADA Concannon. ADA Concannon was not named as a defendant in plaintiff's initial complaint (Exhibit F), and while she was mentioned in the body of plaintiff's first amended complaint, she was likewise not named as a defendant in that pleading (Exhibit G). In fact, ADA Concannon was not named as a defendant until July 16, 2007, when plaintiff filed his second amended complaint (Exhibit A). Since this filing occurred outside the applicable limitation period, plaintiff's state law claims against ADA Concannon are timebarred unless his plaintiff's most recent complaint relates back to his initial filing. It does not.

Fed. R Civ. P. 15(c)(1) provides that the law governing the relation back of pleading amendments is governed "by the law that provides the statute of limitation applicable to the action," in this case New York law. Under New York law, an amendment adding new claims against a named defendant relates back to the original pleading when the new claims arise out of the same "transactions" or "occurrences" described in the initial complaint. N.Y. CPLR § 203(f). Where, as here, the plaintiff's amendment adds claims against newly-named defendant, those claims relate back only if the new defendant "is united in interest" with a defendant named in the original complaint. N.Y. CPLR 203(c). This, in turn, requires the plaintiff to make a three-part showing, namely: (1) the claims against the defendants "arose out of same conduct, transaction or occurrence"; (2) "the new party is 'united in interest' with the original defendant;" and (3) the new defendant "knew or should have known that," but for a "mistake by plaintiff as to the identity of the proper parties, the action

would have been brought against [her] as well." Buran v. Coupal, 87 N.Y.2d 173, 178-81 (1995); accord Fed. R. Civ. P. 15(c)(3).

Even assuming that plaintiff can meet the first two of these requirements, he cannot meet the third, as he cannot show that his failure previously to name ADA Concannon as a defendant resulted from a "mistake" as to her identity as a potentially-liable party. Plaintiff obviously knew that ADA Concannon was the prosecutor assigned to his case (after all, he was present at the court proceedings at which she appeared), and any doubt on this issue is removed by his first amended complaint, wherein he repeatedly identified ADA Concannon in the body of his complaint, but declined to name her as a defendant. "When a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired." Buran v. Coupal, 87 N.Y.2d at 181; accord Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994). Here, because plaintiff undoubtedly knew of ADA Concannon's potential liability back in 1995, but waited more than six months after the statute of limitation lapsed before naming her as a defendant, it is clear that this amendment did not relate back to plaintiff's initial filing, and this state law claims against ADA Concannon are now timebarred. Contos v. Mahoney, __ A.D.3d __, __, 2007 N.Y. App. Div. LEXIS 480, *3-*4 (2d Dept. Jan. 16, 2007); Pappas v. 31-08 Cafe Concerto, Inc., 5 A.D.3d 452, 453 (2d Dept. 2004); accord Cornwell v. Robinson, 23 F.3d at 705.

### 2. Condition Precedent

Under New York General Municipal Law §§ 50-e and 50-i, service of a notice of claim is a condition precedent to bringing a tort claim against a public corporation or any of its officers,

agents, or employees.[8]  O'Brien v. City of Syracuse, 54 N.Y.2d 353, 358 (1981).  New York law

further requires that a notice of be served "within ninety days after the claim arises." N.Y. Gen.

Mun. Law § 50-e(1)(a).  Failure to comply with this condition precedent is fatal to any underlying

tort action.  Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 61-62 (1984); see also Hardy v. New

York City Health & Hosps. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999).

    As discussed above, plaintiff's state law claim for malicious prosecution and negligence

accrued when the criminal case against him terminated on April 6, 2005.  Here, however, plaintiff

filed his notice of claim on November 24, 2004, before any of his claims against the DA Defendants

accrued.   In other words, insofar as plaintiff's notice of claim is alleged to pertain to his claims

against the DA Defendants (but see discussion infra), it was filed prematurely, as New York General

Municipal Law § 50-e(1)(a) specifically requires that a notice of claim be filed within ninety days after

the claim accrues.  And, it is now established that a notice of claim filed before the pertinent accrual

date is ineffective to satisfy this statutory requirement.  Vitale v. Hagan, 71 N.Y.2d 955 (1988), rev'g

on dissent, 132 A.D.2d 468, 470-72 (1st Dept. 1987) (Murphy, P.J., dissenting) (dismissing malicious

prosecution claim where notice of claim was filed prematurely); Guzman v. City of New York, 236

A.D.2d 444, 444-45 (2d Dept. 1997) (same); Spano v. County of Onondaga, 170 A.D.2d 974 (4th

Dept. 1991) (same).[9]  Because none of plaintiff's state law claims against the DA Defendants have

---

[8] In actions against individuals, this requirement applies if the pertinent public corporation is obligated to indemnify that person.  See N.Y. Gen. Mun. Law § 50-e(1)(b); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 428 (S.D.N.Y. 2002).  The City of New York owes such an obligation to the DA Defendants.  See N.Y. Gen. Mun. Law § 50-k; N.Y.C. Admin. Code § 7-110.

[9] Insofar as Jastrzebski v. City of New York, 423 F. Supp. 669, 675 (S.D.N.Y. 1976), holds that a premature notice of claim is not defective under New York law, that decision has been repudiated by the New York Court of Appeals's authoritative decision in Vitale v. Hagan.

been brought in compliance with this condition precedent, they must be dismissed.[10]  Ibid; see also N.Y. Gen. Mun. Law § 50-i(a).

Apart from this timeliness problem, plaintiff's notice of claim suffers from another fatal defect vis-à-vis the DA Defendants.  A notice of claim must set forth, inter alia, "the nature of the claim" and the "time when, the place where and the manner in which the claim arose," N.Y. Gen. Mun. Law § 50-e(2), and must be sufficient to allow for an investigation into the particular acts of malfeasance underlying the plaintiff's causes of action.  See Mills v. County of Monroe, 59 N.Y.2d 307, 310-11 (1983).  It is for this reason that an effective notice of claim must contain notice of "a particular claim," not just a "notice of the occurrence."  Brown v. New York City Transit Auth., 172 A.D.2d 178, 180 (1st Dept. 1991).  Thus, as this Court has observed, any cause of action "not directly or indirectly mentioned in the notice of claim may not be included in a subsequent lawsuit." Fincher v. County of Westchester, 979 F. Supp. 989, 1003 (S.D.N.Y. 1997); see also Garcia v. O'Keefe, 34 A.D.3d 334, 335 (1st Dept. 2006).

Here, plaintiff's notice of claim sets forth claims based on plaintiff's arrest and pre-arraignment detention, and the notice describes at length the factual predicates for these claims against the corrections and NYPD officials involved in those events (Exhibit E, pp. 1-2).  And, while plaintiff did assert in his notice of claim that he was "being maliciously prosecuted" (id.), at no point did he state that either ADA Concannon or DA Morgenthau were involved in that prosecution, nor, critically, did he identify any alleged malfeasance by those individuals that could

---

[10] This Court, of course, lacks the authority to entertain an application to cure this defect by allowing the filing of a late notice of claim.  See N.Y. Gen. Mun. Law § 50-e(7); Warner v. Goshen Police Dept., 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003).  But even if it did, any such application would now be untimely, as more than one year and ninety days has elapsed since this claim accrued. N.Y. Gen. Mun. Law § 50-e(5); Pierson v. City of New York, 56 N.Y.2d 950, 955-56 (1982).

reasonably give notice as to the tort claims he is now pressing against them. In short, the allegations of plaintiff's notice of claim were insufficient to afford notice that he was pressing a claim of malicious prosecution or negligence against either of the DA Defendants.[11] See Wanczowski v. City of New York, 186 A.D.2d 397 (1st Dept. 1992); Mazzilli v. City of New York, 154 A.D.2d 355, 357 (2d Dept. 1989). And that notice of claim certainly gave no indication that plaintiff intended to raise a negligent training or supervision claim against DA Morgenthau, so that claim too must be dismissed. Shmueli v. New York City Police Dept., 295 A.D.2d 271 (1st Dept. 2001); Urena v. City of New York, 221 A.D.2d 429 (2d Dept. 1995); St. John v. Marlborough, 163 A.D.2d 761, 762 (3d Dept. 1990).

