ESPOSITO, GRAHAM, COLGAN, OFFICER GOMEZ, MORGANTHAU, ADA CONCANNON, JOHN DOES and JOHN ROES which terminated when Defendant dismissed the charges. Defendants MORGANTHAU, ADA CONCANNON and other servants and employees of MORGANTHAU had actual malice in prosecuting Mr. Dunlop and as a result, Mr. Dunlop sustained injury.

108.    Mr. Dunlop was lawfully walking when he was arrested and later charged with several criminal offenses.

109.    OFFICER GOMEZ swore in the criminal complaint stating that she personally observed Mr. Dunlop committing the offenses charged.

110.    Defendants submitted evidence, namely the corroborating affidavit and Video Tape 1 that they knew or should have known was false in order to uphold the arrest and secure the prosecution of Mr. Dunlop.

111.    Upon information and belief, after the complete depiction of the events surfaced, as evidenced in the Second Tape, OFFICER GOMEZ was unable to recall or state with certainty any of the specifics of the complaint which were based on her supporting deposition, filed in connection with the arrest and proffering of charges against Mr. Dunlop.

112.    Upon reviewing Video Tape 2, Defendants the CITY OF NEW YORK, MORGANTHAU, and ADA CONCANNON were forced to drop all charges against Mr. Dunlop.

113.    As a result of Defendant's conduct, Mr. Dunlop was unlawfully confined and prosecuted. Mr. Dunlop sustained physical and emotional damages, to which the full extent is not known.

114. The conduct of Defendants occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK. The conduct of Defendants including but not limited to technician JOHN DOE occurred during the course and scope his or her duty and employment with the CITY OF NEW YORK and MORGANTHAU. The conduct of defendant ADA CONCANNON occurred during the course of her employment with the CITY OF NEW YORK and MORGANTHAU. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

115. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "114" above with the same force and effect as if herein set forth.

116. Defendants continually negligently inflicted emotional distress on Mr. Dunlop.

117. Defendants, including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, implemented policies, practices, or customs of detaining individuals arrested at or in the vicinity of the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy, and dangerous. Mr. Dunlop was subjected to these policies and practices for being in the vicinity of the RNC.

118. Defendant confined Mr. Dunlop for many hours in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, under conditions which were cold, loud and uncomfortable, due to the continuous use of large fans which ran at top speeds, which, given the presence of numerous toxic chemicals present at Pier 57, was

particularly inappropriate.

119.  On information and belief, the floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances.  The floors of the cages in Pier 57 were also covered in other dirt and grime.

120.  Mr. Dunlop was humiliated and embarrassed by NYPD personnel when he attempted to find out what was happening with his case and when he complained of the deplorable conditions.

121.  Mr. Dunlop was taunted and verbally abused by NYPD personnel and Corrections personnel who cursed and otherwise mistreated Mr. Dunlop without justification.

122.  On information and belief, at no time did the Defendants ever obtain a Certificate of Occupancy for Pier 57 which would have permitted the holding of human beings therein.

123.  In addition, Mr. Dunlop was subjected to excessive and unnecessary handcuffing, including the continued handcuffing and tightening of handcuffs to the point of breaking the skin and even after he was lodged in the detention facility at Pier 57.

124.  Defendants have a duty to perform their professional services in such manner as not to inflict emotional distress on Mr. Dunlop.

125.  Defendants by the above reference acts violated that duty.

126.  Mr. Dunlop never interfered with Defendants' obligations under the above described duties.

127.  As a result of Defendant negligent conduct, Mr. Dunlop has suffered and will continue to suffer physical pain, anguish, severe emotional trauma, embarrassment and humiliation.

128.  The conduct of Defendant police officers, GOMEZ and JOHN DOE'S, occurred while

they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SIXTH CAUSE OF ACTION
### NEGLIGENCE

129. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "128" above with the same force and effect as if herein set forth.

130. Defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, COLGAN and GRAHAM's owed a duty to supervise and/or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing of the charges without probable cause.

131. Defendants, including but not limited to the CITY OF NEW YORK, OFFICER GOMEZ, JOHN DOES owed a duty to act according to the ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of Mr. Dunlop's injury.

132. Defendants, including but not limited to the CITY OF NEW YORK, KELLY, ESPOSITO, COLGAN and GRAHAM OFFICER GOMEZ, JOHN DOES breached that duty by failing to act as an ordinary Police Officer, Police Commissioner, and supervisor would act, to wit by failing to perform his duties and by failing adequately to control and to supervise his officers.

133. Defendants, including but not limited to the CITY OF NEW YORK, JOHN ROES,

26

ADA CONCANNON, and MORGANTHAU failed to intercede when the Video Tape 1 was altered and removed exculpatory evidence of Mr. Dunlop.

134. Defendant MORGENTHAU and ADA CONCANNON owed a duty to act according to the ordinary care of a District Attorney and an Assistant District Attorney, the failure of which was the proximate cause of Mr. Dunlop's injuries.

135. Defendant MORGANTHAU breached that duty by failing to act as an ordinary District Attorney by failing to adequately control and supervise technicians and employees, including but not limited to ADA CONCANNON and JOHN ROEs, who deleted exculpatory evidence from the First Video Tape

136. Defendant MORGANTHAU breached that duty by failing to act as an ordinary District Attorney by failing to adequately train Assistant District Attorneys to turn over *Brady* material.

137. Defendant ADA CONCANNON owed a duty to act according to the ordinary care of a District Attorney, the failure of which was the proximate cause of Mr. Dunlop's injuries.

138. As a result of those breaches, which were the proximate cause of Mr. Dunlop's injury, Mr. Dunlop suffered harm and damages.

139. The conduct of Defendant OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of respondeat superior.

140. The conduct of Defendants, including but not limited to MORGENTHAU, ADA

27

CONCANNON, and JOHN ROE occurred during the course and scope of their duties and functions as New York City agents and employees of Defendants CITY OF NEW YORK. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SEVENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C § 1983 ARREST

141.   Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "140" above with the same force and effect as if herein set forth.

142.   At all times relevant herein, the conducts of all Defendants were subject to 42 U.S.C. § 1983.

143.   Acting under the color of law, Defendants, worked a denial of Mr. Dunlop's rights, privileges or immunities secured by the United States Constitution or by Federal law to wit,

(a) by depriving Mr. Dunlop of his liberty without due process of law, by taking him into custody and holding him there against his will,

(b) by making an unreasonable search and seizure of his property without due process of law,

(c) by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Mr. Dunlop equal protection of law,

(d) by refusing or neglecting to prevent such deprivations and denials to Mr. Dunlop, thereby depriving Mr. Dunlop of his rights, privileges, and immunities as guaranteed by the Fourth Fifth and Fourteenth Amendments to the Constitution of the United States.

144. Defendants, including but not limited to BLOOMBERG, KELLY, ESPOSITO, GRAHAM, and COLGAN, are liable under the doctrine of *respondeat superior*

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 DETENTION AND CONFINEMENT

145. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "144" above with the same force and effect as if herein set forth.

146. As a result of their concerted unlawful and malicious detention and confinement of Mr. Dunlop, Defendants deprived Mr. Dunlop of both his right to his liberty without due process of law and his right to equal protection of the laws, and due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the Unite States and 42 U.S.C. § 1983.

147. Defendants CITY OF NEW YORK, KELLY, ESPOSITO, GRAHAM, and COLGAN, are liable under the doctrine of *respondeat superior*.

## AS FOR THE NINTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 REFUSING OR NEGLECTING TO PREVENT

148. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1"to "146" above with the same force and effect as if herein set forth.

149. At all times relevant to this Complaint, Defendants OFFICER GOMEZ and JOHN DOES 1-3 were acting under the direction and control of Defendants including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN.

150. Acting under color of law and pursuant to official policy or custom defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, COLGAN, knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants OFFICER GOMEZ, and JOHN DOE'S 1-3 in their duties to refrain from:

    (a) unlawfully and maliciously harassing Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

    (b) unlawfully and maliciously arresting, imprisoning and prosecuting Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

    (c) conspiring to violate the rights, privileges and immunities guaranteed to Mr. Dunlop by the Constitution and laws of the United States and the laws of the State of New York,

    (d) otherwise depriving Mr. Dunlop of his constitutional and statutory rights, privileges, and immunities.

151. Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, COLGAN, had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants OFFICER GOMEZ and JOHN DOE'S had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

152. Defendants KELLY, ESPOSITO, GRAHAM, COLGAN, are liable under the doctrine

of *respondeat superior.*

153. As a direct and proximate cause of the negligent and intentional acts of Defendants set forth in paragraphs above, Mr. Dunlop suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

### AS FOR THE TENTH CAUSE OF ACTION
### VIOLATIONS OF 42 U.S.C. § 1983 FOR CONSPIRACY

154. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "153" above with the same force and effect as if herein set forth.

