UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

ALEXANDER DUNLOP,

                    Plaintiff,

-versus-                                          06 CV 433 (RJS)(JCF)

THE CITY OF NEW YORK, et al.

                    Defendants.

------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION CONCERNING THE "VIDEO CONSPIRACY" CLAIM

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney For Defendants*

James Mirro (JM 2265)
Special Assistant Corporation Counsel
Special Federal Litigation
100 Church Street, Room 3-130
New York, New York 10007
212.788.8026 (ph)
212.788.9776 (fax)

May 20, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
ALEXANDER DUNLOP,

                          Plaintiff,

-versus-                                             **06 CV 433 (KMK)(JCF)**

THE CITY OF NEW YORK, et al.

                          Defendants.
------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION CONCERNING THE "VIDEO CONSPIRACY" CLAIM

Defendants respectfully request that the Court reconsider that portion of its May 6, 2008 order ("Order") that permitted the plaintiffs' "Video Conspiracy" theory to go forward. Defendants respectfully submit that the Court may have overlooked certain factual materials that were incorporated into the motion submitted by the District Attorney defendants and that were incorporated by reference into the motion of the remaining defendants. Defendants submit that those factual materials demonstrate that the allegedly altered videotape never was used in evidence against the plaintiff as pleaded in plaintiff's Third Amended Complaint ("Complaint") and, therefore, that plaintiff's Video Conspiracy claim fails to state a claim as a matter of law.[1]

### Background

On March 22, 2007, defendants moved for the dismissal of Count Ten of plaintiff's Second Amended Complaint, which asserts a claim based upon a theory of civil conspiracy. See Defendants' Memorandum of Law ("Defendants' Brief") (Exhibit A). As a

---

[1] Today, defendants have filed their Answer to the Third Amended Complaint. By letter dated February 15, 2008, defendants objected to the filing of the Third Amended Complaint insofar as it incorporated allegations not permitted by Judge Karas. Defendants asked that this case proceed on the Second Amended Complaint. Although the Court has not expressly ruled on that application, defendants infer on the basis of the Court's May 6, 2008 order (which refers to the Third Amended Complaint) that that application was denied.

result of a pre-determined division of labor between counsel for the DA Defendants and counsel for all remaining defendants, the motion of the DA Defendants focused on the numerous legal infirmities in the plaintiff's Video Conspiracy claim. For the sake of brevity, the motion of the remaining defendants incorporated those points by reference (Defendants' Brief at 3, 5, 10).[2] Defendants concluded that "for all of the reasons set forth in the DA Defendants' motion, plaintiff's cause of action based upon an alleged Video Conspiracy should be dismissed." Defendants' Brief at 10. Defendants' Brief expanded on several of those points (Defendants' Brief at 5-10) and separately addressed the infirmities in the plaintiff's Arrest Conspiracy theory (Defendants' Brief at 11-20). In their opposition, plaintiffs failed to address any of the arguments made by the DA Defendants in their brief.

In defendants' reply, dated June 5, 2007 ("Defendants' Reply") (Exhibit B), defendants observed that they had "not been served with any opposition to the DA's separate motion[.] Defendants, therefore, who have joined in the DA's motion, proceed on the assumption that plaintiff has elected not to oppose that motion." Defendants' Reply at 1. Defendants noted that, at 7 p.m. on the evening that the Defendants' Reply was due to be filed, plaintiff's counsel informed defendants that plaintiff had executed a stipulation of dismissal with the DA Defendants and that that stipulation had been filed with the Court. Defendants' Reply at n.1. Undersigned counsel was not served with a copy of that stipulation until we pressed for it that evening. Id. Defendants noted that, "because all of the served defendants, not just the DA Defendants, have joined in the DA Defendants' motion, and rely at least in part upon arguments

---

[2] By way of example, in their brief, defendants stated that they "[joined] in the motion by District Attorney Robert Morgenthau and former Assistant District Attorney Willa Concannon (the "DA Defendants" and the "DA's Motion") for all of the reasons stated in their separate motion." Defendants' Brief at 3. Defendants recited that "For all of the reasons set forth in the DA's Motion, plaintiff has failed to plead a viable conspiracy claim against either of the DA Defendants and those defendants should be dismissed from the action. Indeed, the DA Defendants have established that plaintiff's conspiracy claim based upon the alleged alteration of a videotape fails as a matter of law with respect to all of the defendants[.]" Defendants' Brief at 5 (emphasis added).

made in that motion, defendants shall provide a copy of that motion to chambers for the Court's convenience." Id. In their letter to the Court, defendants provided two courtesy copies of their Reply brief as well as "two courtesy copies of the DA Defendants' brief in support of their motion to dismiss, which is provided because all of the served defendants have relied, at least in part, upon the authorities set forth in that brief." (Exhibit C).

