UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

ALEXANDER DUNLOP,

               Plaintiff,

    vs.

THE CITY OF NEW YORK, et al.,

               Defendant(s).

-----------------------------------------------------------x

                        06-CV-433 (KMK) (JCF)

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S CONSPIRACY CLAIMS

KURLAND, BONICA & ASSOCIATES, P.C.
f/k/a Kurland & Associates, P.C.
*Attorneys for Plaintiff*
304 Park Avenue South, Suite 206
New York, New York 10010
212-253-6911 (ph)
212-614-2532 (fax)

May 21, 2007

# TABLE OF CONTENTS

Table of Authority………………………………………………………………ii

Preliminary Statement……………………………………………………...1

Factual Background…………………………………………………………..2

Legal Argument…………………………………………………………………6

I.    Defendants Fail To Meet Their Burden Of Proof To Be Entitled To A
       To Dismiss under Fed R. Civ. P 12(b)(6)…………………………………..6

II.   Defendant's Memorandum Misstates facts and Misinterprets
       Relevant Law……………………………………………………………7

        A.   Plaintiff had sufficiently pled a conspiracy claim…………………7

        B.  Conspiracies are secretive and may be proven by circumstantial
             evidence………………………………………………………….....14

        C.  The Complaint Complies with Fed. R. Civ. P 8(a)(2) showing that
             the Plaintiff is entitled to relief……………………………………….15

        D.  Defendants are not one entity …………………………………….18

III.   Discovery Will Unearth Additional Proof of the Conspiracy ………….19

Conclusion …………………………………………………………………….22

## TABLE OF AUTHORITY

*Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir.1987)……………….……………...16

*American Home Assurance Co v. ZIM JAMAICA*,
    418 F.Supp.2d 537(S.D.N.Y.2006)……………………………………………20, 21,22

*Brewster v. Nassau County* 349 F. Supp.2d 540 (E.D.N.Y. 2004)………………………14

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2nd Cir. 2002)…………………………13

*Commercial Cleaning Services L.L.C. v. Colin Service Systems Inc.,*
    271 F.3d 374 (2d Cir.2001)……………………………………………………………...20

*Conley v. Gibson,* 355 U.S. 41(1957)……………….....................................…..16,17

*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993)…………………..............13,14

*Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y.,*
    375 F. 3d 168, (2d Cir. 2004) …………………………………………………………..6

*Fincher v. County of Westchester* 979 F.Supp. 989 (S.D.N.Y.1997)……………………15

*Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005)…………………………….7,14

*General Electric Co. v. Bucyrus-Erie Company*, 563 F. Supp. 970 (1983)…………..14,15

*Herman v. Moore*, 576 F.2d 453 (2d Cir. 1978)………………………………......………18

*Hoffman v. Halden*, 268 F.2d 280 (9th Cir.1959)…………………………………………...7

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir.1994)………….…6

*Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498 (S.D.N.Y. 2003)…………...………18

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*
    507 U.S. 163, (1993)………………………………………………...........................16,17

*Middleton v. The City of New York*, 2006 WL 1720400 (E.D.N.Y.)…………...7,12,14,15

*Pangburn v. Culbertson* 200 F.3d 65 1999…………………………………………13,14

*Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir.2002)…………………………………...…16,17

*Rivera v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 479 (S.D.N.Y.1993)....................20

*Rounseville v. Zahl*, 13 F. 3d 625, 2d Cir. 1994)..............................................14

*Thomas v. City of New York*, 143 F.3d 31 (2d Cir.1998)......................................6

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir.1988)............................................17

*Sims v. Artuz*, 230 F.3d 14 (2d Cir.2000)......................................................6

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)............................................15,17

*United States v. Pitre*, 960 F.2d 1112 (2d Cir.1992).......................................14

*United States v. Rivera*, 971 F.2d 876 (2d Cir.1992)......................................14

## Federal Rules

*Fed R Civ.P. 8(a)*............................................................................15,16,17

*Fed. R. Civ. P.  8(a)(2)*..................................................................1,5,15,16,23

*Fed. R. Civ. P. 12(b)(6)*....................................................................1,6, 23

*Fed R. Civ. P 56(f)*.......................................................................2, 19,20,23

## Federal Statutes

*42  U.S.C.A § 1983*............................................................................7,13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALEXANDER DUNLOP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 06-CV-433 (KMK) (JCF) |
| vs. | ) | ECF |
| | ) | |
| THE CITY OF NEW YORK et al. | ) | **Oral Argument Requested** |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

Plaintiff Alexander Dunlop (hereinafter, "Plaintiff" or "Mr. Dunlop") by and through his attorneys, Kurland, Bonica & Associates, P.C., f/k/a Kurland & Associates, P.C., hereby submits Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Conspiracy Claims, as well the attached declarations and exhibits hereto.

## PRELIMINARY STATEMENT

Defendant's Motion to Dismiss must be denied as matter of law because Defendants have failed to meet their heavy burden of proof required to sustain their motion to dismiss under Fed. R. Civ. P. 12(b)(6). Moreover, Defendants in requesting their motion, misstate facts and misinterpret relevant law, in that Plaintiff has pled its conspiracy charge with sufficiency, Plaintiff's complaint sets out a short and plain statement of the claim in compliance with Fed. R. Civ. P. 8(a)(2), Defendants are not one entity but are separate and distinct offices; and Plaintiff's complaint does allege triable issues of fact. Even if Defendants had met their burden of proof, which they clearly have failed to do, and even if they did not misstate the facts or misapply the law, which they have, Defendant's motion must still be denied as this Court must give a

continuance under Fed. R. Civ. P 56(f) to allow Plaintiff to procure additional facts through discovery to rebut the motion.

## FACTUAL BACKGROUND

Plaintiff will not restate the facts of his complaint as they are clearly articulated in the second amended complaint, except to state that Plaintiff has alleged in detail that the City of New York, Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, Chief Joseph Esposito, Chief Thomas Graham, Chief John J. Colgan, New York City District Attorney Robert Morganthau, former Assistant District Attorney Willa Concannon, Police Officer Maya Gomez, Police Officer John Does 1-3, John Roe, and the Hudson River Park Trust, (hereinafter, "Defendants") in conjunction with other members of the Republican National Committee, and the United States Secret Service conspired and violated the civil liberties of Mr. Dunlop and others who were in the vicinity of the Republican National Convention in August of 2004 in New York City.

There have been hundreds of suits brought by protesters, bystanders, legal observers and other New York City residents who were literally swept up by the net of illegal tactics employed by the City of New York, the New York City Police Department, the District Attorneys' Office, and the Hudson River Park Trust under the direction of the United States Federal Government, and Mr. Dunlop is one of these individuals. Defendants allege that out of the 565 people who were arrested, only 2 people (including Mr. Dunlop) have alleged conspiracy. (See Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's 'Conspiracy' Claim at p. 2). This overlooks the fact that many, if not all the allegations have arguments that are couched in the vein of conspiracy between the City of new York, the New York City Police Department,

2

the Hudson River Park Trust and others to employ illegal tactics to deny Plaintiffs of their civil liberties.

It is extremely troubling that Defendants would claim that there was no conspiracy between several individuals and entities named as Defendants herein, as several instances of such conduct have already been discovered through the related RNC cases and many instances are being uncovered as this matter proceeds. Defendants' motion to dismiss is a thinly veiled attempt by the Defendants to avoid culpability, to chip away at the Plaintiff's causes of action, and to deny Plaintiff his right and opportunity to be heard by this Court. All too easily, Defendants attempt to sweep their liability under the carpet pointing fingers at the District Attorney's Office who then in turn points fingers at the New York City Police Department, all the while claiming that Plaintiff's rights were not violated when it is clear that he was falsely arrested, detained and then prosecuted with fabricated evidence.

By filing this motion, Defendants attempt to dismiss the conspiracy and avoid liability for one of the most heinous aspects within the overarching conspiracy, namely that their conduct was premeditated and planned, to put into place improper and unlawful arrest and detention and prosecution procedures, which at its core was the primary goal of depriving individuals who were in New York City at the time of the Republican National Convention (hereinafter, "RNC") of their civil liberties. This deprivation of liberties was committed against the protestors and bystanders that Defendants claim they accommodated during the 2004 RNC, a claim that could not be further from the truth. The City of New York, the Office of the Mayor, the Hudson River Park Trust, the New York City Police Department, the Department of Corrections and other agencies planned with federal agencies (including but not limited to the Republican National Committee, and the United States Secret Service), to conspire to deprive protestors, bystanders,

3

and New York City residents of their civil liberties by conducting mass arrests without individualized suspicion to stop individuals or probable cause to arrest them, to hold individuals for unreasonable and excessive periods of time in unsanitary, dangerous, deplorable conditions, and worked together to deprive the federal state and local liberties of the very people they were elected or appointed to protect.

It is unbelievable that Defendants claim that Plaintiff's second amended verified complaint does not allege conspiracy, and challenge the allegation of conspiracy when the volumes of discovery and testimony that have appeared in other RNC cases clearly and undeniably show that the Defendants had come up with a plan to deprive individuals of their liberties by the following: employing federal actors to unlawfully hold people at Pier 57, a facility not normally used for the containment of human beings, which lacked the arrest processing equipment that would have allowed arrestees to be processed in a timely fashion; the fact that people were held upwards of 72 hours for minor offenses which would have normally resulted in Desk Appearance Tickets; the advising to certain arrestees that they would be held until President Bush left New York City; the training of New York City Police Officers by Federal Agents to throw orange webs over people, to direct them to certain areas where they were to be arrested. The foregoing are only a few examples of the tactics used by Defendants to unlawfully arrest and detain individuals. These tactics were planned months in advance as alleged in the second amended complaint. (See Plaintiff's Second Amended Verified Complaint, annexed hereto as Exhibit A ¶¶ 168-174).

The agreement to deprive individuals of their rights included, but was not limited to, the mass arrests of those in the vicinity of the protest and the arrests of those who were peacefully observing the protest, the removal of protestors out of the visibility of the press, and the

4

containment of the protestors; the intimidation factor of police officers in full riot gear, the use of horses to disperse bystanders, the arrest and confinement by city and federal actors, and the unlawful holding of people at Pier 57, a facility not normally used for the containment of human beings, which lacked the arrest processing equipment that would have allowed arrestees to be processed in a timely fashion; the fact of people being held upwards of 72 hours for minor offenses of those charged with minor offenses instead of issuing desk appearance tickets so as to minimize the visible effect of dissenters, the confiscation of bicycles and other personal property as "evidence", routing bystanders and observers to areas where they would be arrested unlawfully, and falsely arresting large groups of people without probable cause and then falsely prosecuting these individuals with altered evidence. (See Plaintiff's Second Amended Verified Complaint, annexed hereto as Exhibit A ¶ 161).

Sufficient facts have been plead in the second amended verified complaint, which is significantly longer than the short and plain statement of the claim as minimally required by Fed. R. Civ. P. 8(a)(2). The Defendants, in filing this motion, are attempting to deny Plaintiff his constitutional right to have his case heard by a jury. It is inappropriate for Defendants to use this motion to eliminate the cause of action from Plaintiff's complaint that Plaintiff alleges was predicated on the premeditated plan by various agencies to deprive Plaintiff and others similarly situated of their constitutional rights and then take numerous overt acts in furtherance of the plan. (See also the Declaration of Yetta G. Kurland, annexed hereto as Exhibit B).

Defendants need not be reminded that Plaintiff's complaint does not have be proven at the pleading stage, and that a complaint with allegations of legal feasibility will survive a motion to dismiss. Clearly, Plaintiff's second amended complaint meets this threshold.

## LEGAL ARGUMENT

**I.    Defendants Fail To Meet Their Burden Of Proof To Be Entitled To
A Motion To Dismiss under Fed R. Civ. P 12(b)(6)**

In order for a Defendant to obtain the drastic relief in a motion to Dismiss, the Courts

have long held that a motion to dismiss may only be granted if "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Thomas v. City of New York, 143 F.3d 31, 36-37 (2d Cir.1998) (internal quotation marks and

citation omitted). In the instant matter, Defendants' motion to dismiss Plaintiff's claim for

conspiracy must be denied as Plaintiff has pled sufficient facts in support of his claim for

conspiracy.

On a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, the Court must accept "as true the facts

alleged in the complaint," Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699

(2d Cir.1994), and only if Plaintiff cannot proffer any cognizable claim, will the motion be

granted. The task of a court in ruling on a Fed. R. Civ. P. 12(b)(6) motion is "merely to assess

the legal feasibility of the complaint, not to assay the weight of the evidence which might be

offered in support thereof." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir.2000) (internal quotation

marks and citation omitted). "At the pleading stage...the issue is not whether a Plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y., 375 F. 3d 168, 177 (2d

Cir. 2004).

