UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

ALEXANDER DUNLOP,

                Plaintiff,

-versus-                                      06 CV 433 (RJS)(JCF)

THE CITY OF NEW YORK, et al.

                Defendants.

------------------------------------------------------------------- x


**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR RECONSIDERATION
CONCERNING THE "VIDEO CONSPIRACY" CLAIM**


MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney For Defendants*

James Mirro (JM 2265)
Special Assistant Corporation Counsel
Special Federal Litigation
100 Church Street, Room 3-130
New York, New York 10007
212.788.8026 (ph)
212.788.9776 (fax)

June 17, 2008

**Introduction**

Plaintiff makes three arguments in response to defendants' motion for reconsideration. None has any merit. On the merits, plaintiff has conceded, as he must, that the allegedly altered videotape never was used in evidence against him and, therefore, that the alleged Video Conspiracy could not have resulted in him being held against his will. Having exposed this fatal defect in plaintiff's claim, defendants respectfully submit that the Court should grant defendants' motion and dismiss this branch of the plaintiff's conspiracy claim "at the point of minimum expenditure of time and money by the parties and the court." Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955, 1966 (2007).

**I.
Timeliness Of The Motion**

Plaintiff begins by arguing that defendants' motion for reconsideration "was untimely served." Plaintiff's Opposition at 3. According to plaintiff, "Defendants' motion . . . must have been served on or before May 20, 2008." Id. "Defendants served their motion for reconsideration on plaintiff after the strict deadline . . . as such, the motion is untimely and must therefore be rejected." Id. In support of that argument, plaintiff submits to the Court the Civil Docket sheet for this case, which shows several filings dated May 21, 2008, and cites two cases including an Eastern District case in which the Court denied as untimely a motion for reconsideration served one day late. Id.

Plaintiff does not, however, disclose to the Court that defendants' motion was served via the ECF system; that it was served via that system less than 17 minutes after midnight on May 20, 2008; and that all parties of record, including Ms. Kurland and Ms. Bonica, were served at that time via email (Exhibit A). Nor does plaintiff disclose to the Court that there was a glitch of some kind in the ECF system that affected that filing and that caused the ECF system to issue a notice the following day to defendants (with a copy to all other parties) to re-file their papers (Exhibit B). Defendants did re-file their papers on May 21, 2008 at approximately 1:43

p.m. (Exhibit C). Thus, contrary to plaintiff's suggestion, the delay in service here amounted to no more than 17 minutes. Plaintiff does not suggest that he was prejudiced by that 17 minute delay (between midnight and 12:17 a.m.).

In addition, the cases cited by plaintiff do not require the Court to "reject" an untimely served motion, much less one served via ECF that reaches its recipient 17 minutes late. In fact, the issue in Camacho v. City of Yonkers, 236 F.3d 112 (2d Cir. 2000) was not the timeliness of a motion for reconsideration but rather the timeliness of defendants' notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(A). Id. at 113. That distinction is significant because the timeliness of a notice of appeal raises jurisdictional concerns not present here. See, e.g., Houston v. Greiner, 174 F.3d 287, 288 (2d Cir. 1999). According to the Second Circuit's opinion in Camacho, moreover, District Judge Conner did not "reject" the motions for reconsideration that were filed with him approximately 3 weeks late – rather he "addressed the merits of defendants' motion[s]." 236 F.3d at 114. Plaintiff also cites Dama v. Sierup, 2008 WL 1957772 (E.D.N.Y. 2008). In that case, the Court denied the motion for reconsideration only after the Court explained that plaintiff's motion (which was a motion to vacate the final order and settlement) came over 10 years after "the parties settled this action in open court and . . . the case was dismissed with prejudice." Id. at *1. Even in that case, Judge Feurstein addressed the merits of plaintiff's reconsideration motion.