### B.  PLAINTIFF'S FEDERAL CONSPIRACY AND STATE LAW MALICIOUS PROSECUTION CLAIMS

As noted, plaintiff has advanced a state-law malicious prosecution claim against the DA Defendants (2d Am. Compl. ¶¶ 106-113), as well as a correlative claim under 42 U.S.C. § 1983 alleging that the DA Defendants conspired to "maliciously prosecute" him based on "false," "manufacture[d]" and "fabricate[d]" evidence (2d Am. Compl. ¶¶ 3, 161, 176-78). Insofar as these causes of action are lodged against the DA Defendants in their official capacities (2d Am. Compl. ¶¶ 18-191), plaintiff plainly has no claim. "'When prosecuting a criminal matter, a district attorney in

---

[11] Although plaintiff states that he "gave testimony at a 50(h) hearing" in April 2005 (2d Am. Compl. ¶ 6), he does not allege that he discussed the purported misconduct of the DA Defendants at that hearing. But even if he did, that testimony would not cure the above-described defect in his notice of claim. While testimony at a hearing pursuant to New York General Municipal Law § 50-h may be used to correct a good-faith "mistake, omission, irregularity or defect" in a notice of claim, N.Y. Gen. Mun. Law § 50-e(6); see also D'Alessandro v. New York City Transit Auth., 83 N.Y.2d 891, 893 (1994), "[a]mendments of a substantive nature are not within the purview of" this statute. Ruggiero v. Suffolk County Police Dept., 7 A.D.3d 605 (2d Dept. 2004). This includes amendments altering the parties against whom the plaintiff's claims are brought, Moore v. Melesky, 14 A.D.3d 757, 759 (3d Dept. 2005), as well as, obviously, amendments adding new theories of liability. Demorcy v. City of New York, 137 A.D.2d 650, 650-51 (2d Dept. 1988).

New York State, acting in a quasi-judicial capacity, represents the State not the county.'" <u>Gan v. City of New York</u>, 996 F.2d 522, 536 (2d Cir. 1993) (quoting <u>Baez v. Hennessey</u>, 853 F.2d 73, 77 (2d Cir. 1988)).  But the Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for money damages against a state actor in his or her official capacity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).  Thus, any federal official-capacity claim for damages against the DA Defendants is barred by the Eleventh Amendment.  <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 66 (2d Cir. 1997); <u>Gan v. City of New York</u>, 996 F.2d at 529, 536.  The Eleventh Amendment likewise precludes any state law claim brought in this forum against the DA Defendants in their official capacities.  <u>Pennhurst State Schools & Hosp. v. Halderman</u>, 465 U.S. 89, 120-21 (1984).  Moreover, since a state actor sued in his or her official capacity is not a "person" subject to liability under § 1983, <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989), this is the additional "stopper" to any federal "official capacity" claim against the DA Defendants.  <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 69 & n.24 (1997).  And, as discussed below, plaintiff's individual-capacity claims against the DA Defendants fare no better.

### <u>1. Personal Involvement</u>

It is, of course, axiomatic that an individual defendant's "[p]ersonal involvement . . . in alleged constitutional deprivations is a prerequisite to an award of damages" under the federal civil rights statutes.  <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999); <u>accord</u> <u>Wyllie v. District Attorney of County of Kings</u>, 2 A.D.3d 714, 718 (2d Dept. 2003) (same under state law).  Here, there is no dispute that ADA Concannon was directly involved in plaintiff's criminal prosecution.  However, while plaintiff's alleges that ADA Concannon acted "under the supervision" of DA Morgenthau and conducted that prosecution at his "behest" (2d Am. Compl. ¶¶ 68, 71), plaintiff does not advance one concrete <u>factual</u> allegation that could support a finding that the District Attorney himself played an active role in plaintiff's low-level misdemeanor prosecution -- one of

literally thousands that were prosecuted that year in New York County. See Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987) (dismissing for lack of personal involvement a claim against a United States Attorney based on the actions of a subordinate prosecutor); Romer v. Morgenthau, 119 F. Supp. 2d 346, 355-56 (S.D.N.Y. 2000) (same where such a claim was pressed against DA Morgenthau); Haygood v. City of New York, 64 F. Supp. 2d 275, 279-80 (S.D.N.Y. 1999) (similar). Nor could any such allegation be made consistent with plaintiff's Rule 11 obligations.[12]

Rather, plaintiff's complaint, fairly read, suggests that plaintiff is seeking to hold ADA Concannon liable for her purported misconduct during the course of his criminal prosecution (2d Am. Compl. ¶¶ 68-72), and because ADA Concannon's activities occurred "during the course of her employment" with DA Morgenthau (Complaint ¶ 114), plaintiff asserts that DA Morgenthau is therefore liable "under the doctrine of *respondeat superior*" (2d Am. Compl. ¶ 180). But of course, respondeat superior is not a valid theory of liability under the federal civil rights statutes. Monell v. Department of Social Servs., 436 U.S. 658, 691-95 (1978); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). Nor may this theory of liability be pressed against DA Morgenthau under state law.

New York County Law § 54, which is applicable to the counties within the City of New York, N.Y. County Law § 941, abrogates vicarious liability for the head of any county "agency" or "office" based upon the acts or omissions of an employee of that "agency" or "office." As the

---

[12] Insofar as plaintiff's complaint might be intended to suggest that DA Morgenthau was personally involved in the editing of the videotape about which plaintiff complains (see 2d Am. Compl. ¶¶ 68, 80, 176), that allegation is so fanciful that it need not be credited, even in the context of this Rule 12(b)(6) motion. See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993) (court need not accept the truth of "fantastic or delusional" factual allegations), aff'd, 41 F.3d 1500 (2d Cir. 1994). If plaintiff truly intends to advance such a factual allegation against DA Morgenthau, he should be required to articulate the good faith basis for it.

elected District Attorney of New York County, it is beyond question that DA Morgenthau qualifies as the head of that county office. See N.Y. Public Officers Law § 2. Thus, New York law precludes DA Morgenthau from being held liable under any theory of vicarious tort liability. Shmueli v. New York City Police Dept., 295 A.D.2d at 271 (relying on New York County Law § 54 to dismiss respondeat superior claims brought against DA Morgenthau); Tucker v. City of New York, 184 Misc.2d 491, 492 (Supreme Ct., N.Y. Co. 2000) (same); see also Barr v. County of Albany, 50 N.Y.2d 247, 257 (1980). In any case, leaving aside the issue of his personal involvement, plaintiff has no viable conspiracy or malicious prosecution claim against DA Morgenthau, or, for that matter, ADA Concannon.

### 2. Prosecutorial Immunity

The Supreme Court has made plain that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Arteaga v. State, 72 N.Y.2d 212, 217 n.1 (1988); Hirschfeld v. City of New York, 253 A.D.2d 53, 59 (1st Dept. 1999). This immunity therefore covers any claim involving the decision to prosecute plaintiff (Complaint ¶ 63), Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990); Akande v. City of New York, 275 A.D.2d 671, 672 (1st Dept. 2000), as well as ADA Concannon's decision to continue that prosecution after it was commenced.[13] Shmueli v. City of New York, 424 F.3d at 238; Johnson v. Kings County District Attorney's Office, 308 A.D.2d 278, 285 (2d Dept. 2003); see also

---

[13] Although ADA Concannon is no longer employed by the New York County District Attorney, there is no doubt that she is entitled to invoke the shield of prosecutorial immunity for conduct that was previously undertaken in her capacity as a prosecutor. Quartararo v. Catterson, 917 F. Supp. 919, 954 (E.D.N.Y. 1996).