155. All Defendants (a) had an objective to be accomplished; (b) had an agreement on the object or course of action; (c) preformed one or more unlawful overt acts; and (d) caused Mr. Dunlop damages that were a direct result of those acts.

156. In furtherance of their object, Defendants did two or more overt acts against Mr. Dunlop.

157. Those unlawful overt acts include, but are not limited to the following: Defendants advised and strategize, practices or customs of detaining the individuals arrested at the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy, dangerous, illegal and unconstitutional.

158. Just before and during the RNC, Defendants implemented this policy, practice or custom, in an arbitrary and capricious manner, and in the absence of the existence of probable cause, to arrest entire groups of people who were lawfully engaged in protected

First Amendment activity or were observing such activity, or were simply passing by at the time arrests were being made.

159. Upon information and belief, on August 27, 2004, the day that Mr. Dunlop was arrested, and at various times prior to that date, David Norcross, Chairman of the Committee on Arrangements for the 2004 Republican National Convention stated on more than one occasion that the CITY OF NEW YORK and the Republican National Committee had met and discussed security for the RNC for at leas a year prior to the convention.

160. Upon information and belief, on or before August 27, 2004, David Norcross had conversations with BLOOMBERG and other CITY OF NEW YORK officials regarding controlling the visibly negative publicity surrounding the RNC.

161. Upon information and belief, these conversations included but were not limited to the promulgation and implementation of a practice, tactic or strategy to keep visible signs of dissent and/or protest out of the public eye, out of the media, and off the streets of New York City. This included but was not limited to mass arrests of those in the vicinity of the protest and those who were peacefully observing the protest, the intimidation factor of police officers in full riot gear, the use of horses to disperse bystanders, the arrest and confinement of those charged with minor offenses instead of issuing desk appearance tickets so as to minimize the visible effect of dissenters, confiscation of bicycles and other personal property as "evidence", routing bystanders and observers to areas where they would be arrested unlawfully, and falsely arresting large groups of people without probable cause and then falsely prosecute these individuals with altered evidence.

162. Defendants knew or should have known that Mr. Dunlop was held for many hours in a holding cell that lacked adequate means whereby to adequately sit, rest and/or sleep, under inhumane conditions.

163. Defendants knew that their arrest policy surrounding the RNC was a refinement of the tactic employed recently by Defendants at other demonstrations which had recently taken place in the City, including, *inter alia*, the February 15, 2003 anti-war march, *see Haus, et al., v. City of New York, et al.*, 03 Civ. 4915 (RWS), and the April 7, 2003 Carlyle Group protest, see *Larsen, et al., v. City of New York, et al.* 04 Civ. 665 (RWS), of using mass arrests to unlawfully suppress protected First Amendment conduct.

164. Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

165. Upon information and belief, Defendants agreed that the object or course of action was to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause, and maliciously charge and prosecute him with crimes.

166. Upon information and belief, Defendants conspired as herein alleged in or around October of 2003, at which time Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN, planned and agreed upon how to arrest, detain and confine individuals who were participating in, observing or within the vicinity of the

RNC protests without probable cause and to knowingly and maliciously charge and prosecute Dunlop and others with crimes that they did not commit.

167. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN, and other members of the NYPD conspired as herein alleged in or around November of 2003, at which time Defendants planned and agreed upon how to mass arrest, detain and confine individuals without individualized suspicion, who were within the vicinity of the RNC protests without probable cause and maliciously charge and prosecute Dunlop and others with crimes they did not commit.

168. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about November of 2003, at which time Defendants planned and agreed upon how to arrest, detain and confine individuals who were within the vicinity of the RNC protests without probable cause and maliciously charge and prosecute Dunlop and others with crimes they did not commit.

169. Upon information and belief, Defendants including but limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about January of 2004, at which time Defendants collaborated and conspired with the United States Secret Service and all planned and agreed upon how to arrest, detain and confine individuals who were within the vicinity of the RNC protests without probable cause and agree to maliciously charge and prosecute individuals without lawful justification.

170. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as

herein alleged at a meeting which took place on or about February 19, 2004, at which Defendants (including but not limited to Deputy Inspector Matthew Pontillo) planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

171. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting which took place on or about May 3, 2004, at which Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

172. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about May 5, 2004, at which Defendants collaborated and conspired with the United States Secret Service and all planned and agreed upon how to conduct mass arrests, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

173. Upon information and belief, Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about July 21, 2004, at which Defendants collaborated and conspired with the United States Secret Service and all planned and agreed upon how to conduct mass arrests, detain and confine Dunlop and others in the vicinity of the RNC

without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

174. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting which took place on or about August 25, 2004, at which Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

175. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting or meetings, the dates of which are as yet unknown, at which Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

176. Defendants including but not limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, OFFICER GOMEZ, DOES and ROES conspired in or around September 2004 to create, manufacture and fabricate knowingly false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights and to maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed. This includes but is not limited to a the creation of a plan and decision by including but not limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, DOES and ROES to create a fabricated video tape, claiming to be evidence of Mr. Dunlop's unlawful acts which was used in the criminal case against Mr. Dunlop.

177. In or around September 2004, scenes showing Mr. Dunlop behaving peacefully and lawfully were removed by from the videotape by the NYPD Technical Assistance and Response Unit (TARU), and/or the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and ROES in furtherance of their conspiracy, and who then submitted this fabricated tape as evidence against Mr. Dunlop so as to unlawfully deprive him of his rights.

178. Defendants including but not limited to MORGANTHAU, ADA CONCANNON, and JOHN ROES had a duty not to create and manufacture evidence against Mr. Dunlop so as to deprive him of his constitutional rights.

179. Defendants CITY OF NEW YORK had a duty to ensure that employees, servants, and agents are properly trained and supervised so as to not create false evidence against defendants, to ensure that acts such as manufacturing of false evidence would be interceded and prevented, and to train its employees, servants and agents to turn over *Brady* material.

180. Defendants are liable under the doctrine of *respondeat superior.*

181. As a direct result of Defendants' acts, Dunlop suffered harm and damages that are a direct result of those acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dunlop requests relief as follows:

(a)    Compensatory damages against Defendants jointly and severally for all causes of action; past and future, including, but not limited to pain and suffering, emotional

37

distress, economic losses including lost wages and medical expenses, violation of rights and other losses and injuries, the full extent is still undetermined in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(b)    Punitive damages against the Defendants, jointly and severally for all causes of action in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(c)    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and the Court's inherent power;

(d)    Prejudgment interest as allowed by law;

(d)    Such other relief, as is just and proper under the circumstances.


### JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.


Dated:  January 12, 2007

                            Respectfully Submitted,

                            KURLAND & ASSOCIATES, P.C.

                            Gina M. Bonica, Esq. (GB-6615)
                            Attorneys for Plaintiff
                            304 Park Avenue South, Suite 206
                            New York, NY 10010
                            212.253.6911

38

Exhibit B

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br>-against-<br><br>1. Alexander Dunlop (M 30)            463597<br><br><br>Defendant. | MISDEMEANOR | Page 1 of 2<br><br> |

Police Officer Mayra Gomez, shield 27230 of the Patrol Boro Manhattan North Task Force, states as follows:

On July 27, 2004, at about 22:00 hours at EAST 9TH ST/2ND AVE in the County and State of New York, the Defendant committed the offenses of:

1. PL205.30      Resisting Arrest
                 (1 count)
2. PL195.05      Obstruction of Governmental Administration in the Second Degree
                 (1 count)
3. PL240.20(5)   Disorderly Conduct
                 (1 count)
4. PL240.20(6)   Disorderly Conduct
                 (1 count)
5. AC10.110      Parading Without a Permit
                 (1 count)

the defendant intentionally attempted to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person; the defendant intentionally prevented and attempted to prevent a public servant from performing an official function by intimidation, physical force and interference and by means of an independently unlawful act; the defendant, with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, obstructed vehicular and pedestrian traffic; the defendant, with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, congregated in a public place with other persons and refused to comply with a lawful order of the police to disperse; and the defendant paraded in a procession, parade and race upon a street and in a public place without obtaining a written permit from the police commissioner.

The offenses were committed under the following circumstances:

Page 2 of 2

THE PEOPLE OF THE STATE OF NEW YORK          MISDEMEANOR
-against-

1. Alexander Dunlop (M 30)          
463597

Defendant.

Deponent states that she observed the defendant intentionally cause a public inconvenience, annoyance, and alarm by stopping his bicycle with numerous other bicycles in the roadway obstructing vehicular traffic. Deponent further states that the defendant was advised by the police that they were obstructing vehicular traffic and that defendant should leave the roadway and that the defendant still did not leave the roadway.

Deponent further states that deponent observed the defendant on defendant's bike parading upon the street at the above location, a public place, with at least one hundred other bicyclists without a permit from the police commissioner.