Defendants now provide the Court with another copy of the DA Defendants' brief ("DA's Brief"), along with all exhibits attached thereto (Exhibit D).[3] Considering the points and authorities made in both motions, along with the materials attached to them, and for the following reasons, defendants respectfully request that the Court reconsider its Order and dismiss the plaintiff's Video Conspiracy claim and Count Ten of the Complaint.

## ARGUMENT

### I.
### The Court May Take Judicial Notice Of
### Dunlop's Criminal Court Transcripts, Which Demonstrate
### That His Constitutional Rights Were Not Violated

In its May 6, 2008 Order, the Court held that "although it is a close question, the Court finds that . . . the [Third Amended Complaint] sufficiently alleges that defendants worked in concert to inflict an 'unconstitutional injury' that cause[d] damages to plaintiff." Order at 14 ¶ 1. The Court recited defendants' argument that the allegedly altered videotape was not "used as evidence" against plaintiff in a court proceeding and that "the charges against the plaintiff were dismissed by the [NYCDA] . . . before there could have been any violation of plaintiff's rights, or any damages, resulting from the use of the video as evidence." Id. The Court continued, "However, defendants fail to present any documentation in support of these assertions of which the Court would be able to take judicial notice, and there is no support in the TAC for

---
[3] Defendants submitted these materials to Judge Karas before the RNC cases were assigned to Your Honor.

- 3 -

defendants' assertions." Id. "Therefore, in evaluating defendants' argument that the video conspiracy did not cause damage to plaintiff, the Court must take as true plaintiff's allegations in the TAC that the video conspiracy resulted in (1) plaintiff being 'held against his will. . .'" Order at 14. The Court also found that "the TAC sufficiently alleges that the object of the video conspiracy was, beyond the mere preparation of fabricated evidence, to inflict an unconstitutional injury on plaintiff – <u>namely, to use the altered videotape in a court proceeding that allegedly resulted in plaintiff being detained 'against his will' (TAC ¶¶ 76, 85)</u>." Order at 14 (emphasis added).

The DA's Brief addressed these issues as well as other serious defects in the Video Conspiracy claim. See DA's Brief at 23-27. Exhibit D to the DA's Brief attached transcripts of various pre-trial conferences held in the Criminal Court in connection with the proceedings against Dunlop (Exhibit D hereto). The transcripts of the conferences before April 6, 2005 show that, on each occasion, the DA stated that he or she was "not ready" for trial. The transcript of the April 6, 2005 conference shows that, after the People announced that they were still "not ready" for trial, defense counsel raised the issue of the videotape. He complained that he believed that "two scenes involving my client were cut out of the tape that I was given by the District Attorney's office." Transcript of April 6, 2005 Conference at 2. He stated that he reached that conclusion after seeing a second version of the tape that was provided to him by the National Lawyers Guild. Id. He represented that he then had in his possession "both tapes." Id. After a recess, and before any trial commenced, the DA moved to dismiss the case. "Judge, based on my discussion with defense counsel and his showing me some further evidence in the case, I am moving to dismiss the case; I cannot prove these charges beyond a reasonable doubt." Id. at 6. The defense "join[ed] in the motion for the dismissal." Id. at 7. The Court granted the

motion and the tapes never were used in evidence against him. Id.

On a motion to dismiss, the Court may take judicial notice of criminal court transcripts such as these. Fed. R. Evid. 201; Shmueli v. The City of New York, 424 F.3d 231, 233 (2d Cir. 2005) (taking judicial notice of the state prosecution of the plaintiff which was a "matter of public record"); Tarshis v. Riese Org., 211 F.3d 30, 39 (2d Cir. 2000) (holding that court may take judicial notice on motion to dismiss); Young v. Selsky, 41 F.3d 47, 50 (2d Cir. 1994) (taking judicial notice of transcripts from other cases); Levy v. Scranton, 780 F. Supp. 897, 900-01 (N.D.N.Y. 1991) (taking judicial notice of transcripts of legislative history); Munno v. Town of Orangetown, 391 F.Supp.2d 263, 268 (S.D.N.Y. 2005) (McMahon, J.) (court may take judicial notice of admissions in pleadings and other documents in the public record that contradict the party's factual assertions in a subsequent action); Carruthers v. Flaum, 388 F. Supp.2d 360, 370 (S.D.N.Y. 2005) (McMahon, J.) (same).