Plaintiff's claim of conspiracy in his second amended verified complaint clearly meets

the standard of proof required to survive a motion to dismiss, and moreover has sufficiently

plead a claim for conspiracy in paragraphs 164-181.

II.    **Defendant's Memorandum Misstates facts and Misinterprets Relevant Law**

A.    **Plaintiff had sufficiently pled a conspiracy claim**

Defendants in requesting their motion misstate facts and misinterpret relevant law. In the instant matter, the Plaintiff has satisfied the elements for conspiracy and has pled the claim with particularity. .

The Second Circuit has clearly established the standard for pleading a conspiracy claim for violation of civil rights. In order to survive a claim for conspiracy under Sect. 1983, the Plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict unconstitutional injury, and (3) an overt act in furtherance of the goal. Middleton v. The City of New York, 2006 WL 1720400 (E.D.N.Y.) Plaintiff is not required to list the place and the date of Defendants meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action. Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) *citing* Hoffman v. Halden, 268 F.2d 280, 294-95 (9th Cir.1959).

Plaintiff's complaint alleges the requisite facts to sustain its claim for conspiracy. Plaintiff alleges in relevant part that "Defendants implemented this policy, practice or custom, in an arbitrary and capricious manner, and in the absence of the existence of probable cause, to arrest entire groups of people who were lawfully engaged in protected First Amendment activity or were observing such activity, or were simply passing by at the time arrests were being made..." and thereby conspired to violate the Plaintiff's civil rights as well as those similarly situated. (See Plaintiff's Second Amended Complaint at ¶ 158). As Defendants state in their Memorandum of Law, ". . . approximately 1800 people were arrested. .." during the week of the RNC and "565 of those individuals have sued the City, the Mayor, the Police Commissioner"

and others. (See Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's 'Conspiracy' Claim at p. 2). Plaintiff alleges that as part of this conspiracy, Mayor Bloomberg and David Norcross, Chairman of the Committee on Arrangements for the 2004 Republican National Convention and others met on August 27, 2004 and prior to that for the "...promulgation and implementation of a practice, tactic or strategy to keep visible signs of dissent and/or protest out of the public eye, out of the media, and off the streets of New York City. This included but was not limited to mass arrests of those in the vicinity of the protest and those who were peacefully observing the protest, the intimidation factor of police officers in full riot gear, the use of horses to disperse bystanders, the arrest and confinement of those charged with minor offenses instead of issuing desk appearance tickets so as to minimize the visible effect of dissenters, confiscation of bicycles and other personal property as "evidence", routing bystanders and observers to areas where they would be arrested unlawfully, and falsely arresting large groups of people without probable cause and then falsely prosecute these individuals with altered evidence." (See Plaintiff's Second Amended Complaint, Exhibit A, at ¶ 161).

The Defendants, in preparation of the thousands of people who came to New York solely because of the RNC, determined a location to hold all the arrestees and sought out and contracted with the Hudson River Park Trust for use of Pier 57 as a holding facility, despite the fact that they knew or should have know that Pier 57 was riddled with dangerous chemicals and other carcinogens.

This plan came from the top down. In the wake of 9/11 and President Bush's presence in New York City during this time, the United States Secret Service had met and planned with the Defendants, and agreed upon how to arrest, detain and confine individuals who were within the vicinity of the RNC protests without probable cause and agree to maliciously charge and

prosecute individuals without lawful justification. (See generally, Plaintiff's Second Amended Complaint, Exhibit A, ¶¶ 169 – 173).

In October of 2003, November of 2003, January of 2004, February 19, 2004, May 3, 2004, May 5, 2004, July 21, 2004, and August 25, 2004 Defendants, including but not limited to Kelly, Esposito, Graham and Colgan, the United States Secret Service and others planned and agreed upon how to arrest, detain and confine individuals who were participating in peaceful protest activity in violation of their constitutional rights by entering into a contract with the Hudson River park Trust to house arrestees in a hand picked holding facility that was not normally used for confinement of humans. (See Plaintiff's Second Amended Complaint, Exhibit A, ¶¶ 168 -174).

In furtherance of the conspiracy, Defendants ADA Concannon, Officer Gomez, Does and Roe conspired in or around September 2004 to create, manufacture and fabricate knowingly false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights. (Plaintiff's Second Amended Complaint, Exhibit A, ¶ 177).    In or around September 2004, scenes showing Mr. Dunlop behaving peacefully and lawfully were removed by from the videotape by the NYPD Technical Assistance and Response Unit (TARU), and/or the City of New York, Morganthau, ADA Concannon and Roes in furtherance of Mr. Dunlop's unlawful arrest and conspiracy, and who then submitted this fabricated tape as evidence against Mr. Dunlop so as to unlawfully deprive him of his rights and to then  maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed. (Plaintiff's Second Amended Complaint, Exhibit A, ¶ 177).

In Mr. Dunlop's Criminal Hearing on April 6, 2005, the issue of the conspiracy and the fabricated evidence was brought to the forefront of the proceedings.  (See annexed hereto as

9

Exhibit C is a copy of the April 6, 2005 transcript). The proceeding makes it clear that Plaintiff has a good faith cause of action for conspiracy.

ADA Concannon, assigned to prosecute Mr. Dunlop's case under the supervision of Defendant, Morgenthau, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of Mr. Dunlop's alleged unlawful conduct, (hereinafter, "First Video Tape"), knowing that it was an altered and manufactured piece of evidence used to maliciously prosecute Mr. Dunlop, and deprive him of his constitutional rights.  Indeed, Defendants, including but not limited to ADA Concannon, knowingly made false representations in court that the First Video Tape was a complete and unedited version of the events that transpired immediately preceding and including Mr. Dunlop's arrest:

> MR. CONROY [counsel for Mr. Dunlop]:  I was contacted by the Lawyer's Guild on Monday.   The tape that I have [from MS. CONCANNON] is not a complete tape; it is a cut tape.  I went down to the Lawyer's Guild, I compared a tape that they have gotten from an attorney on another case.  Interestingly enough, two scenes involving my client were cut out of the tape that I was given by the District Attorney's Office.
>
> (See annexed hereto as Exhibit C is a copy of the April 6, 2005 transcript).
> ***
>
> THE COURT:  People, where did you get [the tape] from?
> MS. CONCANNON:  We have several tapes --
> THE COURT:  I mean the tape you gave [MR. CONROY].

MS. CONCANNON: New York City Police Department detectives taping protests that night. There are hundreds of those tapes.

THE COURT: You can find the officer who taped it and you are free to cross-examine that person.

MR. CONROY: ... Someone, it appears, intentionally cut my client out of the tape.

(See annexed hereto as Exhibit C is a copy of the April 6, 2005 transcript).
***

MR. CONROY: I want to know what officers edited those tapes.

MS. CONCANNON: There are no editing of any tapes.

(See annexed hereto as Exhibit C is a copy of the April 6, 2005 transcript).

At this point in the proceedings, there was an off-the-record discussion held at the bench. The Court later stated as follows:

THE COURT: ... There are issues with the tape. I suggest you get together, you can come back before the Court and we can talk about it.

(See annexed hereto as Exhibit C is a copy of the April 6, 2005 transcript).

When the case was called again, the Judge dismissed it upon MS. CONCANNON stating the following:

MS. CONCANNON: Judge, based on my discussion with defense counsel and his showing me some further evidence in the case, I am moving to dismiss the case; I cannot prove these charges beyond a reasonable doubt.

(See annexed hereto as Exhibit C is a copy of the April 6, 2005 transcript).

11

As alleged in the Second Amended Complaint, the second videotape was also recorded by the NYPD and submitted by Morganthau as evidence in a different criminal case. When compared with the First Video Tape to be submitted as evidence in Mr. Dunlop's case, upon information and belief, it is evident that they were shot from the identical NYPD video camera. When run simultaneously side-by-side, it is revealed that the First Video Tape had been edited in two places. In both cases the edits removed exculpatory images showing Mr. Dunlop behaving peacefully, not obstructing traffic, not parading nor attempting to avoid arrest. (Plaintiff's Second Amended Complaint, Exhibit A, ¶¶ 176-177).

Further inconsistencies include the fact that, upon information and belief, Barbara Thompson, a spokeswoman for the DA's Office stated on at least on occasion in or around April of 2005 that the tape had been cut by the DA's office. (Plaintiff's Second Amended Complaint, Exhibit A, ¶ 79).

Clearly, it is conspiratorial that the Defendants have stated that the tape was unedited, and then upon learning about Plaintiff's knowledge of the unedited version, dismissed the criminal case. Furthermore, the Defendants have stated both that the New York Police Department cut the tapes, and also that the District Attorney's Office cut the tapes. This finger-pointing not only justifies Plaintiff's uncertainty as to a variety of specific facts, but also justifies Plaintiff's demand to engage in discovery as to the conspiracy claim, in order to ascertain such specific facts to fully and fairly prosecute his claim.

Clearly, Plaintiff's second amended complaint meets the three prong test as it alleges an agreement between Defendants, acts used by the Defendants to deprive the Plaintiff of his constitutional rights, and several overt act in furtherance of the goal. Middleton v. The City of New York, 2006 WL 1720400 (E.D.N.Y.)

The instant matter is very different from Ciambriello v. County of Nassau, 292 F.3d 307 (2nd Cir. 2002) in which the court in that case dismissed the plaintiff's conspiracy claim as it was alleged by conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; unless amplified by specific instances of misconduct. Id, citing Dwares v. City of New York., 985 F.2d 94, 100 (2d Cir.1993).

Similarly, the Second Circuit deemed the factual allegations inadequate in Ciambriello because plaintiff had "not provided any 'details of time and place,' Dwares, 985 F.2d at 100, and ... 'fail[ed] to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense." Id.

Unlike Ciambriello and Dwares, Plaintiff in the instant matter not only articulates all elements establishing a conspiracy, he provides "details of time and place" of the conspiracy, including but not limited to the formulation of the conspiracy as early as 2004, the names of the actors, and the area where the conspiracy was planned and then carried out through several overt acts with the detail and the factual basis necessary to enable the Defendants to intelligently prepare their defense.

Nevertheless, Plaintiff in the instant matter clearly meets even the heighten requirements of Dwares and Ciambriello. The complaint clearly names the actors, dates the depravation of a right, and the overt acts in furtherance of the conspiracy.

The court in Pangburn held that the Plaintiff sufficiently alleged a § 1983 conspiracy when his complaint alleged that defendants "Culbertson, York and McDonald, intentional[ly]" retained the Blazer for an excessive two-year period; that two Sheriff's deputies informed Pangburn that the Sheriff's Department was making "personal use" of the Blazer; and that

defendants Culbertson, York and McDonald attempted to "cover-up" their unlawful acts by, *inter alia*, refusing to respond to Pangburn's requests for the Blazer's return. Pangburn v. Culbertson 200 F.3d 65 C.A.2 (N.Y.),1999. Dwares, 985 F.2d at 100. The Court found these allegations satisfied the pleading standard for conspiracy.

Similarly, in the case at bar, Plaintiff's voluminous second amended complaint, specifically the section entitled "Factual Background" (Exhibit A, ¶¶ 26-84) as well as Count Ten entitled "Conspiracy" (Exhibit A, ¶¶ 164-181) filled with details of the conspiracy must survive this motion to dismiss.

**B.    Conspiracies are secretive and may be proven by circumstantial evidence**

Defendants' motion must also be denied as conspiracies are by their very nature secretive, can rarely be proven by direct evidence, and often must be proven by circumstantial evidence. Brewster v. Nassau County 349 F. Supp.2d 540 (E.D.N.Y. 2004); Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); Rounseville v. Zahl, 13 F. 3d 625, 632 (2d Cir. 1994), *see, e.g.,* United States v. Rivera, 971 F.2d 876, 890 (2d Cir.1992); United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir.1992). In asserting a § 1983 claim, a Plaintiff is not required to list the place and the date of Defendants' meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action. (*quoting* Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005). Middleton v. The City of New York, 2006 WL 1720400 (E.D.N.Y.)