In any event, the law does not support the plaintiff's argument that defendants' motion for reconsideration "must be denied as it was untimely served in violation of Local Civil Rule 6.3." Plaintiffs' Opposition at 3. In fact, the Second Circuit repeatedly has observed that the district court has the discretion to excuse noncompliance with Local Rules. By way of example, in Wight v. BancAmerica Corporation, 219 F.3d 79 (2d Cir. 2000), Judge Patterson had permitted the untimely filing of certain papers. The Second Circuit "approve[d] of the district

2

judge's fair and pragmatic approach." Id. at 85. The Circuit Court held that the district court "enjoy[s] the discretion to excuse . . . non-compliance with the Local Rules (which are not statutes) in the interest of justice." Id. Moreover, "[i]t is the business of the district court to determine whether fairness demands that noncompliance be excused." Id. at 85-86; see also Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1048-49 (2d Cir. 1991).

In light of the foregoing, and in the interest of justice, defendants respectfully request that the Court excuse the short delay in the service of the defendants' papers and resolve the defendants' motion on its merits.

## II.
## Plaintiff Misstates The Legal Standard For Motions To Reconsider

Plaintiff argues that a motion to reconsider "may *only* be granted if the moving party demonstrates the existence of (a) a change in the law; (b) the need to correct a clear error of law or to prevent manifest injustice; or (c) the availability of evidence which was not previously available." Plaintiff's Opposition at 1-2, 4. Plaintiff again has misstated the law.[1]

Local Rule 6.3 expressly provides that the memorandum supporting the motion for reconsideration shall set forth "the matters or controlling decisions which counsel believes the court has overlooked." Local Rule 6.3 (emphasis added). Contrary to plaintiff's argument, the Second Circuit has not interpreted the rule to exclude reconsideration of matters

---

[1] To support his argument, plaintiff has cited two cases as follows: "*Toland v. Walsh*, ___ F.3d ___, 2008 WL [820184] (2d Cir. March 26, 2008), citing, *Shannon v. Verizon New York, Inc.*, 516 F.Supp.2d 304, 307 (2d Cir. 2007)." Plaintiff's Opposition at 2. Neither of these opinions, however, is an opinion of the Second Circuit Court of Appeals as plaintiff suggests. Toland is an unpublished opinion from the Northern District of New York in which Judge Sharpe adopted the report and recommendation of Magistrate Judge Bianchini. That opinion does not appear to involve any motion for reconsideration at all; nor does it appear to cite Shannon. Shannon is a published opinion from the Northern District of New York in which that Court plainly misstated the applicable standard on a motion for reconsideration as set forth by the Second Circuit. Its proper citation is 519 F.Supp.2d 304 (N.D.N.Y. 2007). In his brief, plaintiff subsequently cites a second opinion from the Toland case, published at 2008 U.S. Dist. LEXIS 17645 (N.D.N.Y. 2008). Plaintiffs' Opposition at 4. That opinion recites the proper standard when it states that "the application will 'generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Id. at *3. That opinion then recites the narrower and erroneous standard relied upon in Shannon and by plaintiff here. Id. at *3-4. The Court provided no explanation for this dual standard nor guidance for applying it.

3

"overlooked" by a court. In <u>Shrader v. CSX Transportation, Inc.</u>, 70 F.3d 255, 256 (2d Cir. 1995), the posture of which was virtually identical to this case, the defendant had moved to dismiss two separate claims pursuant to Rule 12(b)(6). The district court granted the dismissal as to the first claim but not the second. <u>Id.</u> Defendant then moved for reconsideration with respect to the second claim. <u>Id.</u> On reconsideration, the Court granted the motion and dismissed the second claim. <u>Id.</u> On appeal, plaintiff argued that the district court had erred in granting the motion to reconsider. The Second Circuit rejected those arguments and affirmed.

The Second Circuit recited the applicable standard: that the moving party must point to "controlling decisions <u>or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court</u>." <u>Id.</u> at 257 (emphasis added). The defendant argued "that it did present the district court with data that the court had not previously considered." <u>Id.</u> That included certain legislative history, "which the district court had not discussed in its original ruling," as well as court decisions that the district court apparently had not examined. <u>Id.</u> In light of this information, which apparently had been overlooked by the district court, the Second Circuit concluded that "we cannot say that the district court's decision to reconsider its earlier ruling was an abuse of discretion." <u>Id.</u>[2]

In short, plaintiff's interpretation of the rule is inconsistent with binding Second Circuit authorities, as well as persuasive Southern District authorities, and is clearly erroneous. Accordingly, the Court should resolve defendants' motion on the merits.