Butz v. Economou, 438 U.S. 478, 516 (1978). Further, even assuming that DA Morgenthau played an active supervisory role in that prosecution, he would be entitled to "the same immunity defenses" available to his subordinate prosecutor. Gan v. City of New York, 996 F.2d at 536-37; see also Ferrick v. Sudolnik, 816 F. Supp. 879, 886 (S.D.N.Y.), aff'd, 2 F.3d 403 (2d Cir. 1993); Drakeford v. City of New York, 6 A.D.3d 302 (1st Dept. 2004); Hallum v. Rothberg, 146 A.D.2d 743 (2d Dept. 1989). And because this immunity is absolute, it cannot be overcome by allegations that any prosecutor's actions were intentional, malicious, or in "bad faith" (Complaint ¶ 75). Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987); Schanbarger v. Kellogg, 35 A.D.2d 902 (3d Dept. 1970). Nor can plaintiff avoid this immunity doctrine by fashioning his federal claim in terms of a conspiracy (2d Am. Compl. ¶¶ 68-69, 72, 80, 176-78). Peay v. Ajello, 470 F.3d 65, 67-68 (2d Cir. 2006); Shmueli v. City of New York, 424 F.3d at 237-38; Pinaud v. County of Suffolk, 52 F.3d 1139 1148-49 (2d Cir. 1995).

Prosecutorial immunity likewise forecloses any claim based on the specific acts of misconduct alleged in the complaint. Thus, this immunity precludes any claim that the DA Defendants prosecuted plaintiff without probable cause (2d Am. Compl. ¶¶ 63, 71, 106), Buckley v. Fitzsimmons, 509 U.S. at 274 n.5; Cunningham v. State, 71 A.D.2d 181, 183 (3d Dept. 1979), prosecuted him for political reasons (2d Am. Compl. ¶ 2), Bernard v. County of Suffolk, 356 F.3d 495, 505 (2d Cir. 2004), and would even bar a claim that they prosecuted plaintiff knowing he was innocent. Shmueli v. City of New York, 424 F.3d at 236-39; Johnson v. Town of Colonie, 102 A.D.2d 925, 925-26 (3d Dept. 1984). Prosecutorial immunity also applies to any claim that ADA Concannon (or any other prosecutorial defendant) withheld or suppressed exculpatory evidence, namely the deleted portions of the videotape (2d Am. Compl. ¶¶ 68, 71, 76-77, 80, 176-77), Imbler v. Pachtman, 424 U.S. at 431 n.34; Bernard v. County of Suffolk, 356 F.3d at 503; Whitmore v. City of New York, 80 A.D.2d 638, 639 (2d Dept. 1981), made misrepresentations to the trial court (2d

Am. Compl. ¶ 72), see Kalina v. Fletcher, 522 U.S. 118, 129 (1997), or relied upon "manufacture[d]" "false," or "fabricated" evidence or testimony in bringing that prosecution (2d Am. Compl. ¶¶ 3, 161, 176-78). Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995); Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994); Cunningham v. State, 77 A.D.2d 756, 757 (3d Dept. 1980), modified on other grounds, 53 N.Y.3d 851 (1981). In short, it is clear that absolute immunity attaches to all the prosecutorial malfeasance alleged by plaintiff, and that, accordingly, he has no claim against the DA Defendants based upon those events.

Plaintiff, however, contends that because the DA Defendants purportedly "fabricate[d]" and "manufacture[d]" "false evidence" -- namely the edited videotapes that were disclosed to the defense -- prosecutorial immunity does not immunize them for this conduct (2d Am. Compl. ¶¶ 68-70). Plaintiff is simply wrong on this point. First, and most fundamentally, the allegations of the complaint demonstrate unequivocally that neither ADA Concannon nor any other prosecutor "manufactured" or "fabricated" evidence. Plaintiff is not alleging that the videotape disclosed to the defense was anything other than a true depiction of the events portrayed therein. That is, plaintiff is not claiming that his image was digitally superimposed on that video, or that any similar modification was made. Rather, plaintiff's complaint is that the disclosed videotape was incomplete, in that it had been edited to exclude certain conduct of plaintiff that he claims tended to exculpate him (2d Am. Compl. ¶¶ 76-77). But a videotape edited in this manner is no more a piece of "manufactured" or "fabricated" evidence than is a witness statement that has been redacted to exclude exculpatory material. Thus, while plaintiff has chosen to characterize this case as one involving fabricated and manufactured evidence, what he is really complaining about is the prosecutor's failure to disclose purportedly exculpatory material, i.e., an alleged Brady violation. And while plaintiff may think that a prosecutor's "organization, evaluation, and marshalling of evidence" to be disclosed to the defense (or to be used at trial) is conduct that is "not entitled to

absolute [immunity] protection" (2d Am. Compl. ¶ 20), the law is otherwise. <u>Imbler v. Pachtman</u>, 424 U.S. at 431 n.34; <u>Bernard v. County of Suffolk</u>, 356 F.3d at 503; <u>Hill v. City of New York</u>, 45 F.3d at 661-62; <u>Whitmore v. City of New York</u>, 80 A.D.2d at 639.

In any event, even if this case could plausibly be viewed as involving the manufacture or fabrication of evidence, the DA Defendants would still be immune for the conduct alleged by plaintiff. While it is true that a prosecutor enjoys no immunity for participating in the actual fabrication of evidence during the investigative phase of criminal proceeding (provided that the fabrication ultimately deprives the plaintiff of a liberty interest, <u>see</u> discussion <u>infra</u>), <u>Zahrey v. Coffey</u>, 221 F.3d 342, 348-57(2d Cir. 2000), this absence of immunity applies only where "a prosecutor manufactures evidence <u>for the purpose of obtaining probable cause to arrest a suspect.</u>" <u>Hill v. City of New York</u>, 45 F.3d at 663 (emphasis added). But plaintiff makes no claim that any of the DA Defendants played a role in his August 27, 2004 arrest, or that that arrest was in any way predicated upon the edited videotape. On the contrary, plaintiff admits that the videotape was not edited until "September 2004" (2d Am. Compl. ¶ 176), <u>i.e.</u>, after his prosecution had commenced. In other words, the complaint makes clear that the editing of the videotape was done in preparation for ADA Concannon's presentation of her case against plaintiff, and, as noted above, this conduct falls comfortably within the purview of absolute immunity. But even if absolute immunity did not apply, the DA Defendants would be protected by the doctrine of qualified immunity, for the simple reason that, as discussed <u>infra</u>, the conduct about which plaintiff complains did not violate his constitutional rights. <u>See generally</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

### <u>2. The Merits of Plaintiff's Claims</u>

While plaintiff has brought his federal conspiracy claim under 42 U.S.C. § 1983, it is questionable whether the Second Circuit recognizes any such cause of action. <u>See</u> <u>Webb v. Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003) ("The plaintiffs' claim under 42 U.S.C. § 1983, which is styled

'Conspiracy to Violate Civil Rights,' should actually be stated as a claim under Section 1985, which applies specifically to conspiracies.").[14]  But assuming such an action is viable, to establish such a claim plaintiff would have to show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  And, of course, plaintiff would have to further show that the conspiracy alleged was successful, i.e., that it effected "an actual violation of constitutional rights." Singer v. Fulton County Sheriff, 63 F.3d at 119; see also Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). Obviously, without a "deprivation of a federal constitutional right . . . there can be no civil rights conspiracy to deprive that right." Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998).

As the allegations of his complaint make clear, plaintiff has actually alleged two conspiracies -- one focused on the events surrounding his arrest and pre-indictment incarceration (which did not involve the DA Defendants), and the other focused on the DA Defendants' conduct during plaintiff's criminal prosecution.  Plaintiff has also alleged with specificity at least one overt act purportedly taken in furtherance of the conspiracy involving the DA Defendants, namely the editing of the videotape that was disclosed during pretrial discovery.  However, a civil rights conspiracy claim must contain more than "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).  Specifically, a plaintiff must advance sufficient allegations that, if proven, would show that "a 'meeting of the minds'" occurred among the defendants. Romer v. Morgenthau, 119 F. Supp. 2d 346, 363

---

[14] Plaintiff obviously could not prevail on any conspiracy claim under 42 U.S.C. § 1985, for the simple reason that he does not claim that he was prosecuted because of his race, gender, or other suspect classification. Posr v. Court Officer Shield # 207, 180 F.3d 409, 419 (2d Cir. 1999).