Deponent further states that deponent was standing in a row of police officers blocking 2nd Avenue, where the avenue intersects East 9th Street. Deponent further states that defendant was informed that 2nd Avenue was closed and that defendant was not allowed to ride defendant's bicycle up 2nd Avenue. Deponent further states that deponent did then observe defendant and several others ride/push their bicycles into the line of police officers who were standing in the roadway.

Deponent further states that when she was placing the defendant under arrest for the offenses described above defendant did flail his arms in an attempt to prevent deponent from placing defendant in handcuffs.

**False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.**

_____                    3-28-04    1222
Deponent                                 Date and Time

ACT 5 Version 4.2.0 Created on 08/28/04 12:15 PM

Exhibit C

# New York City Criminal Court
### New York County
### Misdemeanor Complaint

B/o 1359

The People of the State of New York

vs.

Defendant:

**SEALED** *pursuant to 160.50 C.P.L.*

NY NY

Charges:
PL205.30
PL195.05
PL240.20(5)
PL240.20(6)
AC10.110

Docket Number:

2004NY063485

2. 

E.N.T
/S

3.

4.

Interpreter: Language

Screener: KEENAN, CHRISTINE — Trial Bureau 40

| Notices Served at Arraignment: | | Adjournment: | |
|---|---|---|---|
| ☐ CPL 710.30 (1)(A) - Statement | | Part: B  Date: 11/15/04 | R+D |
| ☐ CPL 710.30 (1)(B) - Identification | | | |
| ☐ CPL 250.20 - Alibi | | Ball Condition: | |
| ☐ PL 450.10 (45 hrs /15 days) - Property | | ROR | |
| ☐ CPL 170.20 - Grand Jury | | | |
| ☐ Cross Grand Jury | | (Ins Co. Bail Bond)        (Cash Bail) | |
| ☐ OTHER: | | ☐ ART 730 Exam Ordered | |
| | | ☐ Protective Custody | |
| **Documents:** | Needed For | ☐ Medical Attention | |
| **Served at Arraignment:** | Conversion | ☐ Psychiatric Evaluation | |
| ☐ Supporting Deposition | | ☐ Suicide Watch | |
| ☐ DMV Abstract | ☐ | ☒ Deemed an Information | |
| ☐ Lab Report/ Field Test | ☐ | Defense Motions Due: | |
| ☐ DWI Paperwork | ☐ | /0/15 | |
| ☐ Domestic Incident Report | | | |
| ☐ Family Registry | | ☐ T.O.P./ F.O.P. | |
| ☐ Underlying T.O.P. | ☐ | | |
| **Disposition:** | | **Sentence: (or Promise)** | |
| ☐ ACD – CPL 170.55 | | _____ days jail | |
| ☐ ACD – CPL 170.56 | | Conditional Discharge: | |
| ☐ Waives Prosecution by Information | | _____ Days Community Service | |
| and Pleads Guilty to | | _____ Days Jail Alternative | |
| PL 240.20/ | | Other: | |
| ☐ Investigation & Sentenced Ordered | | Mandatory Surcharge (and CVA)        Civil Judgment | |
| | | $160 Misd. / $95 Viol. / $50 V.T.        Entered | |

Arresting Officer:
Mayra Gomez
27230
Patrol Boro Manhattan North Task Force

Court Reporter

STEWART REICH
OFFICIAL COURT REPORTER

Date:
AUG 2 8 2004

Judge _____

**RECORD OF COURT ACTION**

Form CRC 151.1

### 1

| Date | Court Action | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|
| | | People | Officer | Officer | Officer | Officer |
| | | Defense | Complainant | Complainant | Complainant | Complainant |
| Part | | Consent | Defendant | Defendant | Defendant | |
| | | Court | Attorney | Attorney | Attorney | |

Court Action: H SR — 240.20, K RuDi, 175

Reason for Adjournment: 1-18-05  T

SPEEDY TRIAL
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

Reporter: HART B SIMPSON RPTR1K FORD 15 04
Judge: HON B — PC

Bail Condition:

### 2

| Date | Court Action | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|
| | | People | Officer | Officer | Officer | Officer |
| | | Defense | Complainant | Complainant | Complainant | Complainant |
| Part | | Consent | Defendant | Defendant | Defendant | NOT/FILED 1-19-05 |
| | | Court | Attorney | Attorney | Attorney | |

Court Action: T/NR/DNR, OC Act/y E-Styled, H FLG 2/15

Reason for Adjournment: 3/3 → Trial / → 15

SPEEDY TRIAL
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

Reporter:
Judge:
Bail Condition:

### 3

| Date | Court Action | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|
| | | People | Officer | Officer | Officer | Officer |
| | | Defense | Complainant | Complainant | Complainant | Complainant |
| Part | | Consent | Defendant | Defendant | Defendant | |
| | | Court | Attorney | Attorney | Attorney | |

Court Action: PNR, π offer 240, 20g TS — per π — PO unavailable — sick relative

Reason for Adjournment: 4/6/05   Time excluded till 3/10/05   TRIAL

SPEEDY TRIAL
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

Reporter:
Judge:
Bail Condition: PC   KN

### 4

| Date | Court Action | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|
| | | People | Officer | Officer | Officer | Officer |
| | | Defense | Complainant | Complainant | Complainant | Complainant |
| Part | | Consent | Defendant | Defendant | Defendant | |
| | | Court | Attorney | Attorney | Attorney | |

Court Action: (TNR) A/O (channel) 240.20, 175

Reason for Adjournment: 5-9-05  T

SPEEDY TRIAL
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

Date: 4 06 2006
Part: HON — SIMPSON
Reporter:
Judge: PC
Bail Condition:

Court No. _____        Defendant _____        **RECORD OF COURT ACTION**

**RECORD OF COURT ACTION**                                      Form CRC 151.1

| Date | Court Action | **1** | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|---|
| | PHR — no reason | | People | Officer | Officer | Officer | Officer |
| Part | | | Defense | Complainant | Complainant | Complainant | Complainant |
| | BWO 3:15 pm | | Consent | Defendant | Defendant | Defendant | |
| | | | Court | Attorney | Attorney | Attorney | |

Reason for Adjournment

**SPEEDY TRIAL**
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.

Bail Condition
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

| Date | Court Action | **2** | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|---|
| | BW stpenged — | | People | Officer | Officer | Officer | Officer |
| Part | H say moved to | | Defense | Complainant | Complainant | Complainant | Complainant |
| | dismiss on 4/6/05 | | Consent | Defendant | Defendant | Defendant | |
| | | | Court | Attorney | Attorney | Attorney | |

Reason for Adjournment

**SPEEDY TRIAL**
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.

Bail Condition
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

| Date | Court Action | **3** | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|---|
| | | | People | Officer | Officer | Officer | Officer |
| Part | | | Defense | Complainant | Complainant | Complainant | Complainant |
| | | | Consent | Defendant | Defendant | Defendant | |
| | | | Court | Attorney | Attorney | Attorney | |

Reason for Adjournment

**SPEEDY TRIAL**
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.

Bail Condition
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

| Date | Court Action | **4** | Adj. Request | Present | Absent | Notify | Excused |
|---|---|---|---|---|---|---|---|
| | | | People | Officer | Officer | Officer | Officer |
| Part | | | Defense | Complainant | Complainant | Complainant | Complainant |
| | | | Consent | Defendant | Defendant | Defendant | |
| | | | Court | Attorney | Attorney | Attorney | |

Reason for Adjournment

**SPEEDY TRIAL**
_____ Adjournment period to be excluded under 30.30 CPL
_____ Adjournment period to be charged under 30.30 CPL
_____ The defendant, being without counsel, consents to this adjournment after having been advised of his rights under the Speedy Trial Rules and the effect of his consent.

Bail Condition
_____ The defendant, upon being released on his own recognizance, was directed by the Court pursuant to Sec. 510.40 of the CPL.

Court No.                    Defendant                    **RECORD OF COURT ACTION**

Exhibit D

1

1

2    CRIMINAL COURT OF THE CITY OF NEW YORK

3    COUNTY OF NEW YORK - CRIMINAL TERM -    AR3
     ---------------------------------------------------X
4    THE PEOPLE OF THE STATE OF NEW YORK

5                    -against-

6    ALEXANDER   DUNLOP

7                                DEFENDANT.
     ---------------------------------------------------X
8    Docket No. 063485    100 Centre Street
                          New York, New York 10013
9                         August 28, 2004

10

11   B E F O R E:

12            HONORABLE ABRAHAM CLOTT,
                           Judge

13

14

15   A P P E A R A N C E S:

16            OFFICE OF ROBERT M. MORGENTHAU
          DISTRICT ATTORNEY, NEW YORK COUNTY
17                 Attorney for the People
               BY:  GARRETT LYNCH ESQ.,
18                  Assistant District Attorney

19

20            ANDREW TSO ESQ
              Legal Aid Society
21            New York, New York
              BY:  ANDREW TSO ESQ.