As defendants argued in their motions to dismiss, the foregoing facts demonstrate that the plaintiff's criminal defense counsel had possession of both versions of the videotape by April 6, 2005 -- before any trial of the plaintiff had commenced; that the charges against the plaintiff were dismissed by the DA before any version of the videotape was used as evidence; and, therefore, that plaintiff could not have suffered any violation of his constitutional rights, nor any damages, as a result of the "Video Conspiracy" pled by the plaintiff. Defendants emphasize that the plaintiff's defense counsel possessed both versions of the videotape before any use of the tapes as evidence, thus defeating any claim based upon the failure to disclose evidence. See DA's Brief at 23-27; Defendants' Brief at 5-10; Defendants' Reply at 2. In his Complaint, the plaintiff does not specifically plead any facts to the contrary (as opposed to making general, conclusory conspiracy allegations).

Most tellingly, in his opposition to defendants' motions to dismiss ("Plaintiff's Opposition") (Exhibit E), plaintiff never disputed any of these arguments. In fact, in that Opposition, plaintiff himself relies upon the April 6, 2005 transcript, in which his defense counsel admitted to possessing both versions of the videotape before any tape was used as evidence against plaintiff (see Plaintiff's Opposition at 9-11 & Exhibit C thereto). Even if the Court declines to take judicial notice of the Criminal Court transcripts, however, the Court can reach the same result based upon a review of the Plaintiff's Opposition alone. In that Opposition, the plaintiff quotes extensively from the April 6 transcript, adopting those facts and pressing them as his own (see Opposition at 10-11). Plaintiff effectively concedes the defendants' point in a second way -- when he argues that "ADA Concannon . . . produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of Mr. Dunlop's alleged unlawful conduct [to] deprive him of his constitutional rights." Plaintiff's Opposition at 10. Plaintiff thus concedes that he does not -- and cannot consistent with Rule 11 -- claim that either tape actually was submitted as evidence against Dunlop. Referring to the same transcript, plaintiff then concedes that "When the case was called again, the Judge dismissed it[.]" Plaintiff's Opposition at 11, 12 ("upon learning about plaintiff's knowledge of the unedited version, [the DA] dismissed the criminal case"). In short, plaintiff has conceded that the charges were dismissed before either version of the tape was used in evidence against him.

Given these concessions, which are supported by the Criminal Court transcripts, defendants respectfully submit that they should not be required to engage in further burdensome discovery on this legally defective claim (such discovery easily could involve any number of potential witnesses from the DA's office, the former DA Willa Concannon, the former DA

employee Ilise Williams, and any number of potential witnesses from the NYPD's video unit).[4] Rather, the conspiracy claim pled here falls within the category of cases discussed by the Court in its May 6 Order, where the Court observed that "[t]he manufacture of false evidence, in and of itself, . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." Order at 14, quoting Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) (there can be no violation of constitutional rights where the fabricated evidence does not result in a deprivation of liberty); Landrigan v. City of Warwick, 628 F.2d 736, 744-45 (1st Cir. 1980) ("We do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws"); see also Buckley v. Fitzsimmons, 20 F.3d 789, 795 (7th Cir. 1994) (there can be no violation of defendant's constitutional rights where a coerced statement from a third party is not introduced into evidence against defendant)

The videotape at issue here never was used in evidence against the plaintiff and, therefore, could not have resulted in any deprivation of the plaintiff's liberty. According to the Second Circuit, "No deprivation of liberty occurs unless and until the jury convicts and the defendant is sentenced." Zahrey, 221 F.3d at 350. "If the trial was aborted before a verdict, it could be said either that the misconduct did not cause a deprivation of liberty or that no constitutional right was violated." Id. Here, the charges were dropped even before the trial had commenced.[5] Nothing in Richardson v. The City of New York, 2006 WL 2792768 (E.D.N.Y.

---

[4] Defendants do not read the Complaint to allege that the Video Conspiracy resulted in the arrest of the plaintiff (plaintiff was arrested on August 27, 2004). Rather, defendants submit that the Complaint should be read to allege that the Video Conspiracy came after the arrest -- and its objective was to deprive plaintiff of his due process rights by using the allegedly altered videotape in evidence against plaintiff without disclosing that the tape had been edited and without disclosing those portions of it that were removed. In his Opposition, plaintiff clearly sets forth the timing of the Video Conspiracy when he argues that "Defendants . . . conspired in or around September 2004 to create, manufacture and fabricate knowingly false evidence. . . . In or around September 2004, scenes showing Mr. Dunlop behaving peacefully and lawfully were removed [from] the videotape[.]" Plaintiff's Opposition at 9.