Pleadings which have some allegations "upon information and belief," such as in General Electric Co., as well as the instant matter, will survive a motion to dismiss. General Electric Co. v. Bucyrus-Erie Company, 563 F. Supp. 970 (1983). In General Electric Co., the court approved

14

of the plaintiff's explanation for the need to plead certain allegations upon information and belief. The court said that proof of illegal conspiracy is ordinarily not readily available in public documents, or admitted at meetings where adverse interests are also represented. Id at 975. Also, discovery may well be needed to unearth it. Id. And, even at the trial stage, the court noted, proof of conspiracy often requires the drawing of inferences. Id. Accordingly, the court held that they "do not think it unreasonable that allegations in a complaint would rest upon them." Id at 975. Moreover, allegations of conspiracy by multiple Defendants to have the Plaintiff arrested, and maliciously prosecuted, of which some were based upon information belief was enough to survive a motion to dismiss. Fincher v. County of Westchester 979 F.Supp. 989 (S.D.N.Y.1997).

In Middleton, the Plaintiff merely alleged a conspiracy based "upon information and belief" due to some friendship relationship among the defendant "and/or some other unknown" relationship. Id. Undoubtedly, that case is distinguishable with the instant matter.

## C. The Complaint Complies with Fed. R. Civ. P. 8(a)(2) showing that the Plaintiff is entitled to relief

Defendants assert that the complaint fails to meet the pleading standard set forth in Fed. R. Civ. P 8(a) requiring a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See generally Swierkiewicz v. Sorema, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The particular deficiency, Defendants contend, is that Plaintiff's allegations are unsupported by facts. After a reading of Plaintiff's 38-page second amended verified complaint, it is clear that this position is simply untrue. (See Exhibit A).

The simplified pleading standard of Fed.R.Civ.P. Rule 8(a) applies to all civil actions, with limited exceptions. Thus, complaints in these cases, as in most others, must satisfy only the

minimal requirements of Rule 8(a).[1] The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.

Defendants contend that a complaint must contain factual support for its allegations to survive a motion to dismiss and that to state a civil rights claim pursuant to section 1983 in the Second Circuit, "a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights...." *See* Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987). Yet defendants overlook that the notice pleading system relies "on the liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *See* id. *at* 512, 122 S.Ct. 992 (*citing* Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

The Second Circuit in Phelps v. Kapnolas, elaborated on the contours of the pleading standard in section 1983 actions as follows: However unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able prove an alleged fact..., the court may not go beyond Fed.R.Civ.P. 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference. Whether the plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment. Of course, none of this is to say that a court

---

[1] Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard. Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and Rule 8(f) provides *514 that "[a]ll pleadings shall be so construed as to do substantial justice." Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

16

should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law. Phelps v. Kapnolas, 308 F.3d 180, 186 (2d Cir.2002).

The law is straightforward:  Plaintiff need not plead facts to support his allegations of constitutional violations beyond the requirements of Rule 8(a). *See* Swierkiewicz, 534 U.S. at 512, 122 S.Ct. 992; Phelps, 308 F.3d at 186-87; *see also* Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) (Dismissing a complaint pursuant to Rule 8 is a serious sanction "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

As the Supreme Court has recently had occasion to remind us, a complaint adequately states a claim when it contains "'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 995, 152 L.Ed.2d 1 (2002) (quoting FRCP 8(a)(2)); *see also* Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim," Swierkiewicz, 122 S.Ct. at 999, and which "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 998. Thus, a complaint is sufficient if it gives "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (*quoting* Conley, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Plaintiff in this action unquestionably provides a complaint that meets the standard of a short and plain statement of the alleged constitutional violations; therefore, Defendants' motion to dismiss must be dened.

D.        **Defendants are not one entity**

Defendants' argument that dismissal is warranted because City employees cannot conspire among themselves is self-serving and inapposite.

While certainly the City of New York has a variety of branches which together are duly considered one entity, the case here involves the New York City Police Department, the New York County District Attorneys Office, the Secret Service of the Federal Government, and the Hudson River Park Trust – undeniably more than one entity. The Secret Service, as part of the Federal Government, clearly does not constitute "City Employees."

Furthermore, Defendants fail to give fact-specific precedent which applies this so-called "single entity rule" as between the New York City Police Department and the office of the New York County District Attorney. Defendants cite Jessamy v. City of New Rochelle and Herman v. Moore, even though in neither case is the District Attorney named as a Defendant, and in neither case was the "single entity rule" applied as between the Police Department and the District Attorneys Office, and certainly not a "single entity" with respect to the United States Secret Service and David Norcross, Chairman of the Committee on Arrangements for the 2004 Republican National Convention. Therefore, these cases are distinguishable from the case at bar and should have precedence here. (Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 514 (S.D.N.Y. 2003); Herman v. Moore, 576 F.2d 453, 459 (2d Cir. 1978).

Indeed, Plaintiff was unable to find any case in which the Second Circuit has ever applied the "single entity rule" as between the New York City Police Department and the New York County District Attorney.

The differences between the New York City Police Department and the office of the New York County District Attorney are numerous and substantial. For example, the Police

18

Commissioner, the head of the Police Department, is an appointed by the Mayor of New York City, whereas the District Attorney, the head of the County District Attorneys Office is elected by the People. The Police Commissioner may be removed from office by the Mayor or the Governor, whereas the District Attorney may be removed only by the Governor.

The Police Department is legally represented by Corporation Counsel, whereas the District Attorneys office is represented by the District Attorney. It is difficult to understand how Corporation Counsel, counselor for the New York Police Department, Mayor Bloomberg, and the Hudson River Park Trust argue that the Police Department and the District Attorneys Office are one in the same, when they do not represent all parties Corporation Counsel claim are the same entity. If the parties have retained separate counsel, clearly their interests and functions are separate enough in reality to be considered "two parties" under the theory of conspiracy. Moreover, the District Attorney's Office and ADA Concannon have submitted a separate motion to dismiss through their attorneys, not Corporation Counsel, and the acts of the New York County District Attorneys' Office are not even addressed in the instant motion. These entities are clearly separate and distinct from one another.

### III.    Discovery Will Unearth Additional Proof of the Conspiracy

Finally, even if Defendants had meet their burden, which they have not, and even if they correctly stated fact and applied law, which they did not, this Court would still be obliged to grant a continuance under Fed. R. Civ. P. 56(f) which allows Plaintiff to procure additional facts through discovery to rebut the instant motion.

"When a party ... reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 386 (2d Cir.2001).

Although specifically addressing motions for summary judgment, Federal Rule of Civil Procedure 56(f) nonetheless bears on other early dispositive motions and directs the Court to strongly consider giving the opposing party the necessary time to rebut. (*See* Commercial Cleaning Servs., L.L.C. at 386, in which the Court considered Rule 56(f) in considering a motion to dismissed the action for failure to state claim).

Indeed, [w]here nonmoving party is unable to demonstrate existence of genuine issue of material fact, but court is nevertheless satisfied that triable issue may be presentable upon further discovery, court may order continuance according to Federal Rules of Civil Procedure. Rivera v. Nat'l R.R. Passenger Corp., 152 F.R.D. 479, 484 (S.D.N.Y.1993).

In light of the fact that discovery has not even begun in this matter, if the Court desires further specific facts to be set forth as to the conspiracy claim, it should give the Plaintiff his deserved opportunity to investigate through discovery, not bar Plaintiff from moving forward at this early stage in the proceeding with their good-faith claim, a claim which is *per se* inherently secretive. Id.

The Second Circuit, in their consideration of a summary judgment motion, "has a well-established four-step requirement that a nonmovant must satisfy in order to gain additional discovery under Rule 56(f): [A] party resisting ... judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably

expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Am. Home Assurance Co. v. ZIM JAMAICA, 418 F.Supp.2d 537, 544 (S.D.N.Y.2006)(internal citations omitted).

While this is not a motion for summary judgment, Plaintiff argues under the same provisions that the attached *Declaration of Gina M. Bonica, Esq.* puts forth the requirements so that the Court can, in the alternative to denying Defendants motion outright, give leave for discovery and reserve its decision to be made a later time. (See annexed hereto as Exhibit D is the Declaration of Gina M. Bonica, Esq.).

Through discovery, Plaintiff would depose ADA Concannon and her supervisor at the time to testify as to the chain of custody of the tape and who specifically gave the District Attorney's office the edited tape. In addition, in discovery, Plaintiff would also depose PO GOMEZ to determine why she submitted a sworn statement that the Plaintiff committed certain offenses for which he was arrested, only to have the unedited tape reveal that not only was she absent from the tape, but that actions she swore to did not, in actuality, occur. Discovery will also reveal, who from the NYPD edited that tape and determine from where this person obtained their authority to edit the tape. In addition, Plaintiff will also determine the identity of the officer who directed the Plaintiff to the area where he was unlawfully arrested as well as further details regarding the meetings between the NYPD, the Mayor's Office, the Federal Government and the Republican National Committee in which the plan to use unlawful arrest policies and practices were created. (See annexed hereto as Exhibit D is the Declaration of Gina M. Bonica, Esq.).

As to the requirements that the affirmation put forth the efforts made to obtain such facts through depositions and discovery, and why the affiant has been unsuccessful up until this point, these issues need not be addressed as discovery has not yet begun in this case. (See annexed

21

hereto as Exhibit E is a copy of the stipulation staying discovery until a decision on the instant motion is made by the Court).

It should further be considered that the Courts have a preference for deposition testimony. In American Home Assurance, the Court stated that "summary judgment was particularly inappropriate because [certain witnesses] had not yet been deposed, and that deposition testimony is generally more reliable than statements made by affidavit, thereby implying that their depositions would be beneficial in assessing plaintiff's proof." Am. Home Assurance Co. v. ZIM JAMAICA, 418 F.Supp.2d 537, 549 (S.D.N.Y.2006)

There are new facts regarding the unlawful acts of the Defendants during the RNC that come to light on a continuous basis and clearly, even without discovery Plaintiff has alleged sufficient facts such that Defendants' Motion must be denied.

Thus, in light of the above argument, in combination with the *Affirmation of Gina M. Bonica, Esq.*, Plaintiff requests that this Court, in the alternative of an outright denial of Defendants' motion, reserve its decision and allow Plaintiff to move forward in discovery to continue with fact-finding in this matter.

## CONCLUSION

In conclusion, Plaintiff respectfully requests that this Court deny the instant motion outright as Plaintiff have failed to meet its burden of proof to sustain a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), Defendants have misapplied the law and misstated the facts in that Plaintiffs has pled its conspiracy charge with sufficiency, Plaintiff's complaint sets out a short and plain statement of the claim in compliance with Fed. R. Civ. P. 8(a)(2), Defendants are not one entity but are separate and distinct offices; and Plaintiff's complaint does allege triable issues

of fact, and, in the alternative Plaintiffs are entitled to a continuance under Fed. R. Civ. P 56(f) to allow Plaintiff to procure additional facts through discovery to rebut the motion.

Dated:    May 21, 2007
          New York, New York

                              Respectfully Submitted,

                              KURLAND & ASSOCIATES, P.C.