---

[2] The decisions in the Southern District consistently have articulated this same standard. Often, they have recognized expressly that the Court may reconsider a decision in the light of "factual matters" overlooked by it. <u>See, e.g.</u>, <u>In re Biovail Corporation Securities Litigation</u>, 247 F.R.D. 71, 71-72 (S.D.N.Y. 2007) (Owen, J.) ("To satisfy the standards governing motions for reconsideration, a movant must show that the court has overlooked controlling decisions or factual matters that, had they been considered, might reasonably have altered the result").

## III.
## The Merits Warrant Dismissal

In the May 6, 2008 Order, the Court found that the TAC alleged "that the object of the video conspiracy was, beyond the mere preparation of fabricated evidence, to inflict an unconstitutional injury on plaintiff -- namely, to use the altered videotape in a court proceeding that allegedly resulted in plaintiff being detained 'against his will'." Order at 14 (emphasis added).[3] In their motion for reconsideration ("Defendants' Motion"), and through the materials attached to it, defendants have shown that the allegedly altered videotape never was used in evidence and, therefore, cannot have "resulted in plaintiff being detained 'against his will'."

Defendants have supplied the Court with the Criminal Court transcripts that show that the DA dropped the charges against Dunlop before either version of the videotape was used in evidence against him. Defendants' Motion at 4. Defendants have shown that, in his complaint, the plaintiff failed to plead any facts to the contrary; and that, in his opposition to defendants' original motions to dismiss, plaintiff did not dispute that the DA dropped the charges against Dunlop before either version of the videotape was used in evidence against him. Defendants' Motion at 5-6. In fact, in his original Opposition, plaintiff adopted the facts as set forth in the Criminal Court transcripts. Defendants' Motion at 6.

In response to defendants' motion for reconsideration, plaintiff has conceded expressly that the charges were dropped before the DA ever used the video in evidence. Plaintiff conceded that "the only reason the District Attorneys Office *did not* use the fabricated tape at trial was because the unedited, unaltered videotape surfaced and they were compelled to drop the charges[.]" Plaintiff's Opposition at 7 ¶ 2. This concession, which is consistent with the

---

[3] In his Opposition to defendants' motion for reconsideration, plaintiff confirms this theory: "Plaintiff's Third Amended Complaint alleges that a VHS video tape was fabricated by defendants to be submitted as evidence of Mr. Dunlop's alleged unlawful conduct . . . knowing that it was an altered and manufactured piece of evidence used to maliciously prosecute Mr. Dunlop and deprive him of his constitutional rights." Plaintiff's Opposition at 5 n.2.

5

concessions set forth above, is a binding admission of the plaintiff that the DA's office did not use the allegedly fabricated tape in evidence against Dunlop. See Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact"). Accordingly, Dunlop could not have been "detained 'against his will'" as a result of the DA's "use [of] the altered videotape in a court proceeding." See Order at 14. On this basis, the Video Conspiracy claim should be dismissed.

Nevertheless, plaintiff makes several arguments in an attempt to save his claim. First, plaintiff claims that "intangible injuries to a person dignity is a deprivation of liberty." Plaintiff's Opposition at 7 ¶ 1 and 8 ¶¶ 2-3. Plaintiff also argues that "continuous court appearances and awaiting trial" can constitute a deprivation of liberty. Id. Plaintiff, however, has not explained how either of those arguments has anything to do with his Video Conspiracy claim as pleaded in the TAC. If plaintiff can establish an injury to his "dignity" or that he "waited" for trial or "court appearances," that evidence may be relevant to show damages flowing from plaintiff's alleged false arrest or malicious prosecution. It does not, however, save his claim that defendants used a fabricated videotape in evidence to deprive him of his liberty. See Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) (there can be no violation of constitutional rights where the fabricated evidence does not result in the alleged deprivation of liberty); Landrigan v. City of Warwick, 628 F.2d 736, 744-45 (1st Cir. 1980) (same); Buckley v. Fitzsimmons, 20 F.3d 789, 795 (7th Cir. 1994) (same); Richardson v. The City of New York, 2006 WL 2792768, *5 n.4 (E.D.N.Y. 2006) (same).