(S.D.N.Y. 2000). Here, though, plaintiff has offered nothing -- apart from wholly conclusory assertions -- to support his claim that ADA Concannon and DA Morgenthau actually reached an agreement between themselves (let alone with any of the investigating police officers) to intentionally deprive plaintiff of purportedly exculpatory videotape evidence. For this reason alone, his conspiracy claim against the DA Defendants is deficient. See Webb v. Goord, 340 F.3d at 110; Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004) (same); Romer v. Morgenthau, 119 F. Supp. 2d 363 (same). And apart from this pleading defect, plaintiff's conspiracy claim against the DA Defendants suffers from other fatal flaws.

First, since the conspiracy claim involving plaintiff's criminal prosecution seems to be predicated only upon acts of alleged malfeasance by DA Morgenthau, ADA Concannon, and other employees of the District Attorney, this claim appears to be foreclosed by the "intra-corporate conspiracy doctrine." See Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978); Carmody v. City of New York, 2006 U.S. Dist. LEXIS 25308, 18 (S.D.N.Y. May 11, 2006). But more fundamentally, plaintiff's claim fails because he cannot show that his constitutional rights were violated as a result of the purported conspiracy involving the DA Defendants. Plaintiff claims that the DA Defendants conspired to maliciously prosecute him, and that in doing so they violated his constitutional rights by failing to disclose exculpatory evidence in their possession, namely the unedited videotape of the events surrounding plaintiff's arrest. However, it is crystal clear that plaintiff suffered no constitutional violation as a result of ADA Concannon's failure to disclose that unedited videotape. As has been previously pointed out, plaintiff's complaint on this score is properly understood as alleging a Brady violation, as it does not really involve the manufacture or fabrication of evidence, but rather the non-disclosure of all the videotape evidence in the prosecutor's possession. But as the record before the Court makes plain, plaintiff's defense counsel did, in fact, possess the unedited videotape prior to trial (Exhibit D, pp. 14-16). For this reason alone, it is evident that no Brady

violation occurred, as a prosecutor has no constitutional obligation to disclose evidence already in the criminal defendant's possession. United States v. Esposito, 834 F.2d 272, 275 (2d Cir. 1987); see also United States v. Agurs, 427 U.S. 97, 103 (1976) (Brady only applies to "information which had been known to the prosecution but unknown to the defense").

Plaintiff's Brady claim fails for a second reason. As the record makes plain, the underlying criminal case consisted of nothing more than a few calendar appearances. There were no pretrial hearings, and the charges against plaintiff were dismissed prior to trial. Of course, a Brady violation occurs only where it is shown that the non-disclosure of exculpatory material could have materially affected a criminal proceeding, See Strickler v. Greene, 527 U.S. 263, 281-82 (1999). But since in this case no proceeding was ever conducted as to which a Brady obligation applied, for this reason too the prosecutor's failure to disclose the unedited videotape could not have violated plaintiff's due process rights. Christman v. Hanrahan, 500 F.2d 65, 67 (7th Cir. 1974) (opinion of Stevens, J.); Gregory v. Oliver, 226 F. Supp.2d 943, 953 (N.D. Ill. 2002); see also Flores v. Satz, 137 F.3d 1275, 1278-79 (11th Cir. 1998). For similar reasons, even if plaintiff could plausibly characterize the editing of the videotape as the manufacture or fabrication of evidence, he would be unable to show that his rights were violated as a result. See Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial"). Simply put, there can be no more fair disposition of a criminal case than the dismissal of the charges against the defendant.

The allegations of plaintiff's complaint also fail to establish a viable claim for malicious prosecution against the DA Defendant. Insofar as plaintiff's conspiracy claim depends on this underlying constitutional tort, plaintiff must not only demonstrate all the elements of the common law tort, e.g., that his prosecution lacked probable cause, but also that he suffered a constitutionally-significant post-arraignment deprivation of liberty. Murphy v. Lynn, 118 F.3d 938, 945-46 (2d Cir.

1997).  Here, plaintiff was released on his own recognizance after his arraignment (Exhibit C, p. 1; Exhibit D, p. 2), and plaintiff does not allege that his liberty was in any way curtailed thereafter. Thus, it is questionable whether he has adequately alleged sufficient facts to show a restriction on his liberty sufficient to sustain a federal conspiracy claim predicated upon a claim of malicious prosecution.  Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999); compare Rohman v. New York City Transit Auth., 215 F.3d 208, 216 (2d Cir. 2000).  But leaving this issue to the side, plaintiff's claim fails for the simple reason that "the existence of probable cause is a complete defense to a claim of malicious prosecution."  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); accord Colon v. City of New York, 60 N.Y.2d 78, 82-83 (1983).  While plaintiff asserts that the police officer who signed the criminal complaint did not actually witness the acts described therein, plaintiff does not allege that ADA Concannon (or any other prosecutor) had knowledge of that circumstance when the decision to prosecute was made.  As noted, while these allegations may give rise to a malicious prosecution action against that officer, they do not support any such claim against any of the DA Defendants.  See note 5 supra; see also Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) ("probable cause can exist even where it is based on mistaken information, so long as the [prosecutor] acted reasonably and in good faith in relying on that information").

### C.    PLAINTIFF'S STATE LAW NEGLIGENCE CLAIMS

Plaintiff also claims his prosecution resulted from ADA Concannon's and DA Morgenthau's negligence.  Specifically, plaintiff alleges that ADA Concannon acted with negligence during plaintiff's criminal prosecution (2d Am. Compl. ¶ 134, 137), and that DA Morgenthau, who was allegedly ADA Concannon's direct supervisor in that misdemeanor prosecution (2d Am. Compl. ¶ 48), negligently performed those supervisory duties, in that he supposedly "fail[ed] to have adequate control and supervision over [his] employees who assisted in" plaintiff's prosecution (2d Am. Compl. ¶¶ 92-93, 134-35).  Plaintiff cannot recover against either DA Defendant under this theory.

Insofar as plaintiff's negligence claim is directly aimed at ADA Concannon's and DA Morgenthau's alleged involvement in his criminal case, his claim necessarily fails. "As a matter of public policy, there is no cause of action in the State of New York for negligent prosecution or investigation," Pandolfo v. U.A. Cable Sys. of Watertown, 171 A.D.2d 1013, 1014 (4th Dept. 1991), and for this fundamental reason his negligence claim against the DA Defendants is facially deficient. See Johnson v. Kings County District Attorney's Office, 308 A.D.2d 278, 284-85 (2d Dept. 2003); Romero v. State, 294 A.D.2d 730, 734 (3d Dept. 2002); La Mar v. Town of Greece, 97 A.D.2d 955, 956 (4th Dept. 1983). Rather, any such claim must proceed under a theory of malicious prosecution, Coyne v. State, 120 A.D.2d 769, 770 (3d Dept. 1986), a theory that, as just discussed, is not viable as against the DA Defendants for myriad reasons.

Further, insofar as plaintiff's complaint can be read as alleging that DA Morgenthau, while not directly involved in plaintiff's prosecution, was generally negligent in supervising his subordinates, and that this negligence resulted in his allegedly wrongful prosecution, he likewise has no claim against DA Morgenthau. But since "there is no cause of action in the State of New York for negligent prosecution or investigation," "claims under various theories of negligence, … [such] as negligent investigation, negligent training, negligent supervision, negligent disciplining, [and] negligent retention of employees . . . are barred by the same public policy of the State of New York" when brought against a law enforcement official. Jenkins v. City of New York, 1992 U.S. Dist. LEXIS 8279, *23 (S.D.N.Y. June 15, 1992) (internal quotes and citation omitted). Apart from this public policy bar, New York law immunizes government officials from liability for "governmental actions requiring expert judgment or the exercise of discretion." Arteaga v. State, 72 N.Y.2d 212, 216 (1998); see also Tartar v. State, 68 N.Y.2d 511, 518-19 (1986); Tango v. Tulevech, 61 N.Y.2d 34, 41 (1983). Decisions concerning the proper means of training subordinates, as well as the degree of supervision to be exercised over those subordinates' particular activities, constitute discretionary judgment calls

-28-

that are shielded by this absolute governmental immunity.  See McCormack v. City of New York, 80 N.Y.2d 808, 811 (1992); Kenavan v. City of New York, 70 N.Y.2d 558, 569 (1987); Maloney v. Board of Educ. of Buffalo, 177 A.D.2d 1012 (4th Dept. 1991); see also Mon v. City of New York, 78 N.Y.2d 309, 314-15 (1991) (law enforcement agency's hiring decisions protected by governmental immunity).  And, irrespective of this immunity bar, plaintiff's negligent supervision claim against DA Morgenthau is simply too conclusory to survive a motion to dismiss.  See Moore v. First Federal Savings & Loan Assoc. of Rochester , 237 A.D.2d 956, 957 (4th Dept. 1997); see also Richardson v. New York Univ., 202 A.D.2d 295, 296-97 (1st Dept. 1994).