22

23
                      STUART J. REICH
24                 Official Court Reporter

25                      .

2

1

2          THE COURT OFFICER:  Calling docket

3     ending 485, Alexander Dunlop.  The defendant is

4     charged with 205.30.

5          Counsel, do you waive the reading of the

6     rights and charges?

7          MR. TSO:  Andrew Tso, Legal Aid

8     Society, for Mr. Tso.  I waive the reading but not

9     the rights thereunder.

10          MR. LYNCH:  Garrett Lynch, for the

11     People.

12          Your Honor, the People offer a

13     disorderly conduct violation with time served.

14          THE COURT:  Motions October 15th, Part B

15     for response and decision.

16          I note for the record that the defendant

17     has rejected the time served offer.

18                *    *    *

19          CERTIFIED to be a true and accurate
       transcript of the proceedings.

20

21

          _____
22         STUART J. REICH
           Official Court Reporter

23

24                        .

25

sjr

1

```
CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK:  PART   B
-------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK      :  DOCKET NO.

                                         :

         -against-                       :  2004NY063485

ALEXANDER DUNLOP,                        :

                           Defendant.
-------------------------------------------X
                           100 Centre Street
                           New York, N.Y. 10013

                           November 15, 2004

H O N O R A B L E:

         SHAWNDYA SIMPSON , Judge.


A P P E A R A N C E S:

         FOR THE PEOPLE:

                ROBERT M. MORGENTHAU, ESQ.
                     DISTRICT ATTORNEY
                     NEW YORK COUNTY
                BY:  ARUN RAO, ESQ.


         FOR THE DEFENDANT:

                MICHAEL CONROY, ESQ.
                     116 John Street, Suite 2201
                     NEW YORK, NEW YORK  10038



                     MONICA FORD
                OFFICIAL COURT REPORTER
```

PROCEEDINGS                              2

1              COURT OFFICER:  Calendar No. 41, Alexander

2     Dunlop.

3              MR. CONROY:  Michael Conroy, 116 John Street,

4     Suite 2201, New York, New York  10038, on behalf of

5     Alexander Dunlop.

6              Good morning, your Honor.

7              THE COURT:  Good morning.

8              MR. RAO:  People are filing and serving

9     People's response and voluntary disclosure form.  There

10    is an offer as well, your Honor, of Penal Law 240.20

11    and time served.

12             MR. CONROY:  Unacceptable, your Honor.

13             Ask for a trial date.

14             THE COURT:  Counsel, you just served your

15    motions.

16             MR. CONROY:  No, your Honor.  I'm newly

17    retained on this matter.

18             THE COURT:  The motions were filed on

19    October 15th.  Are you adopting them?

20             MR. CONROY:  Yes, your Honor.

21             THE COURT:  People, do you have your

22    response?

23             MR. RAO:  I do, your Honor.  I've handed up

24    People's response and voluntary disclosure form.

25             THE COURT:  All right.  As far as hearings --

PROCEEDINGS                                    3

1        MR. CONROY:  I don't believe there are any.

2        THE COURT:  No.  All right.  We'll put the

3   case on for trial.  How is January 11th?  That's a

4   Thursday.

5        MR. CONROY:  I'm scheduled to start a

6   homicide trial on the 12th.  I don't know if that is

7   going to go or not.

8        THE COURT:  We'll put this past --

9        MR. CONROY:  That may be better.  Perhaps the

10  following week, the 18th, January 18th?

11       THE COURT:  All right.  Let's do that.

12       MR. CONROY:  Thank you, Judge.

13       THE COURT:  January 18th for trial.  Parole

14  continued.

15       MR. CONROY:  Back here?

16       THE COURT:   Back here.  1/18 for trial.

17       COURT OFFICER:  January 18th, sir, 9:30 in

18  the morning, back to this court (handing).

19            You can step out.

20                 *****

21  This is certified to be a true and accurate transcript

22  of the above proceedings recorded by me.

23

24  _____

25                          MONICA FORD
                            OFFICIAL COURT REPORTER

1    CRIMINAL COURT OF THE STATE OF NEW YORK

2    COUNTY OF NEW YORK          PART: B

3    ------------------------------------------

4    THE PEOPLE OF THE STATE OF NEW YORK,

5                      -against-              Docket No.

6    ALEXANDER DUNLOP,                        2004NY063485

7                      Defendant.             Proceedings

8    ------------------------------------------

9                      100 Centre Street

10                     New York, New York

11                     January 18, 2005

12   B E F O R E :

13             HON. RICHARD WEINBERG, JUDGE

14   A P P E A R A N C E S :

15   FOR THE PEOPLE:

16   ROBERT M. MORGENTHAU, ESQ.

17   DISTRICT ATTORNEY, NEW YORK COUNTY

18   By:  Jaime Chlupsa, Esq.

19        Assistant District Attorney

20

21

22

23

24

25                              EVELYN TIRADO, OCR

1        COURT OFFICER:  109, Alexander Dunlop.

2        THE COURT:  All right.  People, sir, I have a

3 notice of actual engagement from your attorney.  This

4 case was marked for trial.  People, are you ready?

5        MS. CHLUPSA:   Judge, according to the assigned

6 assistant, the case was not on for trial.  Motion to

7 consolidate was filed and served off calendar back in

8 November.

9        THE COURT:   All right.  The answer is -- I see

10 that I see Judge Simpson marked it for trial.

11        MS. CHLUPSA:   Okay.

12        THE COURT:  All I can tell you is what the

13 action sheet says.  All right.  People are not ready.

14        MS. CHLUPSA:   Judge, I'm also.

15        THE COURT:   Defense is not ready.  Defense

16 counsel is actually engaged.  Do you want to file

17 anything?

18        MS. CHLUPSA:   Also filing and serving --

19        THE COURT:   You don't have defense counsel.

20        MS. CHLUPSA:   I'm sorry.  Filing with the Court

21 a Demand for Discovery request.

22        THE COURT:   Make sure you serve counsel off

23 calendar.  All right.  This case will go over to 3-3 for

24 trial back here in B.  Notify the attorney who is absent.

25 Parole is continued.  Thank you very much.

1  THE ABOVE IS CERTIFIED TO BE A TRUE AND CORRECT

2  TRANSCRIPT OF THE PROCEEDINGS.

3  *Evelyn Tirado*

4  OFFICIAL COURT REPORTER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                                          1
 1

 2    CRIMINAL COURT OF THE CITY OF NEW YORK

 3    COUNTY OF NEW YORK - CRIMINAL TERM - B
      - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
 4    THE PEOPLE OF THE STATE OF NEW YORK

 5                   -against-

 6    ALEXANDER DUNLOP
      SIMON CHAN
 7
                                      DEFENDANTS
 8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
      Docket No. 063485    100 Centre Street
 9                         New York, New York 10013
                           March 3, 2005
10

11

12    B E F O R E:

13            HONORABLE KAREN LUPULOFF,
                           Judge
14

15

16    A P P E A R A N C E S:

17            OFFICE OF ROBERT M. MORGENTHAU
           DISTRICT ATTORNEY, NEW YORK COUNTY
18                Attorney for the People
                BY:  GABRIEL RUDA ESQ.,
19                   Assistant District Attorney

20            EUGENE BYRNE ESQ
              305 West 55th Street
21            New York, New York
              BY:  EUGENE BYRNE ESQ.
22            For Simon Chan
              MICHAEL CONROY ESQ
23            116 John Street
              New York, New York
24            for Alexander Dunlop
                      STUART J. REICH
25                    Official Court Reporter
```

2