[5] Plaintiff, moreover, testified that he was held in custody following his arrest on August 27, 2004 for less than 24 hours: "I would say . . . just slightly less than 24 hours I guess all together." See Transcript of 50-H Hearing

2006) supports Dunlop's claim. In Richardson, unlike in this case, it was "undisputed that the defendants passed [the fabricated evidence] along to the Queens County District Attorney's Office, and that as a result Richardson was indicted and prosecuted." Id. at *5 (emphasis added). Here, the prosecutor never had offered the allegedly altered videotape into evidence.

A close reading of Richardson, moreover, shows that that case strongly supports defendants' argument that Dunlop's claim is defective as a matter of law. The Court noted that "two important limitations on such a claim warrant emphasis: In order for a plaintiff to recover, the alleged fabrication must be both material, i.e., 'likely to influence a jury's decision,' [and] 'the legally cognizable' cause of the post-arraignment deprivation of liberty." Richardson at n.4 (cites omitted). "It is particularly critical to distinguish between an alleged fabrication that 'precipitated the sequence of events that resulted in the deprivation of liberty' from other charges of fabrication of evidence." Id. at n.4 (emphasis added). "It seem[s] obvious that a defendant who achieves a favorable termination in a criminal case cannot properly be permitted to seek damages (and obtain a jury trial) simply by asserting, for example, that one of several . . . alleged admissions in a post-arrest statement was not in fact made." Id. (emphasis added). "The availability of a cause of action based solely on a claim of fabrication, without the materiality and causation requirements, would unduly deter prosecutors' exercise of discretion to dismiss or abandon cases for a broad array of reasons having nothing to do with the defendant's guilt or the claimed fabrication." Id.

In Dunlop's case, of course, neither of these requirements is met. Plaintiff has not specifically pleaded that he suffered any deprivation of liberty as a result of the DA's use of an altered videotape in evidence. In fact, defendants already have shown (and plaintiff has

---

Testimony of Alexander Dunlop at 29-30 (Exhibit F). In other words, he was free as of Saturday, August 28, 2004. Thus, he was free even before the alleged Video Conspiracy was hatched in September 2004 (according to plaintiff) and until the charges were dropped in April 2005 (according to plaintiff). See footnote immediately above.

conceded) that he never did suffer any such deprivation of liberty and that the DA never did use the videotape in evidence (the charges were dropped before trial). Nor has plaintiff alleged – nor can he allege consistent with Rule 11 – that the altered videotape was "likely to influence a jury's decision" considering that the evidence never was put before a jury or even offered into evidence. In short, the case law in the Second Circuit, and in the sister circuits, leaves no doubt that the claim pleaded by plaintiff here is seriously defective as a matter of law. Accordingly, before the parties and the Court are required to devote any further time and attention to it, it should be dismissed. See Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1966 (2007) ("when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court").

## II.
## Fairly Read, The Video Conspiracy Claim Does Not Sufficiently Plead Any "Agreement" To Violate Plaintiff's Rights

The Court rejected the defendants' argument that the Complaint failed to plead an "agreement" sufficient to support the Video Conspiracy claim; and held that the intra-corporate conspiracy doctrine could not apply where plaintiff alleged that individuals from both the City and the DA engaged in the conspiracy. Because these issues are so closely related, defendants address them together. Putting aside wholly conclusory allegations within the complaint, and putting aside allegations that go to the "overt acts" requirement (under the third prong of the Ciambrello test), defendants submit that plaintiffs – even in their Third Amended Complaint – have not sufficiently pled an actual "agreement" between any of the defendants to inflict any "unconstitutional injury." See Defendants' Brief; and Defendants' Reply. For purposes of brevity, defendants focus here on those allegations on which the Court relied in its May 6 Order.

For the reasons that follow, as set forth more fully in Defendants' Brief and Defendants' Reply, defendants respectfully request that the Court reconsider its holding that the Complaint adequately pleaded an agreement to inflict an unconstitutional injury on plaintiff Dunlop.