                              Gina M. Bonica, Esq. (GB-6615)
                              304 Park Avenue South, Suite 206
                              New York, NY 10010
                              212.253.6911(P)
                              212.614.2532 (F)
                              *Attorneys for Plaintiff*

TO:    James Mirro, Esq.
       Special Assistant Corporation Counsel
       *Attorney for Defendants*

       Michael Morgan, Esq.
       Assistant District Attorney
       *Attorneys for Defendants*

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

ALEXANDER DUNLOP,

                Plaintiff,

                                  06-CV-433 (KMK) (JCF)

                                  **SUMMONS**

        -against-

THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department, ,
NEW YORK COUNTY DISTRICT ATTORNEY
ROBERT MORGENTHAU; ASSISTANT
DISTRICT ATTORNEY WILLA CONCANNON,
POLICE OFFICER MAYA GOMEZ, shield number
27230, POLICE OFFICER JOHN DOE's 1-3,
JOHN ROE, Technician, New York County District
Attorney's Office, and the HUDSON RIVER PARK
TRUST, in their individual and official
capacities, jointly and severally,

                          Defendants

------------------------------------------------x

**TO THE ABOVE NAMED DEFENDANTS:**

       You are hereby summoned and required to serve upon Kurland & Associates,

P.C., attorney's for Plaintiff, **ALEXANDER DUNLOP**, whose address is 304 Park

Avenue South, Suite 206, New York, New York 10010, an answer to the complaint

RECEIVED
JAN 16 2007
U.S.D.C. S.D. N.Y.
CASHIERS

which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

J. MICHAEL McMAHON

By *Tomos Quintero*

Clerk of Court

Dated: *January 16, 2007*

(This summons is issued pursuant to Rule 4 of the Federal Rules of Civil Procedure.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALEXANDER DUNLOP,

                          Plaintiff,

                                                06-CV-433 (KMK) (JCF)

                                                **SECOND AMENDED**
            -against-                           **COMPLAINT**


THE CITY OF NEW YORK, a municipal entity
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND KELLY, Police
Commissioner of the City of New York, JOSEPH
ESPOSITO, Chief of the Department, New York
City Police Department, THOMAS GRAHAM ,
Commanding Officer of the Disorder Control Unit
of the New York City Police Department, JOHN J.
COLGAN, Deputy Chief and Commanding Officer,
Pier 57, New York City Police Department, ,
NEW YORK COUNTY DISTRICT ATTORNEY
ROBERT MORGENTHAU, ASSISTANT
DISTRICT ATTORNEY WILLA CONCANNON,
POLICE OFFICER MAYA GOMEZ, shield number
27230, POLICE OFFICER JOHN DOE's 1-3,
JOHN ROE, Technician, New York County District
Attorney's Office, and the HUDSON RIVER PARK
TRUST, in their individual and official
capacities, jointly and severally,

                          Defendants

-------------------------------------------------------------x


          Plaintiff, ALEXANDER DUNLOP, by his attorney, Gina M. Bonica, of Kurland

& Associates, P.C., having offices at 304 Park Avenue South, Suite 206, New York, New York,

10010, complaining of Defendants, alleges as follows:

## NATURE OF ACTION

Plaintiff brings this action against Defendants, THE CITY OF NEW YORK, a municipal entity MICHAEL BLOOMBERG, Mayor of the City of New York, RAYMOND KELLY, Police Commissioner of the City of New York, JOSEPH ESPOSITO, Chief of the Department, New York City Police Department, THOMAS GRAHAM , Commanding Officer of the Disorder Control Unit of the New York City Police Department, JOHN J. COLGAN, Deputy Chief and Commanding Officer, Pier 57, New York City Police Department, NEW YORK DISTRICT ATTORNEY ROBERT MORGENTHAU, ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON, POLICE OFFICER MAYA GOMEZ, shield number 27230,  POLICE OFFICER JOHN DOE's 1-3, JOHN ROE, Technician, New York County District Attorney's Office, and the HUDSON RIVER PARK TRUST, (hereinafter, "Defendants") for malicious prosecution, assault and battery, false arrest, false imprisonment,  negligent infliction of emotional distress, intentional infliction of emotional distress, conspiracy, and violations of civil rights under 42 USC § 1983.

## PRELIMINARY STATEMENT

1.  This is a civil rights action in which the Plaintiff, ALEXANDER DUNLOP, (hereinafter "Mr. Dunlop") seeks relief for various violations, including, negligence, false arrest and excessive force, malicious prosecution, and, as to claims for (1) excessively and unreasonably prolonged, unnecessary and punitive detention, (2) excessive, unnecessary and punitive conditions of confinement that were shocking to the conscience and inflicted on Mr. Dunlop (3) subjection to an unlawful arrest without probable so as to arrest Mr. Dunlop at or in the vicinity of demonstrations before and during the Republican National

2

Convention ("the RNC" or "the relevant period"), on Defendants' violation, under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2. Defendants in this action, THE CITY OF NEW YORK, a municipal entity, MICHAEL BLOOMBERG, Mayor of the City of New York, RAYMOND KELLY, New York City Police Commissioner; JOSEPH ESPOSITO, Chief of the New York Police Department; THOMAS GRAHAM , Commanding Officer of the Disorder Control Unit of the New York City Police Department, JOHN J. COLGAN, Deputy Chief, New York City Police Department; GOMEZ, Shield number 27230, New York City Police Officers JOHN DOES, MORGANTHAU, ADA CONCANNON, and JOHN ROES acting individually and in their official capacities, jointly and severally, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs that caused Mr. Dunlop to be arbitrarily arrested for being in the vicinity of a protest during the RNC by arresting Mr. Dunlop without probable cause, for instituting a system of preventive detention to punish Mr. Dunlop, a lawful peaceful citizen for being on the street with a bicycle in or around the RNC, and subjecting Mr. Dunlop to intolerable and cruel and inhumane conditions, including denying him access to legal counsel for an inordinate and unreasonable amount of time, conspiring against him to manufacture and create false evidence to be used against him and others.

3. Defendants CITY OF NEW YORK, OFFICER GOMEZ, OFFICER JOHN DOE's 1-3, DISTRICT ATTORNEY MORGANTHAU, ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON and JOHN ROES conspired to manufacture and fabricate false

evidence that was to be submitted against Mr. Dunlop, so as to deprive Mr. Dunlop of his constitutional rights and to falsely arrest and maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed.

## JURISDICTION AND CONDITIONS PRECEDENT

4. Pursuant to an Order by the Honorable Judge Kenneth M. Karas, dated October 3, 2006 jurisdiction is proper under 28 U.S.C. § 1367.

5. The Plaintiff, Mr. Dunlop has satisfied the jurisdictional requirement of timely filing and serving a Notice of Claim to all necessary DEFENDANTS pursuant to New York Gen. Mun. Law § 50. At least thirty days has elapsed since the service of such Notice of Claim and that the Defendants have failed, neglected, or refused to settle these claims.

6. Mr. Dunlop gave testimony at a 50(h) hearing at the request of the City of New York on or about April 5, 2005.

7. This action has been commenced within one year and 90 days after the cause of action arose.

## JURY DEMAND

8. Mr. Dunlop demands a trial by jury in this action on each and every one of his damage claims.

## PARTIES

9. At all times relevant herein, Mr. Dunlop is and was a New York County resident.

10. Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department

4

which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force, a corrections department and the employment of police officers and corrections officers.

11. Defendant MICHAEL BLOOMBERG ("BLOOMBERG") is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and the Department of Corrections ("Corrections") and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

12. Defendant RAYMOND KELLY ("KELLY")is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

13. Defendant JOSEPH ESPOSITO ("ESPOSITO") is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

14. Defendant THOMAS GRAHAM ("GRAHAM") was at all times relevant herein, the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and

in his official capacity.

15. Defendant JOHN J. COLGAN, ("COLGAN") at all times relevant herein, a Deputy Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

16. Defendant, POLICE OFFICER MAYA GOMEZ, Shield number 27230 ("OFFICER GOMEZ" or "GOMEZ") and POLICE OFFICERS JOHN DOES ("OFFICER DOES" or "DOES") are NYPD Police Officers involved in the arrest of Mr. Dunlop and all of the actions and conduct associated therewith, including, *inter alia*, the use of force, the preferring of charges, the approval of charges, the prosecution of Mr. Dunlop, the abuse of criminal process, the falsification of evidence, conspiracy, the cruel and inhumane conditions to which Mr. Dunlop was subjected, the excessive and unnecessary detention, and the implementation of the challenged policies and practices in question herein. They are sued individually and in their official capacities.

17. Defendants BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN, OFFICER GOMEZ, and DOE's are employees and/or agents of the CITY OF NEW YORK. They include the individuals who directed and/or authorized the use of unreasonable and excessive force, unreasonable arrests, and detentions and/or who actually arrested Mr. Dunlop, without probable cause, and who implemented the policies, practices, and procedures and who conspired to unreasonably detain Mr. Dunlop and others who were in the vicinity of the protests of the RNC.

18. Defendant, DISTRICT ATTORNEY ROBERT MORGANTHAU ("MORGANTHAU")

at all times relevant herein, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs related to the investigation and prosecution and conspiracy complained of herein. He and his office have the responsibility and authority to investigate and prosecute crimes in New York County. He is sued in both his individual and official capacities.

19. ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON ("ADA CONCANNON") was at all times relevant herein, an employee of the City of New York charged with the duty of prosecuting cases on behalf of MORGANTHAU and the New York County District Attorney's Office ("DA's Office") in compliance with the laws of the State of New York and City of New York, and is responsible, in whole and/or in part for the creation, implementation, and promulgation of knowingly false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights and to maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed.

20. Defendant, HUDSON RIVER PARK TRUST, is a joint New York State and New York City organization whose mission is to design, build, and operate a five-mile park from Battery Park to 59th Street and is and at all times herein the owner of Chelsea Piers.

21. That upon information and belief, at all times herein, Defendants caused Mr. Dunlop damages in New York County, New York State.

22. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO, COLGAN, GRAHAM, GOMEZ, and DOE's, have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, Defendants have acted for and on behalf of the City and/or the NYPD with the

7

power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD.

23. At all times relevant herein, Defendants BLOOMBERG, KELLY, ESPOSITO, COLGAN, GOMEZ, and DOE's have violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, and the Fourteenth Amendments of which a reasonable police officer and/or public official under their respective circumstances would have known.

24. The cause of action and injuries claimed herein arises out of Defendants' actions in this state.

25. That upon information and belief, on or about the August 27, 2004, Mr. Dunlop was unlawfully arrested and falsely imprisoned by an intentional and nonconsensual confinement, not otherwise privileged, of which Mr. Dunlop was aware and was maliciously prosecuted by the Defendants, thereby causing Mr. Dunlop's damages.


## FACTUAL BACKGROUND

26. On or about August 27, 2004, around 8:30 P.M., Mr. Dunlop left his home on Eighth Street, New York, NY to go to a nearby restaurant to pick up food for dinner.

27. Upon information and belief Mr. Dunlop took his bicycle.

28. Upon information and belief, around 8:45 pm, Mr. Dunlop arrived at Second Avenue and observed people milling about and numerous members of the New York City Police Department (hereinafter, "NYPD"), some who were wearing helmets and/or holding their

batons in their hands extended out or in front of them.

29. Mr. Dunlop also observed the NYPD searching, handcuffing and arresting those who appeared to be walking on the street or riding their bikes.

30. Mr. Dunlop, unsure why the police were arresting, and having no involvement whatsoever with any protest or demonstration began to grow concerned and attempted to leave the area and find an alternative route to the restaurant.

31. Mr. Dunlop observed a police barricade that had formed on Ninth Street. He therefore, got off his bike and walked it across the street heading toward the intersection of Tenth Street on Second Avenue and approached a line of police officers to ask them what was happening and how he might leave the scene.

32. Upon information and belief, the officers responded that they were unsure of what was transpiring, as they had just arrived on the scene. Mr. Dunlop turned to ask another officer whose name and shield he did not obtain, ("Officer John Doe 1"), for instructions on exiting the area. OFFICER JOHN DOE 1 instructed Mr. Dunlop to head in a southerly direction along Second Avenue toward the blockade he had already observed.

33. Mr. Dunlop walked his bicycle in that direction toward the blockade. When he arrived there OFFICER JOHN DOE 1 approached Mr. Dunlop. Upon information and belief, Mr. Dunlop again asked OFFICER JOHN DOE 1 how to leave. OFFICER JOHN DOE 1 gripped Mr. Dunlop by the arm and told Mr. Dunlop that he was under arrest. Upon information and belief, OFFICER JOHN DOE 1 stated, "I just told you to go in this direction so I could arrest you."

34. Mr. Dunlop observed another person being violently thrown to the ground by multiple police officers.

35. Upon information and belief, at no time did Mr. Dunlop prevent any cars from traveling on the street or prevent pedestrians from passing by on the sidewalk or on the street.

36. Upon information and belief, at no time did Mr. Dunlop chant, march, yell, or otherwise fail to obey a lawful order or direction given to him by the NYPD.

37. Upon information and belief, Mr. Dunlop is not a member of "CRITICAL MASS" or any other group of protest, nor did he wear or display any paraphernalia of "CRITICAL MASS" or any protest group, nor was Mr. Dunlop a part of the protest on August 27, 2004.

38. After being told that he was under arrest, several officers in riot gear rushed at Mr. Dunlop and grabbed him by the neck and pushed in downward direction as his arms were grabbed and twisted behind him in a manner exercising excessive force causing Mr. Dunlop substantial pain.

39. Upon information and belief, at no time did Mr. Dunlop resist arrest despite the fact that he had not committed any unlawful acts.

40. As he was placed in white plastic handcuffs, (hereinafter, "flexi cuffs"), one member of the NYPD stated, "I bet you have never worn these before." Upon information and belief, this officer appeared to be clearly pleased to be putting Mr. Dunlop in pain and distress.

41. All attempts to talk to members of the NYPD to ascertain the reason for arrest was ignored. At various times, Mr. Dunlop was subjected to snide, inappropriate and crude remarks by the NYPD.

42. Mr. Dunlop's bicycle was taken from him and thrown in a pile of bicycles that was in the center of Second Avenue and Tenth Street.