Without any elaboration or support of any kind, plaintiff also argues that these alleged damages were "directly tied to the fabricated tape, as the tape was the sole reason for the case moving forward." Plaintiff's Opposition at 8-9. "Plaintiff submits that had the tape not been altered, the case would have been dropped. . . . Plaintiffs case would have been dismissed

immediately had the real tape never been tampered with." Plaintiff's Opposition at 9. Finally, plaintiff urges that his charges "were a direct result of the fabricated evidence on the tape." Plaintiff's Opposition at 9.[4]

These arguments should be rejected for at least two reasons. First, through these arguments, which are made for the first time in plaintiff's opposition brief, plaintiff attempts to introduce new facts that appear nowhere within the TAC. On a motion to dismiss, which by definition tests the adequacy of the plaintiff's pleading, the Court should not consider such matters. See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under [Rule] 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference"); Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988) ("[I]t would have been error for the court to consider the factual allegations contained in the plaintiffs' memorandum of law without converting the motion to one for summary judgment"); O'Brien v. National Property Analysts Partners, et al., 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (Leisure, J.) ("it is axiomatic that the complaint cannot be amended by the briefs in opposition to a motion to dismiss"). In the companion RNC case of Concepcion v. City of New York, 2008 WL 2020363, *10 (S.D.N.Y. 2008), Your Honor reached this same conclusion.

Even if these unpled facts were considered, however, they could not save plaintiff's claim that defendants used a fabricated videotape in evidence to deprive him of his liberty. The fact, now conceded by plaintiff on several occasions, that the allegedly altered tape never was used in evidence against the plaintiff means that that claim should be dismissed as a

---

[4] This last point makes no sense at all because, by plaintiff's own account, his charges (in August 2004) preceded the hatching of the alleged Video Conspiracy (in September 2004). See Defendants' Motion at 7 n.4.

7

matter of law. See Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000); Landrigan v. City of Warwick, 628 F.2d 736, 744-45 (1st Cir. 1980); Buckley v. Fitzsimmons, 20 F.3d 789, 795 (7th Cir. 1994); Richardson v. The City of New York, 2006 WL 2792768, *5 n.4 (E.D.N.Y. 2006).[5]

## IV.
### The Video Conspiracy Claim Does Not Sufficiently Plead Any "Agreement" To Violate Plaintiff's Rights

In defendants' motion, defendants explained that the TAC fails to plead any "facts" (as opposed to legal conclusions) supporting plaintiff's vague claims that defendants reached an "agreement" or "meeting of minds" to inflict an "unconstitutional injury" upon Dunlop. Defendants also argued that the TAC fails to plead any "facts" demonstrating the "personal involvement" of any of the named defendants in reaching any "meeting of minds" to violate Dunlop's constitutional rights. These arguments are supported not only by Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955, 1966 (2007) but by the many Second Circuit and other authorities cited within defendants' original memorandum in support of their motion to dismiss. See, e.g., Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) (reversing jury verdict in favor of plaintiff and holding that "Because Section 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983'"); Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (affirming dismissal of conspiracy claim and holding that such "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct"); Fisk v. Letterman, 401 F. Supp. 2d 362, 375

---

[5] It is clear, moreover, that plaintiff has manufactured these latest allegations without any regard to his obligations under Rule 11 of the Federal Rules. How, after all, could plaintiff possibly know that "the [fabricated] tape was the sole reason for the case moving forward" or that "plaintiffs' case would have been dismissed immediately" absent the alleged alterations? These allegations plainly have been designed for the purpose of saving plaintiff's fatally flawed conspiracy claim and apparently without any regard for the truth. Indeed, there appears to be no limit to plaintiff's willingness to manufacture allegations such as these, as plaintiff argues that "there are an abundance of scenarios where plaintiff could be said to have been deprived of his liberty due to the pending trial." Plaintiff's Opposition at 9.