CONCLUSION

Even assuming the truth of plaintiff's factual allegations, he has failed to state a viable claim against either of the DA Defendants.  Accordingly, the DA Defendants' motion for an order pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing the second amended complaint, and for any other fair and equitable relief that may be appropriate, should be granted.

Dated:  New York, New York
        March 14, 2007

**ROBERT M. MORGENTHAU**
District Attorney, New York County
as Special Assistant Corporation Counsel
One Hogan Place
New York, New York 10013


By:  /s/ Michael S. Morgan
     Michael S. Morgan (MM-9360)
     Assistant District Attorney
        Of Counsel

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ALEXANDER DUNLOP,

                        Plaintiff,

                                                        06-CV-433 (KMK) (JCF)

                                                        **SUMMONS**

        -against-

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department, ,
NEW YORK COUNTY DISTRICT ATTORNEY
ROBERT MORGENTHAU, ASSISTANT
DISTRICT ATTORNEY WILLA CONCANNON,
POLICE OFFICER MAYA GOMEZ, shield number
27230, POLICE OFFICER JOHN DOE's 1-3,
JOHN ROE, Technician, New York County District
Attorney's Office, and the HUDSON RIVER PARK
TRUST, in their individual and official
capacities, jointly and severally,

                        Defendants

------------------------------------------------------------x

**TO THE ABOVE NAMED DEFENDANTS:**


    You are hereby summoned and required to serve upon Kurland & Associates,

P.C., attorney's for Plaintiff, **ALEXANDER DUNLOP,** whose address is 304 Park

Avenue South, Suite 206, New York, New York 10010, an answer to the complaint



RECEIVED
JAN 16 2007
U.S.D.C. S.D. N.Y.
CASHIERS

which is herewith served upon you, within 20 days after service of this summons upon

you, exclusive of the day of service.  If you fail to do so, judgment by default will be

taken against you for the relief demanded in the complaint.

J. MICHAEL McMAHON

By *Marcos Quintero*

Clerk of Court

Dated: *January 16, 2007*

(This summons is issued pursuant to Rule 4 of the Federal Rules of Civil Procedure.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALEXANDER DUNLOP,

                        Plaintiff,

                        -against-

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department, ,
NEW YORK COUNTY DISTRICT ATTORNEY
ROBERT MORGENTHAU, ASSISTANT
DISTRICT ATTORNEY WILLA CONCANNON,
POLICE OFFICER MAYA GOMEZ, shield number
27230, POLICE OFFICER JOHN DOE's 1-3,
JOHN ROE, Technician, New York County District
Attorney's Office, and the HUDSON RIVER PARK
TRUST, in their individual and official
capacities, jointly and severally,

                        Defendants

------------------------------------------------------------x

06-CV-433 (KMK) (JCF)

**SECOND AMENDED
COMPLAINT**

       Plaintiff, ALEXANDER DUNLOP, by his attorney, Gina M. Bonica, of Kurland

& Associates, P.C., having offices at 304 Park Avenue South, Suite 206, New York, New York,

10010, complaining of Defendants, alleges as follows:

## NATURE OF ACTION

Plaintiff brings this action against Defendants, THE CITY OF NEW YORK, a municipal

entity MICHAEL BLOOMBERG, Mayor of the City of New York, RAYMOND KELLY,

Police Commissioner of the City of New York, JOSEPH ESPOSITO, Chief of the

Department, New York City Police Department, THOMAS GRAHAM , Commanding

Officer of the Disorder Control Unit of the New York City Police Department, JOHN J.

COLGAN, Deputy Chief and Commanding Officer, Pier 57, New York City Police

Department, NEW YORK DISTRICT ATTORNEY ROBERT MORGENTHAU,

ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON, POLICE OFFICER

MAYA GOMEZ, shield number 27230,  POLICE OFFICER JOHN DOE's 1-3, JOHN ROE,

Technician, New York County District Attorney's Office, and the HUDSON RIVER PARK

TRUST, (hereinafter, "Defendants") for malicious prosecution, assault and battery, false

arrest, false imprisonment,  negligent infliction of emotional distress, intentional infliction of

emotional distress, conspiracy, and violations of civil rights under 42 USC § 1983.


## PRELIMINARY STATEMENT

1. This is a civil rights action in which the Plaintiff, ALEXANDER DUNLOP,  (hereinafter

    "Mr. Dunlop") seeks relief for various violations, including, negligence, false arrest and

    excessive force, malicious prosecution, and, as to claims for (1) excessively and

    unreasonably prolonged, unnecessary and punitive detention, (2) excessive, unnecessary

    and punitive conditions of confinement that were shocking to the conscience and inflicted

    on Mr. Dunlop  (3) subjection to an unlawful arrest without probable so as to arrest Mr.

    Dunlop at or in the vicinity of demonstrations before and during the Republican National

2

Convention ("the RNC" or "the relevant period"), on Defendants' violation, under color

of state law, of his rights, privileges and immunities secured by the Civil Rights Act of

1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the

United States Constitution, and the Constitution and laws of the State of New York.

2.  Defendants in this action, THE CITY OF NEW YORK, a municipal entity, MICHAEL

    BLOOMBERG, Mayor of the City of New York, RAYMOND KELLY, New York City

    Police Commissioner; JOSEPH ESPOSITO, Chief of the New York Police Department;

    THOMAS GRAHAM , Commanding Officer of the Disorder Control Unit of the New

    York City Police Department, JOHN J. COLGAN, Deputy Chief, New York City Police

    Department; GOMEZ, Shield number 27230, New York City Police Officers JOHN

    DOES, MORGANTHAU, ADA CONCANNON, and JOHN ROES acting individually

    and in their official capacities, jointly and severally, implemented, enforced, encouraged,

    sanctioned and/or ratified policies, practices and/or customs that caused Mr. Dunlop to be

    arbitrarily arrested for being in the vicinity of a protest during the RNC by arresting Mr.

    Dunlop without probable cause, for instituting a system of preventive detention to punish

    Mr. Dunlop, a lawful peaceful citizen for being on the street with a bicycle in or around

    the RNC, and subjecting Mr. Dunlop to intolerable and cruel and inhumane conditions,

    including denying him access to legal counsel for an inordinate and unreasonable amount

    of time, conspiring against him to manufacture and create false evidence to be used

    against him and others.

3.  Defendants CITY OF NEW YORK, OFFICER GOMEZ, OFFICER JOHN DOE's 1-3,

    DISTRICT ATTORNEY MORGANTHAU, ASSISTANT DISTRICT ATTORNEY

    WILLA CONCANNON and JOHN ROES conspired to manufacture and fabricate false

3

evidence that was to be submitted against Mr. Dunlop, so as to deprive Mr. Dunlop of his
constitutional rights and to falsely arrest and maliciously prosecute Mr. Dunlop for
offenses for which no probable cause existed.

## JURISDICTION AND CONDITIONS PRECEDENT

4.  Pursuant to an Order by the Honorable Judge Kenneth M. Karas, dated October 3, 2006 jurisdiction is proper under 28 U.S.C. § 1367.

5.  The Plaintiff, Mr. Dunlop has satisfied the jurisdictional requirement of timely filing and serving a Notice of Claim to all necessary DEFENDANTS pursuant to New York Gen. Mun. Law § 50.  At least thirty days has elapsed since the service of such Notice of Claim and that the Defendants have failed, neglected, or refused to settle these claims.