```
 1
 2            THE COURT OFFICER:  Calling docket
 3     number 85, Simon Chan.
 4            MR. BYRNE:  Eugene Byrne, 305 West 55th
 5     Street.
 6            THE COURT OFFICER:  Also number 81,
 7     codefendant, Alexander Dunlop.
 8            MS. RUDA:  Gabriel Ruda for the People.
 9            MR. CONROY:  Michael Conroy, 116 John
10     Street for Mr. Dunlop calender Number 81.
11            THE COURT:  These matters are on for
12     trial today.  People, are you ready?
13            MS. RUDA:  As to both dockets, the
14     People are not ready.  The police officer's close
15     relative was in a serious car crash and is in
16     intensive care at the hospital and the officer
17     will not be able to return to work for one week.
18     It's the People's position that the adjournment
19     should be excludable.
20            THE COURT:  You're asking for one week.
21            MS. RUDA:  As to docket ending 626, the
22     People offer an ACD.
23            MR. BRYNE:  That would be acceptable.
24     I've had an opportunity to consult with my client
25     and that's acceptable.
```

sjr

3

1               Proceedings

2               THE COURT:  All right, Mr. Chad your

3     case is being adjourned into contemplation of

4     dismissal.  That means that if you stay out of

5     trouble for the next six months your case is going

6     to be dismissed.  The ACD is granted.

7     So that leaves us with Mr. Dunlop.  Is there an

8     offer in the case?

9               MS. RUDA:  Yes, your Honor.  The People

10    offer 240.20 with time served.

11              MR. CONROY:  That's not acceptable, your

12    Honor.

13              They're looking for March  10th

14    apparently.

15              THE COURT:  I'm going to give a much

16    longer date for trial.  I'm going to adjourn this

17    for trial for April.  Is that a good date for

18    you?

19              MR. CONROY:  Actually, your Honor can we

20    do the 6th.

21              THE COURT:  April 6th and the time is

22    excludable until the 10th.  Parole is continued.

23                    *      *      *
                CERTIFIED to be a true and accurate
24          transcript of the proceedings.

25

sjr



4

1    Proceedings

2

3    STUART J. REICH
     Official Court Reporter

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

sjr

CRIMINAL COURT OF THE CITY OF NEW YORK

NEW YORK COUNTY  :  PART B

- - - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK    :    DOCKET NO.
                                            2004NY063485

          - against -                   :

ALEXANDER DUNLOP                       :

                    Defendant    :    Calendar Call

- - - - - - - - - - - - - - - - - - -X

                        100 CENTRE STREET
                        NEW YORK, NEW YORK  10013

                        April 6, 2005

BEFORE:    HONORABLE SHAWNDYA SIMPSON, JUDGE

APPEARANCES:

              ROBERT MORGENTHAU, ESQ.
                  District Attorney, New York County
                  BY:  WILLA CONCANNON, ESQ.
                      Assistant District Attorney

              MICHAEL CONROY, ESQ.
                    Attorney for Defendant
                  116 John Street - Suite 2201
                  New York, New York 10038

                        LAUREN K. GANZMAN
                        OFFICIAL COURT REPORTER

PROCEEDINGS                                           2

1            BRIDGE OFFICER:  Calendar No. 82, Alexander

2       Dunlop.

3            MR. CONROY:  Michael Conroy, 116 John Street,

4       Suite 2201, New York, New York.

5            Good morning, your Honor.

6            MS. CONCANNON:  Judge, this is my case.  The

7       People are not ready today; the officer was not

8       available, unfortunately.

9            MR. CONROY:  Your Honor, I want to address an

10      issue and I want to confirm, as I have -- I believe the

11      D.A. stated correctly three times now, that I was given

12      the complete and entire videotape of this incident

13      relating to what happened on Second Avenue and Tenth

14      Street for this date in question?

15           MS. CONCANNON:  Yes, that's correct.

16           MR. CONROY:  Then there is a major problem

17      here, your Honor.  I was contacted by the Lawyer's Guild

18      on Monday.  The tape that I have is not a complete tape;

19      it is a cut tape.  I went down to the Lawyer's Guild, I

20      compared a tape that they had gotten from an attorney on

21      another case.  Interestingly enough, two scenes

22      involving my client were cut out of the tape that I was

23      given by the District Attorney's Office.

24           MS. CONCANNON:  Judge, that is ridiculous.

25           MR. CONROY:  I have both tapes.

PROCEEDINGS

1          THE COURT:  Where did you get the tape?

2          MS. CONCANNON:  Exactly.  There are hundreds

3    of tapes of this event circulating from the National

4    Lawyer's Guild.  I certainly don't have access to those

5    tapes.

6          My duty to turn over to you any tapes I

7    have --

8          MR. CONROY:  It is an NYPD tape given to

9    another attorney, given to the Lawyer's Guild.  I have

10   both tapes.

11         MS. CONCANNON:  Now you have it, don't you?

12         MR. CONROY:  That's not the issue, judge.

13         THE COURT:  People, where did you get it from?

14         MS. CONCANNON:  We have several tapes --

15         THE COURT:  I mean the tape you gave counsel.

16         MS. CONCANNON:  New York City Police

17   Department detectives taping protests that night.  There

18   are hundreds of those tapes.

19         THE COURT:  You can find the officer who taped

20   it and you are free to cross-examine that person.

21         MR. CONROY:  I am going to make several

22   motions to the Court in writing.  One, this is bias on

23   the part of the police.  Someone, it appears,

24   intentionally cut my client out of the tape.

25         MS. CONCANNON:  Out of what tape?

PROCEEDINGS                              4

1          MR. CONROY:  That is a serious problem.

2          MS. CONCANNON:  Listen --

3          MR. CONROY:  I want to know what officers

4     edited those tapes.

5          MS. CONCANNON:  There are no editing of any

6     tapes.

7          MR. CONROY:  I have never had this done to me

8     before in my entire life and I am offended.

9          MR. CONCANNON:  This is ridiculous.  There are

10    hundreds of tapes and every angle is not captured on

11    each tape.

12         THE COURT:  Approach.

13         (Off-the-record discussion held at the bench)

14         MR. CONROY:  Another matter, your Honor, which

15    is a concern, the People are answering not ready for

16    trial.  They answered not ready for trial on the last

17    date.  Immediately after that, they filed a certificate

18    of readiness.  It's my position that now, obviously,

19    that certificate of readiness is illusory and the entire

20    time should be charged.

21         MS. CONCANNON:  On the last date, the People

22    made a record the officer's close relatives were in a

23    very serious car accident, in intensive care, and it was

24    actually on the news because the accident was so

25    horrible.  So, certainly, that adjournment was

PROCEEDINGS

1    excludable because that --

2         THE COURT:  Today, she is sick?

3         MS. CONCANNON:  She is unavailable.  She is

4    still having issues with her family.

5         MR. CONROY:  If she is still having the same

6    issues from the prior date, how could they have filed a

7    certificate of readiness in the meantime to say they are

8    ready for trial?

9         MS. CONCANNON:  Because today she was not

10   available.  She was certainly available on the day we

11   filed the C.O.R.

12        MR. CONROY:  I have the record, obviously.

13        THE COURT:  You have the record and you can

14   file the 30.30 motion.  There are issues with the tape.

15   I suggest you get together, you can come back before the

16   Court and we can talk about it.  Your client is excused.

17   I'll put the case over for trial, if it comes to that.

18        MR. CONROY:  I'm scheduled to start a murder

19   trial on the 20th in front of Judge Berkman, so I would

20   ask for some date after April 20.

21        THE COURT:  Not a problem.  May 9; that's a

22   Monday.

23        What is the offer, People?

24        MS. CONCANNON:  The offer is 240.20 and time

25   served.  For the record, I would like to make a record

PROCEEDINGS                                    6

1    that the defendant is staring me down in an obnoxious

2    and intimidating way and I find it incredibly

3    inappropriate.

4              MR. CONROY:  Judge --

5              THE COURT:  I had enough of both you all right

6    now.  See you later, goodbye.

7              (SECOND CALL)

8              *          *          *          *

9              BRIDGE OFFICER:  Recalling Calendar No. 82,

10   Alexander Dunlop.

11             MR. CONROY:  Michael Conroy, 116 John Street,

12   Suite 2201, New York, New York.

13             (Off-the-record discussion held at the bench)

14             THE COURT:  Counsel, you can state --

15             MR. CONROY:  I waive my client's appearance,

16   with the Court's permission, for this calendar call.

17             MS. CONCANNON:  Judge, based on my discussion

18   with defense counsel and his showing me some further

19   evidence in the case, I am moving to dismiss the case; I

20   cannot prove these charges beyond a reasonable doubt.

21             MR. CONROY:  For the record, I would like to

22   thank the Assistant District Attorney for the work she

23   has done during her lunch hour.  I apologize for

24   anything I said this morning which may be read by

25   anybody as imputing the credibility as to the Assistant

PROCEEDINGS

1    District Attorney.  That is not what I intended at all.

2    She has my full faith there was nothing done wrong here

3    by the District Attorney's Office and I join in the

4    motion for the dismissal.

5              THE COURT:  That's granted.  Contact your

6    client because we gave him a 5/9 adjourn date.

7              MR. CONROY:  I will.

8              THE COURT:  Dismissed and sealed.

9              MR. CONROY:  Thank you very much.

10             *       *       *       *       *