In the Court's Order of May 6, the Court observed that "in the TAC, plaintiff alleges that Williams and an unnamed police officer, among others, acted 'in concert with [] each other' to 'remove evidentiary images' from a videotape that allegedly depicted plaintiff 'behaving peacefully' during the Convention." Order at 13 (emphasis added). Assuming the truth of this allegation, as the Court must on a motion to dismiss (except as discussed below), this allegation goes only to the third element under Ciambrello (an overt act). Defendants respectfully submit that this allegation does not plead any "agreement" or "meeting of minds" between any two individuals. Nor does it plead that the object of that agreement was "to inflict an unconstitutional injury." While one may surmise an "agreement" to inflict "an unconstitutional injury" on the basis of an "overt act," the law requires more. Defendants submit that the law requires that plaintiffs must plead actual facts supporting each of the three distinct elements – otherwise plaintiffs could plead this tort by alleging little more than an overt act. See Defendants' Brief at 3-5.

The Court continued that "plaintiff alleges that this action was taken in furtherance of a 'plan and conspiracy . . . to alter, fabricate, and manufacture knowingly false evidence to be used against [plaintiff] in violation of [his] constitutional rights[.]" Order at 13. Although this allegation comes the closest to meeting the requirement of an "agreement," defendants submit that it fails to satisfy the case law for one main reason. Within the context of civil conspiracy cases, particularly civil rights conspiracy cases, the primary teaching is that a broad, general and conclusory pleading will not suffice. Within the Second Circuit, the courts

repeatedly have rejected pleadings when based on nothing more than allegations such as this, as set forth in Defendants' Brief and Reply. In addition, in Bell Atlantic, the Supreme Court focused its attention on pleadings such as this when that court held that "<u>on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.</u>" Bell Atlantic, 127 S.Ct. at 1965 (emphasis added). The Supreme Court concluded that, "[w]hen we look for plausibility in this complaint, we agree with [Judge Lynch] that plaintiffs' claim of conspiracy . . . comes up short. . . . <u>Although in form a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions resting on the prior allegations</u>." Id. at 1970 (emphasis added).

Defendants respectfully submit that, although this language from the Complaint speaks of a "plan and conspiracy," that is a legal conclusion and not a factual allegation. Defendants submit that this is so because this allegation is completely lacking in any unique factual details that are the hallmarks of factual pleading as opposed to plaintiff's rote recitation of pleading requirements. In its Order, the Court identified no other allegations that might support the first and second elements of the conspiracy claim – an agreement to inflict an unconstitutional injury. Nevertheless, the Court found "that these allegations sufficiently allege a conspiracy claim. . . . Specifically, plaintiff has alleged facts from which it could reasonably be inferred that (1) Williams reached an agreement with, at a minimum, an unidentified police officer[.]" Order at 13-14.

Defendants submit that, apart from plaintiff's failure to plead actual facts supporting an agreement to inflict an unconstitutional injury, the case law does not support the pleading of a conspiracy claim against "unidentified" parties. Given the vague pleading that defendants faced when they drafted their motion to dismiss this claim, defendants were

- 11 -

compelled to address specifically this issue in their initial brief. Thus, in Defendants' Brief at 6, defendants set forth the cases that stand for the proposition that a pleading of civil conspiracy must identify the individuals allegedly involved in that conspiracy and plead associated facts that support the conspiracy pleading, including the personal involvement of those individuals allegedly involved in the conspiracy. The Video Conspiracy claim fails for this additional reason.

Finally, defendants submit that, fairly read, the complaint pleads that the Video Conspiracy was between only the DA defendants. As defendants explained in Defendants' Reply Brief, and briefly at oral argument, this amounts to an intra-corporate conspiracy <u>among DA defendants</u> (not among City employees) that must fail just as the Arrest Conspiracy failed because it involved only City employees.[6]

For all of these reasons, defendants respectfully request that the Court reconsider its Order of May 6 insofar as the Court declined to dismiss the Video Conspiracy claim. Upon reconsideration, defendants request that the Court dismiss that claim.

Dated: New York, New York
       May 20, 2008

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the City of New York
                        *Attorney For Defendants*

                        By: _____
                            James Mirro (JM 2265)
                        Special Assistant Corporation Counsel
                        Special Federal Litigation
                        100 Church Street, Room 3-130
                        New York, New York 10007
                        212.788.8026 (ph)
                        212.788.9776 (fax)

---

[6] Contrary to plaintiff's pleading, Ilise Williams was an employee of the DA's office and never was an employee of the City. Like many other allegations within the Complaint, defendants are left to wonder whether plaintiff had any good faith basis to plead this allegation.