43. Upon information and belief, Mr. Dunlop then observed another member of the NYPD,

("OFFICER JOHN DOE 2"), state to a female officer whose name, shield and command he later learned to be OFFICER GOMEZ, who at that time was assigned to the Patrol Borough of Manhattan North Task Force, say, "This is your arrest."

44. OFFICER GOMEZ is listed as the arresting officer on all applicable paperwork in this matter.

45. When OFFICER GOMEZ was pointed out to Mr. Dunlop, he observed OFFICER GOMEZ watching a group of individuals already under arrest, nowhere in the vicinity of the place Mr. Dunlop was actually placed under arrest.

46. Mr. Dunlop was then taken in flexi cuffs to a police vehicle and placed inside in excess of one and a half hours in the heat without water. The entire time the windows and doors remained closed and there was no air flow inside. Mr. Dunlop began to sweat profusely and he began to feel feverish and clammy.

47. While waiting for other arrestees to be placed in the police vehicle, the flexi cuffs began to cut into his skin. Mr. Dunlop then asked the NYPD driver, ("OFFICER JOHN DOE 3") to loosen his flexi cuffs. Upon information and belief, OFFICER JOHN DOE 3 instead tightened the cuffs even more, causing more pain, discomfort, and visible lacerations to both wrists.

48. Upon information and belief, OFFICER JOHN DOE 3 stated that he had tightened the cuffs "Because you might try to attack me." As a result of the actions of OFFICER JOHN DOE 3, Mr. Dunlop's wrists began to bleed and swell.

49. Upon information and belief, during the RNC, Defendants including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM and COLGAN, implemented a policy, practice or custom of detaining those arrested on

August 27, 2004 in the vicinity of the RNC protest, without justification, for an unnecessary and prolonged period of time in unhealthy and dangerous conditions. In particular, Defendants implemented arrest procedures which were intended to and did in fact unreasonably prolong and extend the period of time that Mr. Dunlop was held in custody following his unlawful arrest. These included, *inter alia*, the use of Pier 57 as an intermediate holding facility fingerprinting of all those arrested, including Mr. Dunlop who was charged with minor offenses for which fingerprinting is unnecessary, and was implemented so as to unnecessarily and unreasonably extend and prolong the period of time that Mr. Dunlop was held in custody.

50. Upon information and belief, instead of using existing resources, such as Old Central Booking, Central Booking or the numerous precincts throughout the City as the reception point for Mr. Dunlop and others arrested during the relevant period – including the at least twenty (20) precincts in Manhattan, all of which were capable of adequately processing arrestees – Defendants deliberately devised a plan that was intended to unreasonably lengthen the stay in custody of anyone arrested during the RNC, including Mr. Dunlop, and to make the terms of confinement as difficult, intimidating and unsafe as they thought possible.

51. Mr. Dunlop was then taken in the police vehicle to a holding facility at the Chelsea Piers and placed in a makeshift cell with approximately one hundred other individuals. Once inside, Mr. Dunlop observed multiple holding cells inside Pier 57 constructed with chain-link fence topped with razor wire. The cell that Mr. Dunlop was placed in had two sections, one in which he was kept, and another buffer zone, which contained a portable toilet. Upon arrival at Pier 57, Mr. Dunlop was searched, had his property confiscated,

and was placed in one of the holding cells.

52. Upon information and belief, according to published reports, of which Defendants knew or should have known, numerous environmental inspections of Pier 57 in 2001 and early 2004 uncovered safety and health hazards including easily disturbed asbestos particles, lack of adequate fire protection systems, and floors covered with black oily soot.

53. Upon information and belief, there was a chemical-like smell that emanated throughout the facility that caused Mr. Dunlop to feel ill during his detention.

54. Upon information and belief, there was inadequate seating to accommodate all the people in the cell and therefore, Mr. Dunlop stood for hours through the night to avoid sitting on the dirty and grease covered floor. There were no beds or cots, no blankets and no pillows in the cell, making it impossible for Mr. Dunlop to sleep or even lie down.

55. Upon information and belief, Mr. Dunlop observed individuals in pain who were not given medical attention.

56. Mr. Dunlop began to feel ill as his clothes had been drenched in sweat while in the police vehicle. This was compounded as Chelsea Piers was damp and cold causing Mr. Dunlop to develop a cough and fever like conditions.

57. During his entire stay at Pier 57, Mr. Dunlop was only given one box of cereal to eat with his hands which had become soiled from the grease and dirt at Chelsea Piers.

58. Upon information and belief, Mr. Dunlop was unable to ascertain from the NYPD or Corrections what was happening or why he had been arrested. Mr. Dunlop asked a member of the NYPD, at Chelsea Piers "What is happening?" to which the Officer responded, "You have the right to shut the fuck up, I suggest you exercise that right."

59. Mr. Dunlop remained at Chelsea Piers until the next morning when he was transferred to

100 Centre Street, New York, NY in a New York City Department of Corrections Bus.

60. Upon arriving at 100 Centre Street, Mr. Dunlop was again searched, fingerprinted, and placed in another cell at 100 Centre Street. Mr. Dunlop attempted to talk to various members of the NYPD and Corrections to ascertain his status and when he would be able to see a lawyer to which he was told that he was a "whiney kid."

61. At all times Mr. Dunlop was aware of his confinement and did not consent to being arrested or confined.

62. On August 28, 2004, Mr. Dunlop was not brought to arraignment part until after 6:30 in the evening, where he was finally permitted to meet with a lawyer.

63. Despite the fact that there was no probable cause to arrest Mr. Dunlop, he was charged and prosecuted under New York City docket 2004NY063485 by the DA's Office for Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, Parading Without a Permit, and Resisting Arrest.

64. The supporting deposition of the arresting officer, OFFICER GOMEZ charges in sum and substance that Mr. Dunlop obstructed traffic by riding his bicycle across all lanes of traffic and refused a lawful order and struggled with her when Mr. Dunlop resisted arrest.

65. The Defendants including but limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, COLGAN and GRAHAM acting at the behest and in concert with the RNC conspired with the RNC to violate the constitutional rights of those in or around the RNC protests by designing and implementing a plan to arrest those in the vicinity of the RNC protest, those who were peacefully protesting or those who appeared to protest the policies of the Republican National Party, in violation of their constitutional rights.

66. Upon information and belief, this plan included but was not limited to removing

14

individuals from the street who were lawfully participating in, observing or in the area of the RNC protest in violation of their constitutional rights and upon such information and belief the plan was to take the protest and negative publicity surrounding the protest and the Republican National Party out of the public eye.

67. The Defendants, including but limited to the CITY OF NEW YORK videotaped the activities in or around the RNC protests.

68. Upon information and belief in or around the fall of 2004, the Defendants including but not limited to MORGANTHAU, ADA CONCANNON, JOHN ROE TECHNICIANS, OFFICER DOE, acting at the behest and in concert with the each other intentionally removed evidentiary images of Mr. Dunlop behaving peacefully, not blocking traffic, not resisting arrest, not parading without a permit and not in violation of any law. The removal of these images was part of a plan and conspiracy by DA's Office the NYPD, the Defendants including but not limited to MORGANTHAU, ADA CONCANNON, and JOHN ROE TECHNICIANS to alter, fabricate, and manufacture knowingly false evidence to be used against Mr. Dunlop in violation of Mr. Dunlop's constitutional rights.

69. Upon information and belief, this plan was orchestrated, and carried out by NYPD Technical Assistance and Response Unit (TARO), the DA's Office, and/or the Defendants, including but limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and ROES willfully altered and/or tampered with evidence, and conspired to alter and/or tamper with evidence.

70. The actions of NYPD Technical Assistance and Response Unit (TARO), DA's Office and/or the Defendants, the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and ROES are, at best, relating to the organization, evaluation, and

marshalling of evidence, which is an activity of police nature, and is therefore not entitled to absolute protection.

71. ADA CONCANNON, assigned to prosecute Mr. Dunlop's case under the supervision of Defendant, MORGENTHAU, produced a VHS video tape that was taped by the NYPD and was to be submitted as evidence of Mr. Dunlop's alleged unlawful conduct, (hereinafter, "First Video Tape"), knowing that it was an altered and manufactured piece of evidence used to maliciously prosecute Mr. Dunlop, and deprive him of his constitutional rights.

72. Defendant, including but limited to ADA CONCANNON in her capacity as an Assistant District Attorney for New York County, in furtherance of the conspiracy, with an intent to maliciously prosecute and deprive Mr. Dunlop of his constitutional rights, knowingly made false representations in court that the First Video Tape was a complete and unedited version of the events that transpired immediately preceding and including Mr. Dunlop's arrest.

73. Upon information and belief, although OFFICER GOMEZ never observed Mr. Dunlop until after being apprehended and cuffed by OFFICER JOHN DOE, OFFICER GOMEZ in her corroborating affidavit submitted in connection with this prosecution stated that she had personally observed Mr. Dunlop committing the above offenses and that he had "flailed" his arms to resist being arrested.

74. The actions of NYPD Technical Assistance and Response Unit (TARO), and/or the CITY OF NEW YORK, MORGANTHAU, his employees including but not limited to ADA CONCANNON, and ROES are a misuse of investigative techniques and privileges.

75. The actions of NYPD Technical Assistance and Response Unit (TARU), and/or the CITY

OF NEW YORK, MORGANTHAU, his employees including but not limited to ADA CONCANNON, and ROES are in bad faith.

76. Months into the case, a second videotape, (hereinafter, "Second Video Tape") also recorded by the NYPD and submitted by MORGANTHAU as evidence in a different criminal case, when compared with the First Video Tape to be submitted as evidence in Mr. Dunlop's case, upon information and belief, revealed that they were shot from the identical NYPD video camera. When run simultaneously side-by-side it is revealed that the First Video Tape had been edited in two places, in both cases removing images showing Mr. Dunlop behaving peacefully, not obstructing traffic, not parading nor attempting to avoid arrest.

77. Also cut from the First Video Tape was footage of Officer John Doe, the actual officer who placed Mr. Dunlop under arrest. In the Second Video Tape, Officer Gomez is nowhere to be seen.

78. Upon revelation in court of the Second Video Tape, MORGANTHAU was forced to drop all criminal charges against Mr. Dunlop and upon information and belief, later admitted that a technician in the DA's Office ("JOHN ROE") whose name and identity was not provided to Mr. Dunlop, had cut the material.

79. Upon information and belief, Barbara Thompson, a spokeswoman for the DA's Office stated on at least on occasion in or around April of 2005 that the tape had been cut by the DA's office.

80. The Defendants, including but not limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and JOHN ROEs acted in concert with the NYPD to cut the tapes and conspire against Mr. Dunlop to fabricate false evidence

against Mr. Dunlop.

81. As a result of the Defendant's CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and JOHN ROEs illegal acts, Mr. Dunlop was unlawfully arrested and held against his will and sustained bodily and emotional injury as a result. Mr. Dunlop is now afraid to approach the NYPD or other official officers if he were to be in need of assistance.

82. Defendants, including but not limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and JOHN ROEs deprived Mr. Dunlop of his freedom intentionally, subjected him to deplorable conditions, maliciously prosecuted and otherwise injured Mr. Dunlop.

83. Mr. Dunlop was subjected to unreasonable, unnecessary and punitive conditions of confineement in violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York. These conditions included, but were not limited to, the following: 1) false arrest and imprisonment; 2) excessively tight handcuffs applied for excessive periods of time without cause; 3) unreasonable overcrowding; 4) inadequate facilities for sleeping and sitting, causing Mr. Dunlop to come into intimate contact with toxic chemicals and other noxious substances; 5) deliberately indifferent denial of access to necessary medication and medical attention when suffering from medical conditions and illness; 6) deliberately indifferent exposure to dangerous chemicals in the air and on the walls and floor of "Pier 57," including asbestos, chlorinated hydrocarbons, benzene and others, some of which are carcinogenic, mutagenic, teratogenic, and hepatogenic and which cause many other diseases and conditions and have caused fear of contracting cancer and other unknown

diseases at some time in the future; 7) notwithstanding the extensive levels of toxic chemicals and dirt, among other things, the deliberately indifferent refusal to provide adequate sanitation; 8) the deliberately indifferent denial, in many instances of adequate food, often due to the incredibly unsanitary conditions, and of water; and 9) refusal of access to counsel for many hours.

84. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO GRAHAM , conspired with the Republican National Party to create a policy of arresting without probable cause, individuals who were in the vicinity of those engaging in lawful and peaceful expressions of their First Amendment rights in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York.

### AS FOR THE FIRST CAUSE OF ACTION
### FALSE ARREST AND IMPRISONMENT

85. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "84" above with the same force and effect as if herein set forth.

86. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM , conspired with the Republican National Party implemented policies and procedures permitting the unlawful arrest of peaceful individuals, including Mr. Dunlop because they were in the vicinity of the RNC.

87. Dunlop was peacefully and lawfully in the area of the RNC at the time of his arrest and was not in violation of any applicable local, state or federal law.

88. That at no time did Dunlop intentionally obstruct, impair or pervert the administration of law or pervert a public servant from performing an official function, by interference, or

19

by means of any independent unlawful act.

89. Defendants arrested and confined Mr. Dunlop without probable cause to believe a crime was committed or without a warrant to do so.

90. At all times relevant herein, Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM acted with the intention of confining Dunlop within fixed boundaries, the acts directly or indirectly resulted in confinement, and Dunlop was conscious of the confinement.

91. Defendants, including but not limited to THE CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO and GRAHAM, imposed by force or threats unlawful restraint upon his freedom of movement, to wit by arresting him, twisting his arms, handcuffing and tightening said cuffs in a manner intended to cause Dunlop pain.

92. Dunlop was confined by the Defendants for almost twenty-four hours for an offense for which no probable cause existed.

93. All charges against Dunlop were dismissed as it was revealed that the Defendants had no probable cause to effectuate the arrest.

94. As a direct and proximate result of the conduct of Defendants, Dunlop suffered harm and damages including but not limited to the aforesaid damages.

95. The conduct occurred while the NYPD and Corrections, OFFICER GOMEZ, JOHN DOEs, and others were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and the NYPD. Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SECOND CAUSE OF ACTION
### ASSAULT

96. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "95" above with the same force and effect as if herein set forth.

97. Defendants, including but limited to the CITY OF NEW YORK, OFFICER GOMEZ and JOHN DOES intentionally created and caused Mr. Dunlop to be in fear of physical harm, by restricting his freedom of movement by arresting him unlawfully, placing handcuffs on him against his will, confining him unlawfully for no known or lawful purpose other than to create in Dunlop an apprehension of immediate physical harm.

98. Upon information and belief that the defendants, including but not limited to OFFICER GOMEZ, and JOHN DOES made physical contact with Mr. Dunlop, which included seizing him, handcuffing him which was not privileged, was nonconsensual and offensive and which constituted battery.

99. Defendants confined Mr. Dunlop in such a manner that caused him to become ill by placing him in a closed city vehicle for hours without water or ventilation, and further confining him.

100.    Any reasonable person would also become apprehensive in the face of Defendants' threatening conduct.

101.    The conduct of Defendants occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK. Thus Defendant CITY OF NEW YORK is liable to Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE THIRD CAUSE OF ACTION
### BATTERY

102.     Mr. Dunlop repeats and realleges and incorporates by reference the allegations in
paragraphs "1" to "101" above with the same force and effect as if herein set forth.

103.     Without the consent of Mr. Dunlop, the Defendants intentionally, harmfully, and
offensively touched Mr. Dunlop by handcuffing him, grabbed him by the neck and
pushed in a downward direction as his arms were grabbed and twisted behind him in a
manner exercising excessive force causing Mr. Dunlop substantial pain.

104.     The conduct of Defendants, including but limited to OFFICER GOMEZ, and
JOHN DOES, occurred while they were on duty and in uniform, in and during the course
and scope of their duties and functions as New York City police officers, and while they
were acting as agents and employees of Defendant CITY OF NEW YORK.  Thus
Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common
law doctrine of *respondeat superior*.

## AS FOR THE FOURTH CAUSE OF ACTION
### MALICIOUS PROSECUTION

105.     Mr. Dunlop repeats and realleges and incorporates by reference the allegations in
paragraphs "1" to "104" above with the same force and effect as if herein set forth.

106.     That upon information and belief, Defendants, including but not limited to the
CITY OF NEW YORK, MORGANTAHU and ADA CONCANNON improperly and
knowingly commenced a criminal process against Mr. Dunlop without probable cause.

107.     The prosecution, criminal charges, and hearings were instituted and procured by
the Defendants, including but not limited to the CITY OF NEW YORK, KELLY,

ESPOSITO, GRAHAM, COLGAN, OFFICER GOMEZ, MORGANTHAU, ADA CONCANNON, JOHN DOES and JOHN ROES which terminated when Defendant dismissed the charges. Defendants MORGANTHAU, ADA CONCANNON and other servants and employees of MORGANTHAU had actual malice in prosecuting Mr. Dunlop and as a result, Mr. Dunlop sustained injury.

108.    Mr. Dunlop was lawfully walking when he was arrested and later charged with several criminal offenses.

109.    OFFICER GOMEZ swore in the criminal complaint stating that she personally observed Mr. Dunlop committing the offenses charged.

110.    Defendants submitted evidence, namely the corroborating affidavit and Video Tape 1 that they knew or should have known was false in order to uphold the arrest and secure the prosecution of Mr. Dunlop.

111.    Upon information and belief, after the complete depiction of the events surfaced, as evidenced in the Second Tape, OFFICER GOMEZ was unable to recall or state with certainty any of the specifics of the complaint which were based on her supporting deposition, filed in connection with the arrest and proffering of charges against Mr. Dunlop.

112.    Upon reviewing Video Tape 2, Defendants the CITY OF NEW YORK, MORGANTHAU, and ADA CONCANNON were forced to drop all charges against Mr. Dunlop.

113.    As a result of Defendant's conduct, Mr. Dunlop was unlawfully confined and prosecuted. Mr. Dunlop sustained physical and emotional damages, to which the full extent is not known.

114. The conduct of Defendants occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK. The conduct of Defendants including but not limited to technician JOHN DOE occurred during the course and scope his or her duty and employment with the CITY OF NEW YORK and MORGANTHAU. The conduct of defendant ADA CONCANNON occurred during the course of her employment with the CITY OF NEW YORK and MORGANTHAU. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

115. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "114" above with the same force and effect as if herein set forth.

116. Defendants continually negligently inflicted emotional distress on Mr. Dunlop.

117. Defendants, including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, implemented policies, practices, or customs of detaining individuals arrested at or in the vicinity of the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy, and dangerous. Mr. Dunlop was subjected to these policies and practices for being in the vicinity of the RNC.

118. Defendant confined Mr. Dunlop for many hours in a cage that lacked adequate benches or other means whereby to adequately sit, rest and/or sleep, under conditions which were cold, loud and uncomfortable, due to the continuous use of large fans which ran at top speeds, which, given the presence of numerous toxic chemicals present at Pier 57, was

particularly inappropriate.

119. On information and belief, the floors of the cages in Pier 57 were covered with numerous highly toxic chemicals and substances. The floors of the cages in Pier 57 were also covered in other dirt and grime.

120. Mr. Dunlop was humiliated and embarrassed by NYPD personnel when he attempted to find out what was happening with his case and when he complained of the deplorable conditions.

121. Mr. Dunlop was taunted and verbally abused by NYPD personnel and Corrections personnel who cursed and otherwise mistreated Mr. Dunlop without justification.

122. On information and belief, at no time did the Defendants ever obtain a Certificate of Occupancy for Pier 57 which would have permitted the holding of human beings therein.

123. In addition, Mr. Dunlop was subjected to excessive and unnecessary handcuffing, including the continued handcuffing and tightening of handcuffs to the point of breaking the skin and even after he was lodged in the detention facility at Pier 57.

124. Defendants have a duty to perform their professional services in such manner as not to inflict emotional distress on Mr. Dunlop.

125. Defendants by the above reference acts violated that duty.

126. Mr. Dunlop never interfered with Defendants' obligations under the above described duties.

127. As a result of Defendant negligent conduct, Mr. Dunlop has suffered and will continue to suffer physical pain, anguish, severe emotional trauma, embarrassment and humiliation.

128. The conduct of Defendant police officers, GOMEZ and JOHN DOE'S, occurred while

25

they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendant CITY OF NEW YORK. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SIXTH CAUSE OF ACTION
### NEGLIGENCE

129. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "128" above with the same force and effect as if herein set forth.

130. Defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, COLGAN and GRAHAM's owed a duty to supervise and/or train the officers and to take steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing of the charges without probable cause.

131. Defendants, including but not limited to the CITY OF NEW YORK, OFFICER GOMEZ, JOHN DOES owed a duty to act according to the ordinary care of a police officer, to wit, to conduct a proper investigation, the failure of which was the proximate cause of Mr. Dunlop's injury.

132. Defendants, including but not limited to the CITY OF NEW YORK, KELLY, ESPOSITO, COLGAN and GRAHAM OFFICER GOMEZ, JOHN DOES breached that duty by failing to act as an ordinary Police Officer, Police Commissioner, and supervisor would act, to wit by failing to perform his duties and by failing adequately to control and to supervise his officers.

133. Defendants, including but not limited to the CITY OF NEW YORK, JOHN ROES,

ADA CONCANNON, and MORGANTHAU failed to intercede when the Video Tape 1 was altered and removed exculpatory evidence of Mr. Dunlop.

134. Defendant MORGENTHAU and ADA CONCANNON owed a duty to act according to the ordinary care of a District Attorney and an Assistant District Attorney, the failure of which was the proximate cause of Mr. Dunlop's injuries.

135. Defendant MORGANTHAU breached that duty by failing to act as an ordinary District Attorney by failing to adequately control and supervise technicians and employees, including but not limited to ADA CONCANNON and JOHN ROEs, who deleted exculpatory evidence from the First Video Tape

136. Defendant MORGANTHAU breached that duty by failing to act as an ordinary District Attorney by failing to adequately train Assistant District Attorneys to turn over *Brady* material.

137. Defendant ADA CONCANNON owed a duty to act according to the ordinary care of a District Attorney, the failure of which was the proximate cause of Mr. Dunlop's injuries.

138. As a result of those breaches, which were the proximate cause of Mr. Dunlop's injury, Mr. Dunlop suffered harm and damages.

139. The conduct of Defendant OFFICER GOMEZ and JOHN DOE'S, occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of Defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of respondeat superior.

140. The conduct of Defendants, including but not limited to MORGENTHAU, ADA

27

CONCANNON, and JOHN ROE occurred during the course and scope of their duties and functions as New York City agents and employees of Defendants CITY OF NEW YORK. Thus Defendant CITY OF NEW YORK is liable to Mr. Dunlop pursuant to the state common law doctrine of *respondeat superior*.

## AS FOR THE SEVENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C § 1983 ARREST

141. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "140" above with the same force and effect as if herein set forth.

142. At all times relevant herein, the conducts of all Defendants were subject to 42 U.S.C. § 1983.

143. Acting under the color of law, Defendants, worked a denial of Mr. Dunlop's rights, privileges or immunities secured by the United States Constitution or by Federal law to wit,

    (a) by depriving Mr. Dunlop of his liberty without due process of law, by taking him into custody and holding him there against his will,

    (b) by making an unreasonable search and seizure of his property without due process of law,

    (c) by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Mr. Dunlop equal protection of law,

    (d) by refusing or neglecting to prevent such deprivations and denials to Mr. Dunlop, thereby depriving Mr. Dunlop of his rights, privileges, and immunities as guaranteed by the Fourth Fifth and Fourteenth Amendments to the Constitution of the United States.

144. Defendants, including but not limited to BLOOMBERG, KELLY, ESPOSITO, GRAHAM, and COLGAN, are liable under the doctrine of *respondeat superior*

## AS FOR THE EIGHTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 DETENTION AND CONFINEMENT

145. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "144" above with the same force and effect as if herein set forth.

146. As a result of their concerted unlawful and malicious detention and confinement of Mr. Dunlop, Defendants deprived Mr. Dunlop of both his right to his liberty without due process of law and his right to equal protection of the laws, and due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the Unite States and 42 U.S.C. § 1983.

147. Defendants CITY OF NEW YORK, KELLY, ESPOSITO, GRAHAM, and COLGAN, are liable under the doctrine of *respondeat superior*.

## AS FOR THE NINTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C 1983 REFUSING OR NEGLECTING TO PREVENT

148. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1"to "146" above with the same force and effect as if herein set forth.

149. At all times relevant to this Complaint, Defendants OFFICER GOMEZ and JOHN DOES 1-3 were acting under the direction and control of Defendants including but not limited to the CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, GRAHAM, COLGAN.