8

(S.D.N.Y. 2005) (Marrero, J.) ("[b]ecause personal involvement by the defendants in any alleged constitutional violation is a prerequisite to an award of damages under § 1983 . . . the complaint should be dismissed").

The Second Circuit and courts in the Southern District particularly have scrutinized allegations concerning the "agreement" or "meeting of the minds" to violate the law that is the fundamental element of the conspiracy claim. "In order to maintain an action [based upon a civil rights conspiracy], a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" Webb v. Goord, 340 F.3d 105, 110-11 (2nd Cir. 2003) (affirming dismissal of conspiracy complaint). "Without a 'meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy.'" Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (Marrero, J.) (emphasis added) (dismissing conspiracy claim where complaint failed to allege a "meeting of the minds" for the purpose of violating plaintiff's constitutional rights); Romer v. Morgenthau, 119 F. Supp. 2d 346, 364 (S.D.N.Y. 2000) (Marrero, J.) (dismissing conspiracy complaint and holding that "[a]bsent allegations of facts leading to a reasonable inference that defendants conspiratorially conferred with a purpose of actually depriving Romer of any recognized constitutional right, he cannot state a sustainable conspiracy claim"); Jones v. National Communication and Surveillance Networks, 409 F. Supp. 2d 456, 472 (S.D.N.Y. 2006) (Hellerstein, J.) (dismissing conspiracy claim where plaintiff "never properly alleges a meeting of the minds, nor identifies the individuals that effected such agreement"), aff'd, 2008 WL 482599 (2d Cir. 2008); Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 513-14 (S.D.N.Y. 2003) (Conner, J.) (dismissing conspiracy claim where pleading fails to "state with whom [defendant] is alleged to have conspired or how the agreement to conspire was reached"); Peavey v. Polytechnic Institute of New York, 775 F. Supp. 75, 77-78 (E.D.N.Y. 1991)

(Glasser, J.) (dismissing conspiracy claim where "complaint is utterly vague and conclusory as to the nature of [defendant's] participation in the alleged agreement"), aff'd, 969 F.2d 1042 (2nd Cir. 1992).[6]

Defendants respectfully submit that Dunlop's conspiracy pleading fails to satisfy these strict requirements. In Concepcion v. City of New York, 2008 WL 2020363, *6-10 (S.D.N.Y. 2008), in which many of the factual allegations concerning the alleged "agreement" were virtually identical to this case, Your Honor dismissed the conspiracy claim. With respect to plaintiff's various allegations in that case, Your Honor held that they "do not offer sufficient factual details regarding an agreement among defendants to violate the civil rights of plaintiff or anyone else." Id. at *6-10. Defendants respectfully submit that the same is true of the allegations in this case.

### Conclusion

For all of the reasons set forth in defendants' motion to reconsider, and as set forth above, defendants respectfully request that the Court reconsider its May 6 Order and dismiss plaintiff's conspiracy claim in its entirety.

Dated: New York, New York
       June 17, 2008

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                *Attorney For Defendants*

By: 
      James Mirro (JM 2265)

---

[6] The requirement that plaintiff plead "facts" to support each of the elements of his claim is not unique to conspiracy cases but applies to all pleadings under Rule 8 including pleadings in civil rights cases. See Johnson v. United States, 2006 U.S. Dist. LEXIS 37601, *5 (S.D.N.Y. 2006) (Karas, J.) ("Complaints that rely on civil rights statutes are insufficient unless 'they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"); Hernandez v. United States, 1997 U.S. Dist. LEXIS 14256, *3 (S.D.N.Y. 1997) (Sweet, J.) (dismissing complaint *sua sponte* under Rule 8 where the claims were "'undifferentiated as to defendants and facts' and 'lacking in detail' as to . . . any correlation between the particular defendants, their acts and the claims alleged").

10

Special Assistant Corporation Counsel
Special Federal Litigation
100 Church Street, Room 3-130
New York, New York 10007
212.788.8026 (ph)
212.788.9776 (fax)