6.  Mr. Dunlop gave testimony at a 50(h) hearing at the request of the City of New York on or about April 5, 2005.

7.  This action has been commenced within one year and 90 days after the cause of action arose.

## JURY DEMAND

8.  Mr. Dunlop demands a trial by jury in this action on each and every one of his damage claims.

## PARTIES

9.  At all times relevant herein, Mr. Dunlop is and was a New York County resident.

10. Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department

which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force, a corrections department and the employment of police officers and corrections officers.

11. Defendant MICHAEL BLOOMBERG ("BLOOMBERG") is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and the Department of Corrections ("Corrections") and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

12. Defendant RAYMOND KELLY ("KELLY")is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

13. Defendant JOSEPH ESPOSITO ("ESPOSITO") is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

14. Defendant THOMAS GRAHAM ("GRAHAM") was at all times relevant herein, the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and

in his official capacity.

15. Defendant JOHN J. COLGAN, ("COLGAN") at all times relevant herein, a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

16. Defendant, POLICE OFFICER MAYA GOMEZ, Shield number 27230 ("OFFICER GOMEZ" or "GOMEZ") and POLICE OFFICERS JOHN DOES ("OFFICER DOES" or "DOES") are NYPD Police Officers involved in the arrest of Mr. Dunlop and all of the actions and conduct associated therewith, including, *inter alia*, the use of force, the preferring of charges, the approval of charges, the prosecution of Mr. Dunlop, the abuse of criminal process, the falsification of evidence, conspiracy, the cruel and inhumane conditions to which Mr. Dunlop was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

17. Defendants BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN, OFFICER GOMEZ, and DOE's are employees and/or agents of the CITY OF NEW YORK. They include the individuals who directed and/or authorized the use of unreasonable and excessive force, unreasonable arrests, and detentions and/or who actually arrested Mr. Dunlop, without probable cause, and who implemented the policies, practices, and procedures and who conspired to unreasonably detain Mr. Dunlop and others who were in the vicinity of the protests of the RNC.

18. Defendant, DISTRICT ATTORNEY ROBERT MORGANTHAU ("MORGANTHAU")

at all times relevant herein, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs related to the investigation and prosecution and conspiracy complained of herein. He and his office have the responsibility and authority to investigate and prosecute crimes in New York County. He is sued in both his individual and official capacities.

19. ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON ("ADA CONCANNON") was at all times relevant herein, an employee of the City of New York charged with the duty of prosecuting cases on behalf of MORGANTHAU and the New York County District Attorney's Office ("DA's Office") in compliance with the laws of the State of New York and City of New York, and is responsible, in whole and/or in part for the creation, implementation, and promulgation of knowingly false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights and to maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed.

20. Defendant, HUDSON RIVER PARK TRUST, is a joint New York State and New York City organization whose mission is to design, build, and operate a five-mile park from Battery Park to 59th Street and is and at all times herein the owner of Chelsea Piers.

21. That upon information and belief, at all times herein, Defendants caused Mr. Dunlop damages in New York County, New York State.

22. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO, COLGAN, GRAHAM, GOMEZ, and DOE's, have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the City and/or the NYPD with the

7

power and authority vested in them as officers, agents and employees of the City and/or

the NYPD and incidental to the lawful pursuit of their duties as officers, employees and

agents of the City and/or the NYPD.

23. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO,

COLGAN, GOMEZ, and DOE's have violated clearly established constitutional

standards under the First, Fourth, Fifth, Sixth, and the Fourteenth Amendments of which

a reasonable police officer and/or public official under their respective circumstances

would have known.

24. The cause of action and injuries claimed herein arises out of Defendants' actions in this

state.

25. That upon information and belief, on or about the August 27, 2004, Mr. Dunlop was

unlawfully arrested and falsely imprisoned by an intentional and nonconsensual

confinement, not otherwise privileged, of which Mr. Dunlop was aware and was

maliciously prosecuted by the Defendants, thereby causing Mr. Dunlop's damages.

## FACTUAL BACKGROUND

26. On or about August 27, 2004, around 8:30 P.M., Mr. Dunlop left his home on Eighth

Street, New York, NY to go to a nearby restaurant to pick up food for dinner.

27. Upon information and belief Mr. Dunlop took his bicycle.

28. Upon information and belief, around 8:45 pm, Mr. Dunlop arrived at Second Avenue and

observed people milling about and numerous members of the New York City Police

Department (hereinafter, "NYPD"), some who were wearing helmets and/or holding their

8

batons in their hands extended out or in front of them.

29. Mr. Dunlop also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

30. Mr. Dunlop, unsure why the police were arresting, and having no involvement whatsoever with any protest or demonstration began to grow concerned and attempted to leave the area and find an alternative route to the restaurant.

31. Mr. Dunlop observed a police barricade that had formed on Ninth Street.  He therefore, got off his bike and walked it across the street heading toward the intersection of Tenth Street on Second Avenue and approached a line of police officers to ask them what was happening and how he might leave the scene.

32. Upon information and belief, the officers responded that they were unsure of what was transpiring, as they had just arrived on the scene.  Mr. Dunlop turned to ask another officer whose name and shield he did not obtain, ("Officer John Doe 1"), for instructions on exiting the area.  OFFICER JOHN DOE 1 instructed Mr. Dunlop to head in a southerly direction along Second Avenue toward the blockade he had already observed.

33. Mr. Dunlop walked his bicycle in that direction toward the blockade.  When he arrived there OFFICER JOHN DOE 1 approached Mr. Dunlop.  Upon information and belief, Mr. Dunlop again asked OFFICER JOHN DOE 1 how to leave.  OFFICER JOHN DOE 1 gripped Mr. Dunlop by the arm and told Mr. Dunlop that he was under arrest.  Upon information and belief, OFFICER JOHN DOE 1 stated, "I just told you to go in this direction so I could arrest you."

34. Mr. Dunlop observed another person being violently thrown to the ground by multiple police officers.

9

35. Upon information and belief, at no time did Mr. Dunlop prevent any cars from traveling on the street or prevent pedestrians from passing by on the sidewalk or on the street.

36. Upon information and belief, at no time did Mr. Dunlop chant, march, yell, or otherwise fail to obey a lawful order or direction given to him by the NYPD.

37. Upon information and belief, Mr. Dunlop is not a member of "CRITICAL MASS" or any other group of protest, nor did he wear or display any paraphernalia of "CRITICAL MASS" or any protest group, nor was Mr. Dunlop a part of the protest on August 27, 2004.

38. After being told that he was under arrest, several officers in riot gear rushed at Mr. Dunlop and grabbed him by the neck and pushed in downward direction as his arms were grabbed and twisted behind him in a manner exercising excessive force causing Mr. Dunlop substantial pain.

39. Upon information and belief, at no time did Mr. Dunlop resist arrest despite the fact that he had not committed any unlawful acts.

40. As he was placed in white plastic handcuffs, (hereinafter, "flexi cuffs"), one member of the NYPD stated, "I bet you have never worn these before." Upon information and belief, this officer appeared to be clearly pleased to be putting Mr. Dunlop in pain and distress.

41. All attempts to talk to members of the NYPD to ascertain the reason for arrest was ignored. At various times, Mr. Dunlop was subjected to snide, inappropriate and crude remarks by the NYPD.

42. Mr. Dunlop's bicycle was taken from him and thrown in a pile of bicycles that was in the center of Second Avenue and Tenth Street.

43. Upon information and belief, Mr. Dunlop then observed another member of the NYPD,

("OFFICER JOHN DOE 2"), state to a female officer whose name, shield and command he later learned to be OFFICER GOMEZ, who at that time was assigned to the Patrol Borough of Manhattan North Task Force, say, "This is your arrest."

44. OFFICER GOMEZ is listed as the arresting officer on all applicable paperwork in this matter.

45. When OFFICER GOMEZ was pointed out to Mr. Dunlop, he observed OFFICER GOMEZ watching a group of individuals already under arrest, nowhere in the vicinity of the place Mr. Dunlop was actually placed under arrest.