11             CERTIFIED TO BE A TRUE AND ACCURATE

12             TRANSCRIPT OF THE MINUTES TAKEN IN THE

13             ABOVE-TITLED PROCEEDING.

14

15

16                              LAUREN K. GANZMAN
                                OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25

Exhibit E

In the Matter of the claim of

Alexander Dunlop

    -against-

The City of New York, The New York City Police
Department, The New York City Department of
Corrections

TO: COMPTROLLER OF THE CITY OF NEW YORK AND THE POLICE DEPARTMENT
OF THE CITY OF NEW YORK AND THE NEW YORK CITY DEPARTMENT OF
CORRECTIONS

    PLEASE TAKE NOTICE that the claimant herein hereby makes claim and demand
against the City of New York as follows:

    That the claimant was injured while being falsely and wrongfully arrested and detained by
members of the New York City Police Department, and was further held without probable cause
under inhuman circumstances.

1.    The name and post office address of each claimant and of his attorney is:

    Claimant:    Alexander Dunlop
                394 East 8th St., apt. 2B
                New York, New York 10009

    Attorney:    Michael T. Conroy
                Attorney at Law
                116 John Street, Suite 2201
                New York, New York 10038

2.    The nature of the claim: Claimant was held against his will after being falsely
arrested by the New York City Police Department. Claimant was injured while in
the custody of the New York City Police Department, and the New York City
Department of Corrections. Claimant was held in unsanitary and deplorable
conditions. Claimant is being maliciously prosecuted.

1

3.     The time when, the place where, and the manner in which the claim arose: Claimant was arrested while legally on his way to pick up food on his bicycle. Claimant was not a member of "Critical Mass" or any other protest group. At the vicinity of the intersection of 10th Street and Second Avenue, New York, New York, claimant asked a police officer for directions on how to get out of the area, and was told by an officer to go in a southerly direction. When claimant walked in that direction with his bicycle, there was a blockade. Claimant was then told that he was under arrest, the officer stating "I told you to go in this direction so I could arrest you." Claimant observed another person being violently thrown to the ground by multiple police officers Complainant was grabbed by the neck and pushed in a groundward direction as his arm was grabbed and twisted behind him. by officers using excessive force. An officer, as he pushed complainant along, said "I bet you have never worn these before" and appeared clearly pleased to be putting complainant in pain and distress. Complainant then heard another office assign the arrest to an Officer Mayra Gomez, shield # 27230, of the Patrol Borough of Manhattan North Task Force. The officers involved failed to abide by proper police rules, regulations and arrest procedures. Complainant was held in the back of a police van/bus for in excess of one and a half hours in the heat without water. The windows in the van/bus were closed, and no air was circulating. When claimant asked an officer if he could loosen the cuffs on his hand because they were too tight, the officer came back around him and tightened the cuffs even more. Claimant was ultimately brought to a holding facility at Chelsea Piers and put into an area that was covered in oil and grease and was not brought to the arraignment part until after 7:30 in the morning. At Chelsea Piers, claimant asked what was happening and was told by an officer : "you have the right to shut the fuck up. I suggest you exercise that right." Claimant was told multiple things by multiple officers as to his status and what was happening. At various times, claimant was subjected to snide and inappropriate remarks by officers. While in the cells at 100 Centre Street, he was told that he was a "whiney kid." At all times claimant was conscious of his confinement, and did not consent thereto. The confinement was not otherwise privileged. The arrest was without a warrant. Complainant is still being prosecuted under New York County docket 2004NY063485.

4.     The items of damage or injuries claimed are: Claimant received cuts and bruising to the wrists; claimant was held without probable cause for hours. Claimant was placed in physical pain. The New York City Police Department and the New York City Department of Corrections intentionally and negligently inflicted emotional distress upon claimant. Claimant was denied his freedom and is being maliciously prosecuted. Claimant has been denied his rights under the New York State and United States Constitutions.

The claim and demand is hereby presented for adjustment and payment.

PLEASE TAKE FURTHER NOTICE that by reason of the foregoing, in default of the City of New York to pay the claimant his claim within the time limited for compliance with this demand by the City of New York by applicable statutes, claimant intends to commence an action against the City of New York to recover his damages with interests and costs.

Dated: ) New York, New York
       ) November 22, 2004

Respectfully yours,

ALEXANDER DUNLOP

SWORN TO BEFORE ME
THIS 22nd DAY OF NOVEMBER, 2004

NOTARY PUBLIC

Michael T. Conroy
Notary Public, State of New York
No. 02006076112
Qualified in Richmond County
Commission Expires June 17, 20 _06_

3

In the matter of the claim of

Alexander Dunlop

-against-

The City of New York, The New York City Police Department,
The New York City Department of Corrections

---

### NOTICE OF CLAIM

MICHAEL T. CONROY
*attorney for claimant*
116 John Street, Suite 2201
New York, New York 10038
office: 212-587-0044
facsimile: 212-587-9199

---

CERTIFICATIONS: I, Michael T. Conroy, an attorney, hereby certify that to the best of my knowledge, information and belief. Formed after an inquiry reasonable under the circumstances, the presentation of the within papers or the contentions therein are not frivolous within the meaning of 22NYCRR § 130.1.1(c)

Michael T. Conroy
November 24, 2004

TO:   New York City Police Department
      One Police Plaza
      New York, New York



THE CITY OF NEW YORK OFFICE OF THE COMPTROLLER
1 CENTRE STREET, NEW YORK, N.Y. 10007-2341

WILLIAM C. THOMPSON, JR.
COMPTROLLER

015 - 186

Date: 5/12/2005
RE:  Disallowance Police Action
Claim no.:  2004PI025478
Claimant: ALEXANDER DUNLOP

ALEXANDER  DUNLOP c/o MICHAEL
T  CONROY
116 JOHN STREET SUITE 2201
NEW YORK, NY 10038

Dear: *MR CENROY*

     An aspect of your claim has been disallowed; the disallowance
is for the cause of action listed below:

( )  Cause of action for false arrest/false imprisonment has been
     disallowed since more than ninety days have elapsed from the
     date of release and the date of filing. GML 50-e
( )  Cause of action for malicious prosecution has been disallowed
     since more than ninety days have elapsed since the disposition
     of the case and the filing date. GML 50-e
( )  Cause of action for malicious prosecution has been filed
     prematurely.  Your service of Notice of Claim was filed
     before criminal charges were dismissed. GML 50-e
     Additionally, a new or separate Notice of Claim must be
     filed within 90 days of the disposition of your case.
(X)  Your claim has been disallowed. You failed to provide
     one of the following items: the date, location and
     description of the alleged accident and the manner in
     which the claim arose, as required by General Municipal
     Law Section 50-e.

                              Very truly yours,

                              *Versia Baptist*

(212) 669-4445

Exhibit F

STATE OF NEW YORK:  SUPREME COURT
COUNTY OF NEW YORK
------------------------------------------------------------x
ALEXANDER DUNLOP,

                        Plaintiff,

       -against-

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department; THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department, NEW
YORK CITY DEPARTMENT OF CORRECTIONS
THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ, shield number 27230,
POLICE OFFICER JOHN DOE's 1-3, JOHN ROE,
Technician, New York County District Attorney's
Office, and the HUDSON RIVER PARK TRUST,
in their individual and official capacities, jointly
and severally,

                        Defendants.

------------------------------------------------------------x

**SUMMONS**

Index No.

05112008

FILED
AUG 26 2005
NEW YORK
COUNTY CLERK'S OF...

TO THE ABOVE NAMED DEFENDANTS:

      **YOU ARE HEREBY SUMMONED** to answer the complaint in the above
action and to serve a copy of your answer on the plaintiffs attorney within twenty (20)
days after the service of this summons, exclusive of the day of service, or within thirty
(30) days after completion of service is made in any other manner than by personal
delivery within the State.  The United States of America, if designated as a defendant in
this action, may answer or appear within sixty (60) days of service hereof. In case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint.

      **NEW YORK COUNTY** is designated as the place of trial.  The basis of venue is
where the cause of action arose.

Dated:  August 25, 2005
       New York, NY

Gina M. Bonica, Esq.
KURLAND & ASSOCIATES, P.C.
Attorneys for Plaintiff
304 Park Avenue South, Suite 206
New York, New York 10010
(212) 253.6911

STATE OF NEW YORK:  SUPREME COURT
COUNTY OF NEW YORK
------------------------------------------------------x
ALEXANDER DUNLOP,

                                        Plaintiff,                           **VERIFIED COMPLAINT**

                                                                             **JURY DEMANDS AS TO
                       -against-                                             ALL COUNTS**

                                                                             Index No.

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York. JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department, NEW
YORK CITY DEPARTMENT OF CORRECTION.
THE NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, NEW YORK DISTRICT
ATTORNEY ROBERT MORGENTHAU, POLICE
OFFICER MAYA GOMEZ, shield number 27230,
POLICE OFFICER JOHN DOE's 1-3, JOHN ROE,
Technician, New York County District Attorney's
Office, and the HUDSON RIVER PARK TRUST,
in their individual and official capacities, jointly
and severally,

                                        Defendants