150. Acting under color of law and pursuant to official policy or custom defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, COLGAN, knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendants OFFICER GOMEZ, and JOHN DOE'S 1-3 in their duties to refrain from:

(a) unlawfully and maliciously harassing Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

(b) unlawfully and maliciously arresting, imprisoning and prosecuting Mr. Dunlop who was acting in accordance with his constitutional and statutory rights, privileges and immunities,

(c) conspiring to violate the rights, privileges and immunities guaranteed to Mr. Dunlop by the Constitution and laws of the United States and the laws of the State of New York,

(d) otherwise depriving Mr. Dunlop of his constitutional and statutory rights, privileges, and immunities.

151. Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, COLGAN, had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants OFFICER GOMEZ and JOHN DOE'S had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

152. Defendants KELLY, ESPOSITO, GRAHAM, COLGAN, are liable under the doctrine

30

of *respondeat superior.*

153. As a direct and proximate cause of the negligent and intentional acts of Defendants set forth in paragraphs above, Mr. Dunlop suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

## AS FOR THE TENTH CAUSE OF ACTION
## VIOLATIONS OF 42 U.S.C. § 1983 FOR CONSPIRACY

154. Mr. Dunlop repeats and realleges and incorporates by reference the allegations in paragraphs "1" to "153" above with the same force and effect as if herein set forth.

155. All Defendants (a) had an objective to be accomplished; (b) had an agreement on the object or course of action; (c) preformed one or more unlawful overt acts; and (d) caused Mr. Dunlop damages that were a direct result of those acts.

156. In furtherance of their object, Defendants did two or more overt acts against Mr. Dunlop.

157. Those unlawful overt acts include, but are not limited to the following: Defendants advised and strategize, practices or customs of detaining the individuals arrested at the RNC, without justification, in conditions that were deliberately cruel, inhumane, unhealthy, dangerous, illegal and unconstitutional.

158. Just before and during the RNC, Defendants implemented this policy, practice or custom, in an arbitrary and capricious manner, and in the absence of the existence of probable cause, to arrest entire groups of people who were lawfully engaged in protected

31

First Amendment activity or were observing such activity, or were simply passing by at the time arrests were being made.

159. Upon information and belief, on August 27, 2004, the day that Mr. Dunlop was arrested, and at various times prior to that date, David Norcross, Chairman of the Committee on Arrangements for the 2004 Republican National Convention stated on more than one occasion that the CITY OF NEW YORK and the Republican National Committee had met and discussed security for the RNC for at leas a year prior to the convention.

160. Upon information and belief, on or before August 27, 2004, David Norcross had conversations with BLOOMBERG and other CITY OF NEW YORK officials regarding controlling the visibly negative publicity surrounding the RNC.

161. Upon information and belief, these conversations included but were not limited to the promulgation and implementation of a practice, tactic or strategy to keep visible signs of dissent and/or protest out of the public eye, out of the media, and off the streets of New York City.  This included but was not limited to mass arrests of those in the vicinity of the protest and those who were peacefully observing the protest, the intimidation factor of police officers in full riot gear, the use of horses to disperse bystanders, the arrest and confinement of those charged with minor offenses instead of issuing desk appearance tickets so as to minimize the visible effect of dissenters, confiscation of bicycles and other personal property as "evidence", routing bystanders and observers to areas where they would be arrested unlawfully, and falsely arresting large groups of people without probable cause and then falsely prosecute these individuals with altered evidence.

162. Defendants knew or should have known that Mr. Dunlop was held for many hours in a holding cell that lacked adequate means whereby to adequately sit, rest and/or sleep, under inhumane conditions.

163. Defendants knew that their arrest policy surrounding the RNC was a refinement of the tactic employed recently by Defendants at other demonstrations which had recently taken place in the City, including, *inter alia*, the February 15, 2003 anti-war march, *see Haus, et al., v. City of New York, et al.*, 03 Civ. 4915 (RWS), and the April 7, 2003 Carlyle Group protest, see *Larsen, et al., v. City of New York, et al.* 04 Civ. 665 (RWS), of using mass arrests to unlawfully suppress protected First Amendment conduct.

164. Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendants had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

165. Upon information and belief, Defendants agreed that the object or course of action was to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause, and maliciously charge and prosecute him with crimes.

166. Upon information and belief, Defendants conspired as herein alleged in or around October of 2003, at which time Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN, planned and agreed upon how to arrest, detain and confine individuals who were participating in, observing or within the vicinity of the

RNC protests without probable cause and to knowingly and maliciously charge and prosecute Dunlop and others with crimes that they did not commit.

167. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN, and other members of the NYPD conspired as herein alleged in or around November of 2003, at which time Defendants planned and agreed upon how to mass arrest, detain and confine individuals without individualized suspicion, who were within the vicinity of the RNC protests without probable cause and maliciously charge and prosecute Dunlop and others with crimes they did not commit.

168. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about November of 2003, at which time Defendants planned and agreed upon how to arrest, detain and confine individuals who were within the vicinity of the RNC protests without probable cause and maliciously charge and prosecute Dunlop and others with crimes they did not commit.

169. Upon information and belief, Defendants including but limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about January of 2004, at which time Defendants collaborated and conspired with the United States Secret Service and all planned and agreed upon how to arrest, detain and confine individuals who were within the vicinity of the RNC protests without probable cause and agree to maliciously charge and prosecute individuals without lawful justification.

170. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as

herein alleged at a meeting which took place on or about February 19, 2004, at which Defendants (including but not limited to Deputy Inspector Matthew Pontillo) planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

171. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting which took place on or about May 3, 2004, at which Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

172. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about May 5, 2004, at which Defendants collaborated and conspired with the United States Secret Service and all planned and agreed upon how to conduct mass arrests, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

173. Upon information and belief, Defendants, including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting on or about July 21, 2004, at which Defendants collaborated and conspired with the United States Secret Service and all planned and agreed upon how to conduct mass arrests, detain and confine Dunlop and others in the vicinity of the RNC

without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

174. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting which took place on or about August 25, 2004, at which Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

175. Upon information and belief, Defendants including but not limited to KELLY, ESPOSITO, GRAHAM, and COLGAN and other members of the NYPD conspired as herein alleged at a meeting or meetings, the dates of which are as yet unknown, at which Defendants planned and agreed upon how to arrest, detain and confine Dunlop and others in the vicinity of the RNC without probable cause and maliciously charge and prosecute Dunlop and others with crimes.

176. Defendants including but not limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, OFFICER GOMEZ, DOES and ROES conspired in or around September 2004 to create, manufacture and fabricate knowingly false evidence which was used against Mr. Dunlop so as to deprive him of his constitutional rights and to maliciously prosecute Mr. Dunlop for offenses for which no probable cause existed. This includes but is not limited to a the creation of a plan and decision by including but not limited to the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, DOES and ROES to create a fabricated video tape, claiming to be evidence of Mr. Dunlop's unlawful acts which was used in the criminal case against Mr. Dunlop.

36

177. In or around September 2004, scenes showing Mr. Dunlop behaving peacefully and lawfully were removed by from the videotape by the NYPD Technical Assistance and Response Unit (TARU), and/or the CITY OF NEW YORK, MORGANTHAU, ADA CONCANNON, and ROES in furtherance of their conspiracy, and who then submitted this fabricated tape as evidence against Mr. Dunlop so as to unlawfully deprive him of his rights.

178. Defendants including but not limited to MORGANTHAU, ADA CONCANNON, and JOHN ROES had a duty not to create and manufacture evidence against Mr. Dunlop so as to deprive him of his constitutional rights.

179. Defendants CITY OF NEW YORK had a duty to ensure that employees, servants, and agents are properly trained and supervised so as to not create false evidence against defendants, to ensure that acts such as manufacturing of false evidence would be interceded and prevented, and to train its employees, servants and agents to turn over *Brady* material.

180. Defendants are liable under the doctrine of *respondeat superior*.

181. As a direct result of Defendants' acts, Dunlop suffered harm and damages that are a direct result of those acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dunlop requests relief as follows:

(a)    Compensatory damages against Defendants jointly and severally for all causes of action;  past and future, including, but not limited to pain and suffering, emotional

distress, economic losses including lost wages and medical expenses, violation of rights and other losses and injuries, the full extent is still undetermined in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(b)     Punitive damages against the Defendants, jointly and severally for all causes of action in an amount to be determined at trial but in no event less than $10 MILLION DOLLARS;

(c)     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law and the Court's inherent power;

(d)     Prejudgment interest as allowed by law;

(d)     Such other relief, as is just and proper under the circumstances.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

Dated: January 12, 2007

                          Respectfully Submitted,

                          KURLAND & ASSOCIATES, P.C.

                          Gina M. Bonica, Esq. (GB-6615)
                          Attorneys for Plaintiff
                          304 Park Avenue South, Suite 206
                          New York, NY 10010
                          212.253.6911

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER DUNLOP, | ) |
| Plaintiff, | ) |
| vs. | ) **06-CV-433 (KMK) (JCF)** |
| | ) **ECF** |
| THE CITY OF NEW YORK et al. | ) |
| Defendant(s). | ) |

### Declaration of Yetta G. Kurland

**YETTA G. KURLAND,** an attorney duly admitted to practice in the State of New York and before this Court, declares under the penalty of perjury, that the following statements are true and correct to the best of my knowledge:

1.    I am a Partner at Kurland, Bonica & Associates, P.C., f/k/a Kurland & Associates, P.C., attorneys for Plaintiff Alexander Dunlop (hereinafter " Plaintiff").

2.    I am familiar with the facts stated below and submit this declaration in support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss.

3.    Defendant's attempt to claim that it did not conspire with other actors to achieve the misconduct alleged in Plaintiff's and literally hundreds of other complaints and thousands of other wrongful arrests during and around the 2004 Republican National Convention is at best disingenuous and perhaps not even believable to the Defendant, and at worst a purposeful misrepresentation and insult to this Court as this Court has seen already more than enough evidence within and outside this specific case to make it unquestionable that Defendant worked in concert with others to plan mass arrests, including throwing orange webs over large groups of

people, which it would be impossible to achieve due process or probable cause for the majority of which were so detained, hold these individuals for long periods of time beyond what was reasonable or legally allowable, and detain them in unsafe and inhumane conditions including a bus depot on the west side highway.

4.    These acts not only, on its face prove there must have been a conspiracy, but show that there was more than this conspiracy, in essence the plan was brought into fruition.

5.    To pretend that such matters did not happen is to boldly fly in the face of reality and insult the legal process by again attempting to deny Plaintiff his chance to one again have due process to have a jury determine whether or not the facts alleged in the 43 page summons and complaint occurred.

6.    Not only does the complaint outline specific conduct by defendant, but the results of such conduct speak for itself.

7.    It is so undisputed as to be a matter of public record and substantial news coverage that the Defendants worked with various New York City Agencies, individuals and entities, including the Hudson River Park Trust, the Secret Service and the Republican National Convention as well as many others, to plan a strategy to ensure that as little protesters as possible were seen during the RNC so that national media would not show them, so that the Republican National Convention would look welcomed by New Yorkers and so that the attendees of the convention would be unhampered by the overwhelming negative reception of such event.

8.    These plans included specific techniques developed in conjunction with those entities to wrongfully arrest individuals regardless of their legal and constitutional rights, to wrongfully detain them, for long periods of time, to keep them off the streets until the convention was over, to keep them in dangerous and illegal conditions separate and different than the normal

detainment location and conditions for normal arrestees, and in the case at hand, to tamper with evidence to purposefully frame them for crimes they did not commit.

9.    The fact these occurrences could not have happened without the pre-planning of the various agencies, entities and actors required to do so.

10.   Defendant takes issue with use of the word conspiracy due to its negative and dark connotations. However, Defendant is not above the law, and the sad truth is that purposely making mass arrests without probable cause or due process, purposely holding arrestees who have committed no wrongdoing for inhuman amounts of time in inhuman conditions, and purposely falsifying evidence and attempting to frame these individuals for crimes that they know they did not commit, is very dark.

11.   For Defendant to try to again circumvent justice by denying Plaintiff the right to make his case to a jury and to have his day in Court to be heard is to ensure that this darkness permeates our criminal legal system.

12.   The conspiracy, namely that various parts of the government worked together, abusing its power to purposefully harm innocent individuals like Plaintiff is what makes Defendant's conduct so heinous.

13.   Defendants' motion to dismiss is a thinly veiled attempted by the Defendants to avoid culpability, to chip away at the Plaintiff's causes of action, and to deny Plaintiff his right and opportunity to be heard by this Court.

14.   The tapes alone establish enough prima facie evidence for the conspiracy claim to survive a summary judgment motion although, again this is not required and the pleadings are more than sufficient, just in the factual allegations contained therein. The Defendants fall woefully short of meeting their burden to justify this dismissal, such a central part of Plaintiffs

3

claim. As such, this motion must be dismissed and Plaintiff must be allowed an opportunity to make his claim that Defendants conspired and purposely knew and intended to deprive him of his constitutional rights as articulated in the second amended verified complaint.