46. Mr. Dunlop was then taken in flexi cuffs to a police vehicle and placed inside in excess of one and a half hours in the heat without water. The entire time the windows and doors remained closed and there was no air flow inside. Mr. Dunlop began to sweat profusely and he began to feel feverish and clammy.

47. While waiting for other arrestees to be placed in the police vehicle, the flexi cuffs began to cut into his skin. Mr. Dunlop then asked the NYPD driver, ("OFFICER JOHN DOE 3") to loosen his flexi cuffs. Upon information and belief, OFFICER JOHN DOE 3 instead tightened the cuffs even more, causing more pain, discomfort, and visible lacerations to both wrists.

48. Upon information and belief, OFFICER JOHN DOE 3 stated that he had tightened the cuffs "Because you might try to attack me." As a result of the actions of OFFICER JOHN DOE 3, Mr. Dunlop's wrists began to bleed and swell.

49. Upon information and belief, during the RNC, Defendants including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM and COLGAN, implemented a policy, practice or custom of detaining those arrested on

11

August 27, 2004 in the vicinity of the RNC protest, without justification, for an unnecessary and prolonged period of time in unhealthy and dangerous conditions. In particular, Defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that Mr. Dunlop was held in custody following his unlawful arrest. These included, *inter alia*, the use of Pier 57 as an intermediate holding facility fingerprinting of all those arrested, including Mr. Dunlop who was charged with minor offenses for which fingerprinting is unnecessary, and was implemented so as to unnecessarily and unreasonably extend and prolong the period of time that Mr. Dunlop was held in custody.

50. Upon information and belief, instead of using existing resources, such as Old Central Booking, Central Booking or the numerous precincts throughout the City as the reception point for Mr. Dunlop and others arrested during the relevant period – including the at least twenty (20) precincts in Manhattan, all of which were capable of adequately processing arrestees – Defendants deliberately devised a plan that was intended to unreasonably lengthen the stay in custody of anyone arrested during the RNC, including Mr. Dunlop, and to make the terms of confinement as difficult, intimidating and unsafe as they thought possible.

51. Mr. Dunlop was then taken in the police vehicle to a holding facility at the Chelsea Piers and placed in a makeshift cell with approximately one hundred other individuals. Once inside, Mr. Dunlop observed multiple holding cells inside Pier 57 constructed with chain-link fence topped with razor wire. The cell that Mr. Dunlop was placed in had two sections, one in which he was kept, and another buffer zone, which contained a portable toilet. Upon arrival at Pier 57, Mr. Dunlop was searched, had his property confiscated,

and was placed in one of the holding cells.

52. Upon information and belief, according to published reports, of which Defendants knew or should have known, numerous environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot.

53. Upon information and belief, there was a chemical-like smell that emanated throughout the facility that caused Mr. Dunlop to feel ill during his detention.

54. Upon information and belief, there was inadequate seating to accommodate all the people in the cell and therefore, Mr. Dunlop stood for hours through the night to avoid sitting on the dirty and grease covered floor. There were no beds or cots, no blankets and no pillows in the cell, making it impossible for Mr. Dunlop to sleep or even lie down.

55. Upon information and belief, Mr. Dunlop observed individuals in pain who were not given medical attention.

56. Mr. Dunlop began to feel ill as his clothes had been drenched in sweat while in the police vehicle. This was compounded as Chelsea Piers was damp and cold causing Mr. Dunlop to develop a cough and fever like conditions.

57. During his entire stay at Pier 57, Mr. Dunlop was only given one box of cereal to eat with his hands which had become soiled from the grease and dirt at Chelsea Piers.

58. Upon information and belief, Mr. Dunlop was unable to ascertain from the NYPD or Corrections what was happening or why he had been arrested. Mr. Dunlop asked a member of the NYPD, at Chelsea Piers "What is happening?" to which the Officer responded, "You have the right to shut the fuck up, I suggest you exercise that right."

59. Mr. Dunlop remained at Chelsea Piers until the next morning when he was transferred to

100 Centre Street, New York, NY in a New York City Department of Corrections Bus.

60. Upon arriving at 100 Centre Street, Mr. Dunlop was again searched, fingerprinted, and placed in another cell at 100 Centre Street. Mr. Dunlop attempted to talk to various members of the NYPD and Corrections to ascertain his status and when he would be able to see a lawyer to which he was told that he was a "whiney kid."

61. At all times Mr. Dunlop was aware of his confinement and did not consent to being arrested or confined.

62. On August 28, 2004, Mr. Dunlop was not brought to arraignment part until after 6:30 in the evening, where he was finally permitted to meet with a lawyer.

63. Despite the fact that there was no probable cause to arrest Mr. Dunlop, he was charged and prosecuted under New York City docket 2004NY063485 by the DA's Office for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit, and Resisting Arrest.

64. The supporting deposition of the arresting officer, OFFICER GOMEZ charges in sum and substance that Mr. Dunlop obstructed traffic by riding his bicycle across all lanes of traffic and refused a lawful order and struggled with her when Mr. Dunlop resisted arrest.

65. The Defendants including but limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, COLGAN and GRAHAM acting at the behest and in concert with the RNC conspired with the RNC to violate the constitutional rights of those in or around the RNC protests by designing and implementing a plan to arrest those in the vicinity of the RNC protest, those who were peacefully protesting or those who appeared to protest the policies of the Republican National Party, in violation of their constitutional rights.

66. Upon information and belief, this plan included but was not limited to removing

14

individuals from the street who were lawfully participating in, observing or in the area of the RNC protest in violation of their constitutional rights and upon such information and belief the plan was to take the protest and negative publicity surrounding the protest and the Republican National Party out of the public eye.

67. The Defendants, including but limited to the CITY OF NEW YORK videotaped the activities in or around the RNC protests.

68. Upon information and belief in or around the fall of 2004, the Defendants including but not limited to MORGANTHAU, ADA CONCANNON, JOHN ROE TECHNICIANS, OFFICER DOE, acting at the behest and in concert with the each other intentionally removed evidentiary images of Mr. Dunlop behaving peacefully, not blocking traffic, not resisting arrest, not parading without a permit and not in violation of any law.  The removal of these images was part of a plan and conspiracy by DA's Office the NYPD, the Defendants including but not limited to MORGANTHAU, ADA CONCANNON, and JOHN ROE TECHNICIANS to alter, fabricate, and manufacture knowingly false evidence to be used against Mr. Dunlop in violation of Mr. Dunlop's constitutional rights.

69. Upon information and belief, this plan was orchestrated, and carried out by NYPD Technical Assistance and Response Unit (TARO), the DA's Office, and/or the Defendants, including but limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and ROES willfully altered and/tampered with evidence, and conspired to alter and/or tamper with evidence.

70. The actions of NYPD Technical Assistance and Response Unit (TARO), DA's Office and/or the Defendants, the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and ROES are, at best, relating to the organization, evaluation, and

marshalling of evidence, which is an activity of police nature, and is therefore not entitled to absolute protection.

71. ADA CONCANNON, assigned to prosecute Mr. Dunlop's case under the supervision of Defendant, MORGENTHAU, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of Mr. Dunlop's alleged unlawful conduct, (hereinafter, "First Video Tape"), knowing that it was an altered and manufactured piece of evidence used to maliciously prosecute Mr. Dunlop, and deprive him of his constitutional rights.

72. Defendant, including but limited to ADA CONCANNON in her capacity as an Assistant District Attorney for New York County, in furtherance of the conspiracy, with an intent to maliciously prosecute and deprive Mr. Dunlop of his constitutional rights, knowingly made false representations in court that the First Video Tape was a complete and unedited version of the events that transpired immediately preceding and including Mr. Dunlop's arrest.

73. Upon information and belief, although OFFICER GOMEZ never observed Mr. Dunlop until after being apprehended and cuffed by OFFICER JOHN DOE, OFFICER GOMEZ in her corroborating affidavit submitted in connection with this prosecution stated that she had personally observed Mr. Dunlop committing the above offenses and that he had "flailed" his arms to resist being arrested.