------------------------------------------------------x
STATE OF NEW YORK          )
                                                ) ss:
COUNTY OF NEW YORK        )


Plaintiff, ALEXANDER DUNLOP, by his attorney, Gina M. Bonica, an associate of Kurland &

Associates, P.C., having offices at 304 Park Avenue South, Suite 206, New York, New York,

10010, complaining of Defendants, alleges as follows:

## NATURE OF ACTION

Plaintiff brings this action against Defendants, THE CITY OF NEW YORK, a municipal entity MICHAEL BLOOMBERG, Mayor of the City of New York, RAYMOND KELLY, Police Commissioner of the City of New York, JOSEPH ESPOSITO, Chief of the Department, New York City Police Department, THOMAS GRAHAM, Commanding Officer of the Disorder Control Unit of the New York City Police Department, JOHN J. COLGAN, Deputy Chief and Commanding Officer, Pier 57, New York City Police Department, NEW YORK CITY DEPARTMENT OF CORRECTION, THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, NEW YORK DISTRICT ATTORNEY ROBERT MORGENTHAU, POLICE OFFICER MAYA GOMEZ, shield number 27230, POLICE OFFICER JOHN DOE's 1-3, JOHN ROE, Technician, New York County District Attorney's Office, and the HUDSON RIVER PARK TRUST, (hereinafter, "Defendants") for malicious prosecution, assault and battery, false arrest, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, conspiracy, and violations of civil rights under 42 USC § 1983.

## PRELIMINARY STATEMENT

1. This is a civil rights action in which the Plaintiff, ALEXANDER DUNLOP, (hereinafter "Mr. Dunlop") seeks relief for various violations, including, negligence, false arrest and excessive force, malicious prosecution, and, as to claims for (1) excessively and unreasonably prolonged, unnecessary and punitive detention, (2) excessive, unnecessary and punitive conditions of confinement that were shocking to the conscience and inflicted

on Mr. Dunlop (3) subjection to an unlawful arrest without probable cause to arrest Mr. Dunlop at or in the vicinity of demonstrations before and during the Republican National Convention ("the RNC" or "the relevant period"), on Defendants' violation, under color of state law, of their rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2. Defendants in this action, THE CITY OF NEW YORK, a municipal entity, MICHAEL BLOOMBERG, Mayor of the City of New York, RAYMOND KELLY, New York City Police Commissioner; JOSEPH ESPOSITO, Chief of the New York Police Department; JOHN J. COLGAN, Deputy Chief, New York City Police Department; GOMEZ, Shield number 27230, New York City Police Officers JOHN AND JANE DOE acting individually and in their official capacities, jointly and severally, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs that caused the Mr. Dunlop to be arbitrarily arrested for being in the vicinity of a protest during the RNC by arresting Mr. Dunlop without probable cause, for instituting a system of preventive detention to punish Mr. Dunlop, a lawful peaceful citizen for being on the street with a bicycle during the RNC, and subjecting Mr. Dunlop to intolerable and cruel and inhumane conditions, including denying him access to legal counsel for an inordinate and unreasonable amount of time.

3. Defendants CITY OF NEW YORK, OFFICER GOMEZ, OFFICER JOHN DOE's 1-3, the NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, DISTRICT ATTORNEY MORGANTHAU and JOHN ROE conspired to maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed and maliciously altered

evidence that was to be submitted against Mr. Dunlop.

## VENUE

4. Venue is proper in the State Supreme Court, County of New York pursuant to CPLR § 504(3).

## JURY DEMAND

5. Mr. Dunlop demands a trial by jury in this action on each and every one of his damage claims.

## PARTIES

6. Mr. Dunlop is a New York County resident residing at 394 East 8th Street, Apartment 2B, New York, New York 10009.

7. Defendant CITY OF NEW YORK (hereinafter, "the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

8. Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

9. Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part,

for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

10. Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

11. Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

12. Defendant JOHN J. COLGAN, is a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

13. Defendant, POLICE OFFICER MAYA GOMEZ, JOHN DOE's are NYPD Command and Police Officers involved in the arrest of Mr. Dunlop and all of the actions and conduct associated therewith, including, *inter alia*, the use of force, the preferring of charges, the approval of charges, the prosecution of Mr. Dunlop, the abuse of criminal process, the cruel and inhumane conditions to which Mr. Dunlop was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official

capacities.

14. Defendants BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN, GRAHAM, GOMEZ shield number 27230, and DOE's are employees and/or agents of the City of New York. They include the individuals who directed and/or authorized the use of unreasonable and excessive force, unreasonable arrests and detentions and/or who actually arrested Mr. Dunlop, without probable cause, and who implemented the policies, practices and procedures to unreasonably detain Mr. Dunlop.

15. Defendant, NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE is a municipal entity created and authorized under the laws of the State of New York and has the responsibility and authority to investigate and prosecute crimes in New York County.

16. Defendant, District Attorney ROBERT MORGANTHAU at all times relevant herein, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs related to the investigation and prosecution complained of herein. He is sued in both his individual and official capacities.

17. Defendant, HUDSON RIVER PARK TRUST, is a joint New York State and New York City organization whose mission is to design, build and operate a five-mile park from Battery Park to 59th Street and is and at all times herein the owner of Chelsea Piers.

18. Defendant, THE NEW YORK CITY DEPARTMENT OF CORRECTION, was at all times herein responsible for the confinement and supervision of persons arrested in New York City and is responsible for the acts alleged herein.

19. That upon information and belief, at all times herein, Defendants caused Mr. Dunlop damages in New York County, New York State.

20. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO,

COLGAN, GRAHAM, GOMEZ, Shield number 27230, and DOE's, have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

21. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO, COLGAN, GOMEZ Shield number 27230, and DOE's have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, and the Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

22. The cause of action and injuries claimed herein arises out of Defendants' actions in this state.

23. That upon information and belief, on or about the 27th of August 2004, Mr. Dunlop was unlawfully arrested and falsely imprisoned by an intentional and nonconsensual confinement, not otherwise privileged, of which Mr. Dunlop was aware and was maliciously prosecuted by the Defendants, thereby causing Mr. Dunlop's damages.

## FACTUAL BACKGROUND

24. On or about August 27, 2004, around 8:30 P.M., Mr. Dunlop left his home on Eighth Street, New York, NY.

7

25. Upon information and belief Mr. Dunlop took his bicycle.

26. Upon information and belief, around 8:45 pm, Mr. Dunlop arrived at Second Avenue and observed people milling about and numerous members of the New York City Police Department (hereinafter, "NYPD"), some who were wearing helmets and/or holding their batons in their hands extended out or in front of them.

27. Mr. Dunlop also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

28. Mr. Dunlop, unsure why the police were arresting these people began to grow concerned and attempted to leave the area and find an alternative route to the restaurant.

29. Mr. Dunlop observed a police barricade that had formed on Ninth Street. He therefore, got off his bike and walked it across the street heading toward the intersection of Tenth Street on Second Avenue and approached a line of police officers to ask them what was happening and how he might leave the scene.

30. Upon information and belief, the officers responded that they were unsure of what was transpiring, as they had just arrived on the scene. Mr. Dunlop turned to ask another officer whose name and shield he did not obtain, (hereinafter, "Officer John Doe 1"), for instructions on exiting the area. Officer John Doe 1 instructed Mr. Dunlop to head in a southerly direction along Second Avenue toward the blockade he had already observed.

31. Mr. Dunlop walked his bicycle in that direction toward the blockade. When he arrived there Officer John Doe 1 approached Mr. Dunlop. Upon information and belief, Mr. Dunlop again asked Officer John Doe 1 how to leave. Officer John Doe 1 gripped Mr. Dunlop by the arm and told Mr. Dunlop that he was under arrest. Upon information and belief, Officer John Doe 1 stated, "I just told you to go in this direction so I could arrest

8

you."

32. Mr. Dunlop observed another person being violently thrown to the ground by multiple police officers.

33. Upon information and belief, at no time did Mr. Dunlop prevent any cars from traveling on the street or prevent pedestrians from passing by on the sidewalk or on the street.

34. Upon information and belief, at no time did Mr. Dunlop chant, march, yell or otherwise fail to obey a lawful order or direction given to him by the NYPD.

35. Upon information and belief, Mr. Dunlop is not a member of "CRITICAL MASS" or any other group of protest, nor did he wear or display any paraphernalia of "CRITICAL MASS" or any protest group, nor was Mr. Dunlop a part of the protest on August 27, 2004.

36. After being told that he was under arrest, several officers in riot gear rushed at Mr. Dunlop and grabbed him by the neck and pushed in downward direction as his arms were grabbed and twisted behind him in a manner exercising excessive force causing Mr. Dunlop substantial pain.

37. Upon information and belief, at no time did Mr. Dunlop resist arrest despite the fact that he had not committed any unlawful acts.

38. As he was placed in white plastic handcuffs, (hereinafter, "flexi cuffs"), one member of the NYPD stated, "I bet you have never worn these before." Upon information and belief, this officer appeared to be clearly pleased to be putting Mr. Dunlop in pain and distress.