15.    Sufficient facts have been plead in the second amended verified complaint, which is significantly longer than the short and plain statement of the claim as minimally required by Fed. R. Civ. P. 8(a). The Defendants, in filing this motion, are attempting to deny Plaintiff his constitutional right to have his case heard by a jury. It is inappropriate for Defendants to use this motion to eliminate the cause of action from Plaintiff's complaint that Plaintiff alleges was predicated on the premeditated plan by various agencies to deprive Plaintiff and others similarly situated of their constitutional rights and then take numerous overt acts in furtherance of the plan.

KURLAND, BONICA & ASSOCIATES, P.C.
f/k/a KURLAND & ASSOCIATES, P.C.
Attorney for Plaintiff

By:_____
Yetta G. Kurland (YK 1251)

4

EXHIBIT C

CRIMINAL COURT OF THE CITY OF NEW YORK

NEW YORK COUNTY  :  PART B

- - - - - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK    :    DOCKET NO.
                                            2004NY063485
             - against -                  :

ALEXANDER DUNLOP                          :

                        Defendant    :    Calendar Call

- - - - - - - - - - - - - - - - - - - - -X

                        100 CENTRE STREET
                        NEW YORK, NEW YORK  10013

                        April 6, 2005


BEFORE:    HONORABLE SHAWNDYA SIMPSON, JUDGE



APPEARANCES:


            ROBERT MORGENTHAU, ESQ.
                District Attorney, New York County
                BY:  WILLA CONCANNON, ESQ.
                    Assistant District Attorney


            MICHAEL CONROY, ESQ.
                Attorney for Defendant
                116 John Street - Suite 2201
                New York, New York 10038



                        LAUREN K. GANZMAN
                        OFFICIAL COURT REPORTER

PROCEEDINGS                                    2

1            BRIDGE OFFICER:  Calendar No. 82, Alexander

2    Dunlop.

3            MR. CONROY:  Michael Conroy, 116 John Street,

4    Suite 2201, New York, New York.

5            Good morning, your Honor.

6            MS. CONCANNON:  Judge, this is my case.  The

7    People are not ready today; the officer was not

8    available, unfortunately.

9            MR. CONROY:  Your Honor, I want to address an

10    issue and I want to confirm, as I have -- I believe the

11    D.A. stated correctly three times now, that I was given

12    the complete and entire videotape of this incident

13    relating to what happened on Second Avenue and Tenth

14    Street for this date in question?

15            MS. CONCANNON:  Yes, that's correct.

16            MR. CONROY:  Then there is a major problem

17    here, your Honor.  I was contacted by the Lawyer's Guild

18    on Monday.  The tape that I have is not a complete tape;

19    it is a cut tape.  I went down to the Lawyer's Guild, I

20    compared a tape that they had gotten from an attorney on

21    another case.  Interestingly enough, two scenes

22    involving my client were cut out of the tape that I was

23    given by the District Attorney's Office.

24            MS. CONCANNON:  Judge, that is ridiculous.

25            MR. CONROY:  I have both tapes.

PROCEEDINGS

1          THE COURT:  Where did you get the tape?

2          MS. CONCANNON:  Exactly.  There are hundreds

3    of tapes of this event circulating from the National

4    Lawyer's Guild.  I certainly don't have access to those

5    tapes.

6          My duty to turn over to you any tapes I

7    have --

8          MR. CONROY:  It is an NYPD tape given to

9    another attorney, given to the Lawyer's Guild.  I have

10   both tapes.

11         MS. CONCANNON:  Now you have it, don't you?

12         MR. CONROY:  That's not the issue, judge.

13         THE COURT:  People, where did you get it from?

14         MS. CONCANNON:  We have several tapes --

15         THE COURT:  I mean the tape you gave counsel.

16         MS. CONCANNON:  New York City Police

17   Department detectives taping protests that night.  There

18   are hundreds of those tapes.

19         THE COURT:  You can find the officer who taped

20   it and you are free to cross-examine that person.

21         MR. CONROY:  I am going to make several

22   motions to the Court in writing.  One, this is bias on

23   the part of the police.  Someone, it appears

24   intentionally cut my client out of th

25         MS. CONCANNON:  Ou+

PROCEEDINGS

1        MR. CONROY:  That is a serious problem.

2        MS. CONCANNON:  Listen --

3        MR. CONROY:  I want to know what officers

4    edited those tapes.

5        MS. CONCANNON:  There are no editing of any

6    tapes.

7        MR. CONROY:  I have never had this done to me

8    before in my entire life and I am offended.

9        MR. CONCANNON:  This is ridiculous.  There are

10   hundreds of tapes and every angle is not captured on

11   each tape.

12       THE COURT:  Approach.

13       (Off-the-record discussion held at the bench)

14       MR. CONROY:  Another matter, your Honor, which

15   is a concern, the People are answering not ready for

16   trial.  They answered not ready for trial on the last

17   date.  Immediately after that, they filed a certificate

18   of readiness.  It's my position that now, obviously,

19   that certificate of readiness is illusory and the entire

20   time should be charged.

21       MS. CONCANNON:  On the last date, the People

22   made a record the officer's close relatives were in a

23   very serious car accident, in intensive care, and it was

24   actually on the news because the accident was so

25   horrible.  So, certainly, that adjournment was

PROCEEDINGS

1    excludable because that --

2        THE COURT:  Today, she is sick?

3        MS. CONCANNON:  She is unavailable.  She is

4    still having issues with her family.

5        MR. CONROY:  If she is still having the same

6    issues from the prior date, how could they have filed a

7    certificate of readiness in the meantime to say they are

8    ready for trial?

9        MS. CONCANNON:  Because today she was not

10   available.  She was certainly available on the day we

11   filed the C.O.R.

12       MR. CONROY:  I have the record, obviously.

13       THE COURT:  You have the record and you can

14   file the 30.30 motion.  There are issues with the tape.

15   I suggest you get together, you can come back before the

16   Court and we can talk about it.  Your client is excused.

17   I'll put the case over for trial, if it comes to that.

18       MR. CONROY:  I'm scheduled to start a murder

19   trial on the 20th in front of Judge Berkman, so I would

20   ask for some date after April 20.

21       THE COURT:  Not a problem.  May 9; that's a

22   Monday.

23       What is the offer, People?

24       MS. CONCANNON:  The offer is 240.20 and time

25   served.  For the record, I would like to make a record

PROCEEDINGS

1    that the defendant is staring me down in an obnoxious

2    and intimidating way and I find it incredibly

3    inappropriate.

4            MR. CONROY:  Judge --

5            THE COURT:  I had enough of both you all right

6    now.  See you later, goodbye.

7            (SECOND CALL)

8            *          *          *          *

9            BRIDGE OFFICER:  Recalling Calendar No. 82,

10   Alexander Dunlop.

11           MR. CONROY:  Michael Conroy, 116 John Street,

12   Suite 2201, New York, New York.

13           (Off-the-record discussion held at the bench)

14           THE COURT:  Counsel, you can state --

15           MR. CONROY:  I waive my client's appearance,

16   with the Court's permission, for this calendar call.

17           MS. CONCANNON:  Judge, based on my discussion

18   with defense counsel and his showing me some further

19   evidence in the case, I am moving to dismiss the case; I

20   cannot prove these charges beyond a reasonable doubt.

21           MR. CONROY:  For the record, I would like to

22   thank the Assistant District Attorney for the work she

23   has done during her lunch hour.  I apologize for

24   anything I said this morning which may be read by

25   anybody as imputing the credibility as to the Assistant

PROCEEDINGS

1    District Attorney.  That is not what 1 intended at all.

2    She has my full faith there was nothing done wrong here

3    by the District Attorney's Office and I join in the

4    motion for the dismissal.

5            THE COURT:  That's granted.  Contact your

6    client because we gave him a 5/9 adjourn date.

7            MR. CONROY:  I will.

8            THE COURT:  Dismissed and sealed.

9            MR. CONROY:  Thank you very much.

10           *       *       *       *       *

11        CERTIFIED TO BE A TRUE AND ACCURATE

12        TRANSCRIPT OF THE MINUTES TAKEN IN THE

13        ABOVE-TITLED PROCEEDING.

14

15

16        LAUREN K. GANZMAN
           OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25

EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDER DUNLOP,                    )
                                     )
                Plaintiff,           )
                                     )        **06-CV-433 (KMK) (JCF)**
        vs.                          )        **ECF**
                                     )
THE CITY OF NEW YORK et al.          )
                                     )
                Defendant(s).        )
_____)

### Declaration of Gina M. Bonica, Esq.

**GINA M. BONICA,** an attorney duly admitted to practice in the State of New York and
before this Court, declares under the penalty of perjury, that the following statements are
true and correct to the best of my knowledge:

1.      I am a junior partner at Kurland, Bonica & Associates, P.C., f/k/a Kurland
& Associates, P.C., attorneys for Plaintiff Alexander Dunlop (hereinafter " Plaintiff").

2.      I am familiar with the facts stated below and submit this declaration in
support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to
Dismiss.

3.      Pursuant to Plaintiff's alternative reliance on Federal Rule of Civil
Procedure 56(f), I submit that if the Court desires further specific facts to be set forth as
to the conspiracy claim, it should give the Plaintiff his deserved opportunity to make the
proper investigations through discovery.   Detailed below are several examples of

discovery information that Plaintiff would hope to obtain through discovery. This list is by no means exhaustive.

4.    Plaintiff would depose ASSISTANT DISTRICT ATTORNEY WILLA CONCANNON as to her knowledge of the chain of custody of the edited tape ("The Second Video Tape"), who actually gave The Second Video Tape to the District Attorney's Office, who actually edited The Second Video Tape, who ordered the editing of The Second Video Tape and which entity or Defendant oversaw such editing, how many others knew about the editing of The Second Video Tape, and why she originally stated that the tape submitted in Mr. Dunlop's criminal matter was unedited.

5.    Plaintiff would depose BARBARA THOMPSON, a spokeswoman for the District Attorney's Office as to her knowledge of the knowledge of the chain of custody of The Second Video Tape, why she alleged that The Second Video Tape had been cut by the District Attorney's Office, who ordered the editing of The Second Video Tape and which entity or Defendant oversaw such editing.

6.    In addition, in discovery, Plaintiff would also depose PO GOMEZ to determine why she submitted a sworn statement that the Plaintiff committed certain offenses for which he was arrested, only to have the unedited tape reveal that she was not only absent from the tape, and that the actions which she swore occurred, in actuality, did not.

7.    Discovery will also reveal, who from the NYPD edited that tape and determine from where this person obtained their authority to edit the tape.

8.    In addition, Plaintiff will also determine the identity of the officer who directed the Plaintiff to the area where he was unlawfully arrested as well as further

details regarding the meetings between the NYPD, the Mayor's Office, the Federal Government and the Republican National Committee in which the plan to use unlawful arrest policies and practices were created.

KURLAND, BONICA & ASSOCIATES, P.C.
f/k/a KURLAND & ASSOCIATES, P.C.
Attorney for Plaintiff

By: _Gina M. Bonica_
Gina M. Bonica, Esq. (GB-6615)
304 Park Avenue South, Suite 206
New York, NY 10010
(212) 253-6911(ph)
(212) 614-2532 (fax)

3

EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/06

----------------------------------------

ALEXANDER DUNLOP,

                 Plaintiff,

     -versus-

                                         **06 CV 433 (KMK)(JCF)**

THE CITY OF NEW YORK, et al.

                 Defendants.

------------------------------------------------------------------ x

All parties having consented to adjourn the following matters, it is herby **ORDERED**:

    1.    Plaintiff shall file his amended complaint by January 15, 2007. No further amendment to the complaint shall be permitted without leave of the court.

    2.    The parties shall appear in Court at 12 p.m. on February 2, 2007 for a pre-motion conference to address defendants' proposed motions to dismiss; defendants are not required to file any additional pre-motion papers on these issues;

    3.    Defendants' time to answer shall be extended until 30 days after the later of the February 2, 2007 conference or the Court's order on defendants' proposed motions to dismiss;

    4.    Discovery in this action is stayed until the later of the February 2, 2007 conference or the Court's order on defendants' proposed motions to dismiss.

                          SO ORDERED:

                          _____

                          KENNETH M. KARAS
                          UNITED STATES DISTRICT JUDGE

                    Dated: December 15 , 2006