74. The actions of NYPD Technical Assistance and Response Unit (TARO), and/or the CITY OF NEW YORK, MORGANTHAU, his employees including but not limited to ADA CONCANNON, and ROES are a misuse of investigative techniques and privileges.

75. The actions of NYPD Technical Assistance and Response Unit (TARU), and/or the CITY

16

OF NEW YORK, MORGANTHAU, his employees including but not limited to ADA CONCANNON, and ROES are in bad faith.

76. Months into the case, a second videotape, (hereinafter, "Second Video Tape") also recorded by the NYPD and submitted by MORGANTHAU as evidence in a different criminal case, when compared with the First Video Tape to be submitted as evidence in Mr. Dunlop's case, upon information and belief, revealed that they were shot from the identical NYPD video camera. When run simultaneously side-by-side it is revealed that the First Video Tape had been edited in two places, in both cases removing images showing Mr. Dunlop behaving peacefully, not obstructing traffic, not parading nor attempting to avoid arrest.

77. Also cut from the First Video Tape was footage of Officer John Doe, the actual officer who placed Mr. Dunlop under arrest. In the Second Video Tape, Officer Gomez is nowhere to be seen.

78. Upon revelation in court of the Second Video Tape, MORGANTHAU was forced to drop all criminal charges against Mr. Dunlop and upon information and belief, later admitted that a technician in the DA's Office ("JOHN ROE") whose name and identity was not provided to Mr. Dunlop, had cut the material.

79. Upon information and belief, Barbara Thompson, a spokeswoman for the DA's Office stated on at least on occasion in or around April of 2005 that the tape had been cut by the DA's office.

80. The Defendants, including but not limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and JOHN ROEs acted in concert with the NYPD to cut the tapes and conspire against Mr. Dunlop to fabricate false evidence

against Mr. Dunlop.

81. As a result of the Defendant's CITY OF NEW YORK, MORGANTHAU, ADA
CONCANNON, and JOHN ROEs illegal acts, Mr. Dunlop was unlawfully arrested and
held against his will and sustained bodily and emotional injury as a result. Mr. Dunlop is
now afraid to approach the NYPD or other official officers if he were to be in need of
assistance.

82. Defendants, including but not limited to the CITY OF NEW YORK, MORGANTHAU,
ADA CONCANNON, and JOHN ROEs deprived Mr. Dunlop of his freedom
intentionally, subjected him to deplorable conditions, maliciously prosecuted and
otherwise injured Mr. Dunlop.

83. Mr. Dunlop was subjected to unreasonable, unnecessary and punitive conditions of
confinement in violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to
the United States Constitution and the Constitution and laws of the State of New York.
These conditions included, but were not limited to, the following: 1) false arrest and
imprisonment; 2) excessively tight handcuffs applied for excessive periods of time
without cause; 3) unreasonable overcrowding; 4) inadequate facilities for sleeping and
sitting, causing Mr. Dunlop to come into intimate contact with toxic chemicals and other
noxious substances; 5) deliberately indifferent denial of access to necessary medication
and medical attention when suffering from medical conditions and illness; 6) deliberately
indifferent exposure to dangerous chemicals in the air and on the walls and floor of "Pier
57," including asbestos, chlorinated hydrocarbons, benzene and others, some of which
are carcinogenic, mutagenic, teratogenic, and hepatogenic and which cause many other
diseases and conditions and have caused fear of contracting cancer and other unknown

diseases at some time in the future; 7) notwithstanding the extensive levels of toxic

chemicals and dirt, among other things, the deliberately indifferent refusal to provide

adequate sanitation; 8) the deliberately indifferent denial, in many instances of adequate

food, often due to the incredibly unsanitary conditions, and of water; and 9) refusal of

access to counsel for many hours.

84. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG,

KELLY, ESPOSITO GRAHAM , conspired with the Republican National Party to create

a policy of arresting without probable cause, individuals who were in the vicinity of those

engaging in lawful and peaceful expressions of their First Amendment rights in violation

of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution

and the Constitution and laws of the State of New York.

## AS FOR THE FIRST CAUSE OF ACTION
## FALSE ARREST AND IMPRISONMENT

85. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in

paragraphs "1" to "84" above with the same force and effect as if herein set forth.

86. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG,

KELLY, ESPOSITO and GRAHAM , conspired with the Republican National Party

implemented policies and procedures permitting the unlawful arrest of peaceful

individuals, including Mr. Dunlop because they were in the vicinity of the RNC.

87. Dunlop was peacefully and lawfully in the area of the RNC at the time of his arrest and

was not in violation of any applicable local, state or federal law.

88. That at no time did Dunlop intentionally obstruct, impair or pervert the administration of

law or pervert a public servant from performing an official function, by interference, or

19

by means of any independent unlawful act.

89. Defendants arrested and confined Mr. Dunlop without probable cause to believe a crime was committed or without a warrant to do so.

90. At all times relevant herein, Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM acted with the intention of confining Dunlop within fixed boundaries, the acts directly or indirectly resulted in confinement, and Dunlop was conscious of the confinement.

91. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM, imposed by force or threats unlawful restraint upon his freedom of movement, to wit by arresting him, twisting his arms, handcuffing and tightening said cuffs in a manner intended to cause Dunlop pain.

92. Dunlop was confined by the Defendants for almost twenty-four hours for an offense for which no probable cause existed.

93. All charges against Dunlop were dismissed as it was revealed that the Defendants had no probable cause to effectuate the arrest.

94. As a direct and proximate result of the conduct of Defendants, Dunlop suffered harm and damages including but not limited to the aforesaid damages.

95. The conduct occurred while the NYPD and Corrections, OFFICER GOMEZ, JOHN DOEs, and others were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and the NYPD. Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

20

## AS FOR THE SECOND CAUSE OF ACTION
### ASSAULT

96. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "95" above with the same force and effect as if herein set forth.

97. Defendants, including but limited to the CITY OF NEW YORK, OFFICER GOMEZ and JOHN DOES intentionally created and caused Mr. Dunlop to be in fear of physical harm, by restricting his freedom of movement by arresting him unlawfully, placing handcuffs on him against his will, confining him unlawfully for no known or lawful purpose other than to create in Dunlop an apprehension of immediate physical harm.

98. Upon information and belief that the defendants, including but not limited to OFFICER GOMEZ, and JOHN DOES made physical contact with Mr. Dunlop, which included seizing him, handcuffing him which was not privileged, was nonconsensual and offensive and which constituted battery.

99. Defendants confined Mr. Dunlop in such a manner that caused him to become ill by placing him in a closed city vehicle for hours without water or ventilation, and further confining him.

100.    Any reasonable person would also become apprehensive in the face of Defendants' threatening conduct.

101.    The conduct of Defendants occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK.  Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

21

## AS FOR THE THIRD CAUSE OF ACTION
## BATTERY

102.     Mr. Dunlop repeats and realleges and incorporates by reference the allegations in

paragraphs "1" to "101" above with the same force and effect as if herein set forth.

103.     Without the consent of Mr. Dunlop, the Defendants intentionally, harmfully, and

offensively touched Mr. Dunlop by handcuffing him, grabbed him by the neck and

pushed in a downward direction as his arms were grabbed and twisted behind him in a

manner exercising excessive force causing Mr. Dunlop substantial pain.

104.     The conduct of Defendants, including but limited to OFFICER GOMEZ, and

JOHN DOES, occurred while they were on duty and in uniform, in and during the course

and scope of their duties and functions as New York City police officers, and while they

were acting as agents and employees of Defendant CITY OF NEW YORK. Thus

Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common

law doctrine of *respondeat superior*.


## AS FOR THE FOURTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

105.     Mr. Dunlop repeats and realleges and incorporates by reference the allegations in

paragraphs "1" to "104" above with the same force and effect as if herein set forth.

106.     That upon information and belief, Defendants, including but not limited to the

CITY OF NEW YORK, MORGANTAHU and ADA CONCANNON improperly and

knowingly commenced a criminal process against Mr. Dunlop without probable cause.

107.     The prosecution, criminal charges, and hearings were instituted and procured by

the Defendants, including but not limited to the CITY OF NEW YORK, KELLY,

22