39. All attempts to talk to members of the NYPD to ascertain the reason for arrest was ignored.   At various times, Mr. Dunlop was subjected to snide, inappropriate and crude remarks by the NYPD.

40. Mr. Dunlop's bicycle was taken from him and thrown in a pile of bicycles that was in the center of Second Avenue and Tenth Street.

41. Upon information and belief, Mr. Dunlop then observed another member of the NYPD, (hereinafter, "Officer John Doe 2"), state to a female officer whose name, shield and command he later learned to be Police Officer Maya Gomez, Shield number 27230, of the Patrol Borough of Manhattan North Task Force, (hereinafter, "Officer Gomez") say, "This is your arrest."

42. Officer Gomez is listed as the arresting officer on all applicable paperwork in this matter.

43. When Officer Gomez was pointed out to Mr. Dunlop, he observed Officer Gomez watching a group of individuals already under arrest, nowhere in the vicinity of the place Mr. Dunlop was actually placed under arrest.

44. Mr. Dunlop was then taken in flexi cuffs to a police vehicle and placed inside in excess of one and a half hours in the heat without water. The entire time the windows and doors remained closed and there was no air flow inside.  Mr. Dunlop began to sweat profusely and he began to feel feverish and clammy.

45. While waiting for other arrestees to be placed in the police vehicle, the flexi cuffs began to cut into his skin..  Mr. Dunlop then asked the NYPD driver, (hereinafter, "Officer John Doe 3") to loosen his flexi cuffs.  Upon information and belief, Officer John Doe 3 instead  tightened the cuffs even more, causing more pain, discomfort and visible lacerations to both wrists.

46. Upon information and belief, Officer John Doe 3 stated that he had tightened the cuffs "Because you might try to attack me."  As a result of the actions of Officer John Doe 3, Mr. Dunlop's wrists began to bleed and swell.

47. Upon information and belief, during the RNC, Defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM and COLGAN, and the DEPARTMENT OF CORRECTIONS implemented a policy, practice or custom of detaining those arrested on August 27, 2004 in the vicinity of the RNC protest, without justification, for an unnecessary and prolonged period of time in unhealthy and dangerous conditions. In particular, Defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that Mr. Dunlop was held in custody following his unlawful arrest. These included, *inter alia*, the use of Pier 57 as an intermediate holding facility fingerprinting of all those arrested, including Mr. Dunlop who was charged with minor offenses for which fingerprinting is unnecessary, and was implemented so as to unnecessarily and unreasonably extend and prolong the period of time that Mr. Dunlop was held in custody.

48. Upon information and belief, instead of using existing resources, such as Old Central Booking, Central Booking or the numerous precincts throughout the City as the reception point for Mr. Dunlop and others arrested during the relevant period – including the at least twenty (20) precincts in Manhattan, all of which were capable of adequately processing arrestees – Defendants deliberately devised a plan that was intended to unreasonably lengthen the stay in custody of anyone arrested during the RNC, including Mr. Dunlop, and to make the terms of confinement as difficult, intimidating and unsafe as they thought possible.

49. Mr. Dunlop was then taken in the police vehicle to a holding facility at the Chelsea Piers and placed in a makeshift cell with approximately one hundred other individuals. Once inside, Mr. Dunlop observed multiple holding cells inside Pier 57 constructed with chain-

11

link fence topped with razor wire. The cell that Mr. Dunlop was placed in had two sections, one in which he was kept, and another buffer zone, which contained a portable toilet. Upon arrival at Pier 57, Mr. Dunlop was searched, had his property confiscated, and was placed in one of the holding cells.

50. Upon information and belief, according to published reports, of which Defendants knew or should have known, numerous environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot.

51. In addition, there was a chemical-like smell that emanated throughout the facility that caused Mr. Dunlop to feel ill during his detention.

52. Upon information and belief, there was inadequate seating to accommodate all the people in the cell and therefore, Mr. Dunlop stood for hours through the night to avoid sitting on the dirty and grease covered floor. There were no beds or cots, no blankets and no pillows in the cell, making it impossible for Mr. Dunlop to sleep or even lie down.

53. Upon information and belief, Mr. Dunlop observed individuals in pain who were not given medical attention.

54. Mr. Dunlop began to feel ill as his clothes had been drenched in sweat while in the police vehicle. This was compounded as Chelsea Piers was damp and cold causing Mr. Dunlop to develop a cough and fever like conditions.

55. During his entire stay at Pier 57, Mr. Dunlop was only given one box of cereal to eat with his hands which had become soiled from the grease and dirt at Chelsea Piers.

56. Upon information and belief, Mr. Dunlop was unable to ascertain from the NYPD or New York City Department of Correction what was happening or why he had been

arrested.  Mr. Dunlop asked a member of the NYPD, at Chelsea Piers "What is happening?" to which the Officer responded, "You have the right to shut the fuck up, I suggest you exercise that right."

57. Mr. Dunlop remained at Chelsea Piers until the next morning when he was transferred to 100 Centre Street, New York, NY in a New York City Department of Corrections Bus.

58. Upon arriving at 100 Centre Street, Mr. Dunlop was again searched, fingerprinted and placed in another cell at 100 Centre Street.  Mr. Dunlop attempted to talk to various members of the NYPD and the Department of Corrections to ascertain his status and when he would be able to see a lawyer to which he was told that he was a "whiney kid."

59. At all times Mr. Dunlop was aware of his confinement and did not consent to being arrested or confined.  Upon information and belief, a warrant for the arrest of Mr. Dunlop was never secured.

60. On August 28, 2004, Mr. Dunlop was not brought to arraignment part until after 6:30 in the evening,  where he was finally permitted to meet with a lawyer.

61. Despite the fact that there was no probable cause to arrest Mr. Dunlop, he was  charged and prosecuted under New York City docket 2004NY063485 by Defendant, the New York County District Attorney's Office for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit and Resisting Arrest.

62. Assistant District Attorney Willa Concannon (hereinafter, "ADA Concannon"), assigned to prosecute Mr. Dunlop's case under the supervision of Defendant, District Attorney Robert Morgenthau, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of Mr. Dunlop's alleged unlawful conduct, (hereinafter, "First

Video Tape").

63. ADA Concannon in her capacity as an Assistant District Attorney for New York County, made representations in court that the First Video Tape was a complete and unedited version of the events that transpired immediately preceding and including Mr. Dunlop's arrest.

64. Upon information and belief, although Officer Gomez never observed Mr. Dunlop until after being apprehended and cuffed by Officer John Doe, Officer Gomez in her corroborating affidavit submitted in connection with this prosecution stated that she had personally observed Mr. Dunlop committing the above offenses and that he had "flailed" his arms to resist being arrested.

65. Months into the case, a second videotape, (hereinafter, "Second Video Tape") also recorded by the NYPD and submitted by the District Attorney's Office as evidence in a different criminal case, when compared with the First Video Tape to be submitted as evidence in Mr. Dunlop's case, upon information and belief, revealed that they were shot from the identical NYPD video camera. When run simultaneously side-by-side it is revealed that the First Video Tape had been edited in two places, in both cases removing images showing Mr. Dunlop behaving peacefully, not obstructing traffic, parading or attempting to avoid arrest.

66. Also cut from the First Video Tape was footage of Officer John Doe, the actual officer who placed Mr. Dunlop under arrest. In the Second Video Tape, Officer Gomez is nowhere to be seen.

67. Upon revelation in court of the Second Video Tape, the New York County District Attorney's Office was forced to drop all criminal charges against Mr. Dunlop and upon

information and belief, later admitted that a technician in the District Attorney's Office (hereinafter, "John Roe" ) whose name and identity was not provided to Mr. Dunlop, had "accidentally" cut the material.

68. As a result of the Defendant's illegal acts, Mr. Dunlop was unlawfully arrested and held against his will and sustained bodily and emotional injury as a result. Mr. Dunlop is now afraid to approach the NYPD or other official officers if he were to be in need of assistance.

69. Defendants deprived Mr. Dunlop of his freedom intentionally, subjected him to deplorable conditions, maliciously prosecuted and otherwise injured Mr. Dunlop.

70. Mr. Dunlop was subjected to unreasonable, unnecessary and punitive conditions of confinement in violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York. These conditions included, but were not limited to, the following: 1) false arrest and imprisonment; 2) excessively tight handcuffs applied for excessive periods of time without cause; 3) unreasonable overcrowding; 4) inadequate facilities for sleeping and sitting, causing Mr. Dunlop to come into intimate contact with toxic chemicals and other noxious substances; 5)  deliberately indifferent denial of access to necessary medication and medical attention when suffering from medical conditions and illness; 6) deliberately indifferent exposure to dangerous chemicals in the air and on the walls and floor of "Pier 57," including asbestos, chlorinated hydrocarbons, benzene and others, some of which are carcinogenic, mutagenic, teratogenic, and hepatogenic and which cause many other diseases and conditions and have caused fear of contracting cancer and other unknown diseases at some time in the future; 7) notwithstanding the extensive levels of toxic